UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*Mary Ann Maltese*

_____

Write the full name of each plaintiff.

_____CV_____
(Include case number if one has been assigned)

-against-

*NYS Legislature, rep. Carl Heastie*
*Governor of NY*
*Chair of NYS Democrats, Richard Schaffer*
*CUNY - Queens College, Fred Wu*

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

**COMPLAINT**

Do you want a jury trial?
☑ Yes    ☐ No

PRO SE OFFICE (vertical stamp text)
2024 SEP 11 PM 3:34

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☑ **Federal Question**

☐ **Diversity of Citizenship**

## A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

Failure by State Supreme in January 2021 to Prime Bill Language + grant Public officer a pension + Hearing on 30 year of Service. As an Adult Survivor of Sexual offense Penal Code 130 Since 2021 August, Defendants as Employer / Educator in 1992 (April) failure to gran ( notice of Claim for ASA for Sexual harassment as nominee (2 mo), and failure post Service pension.

## B.   If you checked Diversity of Citizenship

Plaintiff seeks 33 year Contract remedy as in findings in Trial Court

### 1.   Citizenship of the parties @ 83 million. February 8, 2023, 09234-2022

Mackey failure of Tort + Defendant Leg's Coven Employer failure

Of what State is each party a citizen?

The plaintiff, _Mary Ann Maltese_, is a citizen of the State of of pension (Plaintiff's name)   as required.

_New York_

(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_NY_

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, _Governor NYS Legislature, Curry +_ , is a citizen of the State of
(Defendant's name) _Chair of State Democrat Party._

_Highest News Post ASA 1992- Legislatures 2020-2024 Continued_
_Sexual Harassment_
or, if not lawfully admitted for permanent residence in the United States, a citizen or _Menace of_
subject of the foreign state of _Service._

_New York_ .

If the defendant is a ~~corporation~~: _Institution NYS_

The defendant, _New York_ , is incorporated under the laws of

the State of _New York_

and has its principal place of business in the State of _New York_

or is incorporated under the laws of (foreign state) _New York - Public Officer_
_Injury laws +_
_plus ASA Ex Under Act_
and has its principal place of business in _May 2022 denied to P.O._
_Victim 1992._

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

_Mary Ann Maltese_
First Name          Middle Initial        Last Name

_19 Ringler Drive_
Street Address

_Suffolk, NY_                          _11731_
County, City                State        Zip Code

_631-644-5765_            _Maryan maltese1uo@gmail.com_
Telephone Number          Email Address (if available)

## B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:     *Kathy Hochul, Governor*
                      First Name          Last Name

                 Current Job Title (or other identifying information)
                 *Legislative Office Building / Capitol*
                 Current Work Address (or other address where defendant may be served)
                 *Albany                  ny              12248*
                 County, City                State               Zip Code

Defendant 2:     *Richard Schaffer*
                      First Name          Last Name

                 *Supervisor (LEO) + Chair NYS Democrats*
                 Current Job Title (or other identifying information)   *Party*
                 *Babylon Town Hall 200 E Sunrise Highway*
                 Current Work Address (or other address where defendant may be served)
                 *Suffolk                New York            11757*
                 County, City                State               Zip Code

Defendant 3:     *Carl Heastie, Speaker, NYS Assembly*
                      First Name          Last Name

                 Current Job Title (or other identifying information)
                 *L.O.B - RM 932*
                 Current Work Address (or other address where defendant may be served)
                 *Albany                  ny              12248*
                 County, City                State               Zip Code

Defendant 4: _Queens College, CUNY - Presidential lur_
First Name                        Last Name

Current Job Title (or other identifying information)
_Kissena Blvd , Flushing_
Current Work Address (or other address where defendant may be served)
_Queens                    NY_
County, City                    State                    Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _Albany LOB-Rm 932 (Alan Aresi) - April 1992_
_+ 2/15/2020 continuance of Sexual Harassment by Chair Schaffer_

Date(s) of occurrence: _____

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were
harmed, and what each defendant personally did or failed to do that harmed you. Attach
additional pages if needed.

_As of February 18, 2020, Chair Richard Schaffer,_
_NYS Democrats Political Party Employer failure to_
_grant Public Officer nomination considerations_
_fund in NYS Board of Elections Rules general_
_election 12th AD cycles, 2020, 2022, 2024._
_- Chair Schaffer post nomination 2/15/2020_
_failure to support at will employee rights legislanive_
_to on line Hailey v. Pataki, 1995 FedSupp (Contracted_
_Clause) since 1/1/2021. Failure by Keith Brown,_
_12th Asl NYS Assemblyman - to Prime P.O._
_retro active corrective rights fund in James Corrigan v._
_FDNY 2010, 911 perished officer._
_2/31/2013 - Andrew Cuomo silent in kinhood to referendum_
_of Mattese through 9/11/2024 - 11 year E094_



Injury - ASA offense defamation of character plus continued stalking by Evan Stausky (son of toby Stausky) + David Lavine City Students funded by Dean of Students Queens College as of June 3, 1993 - allowed for David Lavine to receive life long expulsion from academia + 6 year BA for Evan Stausley while punishing the Crime victim MaryAnn Maltese of "no MA" as of June 3, 1993 + elimination of law school fellowship at City law.

Plaintiff P.O. Maltese has been unreasonably denied @ Supreme Suffolk + Supreme Albany in failure to grant Employee a hearing on Article 78 rights to "retroactive corrective" earnings for 2 employment titles "Chief of Staff + Regional Downstate Manager as of 1/1/1994. → 7/31/2013. IN 6638-2021, March 9, 2021, Brown, in P.O. Elective Office capacity created Northport Village arrest of Maltese in her "End of Service" Standard Prime bill introduction creation of "additional punitive "Sexual damages" as Browns few allowable consideration was

3

ended on 6/1/2022, Brown/Metzera
as of 6/1/2022 - 9/11/2024, failure
to Prime bill language to include fiscal
note required by NYS Comptroller to
leave service.
   Alan Hevesi as of 2001 Convicted
by NYAG Andrew Cuomo of Stealing
while leaving out, "Sexual Penal Code"
offenses invoked on to MaryAnn Maltese
in 1992. Hevesi Public masterbaturm
on Maltese in his L.O.B offices while
threatening to expel Maltese from
Cuny + NYC UFT + NY Mets Scholarship
(outside holding) while he told me as
Student, I was unworthy and to "clean
myself up in The bathroom before returning
to "LOB" office.
   May 7, 1992 1992 - DAN Frisa - Stalked me
@ my intern apartment as operative of
Alan Hevesi + forcible touching.
2 offense whereas "Defendant Employment
Educator" willful failure to Mandatory
reporting or from 1992 - 2024 end of service
Offer plus "notable negligence" Cuny has
as Cuny erected "Antisexual Harassment
                              + He IX.

From incident Maltese 1992 / plus
"Student operative" Continuation
on + off Campus with revocation of
David Lavine.

   P.O. Maltese post ASA is Honorable
officer with 20 year record of
Successes.

   P.O. still expects the "Reputation
repair program and notice of claim
for sustaining ASA offense by Employer
Educator NYS

     ① Reputation repair program $7 million
     ② Compensatory damages of $11 million
     ③ Punitive damages of $65 million
against defendants NYS (Max Hues, Cuny
Employer legislature, Dan Frise + Richard
Schaffer) for "continued punitive integrity public
failure by
   denial of Elective officer nominations
2020, 2022, + 2024.
Regardless of "Elective officer nominee" of which
in Presidential Election Cycle 2024, not cure
of employer can be avoided.
   Schaffer has left 12th AD Vacant as of
    8/9/2024. Evidence supplied

5

Plaintiff seeks the maximum
punitive plus arrests of current
decision makers NYS + Political party
for failure of Yellow book rules
2020 - 2024 as of annual Lets of
"February 8

In Southern, in Court, february 8-
rendering order for Asa offense
Supplied. R.O right of pension + Notice
of Claim is "Priority 1"

lower Court NYS has avoided.

Please render

Regards
MaryAnn Mattes

Rule, Public Integrity Failure - NY At as of August 20, 2021 - failure to include Maltese. In Sexual Harassment offer in Diana Reyna by Commission on Ethics in 2013. Silent femunabur to cover up "Higher Sexual" offenses on Employees is highest Governor offense whereas "offer of end of Service plus tort remedy law 50" was avoided by Governor Cuomo, + NYAG, Post August 2021 - Governor Hochul failure to include P.O. Maltese's

**INJURIES:** rights in State Budgets 2021, 2022, 2023, 2024.

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

Public officer Pension + NYS hp + other deferred early distributions from 8/1/2013 - 9/11/2024 are unethical in nature to allow Employer Extended rights to continue, P.O. 94 violation. As of 1/26/2024 U.S. DOT awarded right of inclusion of Maltese in forcible Stipulation on Sexual Harassment credible Staffers of Executive chamber.

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

- Maylon Maltese seeks 33 year interband Abat Claim on ASAO offenses 1992 (theist + false) with "continued failure" by Defendants to issue Jd of Maltese + Masters degree earned as of June 3, 1993.

- As of January 1, 2021 - Maltese requests life expectancy tort @ age 79 to be awarded!

- Re rendering in 1:20 Cv 07311 (LAK) @ punitive damages of $65,000,000.00 as of 2/8/2024 is required as Legislature 2024 as of 2/8/2023 - in 09234-2022, Mackey interband unjustified 09234-2022, Mackey interband unjustified cancel.

Page 6

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

_9/11/2024_
Dated

_MaryAnn Maltese_
Plaintiff's Signature

_MaryAnn Maltese_
First Name          Middle Initial          Last Name

_9 Ringle Drive_
Street Address

_East Northport, NY 11731_
County, City          State          Zip Code

_631-644-5768_
Telephone Number

_MaryAnnMaltese1000@gmail.com_
Email Address (if available)

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☑ Yes    ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

NYSCEF DOC. NO. 67 · RECEIVED NYSCEF: 03/04/2024

IMG_9682.jpg



Carl Heastie; Speaker; Appointing Alan Hevesi's son Andrew on Committees that have direct oversight on my Public Officer Matter and again Based on 1/2/2024 USDOJ intervention on Executive Chamber; Andrew Hevesi enacts EXTENDER on Child abuse victim's rights with Legislature Failing to Prime my Bill

Pensions for Daniel and Andrew Hevesi at Crime Victims expense in Maryann Maltese. This is Certified Foil Request of Hevesi Family as Chair of Criminal Rights and Chair of Social Services and mandatory reporting-with failure of Prime.  Their Pensions calculated.

**Office of the State Comptroller**
**Bureau of State Payroll Services**
Andrew D. Hevesi - Payroll History as of 11/30/2023

| Effdt | Seq | Action | Reason Description | Agency | Title | Grade | Comprate Code | Comprate | Work% | EE Status |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | 600 | BIW | 0.00 | 100.00% | Active |
| 1/1/03 | 0 | HIR | APPOINT | NEW YORK STATE ASSEMBLY | CHF OF STAFF | 600 | BIW | 1,726.02 | 100.00% | Active |
| 1/1/03 | 1 | PAY | NEW EMPLOYEES SALARY | NEW YORK STATE ASSEMBLY | CHF OF STAFF | 600 | BIW | 2,046.51 | 100.00% | Active |
| 6/3/04 | 0 | PAY | SAL INCR | NEW YORK STATE ASSEMBLY | CHF OF STAFF | 600 | BIW | 2,046.51 | 100.00% | Terminated |
| 1/1/05 | 0 | TER | TERM | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 0.00 | 100.00% | Active |
| 5/11/05 | 0 | REH | ELECT LEG | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 79,500.00 | 100.00% | Active |
| 5/11/05 | 1 | PAY | REHIRE SALARY | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 79,500.00 | 100.00% | Leave of Absence |
| 12/3/13 | 0 | LOA | LEG 27TH STATUTORY PAUSE | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 79,500.00 | 100.00% | Active |
| 1/2/14 | 0 | RFL | REIN LEAVE | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 110,000.00 | 100.00% | Active |
| 12/27/18 | 0 | PAY | SAL INCR | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 110,000.00 | 100.00% | Active |
| 3/18/21 | 0 | DTA | 9.2 DATA CONVERSION | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 142,000.00 | 100.00% | Active |
| 12/22/22 | 0 | PAY | SAL INCR | ASSEMBLY MEMBERS | | | | 0.00 | 100.00% | Active |
| 6/25/11 | 0 | CCH | ELECT LEG | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Terminated |
| 6/25/11 | 1 | PAY | NEW EMPLOYEES SALARY | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Active |
| 6/25/11 | 2 | TER | TERM | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Active |
| 6/29/11 | 0 | REH | ELECT LEG | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Leave of Absence |
| 6/29/11 | 1 | PAY | REHIRE SALARY | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Leave of Absence |
| 12/20/12 | 0 | LOA | DCR LV OUT | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Active |
| 12/20/12 | 1 | RFL | REIN LEAVE | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Leave of Absence |
| 12/19/13 | 0 | LOA | LEG 27TH STATUTORY PAUSE | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Leave of Absence |
| 1/2/14 | 0 | RFL | REIN LEAVE | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Active |
| 1/1/15 | 0 | LOA | DCR LV OUT | ASSEMBLY MEMBERS EXPENSES | CH AS SOC SRV COM | 700 | LEG | 12,500.00 | 100.00% | Leave of Absence |
| 1/1/15 | 1 | REH | ELECT LEG | ASSEMBLY MEMBERS EXPENSES | CH AS SOC SRV COM | 700 | LEG | 12,500.00 | 100.00% | Active |
| 2/4/15 | 0 | POS | | ASSEMBLY MEMBERS EXPENSES | CH AS SOC SRV COM | 700 | LEG | 12,500.00 | 100.00% | Leave of Absence |
| 12/29/16 | 0 | LOA | DCR LV OUT | ASSEMBLY MEMBERS EXPENSES | CH AS SOC SRV COM | 700 | LEG | 12,500.00 | 100.00% | Leave of Absence |
| 12/29/16 | 1 | RFL | REIN LEAVE | ASSEMBLY MEMBERS EXPENSES | CH AS SOC SRV COM | 700 | LEG | 12,500.00 | 100.00% | Terminated |
| 12/27/18 | 0 | LOA | DCR LV OUT | ASSEMBLY MEMBERS EXPENSES | CH AS SOC SRV COM | | | | | |
| 12/27/18 | 1 | TER | TERM LV | | | | | | | |

**Office of the State Comptroller**
**Bureau of State Payroll Services**
Daniel R. Hevesi - Payroll History as of 11/30/2023

| Effdt | Seq | Action | Reason Description | Agency | Title | Grade | Comprate Code | Comprate | Work% | EE Status |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | 700 | LEG | 0.00 | 100.00% | Active |
| 12/24/98 | 0 | HIR | ELECT LEG | SENATE MEMBERS | MEMBER | 700 | LEG | 79,500.00 | 100.00% | Active |
| 12/24/98 | 3 | PAY | NEW EMPLOYEES SALARY | SENATE MEMBERS | MEMBER | 700 | LEG | 79,500.00 | 100.00% | Active |
| 4/1/99 | 0 | PAY | FACTOR ADJUSTMENT | SENATE MEMBERS | MEMBER | 700 | LEG | 79,500.00 | 100.00% | Leave of Absence |
| 12/19/02 | 0 | LOA | DCR LV OUT | SENATE MEMBERS | MEMBER | 700 | LEG | 79,500.00 | 100.00% | Terminated |
| 1/1/03 | 0 | TER | TERM | SENATE MEMBERS | | | | 0.00 | 100.00% | Active |
| | | | | | RN MIN MM SEN ELEC CM | 700 | FEE | 0.00 | 100.00% | Active |
| 3/4/99 | 0 | CCH | APPOINT | SENATE MEMBERS SPECIAL ALLOW. | RN MIN MM SEN ELEC CM | 700 | FEE | 0.00 | 100.00% | Terminated |
| 12/19/02 | 0 | DTA | CHANGE PAY GROUP | SENATE MEMBERS SPECIAL ALLOW. | RN MIN MM SEN ELEC CM | 700 | FEE | 0.00 | 100.00% | |
| 1/1/03 | 0 | TER | TERM | SENATE MEMBERS SPECIAL ALLOW. | | | | | | |

As noted, AD 3 in 09234-2022 dismissed my Index-but date of Alan Hevesi incarceration-Both sons are Hired by NYS Assembly and NYS Senate and PO Crim victim is not reinstated from 2015-2024 with Employer failure to Add in NYS Tier 4

25

employer contribution requirements to SAVE money and Keep a PO in Inactive post year 29, 2021. Where is the arrest warrant for Public Officer Elect brown and mattera failure to prime Pension bill language for Plaintiff? That is a Federal Requirement under Haley v. Pataki-federal Supp 1995.

This chart from NYAG is proof that Speaker NYS Assembly assigned Andrew Hevesi as of Chairs of Criminal procedures 11 Years (An UNFAIR advantage and Leverage) while Maryann Maltese is In Forcible Inactive for 10 years. Additionally, as of 2015; Post State Assembly Probe; Andrew Hevesi by Speaker as well-Hand Selected to Chair NYS Assembly Committee of Social Service on Matters of Child Abuse and Mandatory reporting. As of 2023 l September-Assemblyman Andrew Hevesi Has his Google Gmail as Point of Contract for Child Abuse Victims to engage in-a Complete breach of Confidentiality that NYAG reports of 2021

RJI'S of Supreme Court added; ASA to Forms as I filed in December 2022; and NYS Has a Personal Jurisdiction to review. Choosing not to review; is prejudicial towards Female Employee Victims with ASA Notice of Claim and compounded with my Right to Pension corrective earnings to be Judiciary decision making is Capricious and failure of the Supreme Court to protect a state Public Officer employee's Notice of Claim and my overall Constitutional right to Pension as of January 1, 2022. Employer NYS is negligent in formations; 1; Black Letter Law Pénsion and 2; Notice of Claim on Sexual Assault Violations as Intern-Employee of NYS Assembly. Male Elective members of State Legislature of 2020-2023; continuous denial of Prime Bill languages as formation of Discrimination and Denial of Affirmative Action's House Rules NYS Assembly; Violations of Sections 5, 6. 7. Intentional delay of Time Management waits in Haley and or Accumulation of 18 months Post Plaintiff Public Notice are per violation considered Grounds for Criminal Arrest of Elective Public Officers and or their Employees. Private Civilian conspirator's willful actions to assist public officers are as well Felony. In February orders, by Judge Mackay discusses hybrid determination findings for PO rights to her retroactive corrective and pension; but

Defendants failed to ensure timely issuances of Pension and Supreme Failed to acknowledge personal jurisdiction within Adult Survivor Law (ASA) extender rights to Notice of Claim for events from 1992. The NYAG failed to take the Orders of Mackey and have Assembly Ways and Means Prime Bill languages for PO Plaintiff.

*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: November 9, 2023                    CV-23-0360

---

In the Matter of MARYANN
    MALTESE,
                Appellant,

        v

NEW YORK STATE
    LEGISLATURE et al.,
                Respondents.

DECISION AND ORDER
ON MOTION

---

       Motion to vacate dismissal of appeal and for extension of time to perfect appeal.

       Upon the papers filed in support of the motion, and no papers having been filed in opposition thereto, it is

       ORDERED that the motion is denied, without costs.

Egan Jr., J.P., Aarons, Ceresia and McShan, JJ., concur.

                ENTER:

                Robert D. Mayberger
                Clerk of the Court

State of New York
Supreme Court, Appellate Division
Third Judicial Department

Decided and Entered: November 30, 2023                    CV-23-0438

_____

In the Matter of MARYANN
        MALTESE,
                            Appellant,                    DECISION AND ORDER
                                                             ON MOTION
        v

NYS JOINT COMMISSION ON
        PUBLIC ETHICS et al.,
                            Respondents.

_____

        Motion to vacate dismissal of appeal and for further relief.

        Upon the papers filed in support of the motion, and no papers having been filed in
opposition thereto, it is

        ORDERED that the motion is denied, without costs.


Egan Jr., J.P., Pritzker, Ceresia and McShan, JJ., concur.


                        ENTER:

                        Robert D. Mayberger
                        Clerk of the Court

New York State
## INCIDENT REPORT

| 1. Agency | 2. Div/Precinct | 3. ORI | 5. Case No. | 6. Incident No. |
|---|---|---|---|---|
| G4 TROOP G - ZONE 4 | G411 | NY1011000 | 21-044 | 10415203 |

| 7,8,9. Date Reported (Day, Date, Time) | 10,11,12. Occurred On/From (Day, Date, Time) | 13,14,15. Occurred To (Day, Date, Time) |
|---|---|---|
| FRIDAY 08/27/2021 20:24 | FRIDAY 08/27/2021 20:24 | |

| 16. Incident Type | 17. Business Name |
|---|---|
| SEX OFNS-SEX OFFENSES | |

**19. Incident Address (Street Name, Bldg. No., Apt. No.)**
1220 WASHINGTON AVE

**20. City/State/Zip**
ALBANY NEW YORK

| 21. Location Code (TSLED) | 23. No. of Victims | 24. No. of Suspects | 26. Victim also Complainant? |
|---|---|---|---|
| ALBANY CITY 0101 | 0 | 0 | |

**Location Type**
GOVERNMENT OFFICE

| 22.OFF. No. | LAW | SECTION | SUB | CL | CAT | DEG | ATT | NAME OF OFFENSE | CTS |
|---|---|---|---|---|---|---|---|---|---|
| 1. | PL | 130.52 | . | A | M | 0 | C | FORCIBLE TOUCHING | 1 |

## ASSOCIATED PERSONS

| 25. TYPE | Name (Last, First, Middle, Title) | DOB | Street Name Bldg., Apt.No., City, State, Zip | Res Phone Bus Phone |
|---|---|---|---|---|
| COMPLAINANT | MALTESE, MARYANN | 05/07/1970 | 19 RINGLER DRIVE E. NORTHPORT NY 11731 | (631)368-3125 |
| PERSON INTERVIEWED | ███████ | | ███████ | ███████ |
| PROSECUTOR | ███████ | | ███████ | ███████ |

## NARRATIVE

### TROOP G

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 08/27/2021 | 08/27/2021 | ███████ |

SEP 2 3 2021

BCI Admin Senior

**Narrative**

INITIAL

On the above time and date I was dispatched by SP Capital to Bldg 22 for a complaint. Upon arrival, I made contact with MARYANN MALTESE who alleged that in April of 1992, then Assemblyman ███████ had inappropriate contact with her. MALTESE stated that she was an intern at the time and ███████ also served as her college internship advisor. MALTESE alleges that ███████ called her in to his office to discuss whether she had plagiarized a paper she had written for college and then started kissing her on the lips and her neck and grabbed her buttocks. MALTESE stated that she pushed him away and expressed her disinterest in him. MALTESE further alleges that in early May of 1992, Assemblyman ███████ also attempted to kiss her and grab her buttocks in the area of 142 Washington Avenue C/Albany.
MALTESE further stated she has an active case going to reacquire her retirement benefits and pension through the state, I advised MALTESE that NYSP has no bearing or control of the civil matter in the courts.

I advised ███████ and was advised that ███████ would follow up with MALTESE on Monday morning.

PENDING

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 09/02/2021 | 09/02/2021 | ███████ |

**Narrative**

On August 30, 2021, ███████ adopted SP Capital Case # 21-044 - Forcible Touching.

**Background:** Maryann Maltese was a Legislative intern in 1992. She became a fulltime staff member with the Assembly in 1993. Ms. Maltese stated she became the Downstate Regional Manager

| | | |
|---|---|---|
| 03/14/2024 | 40 | EXHIBITS, volume 1 of 2, on behalf of Appellant Maryann Maltese, FILED. Service date 03/14/2024 by United States Mail. [Entered: 03/14/2024 04:08 PM] |
| 03/14/2024 | 41 | EXHIBITS, volume 2 of 2 on behalf of Appellant Maryann Maltese, FILED. Service date 03/14/2024 by United States Mail. [Entered: 03/14/2024 04:17 PM] |
| 04/08/2024 | 44 | EXHIBITS, State Defendants' affirmation in response to order to show cause, on behalf of Appellant Maryann Maltese, FILED. Service date 04/08/2024 by E-mail. [Entered: 04/19/2024 02:11 PM] |
| 04/17/2024 | 42 | SUPPLEMENTARY PAPERS TO MOTION, on behalf of Appellant Maryann Maltese, FILED. Service date 04/17/2024 by E-mail. [Entered: 04/19/2024 11:28 AM] |
| 04/19/2024 | 43 | PAPERS, Termination letter and PAR Forms, RECEIVED. [Entered: 04/19/2024 01:50 PM] |
| 04/26/2024 | 48 | SUPPLEMENTARY PAPERS TO MOTION, exhibits/evidence, on behalf of Appellant Maryann Maltese, FILED. Service date 04/26/2024 by E-mail. [Entered: 05/10/2024 09:10 AM] |
| 05/07/2024 | 49 | SUPPLEMENTARY PAPERS TO MOTION, exhibits/evidence, on behalf of Appellant Maryann Maltese, FILED. Service date 05/07/2024 by E-mail. [Entered: 05/10/2024 09:15 AM] |
| 05/09/2024 | 50 | SUPPLEMENTARY PAPERS TO MOTION, "evidence to show that NYS Troopers acknowledge the 1992 incident" on behalf of Appellant Maryann Maltese, FILED. Service date 05/09/2024 by E-mail. [Entered: 05/10/2024 09:35 AM] |
| 05/15/2024 | 55 | PAPERS, Judicial calendaring, RECEIVED. [Entered: 06/18/2024 01:33 PM] |
| 05/16/2024 | 51 | MOTION, to place appeal on the argument calendar for June, on behalf of Appellant Maryann Maltese, FILED. Service date 05/16/2024 by United States Mail. [Entered: 05/20/2024 04:04 PM] |
| 05/24/2024 | 52 | PAPERS, on behalf of Appellant, RECEIVED. [Entered: 05/24/2024 03:34 PM] |
| 06/18/2024 | 54 | PAPERS, Order from the New York State Supreme Court, dismissing appeal under index No. 624815/2023, RECEIVED. [Entered: 06/18/2024 01:30 PM] |
| 07/26/2024 | 56 | NEW CASE MANAGER, Atasha Joseph, ASSIGNED. [Entered: 07/26/2024 01:07 PM] |
| 07/26/2024 | 57 | MOTION ORDER, denying motions to provide additional evidence, to expand the record, to file exhibits, and to place the appeal on the calendar, at docket entries 34, 35, 39, 51, on behalf of Appellant Maryann Maltese, by WJN, MP, AJN, copy to pro se, FILED. [Entered: 07/26/2024 01:12 PM] |

*Docket as of 8/14/2024 12:29 PM*

CERTIFIED COPY
Catherine O'Hagan Wolfe, Clerk

by _Rashona Manz-Betta_
DEPUTY CLERK

_August 14_, 20_24_

and Chief of Staff for ████████████████  In 2013, she took an unpaid leave for one year. After that year, she was not reinstated. Ms. Maltese believes she is entitled to a pension or severance package. Recently filed civil paperwork.

On August 30, 2021, I contacted Maryann Maltese regarding SJS# 10415203. Maltese reports that in April of 1992, she was an intern in ████████ office. At that time ████ was an assemblyman. In sum and substance, Ms. Maltese states that while in his office, ████ inappropriately touched her by kissing her on lips and grabbing her butt. Ms. Maltese reported the incident to her intern supervisor ████████ Mr. ████ reportedly told Ms. Maltese that he would take care of it. Ms. Maltese believed that meant he would report the incident to the police. Ms. Maltese is not aware if ████ ever reported the incident to any police department.

Ms. Maltese also reported to me that in May of 1992 while at a bar/restaurant near her residence which was located at 143 Washington Ave. in the City of Albany, then Assemblyman ████████ attempted to kiss her on the lips and grab her butt.

Ms. Maltese has never reported these incidents to any police department until March of 2021, when she contacted Albany Police Department, ████████████. Ms. Maltese noted that she met with ████████████ twice in person and has exchanged emails. Ms. Maltese requested an incident verification number from ████████████ but never received one before he retired approximately three weeks ago. Ms. Maltese stated she was awaiting a call back from Albany Police Department, ████████████ regarding who would be replacing ████████████.

On August 30, 2021, I contacted ████████ at Albany Police Department who advised ████████████ has attempted to contact Ms. Maltese but her voicemail has been full.

On September 01, 2021, I contacted Albany County ADA ████████ (Special Victims Unit) regarding this case. We discussed the particulars of this case and it was determined that the statute of limitations has expired. ADA ████ stated she would contact the complainant of this case and advise her of the same.

On September 01, 2021, I contact Ms. Maltese and advised her that I would be closing the case due to the statute of limitations expiring. Ms. Maltese felt that I should continue the investigation to assist her in her civil suit. I advised her that it was not my responsibility to assist her in the civil suit and that this case would be closed.

On September 02, 202, SP Capital BCI Case# 21-044 Forcible Touching is closed by investigation. Investigation revealed that the statute of limitations in this case expired. It also revealed that Ms. Maltese reported these incidents to Albany Police Department and the Department of Human Rights before reporting to the New York State Police.

SP Capital Case# 21-044 - CBI/Final

No evidence

## ADMINISTRATIVE

| 74. Inquiries | 75. NYSPIN Message No. | | 76. Complainant Signature | | |
|---|---|---|---|---|---|
| 77. Reporting Officer Signature (Include Rank) ██████████████ | | 78. ID No. ████ | 79. Supervisor Signature (Include Rank) ██████████████ | | 80. ID No. ████ |
| 81. Status CLOSED BY INVESTIGATION | 82. Status Date 09/02/2021 | | 83. Notified/TOT ████ | | Solvability Total   0 |





# PUBLIC DOCKET FOR

# United States Court of Appeals for the Second Circuit

Court of Appeals Docket #: 23-7826

Case Name: Maltese v. NYS Legislature

Nature of Suit: 3890 STATUTES-Other

Appeal From: EDNY (BROOKLYN)

Fee Status: Paid

Docketed: 11/21/2023

Status: Determined

---

Case Type Information

1. Civil

2. Private

3.

---

Originating Court Information

District: EDNY (BROOKLYN): 1:23-cv-4359

Trial Judge: Rachel P. Kovner, District Judge

Magistrate Judge: Lois B. Bloom, Magistrate Judge

Date Filed: 06/13/2023

| Date Order/Judgment | Date Order/Judgment EOD | Date NOA Filed | Date Rec'd COA |
|---|---|---|---|
| 11/06/2023 | 11/06/2023 | 11/17/2023 | 11/20/2023 |

---

Associated Cases

---

Party and Attorney Listing

MARYANN MALTESE
Plaintiff - Appellant

Maryann Maltese
[Pro Se]
19 Ringler Drive
East Northport, NY 11731

NEW YORK STATE LEGISLATURE, Carl Heastie,
Speaker Representative

New York State Legislature
[Pro Se]

E.D.N.Y. – Bklyn
23-cv-4359
Kovner, J.

# United States Court of Appeals
FOR THE
SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of July, two thousand twenty-four.

Present:

William J. Nardini,
Myrna Pérez,
Alison J. Nathan,
    *Circuit Judges.*

---

Maryann Maltese,

*Plaintiff-Appellant,*

v.                                                                                    23-7826

New York State Legislature, Carl Heastie, Speaker Representative, et al.,

*Defendants-Appellees.*

---

Appellant, pro se, moves to provide additional evidence, to expand the record, to file exhibits, and to place the appeal on the calendar. Upon due consideration, it is hereby ORDERED that the motions to provide additional evidence, to expand the record, and to file exhibits are DENIED. *See IBM Corp. v. Edelstein*, 526 F.2d 37, 45 (2d Cir. 1975); *Loria v. Gorman*, 306 F.3d 1271, 1280 n.2 (2d Cir. 2002). It is further ORDERED that the motion to place the appeal on the calendar is DENIED and the appeal is DISMISSED because it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see Pillay v. INS*, 45 F.3d 14, 17 (2d Cir. 1995) (per curiam) (holding that this Court has "inherent authority" to dismiss a frivolous appeal).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



# PUBLIC DOCKET FOR

## United States Court of Appeals for the Second Circuit

Court of Appeals Docket #: 23-7826

Case Name: Maltese v. NYS Legislature

Nature of Suit: 3890 STATUTES-Other

Appeal From: EDNY (BROOKLYN)

Fee Status: Paid

Docketed: 11/21/2023

Status: Determined

---

**Case Type Information**

1. Civil
2. Private
3.

---

**Originating Court Information**

District: EDNY (BROOKLYN): 1:23-cv-4359

Trial Judge: Rachel P. Kovner, District Judge

Magistrate Judge: Lois B. Bloom, Magistrate Judge

Date Filed: 06/13/2023

| Date Order/Judgment | Date Order/Judgment EOD | Date NOA Filed | Date Rec'd COA |
|---|---|---|---|
| 11/06/2023 | 11/06/2023 | 11/17/2023 | 11/20/2023 |

---

**Associated Cases**

---

**Party and Attorney Listing**

MARYANN MALTESE
Plaintiff - Appellant

Maryann Maltese
[Pro Se]
19 Ringler Drive
East Northport, NY 11731

NEW YORK STATE LEGISLATURE, Carl Heastie,
Speaker Representative

New York State Legislature
[Pro Se]

| 03/14/2024 | 40 | EXHIBITS, volume 1 of 2, on behalf of Appellant Maryann Maltese, FILED. Service date 03/14/2024 by United States Mail. [Entered: 03/14/2024 04:08 PM] |
| 03/14/2024 | 41 | EXHIBITS, volume 2 of 2 on behalf of Appellant Maryann Maltese, FILED. Service date 03/14/2024 by United States Mail. [Entered: 03/14/2024 04:17 PM] |
| 04/08/2024 | 44 | EXHIBITS, State Defendants' affirmation in response to order to show cause, on behalf of Appellant Maryann Maltese, FILED. Service date 04/08/2024 by E-mail. [Entered: 04/19/2024 02:11 PM] |
| 04/17/2024 | 42 | SUPPLEMENTARY PAPERS TO MOTION, on behalf of Appellant Maryann Maltese, FILED. Service date 04/17/2024 by E-mail. [Entered: 04/19/2024 11:28 AM] |
| 04/19/2024 | 43 | PAPERS, Termination letter and PAR Forms, RECEIVED. [Entered: 04/19/2024 01:50 PM] |
| 04/26/2024 | 48 | SUPPLEMENTARY PAPERS TO MOTION, exhibits/evidence, on behalf of Appellant Maryann Maltese, FILED. Service date 04/26/2024 by E-mail. [Entered: 05/10/2024 09:10 AM] |
| 05/07/2024 | 49 | SUPPLEMENTARY PAPERS TO MOTION, exhibits/evidence, on behalf of Appellant Maryann Maltese, FILED. Service date 05/07/2024 by E-mail. [Entered: 05/10/2024 09:15 AM] |
| 05/09/2024 | 50 | SUPPLEMENTARY PAPERS TO MOTION, "evidence to show that NYS Troopers acknowledge the 1992 incident" on behalf of Appellant Maryann Maltese, FILED. Service date 05/09/2024 by E-mail. [Entered: 05/10/2024 09:35 AM] |
| 05/15/2024 | 55 | PAPERS, Judicial calendaring, RECEIVED. [Entered: 06/18/2024 01:33 PM] |
| 05/16/2024 | 51 | MOTION, to place appeal on the argument calendar for June, on behalf of Appellant Maryann Maltese, FILED. Service date 05/16/2024 by United States Mail. [Entered: 05/20/2024 04:04 PM] |
| 05/24/2024 | 52 | PAPERS, on behalf of Appellant, RECEIVED. [Entered: 05/24/2024 03:34 PM] |
| 06/18/2024 | 54 | PAPERS, Order from the New York State Supreme Court, dismissing appeal under index No. 624815/2023, RECEIVED. [Entered: 06/18/2024 01:30 PM] |
| 07/26/2024 | 56 | NEW CASE MANAGER, Atasha Joseph, ASSIGNED. [Entered: 07/26/2024 01:07 PM] |
| 07/26/2024 | 57 | MOTION ORDER, denying motions to provide additional evidence, to expand the record, to file exhibits, and to place the appeal on the calendar, at docket entries 34, 35, 39, 51, on behalf of Appellant Maryann Maltese, by WJN, MP, AJN, copy to pro se, FILED. [Entered: 07/26/2024 01:12 PM] |

*Docket as of 8/14/2024 12:29 PM*

CERTIFIED COPY
Catherine O'Hagan Wolfe, Clerk

by _Rashawn MannBattle_
DEPUTY CLERK

_August 14_, 20_24_

New York State

**INCIDENT REPORT**

| 1. Agency | 2. Div/Precinct | 3. ORI | 5. Case No. | 6. Incident No. |
|---|---|---|---|---|
| G4 TROOP G - ZONE 4 | G411 | NY1011000 | 21-044 | 10415203 |

| 7,8,9. Date Reported (Day, Date, Time) | 10,11,12. Occurred On/From (Day, Date, Time) | 13,14,15. Occurred To (Day, Date, Time) |
|---|---|---|
| FRIDAY 08/27/2021 20:24 | FRIDAY 08/27/2021 20:24 | |

| 16. Incident Type | 17. Business Name |
|---|---|
| SEX OFNS-SEX OFFENSES | |

19. Incident Address (Street Name, Bldg. No., Apt. No.)
1220 WASHINGTON AVE

20. City/State/Zip
ALBANY NEW YORK

| 21. Location Code (TSLED) | 23. No. of Victims | 24. No. of Suspects | 26. Victim also Complainant? |
|---|---|---|---|
| ALBANY CITY 0101 | 0 | 0 | |

Location Type
GOVERNMENT OFFICE

| 22.OFF. No. | LAW | SECTION | SUB | CL | CAT | DEG | ATT | NAME OF OFFENSE | CTS |
|---|---|---|---|---|---|---|---|---|---|
| 1. | PL | 130.52 | | A | M | 0 | C | FORCIBLE TOUCHING | 1 |

## ASSOCIATED PERSONS

| 25. TYPE | Name (Last, First, Middle, Title) | DOB | Street Name Bldg., Apt.No., City, State, Zip | Res Phone Bus Phone |
|---|---|---|---|---|
| COMPLAINANT | MALTESE, MARYANN | 05/07/1970 | 19 RINGLER DRIVE E. NORTHPORT NY 11731 | (631)368-3125 |
| PERSON INTERVIEWED | | | | |
| PROSECUTOR | | | | |

## NARRATIVE

TROOP G

SEP 2 3 2021

BCI Admin Senior

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 08/27/2021 | 08/27/2021 | |

Narrative
INITIAL

On the above time and date I was dispatched by SP Capital to Bldg 22 for a complaint. Upon arrival, I made contact with MARYANN MALTESE who alleged that in April of 1992, then Assemblyman ⬛⬛⬛ had inappropriate contact with her. MALTESE stated that she was an intern at the time and ⬛⬛ also served as her college internship advisor. MALTESE alleges that ⬛⬛ called her in to his office to discuss whether she had plagiarized a paper she had written for college and then started kissing her on the lips and her neck and grabbed her buttocks. MALTESE stated that she pushed him away and expressed her disinterest in him. MALTESE further alleges that in early May of 1992, Assemblyman ⬛⬛⬛ also attempted to kiss her and grab her buttocks in the area of 142 Washington Avenue C/Albany.
MALTESE further stated she has an active case going to reacquire her retirement benefits and pension through the state, I advised MALTESE that NYSP has no bearing or control of the civil matter in the courts.

I advised ⬛⬛⬛ and was advised that ⬛⬛⬛ would follow up with MALTESE on Monday morning.

PENDING

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 09/02/2021 | 09/02/2021 | |

Narrative
On August 30, 2021, ⬛⬛⬛ adopted SP Capital Case # 21-044 - Forcible Touching.

Background: Maryann Maltese was a Legislative intern in 1992. ⬛⬛⬛ became a fulltime staff member with the Assembly in 1993. Ms. Maltese stated she became the Downstate Regional Manager

9/2/2021                    9:28:05

and Chief of Staff for [REDACTED]              In 2013, she took an unpaid leave for one year. After that year, she was not reinstated. Ms. Maltase believes she is entitled to a pension or severance package. Recently filed civil paperwork.

On August 30, 2021, I contacted Maryann Maltese regarding SJS# 10415203. Maltese reports that in April of 1992, she was an intern in [REDACTED] office. At that time [REDACTED] was an assemblyman. In sum and substance, Ms. Maltese states that while in his office, [REDACTED] inappropriately touched her by kissing her on lips and grabbing her butt. Ms. Maltese reported the incident to her intern supervisor [REDACTED] Mr. [REDACTED] reportedly told Ms. Maltese that he would take care of it. Ms. Maltese believed that meant he would report the incident to the police. Ms. Maltese is not aware if [REDACTED] ever reported the incident to any police department.

Ms. Maltese also reported to me that in May of 1992 while at a bar/restaurant near her residence which was located at 143 Washington Ave. in the City of Albany, then Assemblyman [REDACTED] attempted to kiss her on the lips and grab her butt.

Ms. Maltese has never reported these incidents to any police department until March of 2021, when she contacted Albany Police Department, [REDACTED]. Ms. Maltese noted that she met with [REDACTED] twice in person and has exchanged emails. Ms. Maltese requested an incident verification number from [REDACTED] but never received one before he retired approximately three weeks ago. Ms. Maltese stated she was awaiting a call back from Albany Police Department, [REDACTED] regarding who would be replacing [REDACTED].

On August 30, 2021, I contacted [REDACTED] at Albany Police Department who advised [REDACTED] has attempted to contact Ms. Maltese but her voicemail has been full.

On September 01, 2021, I contacted Albany County ADA [REDACTED] (Special Victims Unit) regarding this case. We discussed the particulars of this case and it was determined that the statute of limitations has expired. ADA [REDACTED] stated she would contact the complainant of this case and advise her of the same.

On September 01, 2021, I contact Ms. Maltase and advised her that I would be closing the case due to the statute of limitations expiring. Ms. Maltase felt that I should continue the investigation to assist her in her civil suit. I advised her that it was not my responsibility to assist her in the civil suit and that this case would be closed.

On September 02, 202, SP Capital BCI Case# 21-044 Forcible Touching is closed by investigation. Investigation revealed that the statute of limitations in this case expired. It also revealed that Ms. Maltese reported these incidents to Albany Police Department and the Department of Human Rights before reporting to the New York State Police.

SP Capital Case# 21-044 - CBI/Final

No evidence

## ADMINISTRATIVE

| 74. Inquiries | 75. NYSPIN Message No. | | 76. Complainant Signature | | |
|---|---|---|---|---|---|
| 77. Reporting Officer Signature (Include Rank) | | 78. ID No. | 79. Supervisor Signature (Include Rank) | | 80. ID No. |
| 81. Status CLOSED BY INVESTIGATION | 82. Status Date 09/02/2021 | | 83. Notified/TOT | | |
| | | | | Solvability Total | 0 |

9/2/2021        9:28:05

## TABLE OF CONTENTS

Opinions Below......................................................................................2

Jurisdiction...............................................................................3

Constitutional and Statutes and Provisions Involved..........................4

Statement of the Case.............................................................. .........4.

Reasons for Granting the Writ...............................................................5

Summary of the Argument.....................................................................20

Conclusion............................................................................... ...........27

Certificate of Compliance..................................................... . ......28

Certificate of Service..........................................................................29

2

## TABLE OF AUTHORITIES

CASES;

E. Jean Carroll v. Donald Trump, No. 20-3977 92d Cir. 2023)..........................

E. Jean Carroll v. Donald Trump, No. 1:22-cv-10016(November 24, 2022)...........

E. Jean Carroll v. Donald Trump  No. 1:20 -cv-07311 February 8, 2024. Document 285

United States Department of Justice v. NYS Executive Chamber Stipulation Agreement on Andrew Cuomo NYS AD Sexual Harassment Victims August 2021 Report  1/26/2024


Haley v. Pataki 1995, ....................................................................................

In the Matter of Vito Lopez JCOPE-127 ......................................................

In the Matter of Alan Hevesi; ASA violation and violations in N.Y. EXECUTIVE LAW

§ 63(15) ; 2006.........................................................................................

Matter of Ross v. Wilson, 308 N.Y. 605, 612 (1955).....................................

Title VII of the Civil Rights Act of 1964 ("Title VII") "outlaw[s] discrimination in the workplace on the basis of . . . sex."[1] In 1986, the United States Supreme Court recognized that

Title VII's prohibition on sex discrimination prohibits gender-based harassment in the workplace. Like federal law, the New York State Human Rights Law (the "NYSHRL"),forbids workplace harassment.

Statutes

28 USC § 1869(i) Public Officer Rule......................................................

General Municipal Law Section 50..........................................................

Adult Survivors Law Chapter 2022...........................................................

Penal Code Violations 130 Sexual Assault..................................................

Public Officer Rules 73...........................................................................

Public Officer Rules 74...........................................................................

Public Officer Rules 107...........................................................................

NYS Assembly Articles 5, 6, 7

House Rules of NYS-NYS Constitution. Speaker Rules

3

§ 5.Sexual Harassment Policy.................................................................................

§ 6. Affirmative Action Policy...............................................................................

§ 7. Non-Fraternization Policy 1992-1994 (Maltese).....................................

    Notice of Claim failure 1992-2013

§8.  Yellow Book NYS Rules of Employer requirement of February 8 annually........

9.  Mandatory Reporting, Failure by Executive; Governor NYS.............................

10. NYS Legislature Extender; Child Abuse Training 2026, January 26...............

11 Executive Privilege 94 Violation' 1992-2024.................................................

12 Failure of Employer-Educator to Maintain Employee Victimization.....................

13  Failure of Notice of Claim Section 50 1992; Penal Code 130..................................

14 ASA Law Failure to Apply Remedy May25,2022.................................................

15 Redaction Law-Failure to Protect my Rights in Haley; Extender Employer Right....

    Avoidances 33 years5.  Sexual Harassment Policy..........................................

16 Jean Carrol V. Trump Supp No 1:20 cv 07311 February 8, 2024-(Maltese Road Map)

    Rendering is required from $83 million-Plus Defamation 33 years  Public Officer

    Notice of Tort Claim required.................................................................

17 Civilian Tort is never higher in consideration than an Officer of Federal and State

    Constitution...........................................................................................

18. Jean Carrol v. Trump Supp. No 1:20 07311 (Southern)  Document 285

    (Maryann Maltese v. Legislature, CUNY et al 1:23 CV 04359) Eastern-denial of
Hearing, USC 28,

4

In the
Supreme Court of the United States
Petition for Writ of Certiorari .

The Petitioner Maryann Maltese respectfully asks that a writ of certiorari issue to
review the Judgement Below in 23-7826; of July 26, 2024; in the US Court of Appeals
for the Second Circuit , Maryann Maltese (Plaintiff vs. New York State Legislature,
Carl Heastie, Speaker Representative , CUNY, et Al, Defendants. To overturn the
US Appeals Decision of July 26, 2024. Judge Nardini, Myrna Perez and Alison
Nathan, Circuit Judges dismissed Public officer Complaint as Frivolous. Plaintiff is
without State pension and without Negligence Claim. PO post incident of ASA which
was never Reported by employer in 1992; Failure of Executive Mandatory reporting
occurred (Mario Cuomo-Nepotism) allowing Reentrance into Service 1994; delays by
the Employer-Educator Defendant 33 years. As our Oath; we're silenced in our own
Victimizations and the Promise is to Add; All,
Accommodations, Hold the Line Earnings, Plus Negligence by Employer or civilian
at end of Service. July 31, 2013; Silent termination Unethical wen vested tenured
Plaintiff Public officer believed she was approved by Andrew Cuomo for Unpaid
Leave in year 20 in Service. Confidentiality of Negligence such as Employer-
Educator Rape, penal Code 130 matters, Sexual harassment in Failure of new
Public policy Makers from State legislature 2021-2024; at longer than 18months is a
Well; Classified Public Integrity crime carrying Ethics Penal Punitive Notice of Tort
on Employer Educator. This avoidance occurred; by Governor Andrew Cuomo, in
2013 at end of Service failure Plus; while Mr. Cuomo was NY Attorney General over
Defendants Penal Code 130 Violators; Alan Hevesi plus Daniel Frisa. Plaintiff
sought her Service Pension before age 55; as of Right, based on NYSLRS Tier 4 date
of Entrance 1992; whereas as of March 9, 2021; Plotted Police arrest orchestrated by
Assemblyman Keith Brown, 12th Ad and Senator Frank Mattera, 2nd SD failed to
Issue Prime Bill language-Officer right like men before me holding State and
Federal Constitution as Priority 1. This failure as Intentional NYS Sessions
20212024 is Punitive with rate of Tort at maximum consideration of US Appeals 2n
Circuit 23-7826 stated; was Frivolous.

Questions for the Court to Answer
1) Why is to Applicable; the Adult Survivor law ASA of NYS Extender of May
2022?

ASA provides Public Officer victims of NYS Senate and NYS Assembly Extender
rights in Notice of Claim. In 616328-2021; Keith Brown failed intentionally on
Public Officer As is rights to Prime Bill language based on Service record; Post ASA
Employer-Employee Offense  In 1992- Defendants were Both; Employer and
Educator as Petitioner was on Dual Payroll.  That Prime Bill language was required

5

entitled to. Alan Hevesi as of Plea bargain crafted by Andrew Cuomo; received $10,000 a Month as of 2 Felony Incarcerations without Consideration of Crimes of Alan Hevesi against Maryann Maltese in 1992. Dap Frisa Co-hort receipt of State pension $789 a month since 2009; while Plaintiff reinstatement for her Good Service and is without State pension since 2013-2024.

Beyond ASA-Corrective earnings for the 19 contracts Post incidents of ASA is required as well. Complaint was filed in 23-7826 US Appeals of which was Dismissed unethical and reconsideration with an Judgement of tort is asked. Plaintiff is Public offcer victim while intern who was on two Payrolls; Legislature (Employer) and Cuny Queens College (Educator) in 1992. 2 Male Elective offcer agents attacked me forcibly as Conspiracy mission; April 1992, Alan Hevesi forcibly and May 1992, Dan Frisa 1992 forcibly. Maltese submitted notice of claim for Negligence's 33 years Prior with Life expectancy for Plaintiff as noted.

Post incident; Plaintiff Maryann Maltese is not disabled but the Employer but dedicated my Service to Crime Victim rights and Enforcement of Probationary for Incarcerated upon release. I believe in Death Penalty for Those willful actions; top 6 felonies in NYS against Women and Disabled. Knowingly targeting these groups and the Extender failures of mandatory training or Unethical time Period for Crime Victims' rights has been on the back Burner of NYS legislature since 2013. Crime Victim rights of Sexual Assault by Employer-educator is Primary but bTYS for 33 years; Legislature and CUNY have failed intentionally-and Plaintiff submits the Claim for Maximum tort issuance as year 29, (2021) Meant Maltese gets her Property, Pension and Notice of Claim. NYS Defendants wants Victims to able to rebuild their lives; I have and then; Employer Educator retaliation since 2021. This too is allowable consideration. Avoidance, Retaliation, Failure by New-is within this notice and requested by this writ to enforce on Defendants.

Judiciary NYS and Employer-together avoided my' Notice of Claim and created additional Sexual Harassment Employer matters by failure to grant Annual, Accrual and Promotional earnings from 1994-2022. Evidence provided on personnel forms of other Chief of Staffs to support that Post ASA, Failure of Mandatory reporting by Employer, and Failure to remedy while in Service; Employer has failed in Institutional Entirety. Governor of NYS enacted ASA to offer extender statutory rights for 1 year to file of which in Inactive status; and Clearly not included in US DOJ's investigation against Former Governor Andrew Cuomo is means for Defendant terminations and this Court to review Procedural processes of Defendants; failure as the New Employer, New Legislatures of 2021, 2022, 2023 and 2024. Leverage of the Employer was in 2021, 2022, 2023, and 2024 of which NYS Defendant granted themselves Extender rights to Avoid and Accountability left Unattended to for 33 years. Plaintiff Public Officer seeks Maximum Institutional Tort inclusive of consideration in Matter of Jean Carrol v. Donald

7

between 2020-2021; Participated with CUNY Defendant; Jen Jarvis, in August 2021, with the understanding that CUNY Defendant would Craft
Offer of Settlement to no Avail. The Defendants at large have willfully misled a Crime Victim by THEIR hands and then eliminated me of my own Notice of Claim. That is considered Institutional re-rape of Plaintiff.. Plaintiff expects for Notice of Claim tort at 33 years by Defendants et all, 213, Legislators, an Executive 2 of which were on Notice date of Filing; Andrew Cuomo and then Kathy Hocus-non accountability of the Executive Chamber for Adult Penal Code violation higher than Sexual Harassment is concurrent since 1992, CUNY provides the Mental health professional reviews for Title X but Failure to Grant the Crime Victims-notice of Claim, for 33 years while as a Student; I worked alongside President and Dean of the College to apprehend 2 other students; Evan Stavisky and David Lavine; who were Cohorts of Professor-Employer Alan Hevesi who continued to harass me post May 1992-June 3, 1993 where CUNY defendant had the BALLS; to issue bachelors of Political Science vs a 5-year Masters; at 142 Credits achieved; 21 Agency Practical Post ASA offense. June 3, 2023; Hevesi issued me a Degree as BA. No one from the College stated Hevesi would be the master of Ceremonies. Employer Educator viptimized me post assistance and then eliminate me of Fellowship CUNY law degree unethically. Plaintiff Expects the Full value of the Fellowship plus Lifelong Loss of Earnings at 33 years, rendering notice of claim Similar in Carroll, No. 1:20 -cv-07311 February 8, 2024.


The United State Department of Justice 6 months earlier on January 26, 2024; forced Executive Chamber to Stipulation Order Settlement for Governor Andrew Cuomo ;credible" Public Officer victims New York State Attorney General published August 3 2021; "Report of Investigation into Allegations of Sexual Harassment by Governor Andrew Cuomo. with the exclusion of Maryann Maltese within Secondary , consideration of review as Adult Survivor Victim of 1992; This failure allowed the Defendants additional extender time to avoid my rights to end of Service and Notice of Claim filed at Eastern District Court 1:23 Cv. 04539, Lower Court Albany Supreme; 09234-22, filed on December 9, 2022. each Court; State and Federal Denied Pubic Offcer Hearing on USC 78, Article 78 and my Notice of Claim. State Pension was not administered as well required Post Incidents of which Mandatory reporting failures occurred. Rendering in Carroll is expected at Minimum.


OPINIONS BELOW


The US Court of Appeals denied a Public Officer employee Plaintiff the right to a hearing or Mediation within RJI which in NYS is Public Officer right and each and every court due to my Gender has failed to Grant me Review. In Eastern; Judge Rachel Koviner denied Plaintiff PO in 1:23 cv 4359, Maryann Maltese v, NYS

State Statutory Laws; House Rules of NYS Assembly; 5-7, Speaker House rules 5, 6, 7 5 Sexual Harassment, 6 Affirmative Action and 7 Non-Fraternization policy Plus Yellow Book of 2020, 2021, 2023, 2024 Defendant Employer Schedule Obligations of State Budget Compliances for Employees which Stresses; Employee PO Plaintiff rights are Priority 1 every Budget year. Plaintiff has 20 years of Service 1992-2024 failure to Prime Bill language to ensure Fiscal note NYS Comptroller forensic Computation is issued and within Index' 09234-2022; Notice of Claim for ASA tort Albany Supreme Denied Article 78 Hearing or RJI review. Employer doesn't have Executive Privilege in year 29 of Service which was January 1, 2021; Prime Bill language with Fiscal Note Computation is required. Notice of claim on Employer negligence is considered separate and private. As of January 1, 2021; Employer agent are in the NYS Assembly Keith Brown and in the NYS Senate; Mario Mattera. Public Officer Rules NYS PO 73, 74, 107 define Member Ethics and their rule to Prime Bill language no later than 18 months Post Public Notice by Employee of same Agency. Failure of 18 months is punitive consideration, punishable by Arrest and incarceration with elimination of any and all Professional Licensures. Again-Pension by NYS Comptroller the Holder of State Retirement System; failure to issue State pension Check no Later than January 1, 2022. Public Officer Rules of NYS demand that Defendants et al-compliances and Brown and mattera are intentionally failing. This is not Political Party employment.


STATEMENT OF THE CASE

Plaintiff is the Crime Victim in 1992, ASA which was Never Mandatory reported by Employer and in 09234-2022 Maltese v. Legislature, Albany Supreme-denied Hearing. Plaintiff filed earlier in year 29, her Pension rights as PO; in 6163282021, Suffolk Supreme; Dismissed rendering on March 30, 2022, Pension was 120 days late with no Corrective earnings fiscal note Prime Bill as required for Exisitng Service. Two State Supremes on PO rights; As is and as ASA and No rendering on Fiscal computation for Service or ASA negligence is Institutional rerape unjustified and felony. Two Appellants; AD 3; 09234-2022; Albany failure of Hearing indexed Dismissed November 9, 2023. AD 2, 616328-2021, on September 11, 2023; Dismissed Public officer Article 78 matter; allowing Employer Agent Keith Brown to Exert an executive Employer Privildge he doesn't Possess Constitutionally against me; a Plaintiff Same Employer as himself Tenured Vested. Federal Courts; US Appeals 23-7826-Failure to Grant a hearing on ASA from Eastern District 2md, rendering by Koviner-No Hearing 1;23 cv 0459. The Federal question is is why is Judiciary and Legislature Employer failing to review my Matters as Public Offcer? Laziness and Non-Accountability within 18 month Life span of Court Index or Docket and allowable Extenders in Pension failure of which required as of 1/1/2022.

11

institutional employer violation within renderings as Employee Public Officer Legislature and Judiciary are under the same oath and Cleary Defendants in their Entirety maintain records of Plaintiff Offcer ASA victimization on top of my 20 Year Career POST incident. US Department of Justice, on January 26, 2024 Forcible rendering against Governor Executive Chamber for Executive Sexual harassment victims of which Plaintiff PO within CUNY and Employer as of 2020; Assisted NYS with Interviewing again to Create CUNY TITLE IX Public Policy something Brown, Keith never has done in 4 years as Elective officer; assisted a Fellow employee with Prime Bill language. Prime Bill language is required in NYS Yellow Book Rules before February 8, of every legislative Session and Brown, Keith has been that 12th AD Public Policy Maker since 2021.

The Federal Question why has Employer with all resources failed in Accountability Institution NYS 33 years?

I'm entitled. Defendants NYS have been Holding my Honorable Pension as of January 1, 2022; Punitive-when does the District Attorney Serve the Writ of Arrest on Defendants failure as gateway to Public Officers rights found in Haley V. Pataki; 1995; Federal Supp-Contractual clause of the Nation for all Public Officer Pension and Retroactive earnings rights as well found in James Corrigan v. FDNY, Fed Supp as well Creation of Economic Formula; Retroactive Corrective. Oliver Koppel, NYAG in 1995 ensuring at will employees have contractual clause rights-it is too 30 years Old in 2025, just a Point of Information.

   Cuomo was the NYAG who offered Plea bargain to Alan Hevesi allowing for Hevesi as of 2001 and Frisa to receive a State Pension as of 2009, Clearly the Employer defendant could have made Effort to Stipulate terms with me as Maryann Maltese in Service; Chief of Staff and Regional Manager Downstate. I'm not a Child victim but Employer for 33 years is Playing with Rights of Children victims to Distort the Matter; an officer was sexually attacked by 2 employer predators within 2 weeks span and failed to accept "NO" as the Answer and Other 211 Members willfully failed in Remedy since 1992. Hevesi is in receipt of $10,000 Pension for 20 years, Frisa a State Pension at $779 a month. Plaintiff is without Pension, without Law Degree, without Offer and that is a Felony A since 1992. Mandatory reporting was required in 1992-Child or Adult-these Legislators failed. In 2021, 2022. 2022, 2023, 2024 Legislatures Extended and Ignored; institutional failure no Accountability and No Pension. Federal Judiciary acting Hands off it's up to US Supreme Court to determine my Faith.

Alan Hevesi-is as well 2 Time Felon Legislator for 29 years where NYAG Andrew Cuomo willfully allowed Hevesi to walk without INCLUSION of Crime Number 3. No Current Legislator wants to Prime Crime Victim Rules NYS? But I'm to wait as non-Elective officer? In my Active; the First Sexual Predator registry was created this is my Strongest Legacy and in my Own time of end of Service-Employer is JOKING about something so vitally painful leaving me penniless in $74,000

13

Maltese are mutual and failure to Prime by Employer is considered; Ethics Felony to lose Outside licensure.

Level of Offense in 1992


Alan Hevesi; Employer-Educator-Public Masturbation Defendant 1 on Plaintiff Threats of Expulsion
   Forcible touching and Sexual Verbal communications with Staking at Intern Residence-Defendant 2, 142 Washington Avenue, Albany and back at Home.


   Co-hort Plot of Hevesi, David Lavine and Evan Stravinsky at CUNY-CO Hort Expulsion


   CUNY failure to Grant Plaintiff as PO; Remedy In 1992
   NYS Legislature Failure to Grant Plaintiff PO remedy in 1992


Why was CUNY defendant Permitted reason to eliminate Plaintiff's Master's and entrance into Sister property; CUNY Law School?


2020-2024 CUNY Interviewing Plaintiff to Create Title IX Anti-Sexual Harassment Policies as Pro-Active and NO Offer of Remedy


2021 -Brown and Mattera Failure to Prime Bill language for Employee 20 year Service record Post ASA as of March 9, 2021, some 60 days Post contact with NYS Assemblyman Brown as of January 5, 2021. Office of 12th AD was vacant from June 24, 2019-December 31, 2020; 18-month Violation-of Employer Defendants failure et al; failure to Prime, Executive Chamber violation 94.


As of August 2021, NYAG considerations of Andrew Cuomo Victims, Findings in Page 142, Sexual Harassment Report that those employee victims are Credible while Failure of Defendants to Open a FILE or Mandatory inclusion in year 29 for Plaintiff in end of Service Offer. Evidence included in All Court Filings.


State Judiciary Albany 09234-2022; rendering of February 8, 2023-Failure of NYAG to GATHER the order to Grant Plaintiff Pension relief- 18 months Post that is Employer Sexual Harassment offenses as is, Plaintiff ensured Service by Hiring Albany County Sheriff to Serve Order as well of which Pension Adjusted earnings failure by employer Agents; 213 of them from 2023-2024.

Ethics 3200 Albany Supreme continued to advise Plaintiff to FOIL as Did Keith Brown for employee records as the Means to an End; Pension is not issued; Notice of Claim is not issued. The Adult Survivors Law of 2022; Permits a victim to gather evidence and or re-report victimization for Civil Tort remedy. . Eastern advised; in 0360-2023, that Plaintiff is in wrong Personal Jurisdiction

The opinion of lower State Court 09234-2022; Judge Frank Mackay is unconstitutional and Pension is late as of 2022.

Notice of Entry on February 8, 2023; Albany Sheriff served the rendering on Defendant NY Attorney General, of which as well Ways and Means requirements in yellow book are also due. No one in Authority-performs OATH. Oath means-picks up the rendering to process it-some 18 months ago. US Appeals thinks Public officer filing is Frivolous as of July 26, 1997 -that is Unconstitutional. Current NYS legislature is favorably moving in direction of the Incarcerated vs the Crime victim rights and as an Officer-I'm being denied in Entirety. It's like an Institutional rape all over; but in year 2021; Employee Right is Primary. I served; I listened to others and expedited Public Policy formation in prime bill language and LAWs enacted and 2 Employer agents that represent Maryann in 12th AD and 2nd SD sit on their Asses collecting $141,000 annually without even a PRIME bill language as required. I'm not a civilian-female they can Use their Executive privilege to ignore so Ignorance of their Oath-means US Supreme court to determine my negligence complaint.

In essence; any Public Attorney; within Summons and Complaint or RJI-Request for Judicial Intervention on or Before February 8, 2023; was under Oath to BRING the rendering to BRING Pension Fiscal note Calculation and failed willful. In Carrol, rendering is $83 million for Civilian ASA victim of which rendering by private Counsel was placed first; before Female Officer Victim and no Life support.

In the matter of Jean Carroll vs. Donald Trump; Southern District Court granted a Civilian; a hearing and Remedy of $83 million dollars for ASA offense that was 27 years old, Plaintiffs is 33 years ASA offense and I believe the rendering in Carrol is sufficient. The Notice of Claim is an Employer-Educator Sexual Assault Predatory with Student Stalkers by Defendant. In the Matters of Vito Lopez-victims were not raped-or stalked for 33 years post ASA incident of 1992.

In the Matters of Jean Carroll V. Trump, Case number 1:20 CV-07311, LAK 2/8/2024; US Appeals rendered the following for the Plaintiff Compensatory$7,300,000.00,Compensatory-11,000.000/00and

The Totality circumstances" also includes harassing conduct that takes place outside of the physical workplace, Sexual Assault and Avoidance-double offense.

The Federal Question is under Haley law and ASA extender rights as public office being denied in 23-7826 as violating my review.

The Commission on Ethics authorized the investigation of alleged violations of the Public Officers Law by Lopez. Under the record here, the evidence does not establish such a violation by Lopez with respect to the inclusion of the confidentiality clause in the Settlement Agreement.

The conclusion in the Lopez is that Member Elect guilty. Then where are Maltese's findings in 2013 as Honorable ASA?

What are the duties of Commission of Ethics NYS?

Commission on Ethics is to review and render orders on Public Officer rights as Primary as Mediator of which since year 2013-Commision has Failed.

Based upon evidence established by the investigation, there is a substantial basis to conclude that Lopez used his office to pursue a course of conduct that was in violation of his public trust, to secure unwarranted benefits, and to give a reasonable basis for the impression that one could unduly enjoy his favor in the performance of one's official duties. There is therefore a substantial basis to conclude that Lopez violated Public Officers Law §§74(3)(d), (D, and (h) through knowing and intentional conduct. This substantial basis investigation report shall be presented to the Legislative Ethics Commission for their consideration pursuant to Executive Law "94(14) & (14-a) and Legislative Law "80(9) & (10)

Additionally in January 26, 2024-the USDOJ as well found that Executive Chamber failed and I still have Executive Order 94 intervention. USDOJ was contacted complete systematic failure from Federal office to State Office in failure to open a File while no State Temporary and or Pension as of no later than January 1, 2022.

Plaintiff see's Offer of Tort at the Avoidance level warranting $96 Million to Plaintiff. Based on Notice of Claim tort formula as another consideration and Judgement found In Carrol.

US DOJ stated the Following-we also conclude that such behavior by the Governor was part of a pattern that extended to his interactions with women outside of State

19

and Federal Court System advised Plaintiff PO as of June 26, 2024·My Filing is frivolous? I do not agree with decision of US Appeals Court 2nd Circuit and respectfully ask the highest court in the Nation to determine my Rights to Pension; USC 28, Article 78 and Notice of Claim right as ASA origination. I helped the Defendant (CUNY, NYAG, Legislature and Commission) from 2021-2024 create ASA law to Help other Private Sector Victim and Judiciary doesn't Include Maltese. How File Complaint, Advocacy and CUNY Mental health interview with Jen Jarvis. 18 months POST 2021 Legislature is Unacceptable for any Victim and in 092342022-a Judge; had an opportunity based on Legislature to ADD what Judiciary sees as Section 214-J of ASA.

Pension admittance requirement to Plaintiff as Date of Entrance into Service is as, of Internship January 1, 1992·not October 1994. Plaintiff was on Payroll of both NYS Assembly and CUNY Queens College at time of ASA incident.

What else occurs in 2021; I spoke to three Ethics Investigators what is the Background? Are they retired law enforcement? No One answers and Origination Investigator stated to me; PO; You're entitled to at least $90,00-$110,000PER year of Service 1992-2013; this Fiscal Note is $2,090,000 without the State $300,000 per year and or 9% added. Hevesi Plea bargain at $10,000 a Month until time of Death is $2million to a Rapist. Defendants NYS Comptroller has 5 Actuaries currently employed and since 2021·Not one of them-in Attendance at RJI or Hearing. Brown and Matera not sure what Economic Fiscal notes Formula to Use as Elective officers? Then the federal statement-is resignation.

I have not committed a Felony in my Active service or Inactive. US Appeals 2nd Circuit unethically dismissed my Docket 23-7826 is outrageous.

On 11/9/2023 dismissed my Complaint 09234-2022 while Assembly Communications sent out Press Releases on Sudden Death of Defendant Alan Hevesi. Defendant employer educator-full disrespect while on Notice of Service of Notice of Claim. Employer is worshipping a Rapist-vs Crime Victims/

At time of Alan Hevesi's Arrest-son Daniel Hevesi was a State Senate Member and here as well-NYS is keeping the Defendant Alan Hevesi on the payroll and Children as Elective and Chief of Staff Officers in Fiduciary capacity unethical in 2001forward-reasoning the Plaintiff is seeking Tort remedy of $55 million for life
Conspiracy to cover up Sexual Assault by Alan Hevesi with NYS Legislature; NYAG granting Plea Bargain Monetary to Alan Hevesi, and

Pensions for Daniel and Andrew Hevesi at Crime Victims expense in Maryann Maltese.

21

with her Civil Remedy or a State pension. This as well Judiciary is violation of public officer rules 73, 74, as the Commission of Ethics in 2013-set the Precedent forward-that COMMISSION in Vito Lopez's abuses granted Reyna -Mediation PLUS remedy. The NYAG report above as of page 142-failed in ISSUANCES of REMEDY to Boylan and failure to OPEN to Case file for Maryann Maltese. Additionally, NYS AG Sexual Harassment Victims of 20211 Boylan, Bennett have not received civil remedy for their Participation and Maltese vested Tenured at 20years; Employer-Educator is willfully stalling in remedy. Chart below is from NYS Comptroller on again-who among impacted parties-has a Pension. Defendants; Andrew Cuomo, Alan Hevesi and Dan Frisa-all of which are Currently on State Pension; not Victims-NYS Defendants by NYAG found Credible. How that is remotely allowed within Mediations-Offers of Remedy was required as of 2021.

I paid in NYSLRS Tier 4 pretax earnings. Judge Mackey and Judge Maltese tier 2 as well-never paid into State Pension with Failure of hearings.
 Carl Heastie; Speaker; Appointing Alan Hevesi's son Andrew on Committees that have direct oversight on my Public Officer Matter and again Based on 1/2/2024 USDOJ intervention on Executive Chamber; Andrew Hevesi enacts EXTENDER on Child abuse victim's rights with Legislature Failing to Prime my Bill

Pensions for Daniel and Andrew Hevesi at Crime Victims expense in Maryann Maltese. This is Certified Foil Request of Hevesi Family as Chair of Criminal Rights and Chair of Social Services and mandatory reporting-with failure of Prime. Their Pensions calculated.

Carl Heastie; Speaker; Appointing Alan Hevesi's son Andrew on Committees that have direct oversight on my Public Officer Matter and again Based on 1/2/2024 USDOJ intervention on Executive Chamber; Andrew Hevesi enacts EXTENDER on Child abuse victim's rights with Legislature Failing to Prime my Bill

Pensions for Daniel and Andrew Hevesi at Crime Victims expense in Maryann Maltese. This is Certified Foil Request of Hevesi Family as Chair of Criminal Rights and Chair of Social Services and mandatory reporting-with failure of Prime. Their Pensions calculated.

Office of the State Comptroller
Bureau of State Payroll Services
Andrew D. Hevesi - Payroll History as of 11/30/2023

| Effdt | Seq | Action | Reason Description | Agency | Title | Grade | Comprate Code | Comprate | Work% | EE Status |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/1/03 | 0 | HIR | APPOINT | NEW YORK STATE ASSEMBLY | CHF OF STAFF | 600 | BIW | 0.00 | 100.00% | Active |
| 1/1/03 | 1 | PAY | NEW EMPLOYEES SALARY | NEW YORK STATE ASSEMBLY | CHF OF STAFF | 600 | BIW | 1,726.02 | 100.00% | Active |
| 6/3/04 | 0 | PAY | SAL INCR | NEW YORK STATE ASSEMBLY | CHF OF STAFF | 600 | BIW | 2,046.51 | 100.00% | Active |
| 1/1/05 | 0 | TER | TERM | NEW YORK STATE ASSEMBLY | CHF OF STAFF | 600 | BIW | 2,046.51 | 100.00% | Terminated |
| 5/11/05 | 0 | REH | ELECT LEG | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 0.00 | 100.00% | Active |
| 5/11/05 | 1 | PAY | REHIRE SALARY | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 79,500.00 | 100.00% | Active |
| 12/19/13 | 0 | LOA | LEG 27TH STATUTORY PAUSE | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 79,500.00 | 100.00% | Leave of Absence |
| 1/2/14 | 0 | RFL | REIN LEAVE | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 79,500.00 | 100.00% | Active |
| 12/27/18 | 0 | PAY | SAL INCR | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 110,000.00 | 100.00% | Active |
| 5/16/21 | 0 | DTA | 9.2 DATA CONVERSION | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 110,000.00 | 100.00% | Active |
| 12/22/22 | 0 | PAY | SAL INCR | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 142,000.00 | 100.00% | Active |
| | | | | | | | | | | |
| 6/25/11 | 0 | CCH | ELECT LEG | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 0.00 | 100.00% | Active |
| 6/25/11 | 1 | PAY | NEW EMPLOYEES SALARY | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Active |
| 6/25/11 | 2 | TER | TERM | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Terminated |
| 6/29/11 | 0 | REH | ELECT LEG | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 0.00 | 100.00% | Active |
| 6/29/11 | 1 | PAY | REHIRE SALARY | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Active |
| 12/20/12 | 0 | LOA | DCR LV OUT | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Leave of Absence |
| 12/20/12 | 1 | RFL | REIN LEAVE | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Active |
| 12/19/13 | 0 | LOA | LEG 27TH STATUTORY PAUSE | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Leave of Absence |
| 1/2/14 | 0 | RFL | REIN LEAVE | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Active |
| 1/1/15 | 0 | LOA | DCR LV OUT | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Leave of Absence |
| 1/1/15 | 1 | RFL | REIN LEAVE | ASSEMBLY MEMBERS EXPENSES | CH AS SOC SRV COM | 700 | LEG | 12,500.00 | 100.00% | Active |
| 3/4/15 | 0 | POS | ELECT LEG | ASSEMBLY MEMBERS EXPENSES | CH AS SOC SRV COM | 700 | LEG | 12,500.00 | 100.00% | Active |
| 12/29/16 | 0 | LOA | DCR LV OUT | ASSEMBLY MEMBERS EXPENSES | CH AS SOC SRV COM | 700 | LEG | 12,500.00 | 100.00% | Leave of Absence |
| 12/29/16 | 1 | RFL | REIN LEAVE | ASSEMBLY MEMBERS EXPENSES | CH AS SOC SRV COM | 700 | LEG | 12,500.00 | 100.00% | Active |
| 12/27/18 | 0 | LOA | DCR LV OUT | ASSEMBLY MEMBERS EXPENSES | CH AS SOC SRV COM | 700 | LEG | 12,500.00 | 100.00% | Leave of Absence |
| 12/27/18 | 1 | TER | TERM LV | ASSEMBLY MEMBERS EXPENSES | CH AS SOC SRV COM | 700 | LEG | 12,500.00 | 100.00% | Terminated |

Office of the State Comptroller
Bureau of State Payroll Services
David R. Hevesi - Payroll History as of 11/30/2023

| Effdt | Seq | Action | Reason Description | Agency | Title | Grade | Comprate Code | Comprate | Work % | EE Status |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/24/98 | 0 | HIR | ELECT LEG | SENATE MEMBERS | MEMBER | 700 | LEG | 0.00 | 100.00% | Active |
| 12/24/98 | 3 | PAY | NEW EMPLOYEES SALARY | SENATE MEMBERS | MEMBER | 700 | LEG | 79,500.00 | 100.00% | Active |
| 4/1/99 | 0 | PAY | FACTOR ADJUSTMENT | SENATE MEMBERS | MEMBER | 700 | LEG | 79,500.00 | 100.00% | Active |
| 12/19/02 | 0 | LOA | DCR LV OUT | SENATE MEMBERS | MEMBER | 700 | LEG | 79,500.00 | 100.00% | Leave of Absence |
| 1/1/03 | 0 | TER | TERM | SENATE MEMBERS | MEMBER | 700 | LEG | 79,500.00 | 100.00% | Terminated |
| | | | | | | | | | | |
| 3/4/99 | 0 | CCH | APPOINT | SENATE MEMBERS SPECIAL ALLOW. | RN MIN MM SEN ELEC CM | 700 | FEE | 0.00 | 100.00% | Active |
| 12/19/02 | 0 | DTA | CHANGE PAY GROUP | SENATE MEMBERS SPECIAL ALLOW. | RN MIN MM SEN ELEC CM | 700 | FEE | 0.00 | 100.00% | Active |
| 1/1/03 | 0 | TER | TERM | SENATE MEMBERS SPECIAL ALLOW. | RN MIN MM SEN ELEC CM | 700 | FEE | 0.00 | 100.00% | Terminated |

As noted, AD 3 in 09234-2022 dismissed my Index-but date of Alan Hevesi incarceration-Both sons are Hired by NYS Assembly and NYS Senate and PO Crim victim is not reinstated from 2015-2024 with Employer failure to Add in NYS Tier 4

NYS Assembly creation of Speaker House rules 5, 6, 7 5 Sexual Harassment, 6 Affirmative Action and 7 Non-Fraternization policy were instituted due to my 1992 victimization as an Intern who was sexually assaulted by 2 different Members of the NYS Assembly within 2 Separate Incidents within 2 weeks of each incident. Employer either failed in Mandatory reporting-and Failure maintain efficiency of my Complaints for end of Service Completion. It is an unconscious able Treatment of Vested Employee's Plaintiffs rights from 2020-2023. At the time of First Incident, Plaintiff was a Minor at time and No Notice of Claim was issued to Plaintiff as Settlement. Plaintiff submitted a Summons and complaint on or before December 9, 2023 as NYS Legislature failed to informed Plaintiff if she would be included in Special Session Scheduled on or Before December 19, 2022 where Members of the Legislature granted themselves only a Pay raise leaving out Employee MaryAnn Maltese's right to Pension. Maryann Maltese was due to receive a Pension as of January 1, 2022 and as of December 2022·Employer within general operation of law is as well 11 months late in issuances of Pension. State Temporary by Order to Show Cause requested by Plaintiffs are denied-unjustified based on events above. NYS Employer At will doesn't possess the constitutional Right to withhold my Pension as Paid in Vested Employer Tier 4 NYSLRS-Confidential Employee. This Appeal is filed due to Supremes' court error in Public Officer Maryann Maltese's constitutional right to Pension and to a Year extender of Notice of Claim.

Plaintiff seeks Dan Frisa to concede and Judiciary adds in his Notice of Claim. Post incident Dan Frisa was permitted to attend and graduate law school 2009. Maltese is eliminated of law school.

rd As

Defendant Alan Hevesi died on November 9, 2023-whereas NYS Appellant 3 willfully dismissed my Complaint on Date of Death of Alan Hevesi-as formation of Continued Punishment against Plaintiff Public Officer. As Noted,; Andrew HevesiSon of Alan Hevesi; in a Fiduciary-State Public Policy Making Capacity AS NYS Assembly Chair's has Denied Plaintiff Maltese due diligences as Chair of two Committees; that continued to review Defendants Alan Hevesi's Post sentencing within part of; NYS Assembly Criminology and Child Abuse and Mandatory Reporting. NYS Assembly since 2020; upon their decision making to Extend Sexual Assault Civil Remedy of Notice of Claim considerations for Civilians.

Defendants Directives 1/26/2024 to avoid Child abuse training by Extender to 2026 while Allowing Public Officer 29-year requirement to Pension Prime Bill language and Inclusive of ASA notice of Claim from Sessions 2021, 2022, 2023, and 2024. Notice of Claim consideration of 33-year Felony is the Rendering in Jean Carroll at minimum of $83 million.

I began the journey in 2021 asking Brown and mattera to prime my Fiscal Note Pension Rights to Plotted Political Arrest on Assembly Property-unjustified 2021. Filing Judiciary 616328-2021, Suffolk Supreme; where Judge Condon dismissed my Index March 30, 2022; 1 Day before State Budget of 2022 of which Plaintiff Pension is 90 days late

Legislature 2022; enacted ASA permitting Extender rights-notice of claim by November 2022; Pension for Plaintiff is 11 months Late. December 2022; Special Session 2022-Employer grants themselves 29% Additive raise with Failure to Include Employees with pension right as is.

July 26, 2024; US Appeals Dismissed my Docket 23-7826-Pension and Notice of Claim together is Late by 24 months. A black letter law pension is required No matter WHEN I file Notice of Claim. Active Officers are not permitted to seek; Notice of Claim until End of Service. Public officer Rights never have statutory limitations of consideration.

Why did Employer NYS Assembly and NYS Senate Avoid House Rules and Yellow Book?

New York State Assembly Rules of the Assembly; Section 7; S 5,6,7. 58

S 5. Sexual harassment policy. The Speaker shall promulgate a policy prohibiting sexual harassment, which shall, at a minimum

S 6. Affirmative action policy. The Speaker shall promulgate a policy with respect affirmative action, which shall, at a minimum:

Prohibit employment discrimination on the basis of race, color, creed, sex, religion, age, sexual orientation....

S 7. Non-fraternization policy. The Speaker shall promulgate a policy prohibiting fraternization with student interns, which shall at a minimum, be applicable to members of the Assembly and Assembly staff, define the conduct which is prohibited, and establish a procedure for investigation of alleged violations of the policy (Maryann Maltese 1992)

27

Plaintiff all judicial fees costs paid out of pocket within Article 78 proceeding where Employee paid for judiciary time at $74,000 and Notice of Claim tort for Failure by Employer intentional.

The Petition for a writ of certiorari should be Granted

County: Suffolk

Date: September 8, 2024

Respectfully submitted,

*Maryann Maltese*

Maryann Maltese; Plaintiff Appellant

## CERTIFICATE OF COMPLIANCE

No.

Maryann Maltese

Petitioner

NYS Legislature, Carl Heastie, Speaker of NYS Assembly

CUNY Queens College

Alan Hevesi, Professor and Former NYS Assembly member Dan Frisa, C/o Russo & Pedranghelu, Former NYS Assembly member

Defendants

As required by Supreme Court Rule 33.1(h), I certify that the petition for writ of certiorari continues 9,000 words, Plus 1,500 allowable 34,2 excluding the parts of the petition that are exempted by Supreme Court Rule 33. I(d)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on

September 8, 2024

*Maryann Maltese*

Maryann Maltese

38



Office of the New York State Comptroller
**Thomas P. DiNapoli**

New York State and Local Retirement System
110 State Street, Albany, NY 12244

# Your Member Annual Statement

*Information reported to NYSLRS as of March 31, 2024*



L1350 0146206 P009 T00607 ********SCH 5-DIGIT 11731
MARYANN MALTESE
19 RINGLER DR
EAST NORTHPORT, NY 11731-4421

# A Message From State Comptroller Thomas P. DiNapoli

I am pleased to provide you with your 2024 Member Annual Statement.

Your Statement provides detailed information about your New York State and Local Retirement System (NYSLRS) benefits and membership as of March 31, 2024, the end of the State fiscal year. Please review it carefully. If corrections are needed or if you have questions, visit **www.bit.ly/NYSLRS-member-statement**.

For your most current account information throughout the year, I encourage you to use *Retirement Online*. It's the fastest way to apply for retirement and update your contact and beneficiary information. Sign in at **www.bit.ly/RO-sign-in** to apply for a loan, estimate your pension, purchase service credit and more.



You can also help us 'go green' by choosing to receive a digital Annual Statement through *Retirement Online* next year All you need to do is update your delivery preference to email.

My staff and I look forward to serving you throughout the year.



0146206



**NYSLRS**                    Member Annual Statement    2024

# Maryann Maltese    ⊘ Vested Member

| | |
|---|---|
| NYSLRS ID | R10514190 |
| Date of Birth | May 7, 1970 |
| Date of Membership | October 20, 1994 *Date of Entrie is wrong* |
| Tier | 4 |
| Retirement System | ERS |
| Enrolled Retirement Plan | A15 |
| Total Credited Service | 18.05 Years |

## Member Contribution Summary

Your Member Contribution Balance          $36,052.29

## Employer Summary

No earnings were reported for you during the last State fiscal year

## Beneficiaries

Below are the death benefit beneficiaries on file for you.

**Kayla Crowe**                                Primary
DOB: 08/03/1995

**Christian Crowe**                            Primary
DOB: 02/26/1997

# Death Benefit

As of March 31, 2024, we estimate your death benefit to be $61,507.61. The first $50,000 of this benefit is paid in the form of Group Term Life Insurance, which currently is exempt from federal income tax. **The estimated amount shown has not been audited and is for general information purposes only.** This amount may increase or decrease depending upon your age, employment status and the amount of your last year's earnings. In addition to your death benefit, your accumulated contributions, if any, would be refunded.

# Projected Monthly Retirement Benefit

You are a vested member and are eligible to receive a pension benefit at retirement.

This is the maximum retirement benefit payable to you during your lifetime with no benefit payable to a beneficiary. This projection is calculated using final average earnings of $49,316.35 (based on your reported earnings through March 31, 2024) and your projected service credit. It assumes all loans and any mandatory service credit costs will be paid off before you retire. Any change in retirement age, final average earnings or service credit may alter this projection. You may elect to receive a smaller monthly benefit during your lifetime in order to designate a beneficiary who will receive a benefit upon your death.

You can retire as early as age 55, however, your full retirement age is 62. If you retire before age 62, your pension would be permanently reduced unless you have 30 or more years of service. If you retire with 30 or more years of service, there is no reduction for early retirement.

You can estimate your pension benefit using Retirement Online. By entering different retirement dates and beneficiary information, you can see how changes would affect your potential benefit and payment options.

This projection is based on your 62nd birthday, which is the earliest date to receive full benefits.

## Single Life Allowance                    $1,236.33

Maximum monthly pension benefit. No continuing pension benefit is payable to a beneficiary.









# Retirement Online

Sign in to Retirement Online at **www.bit.ly/RO-sign-in** to access your current retirement account information throughout the year. You can also use Retirement Online to:

✔ **Update contact information.** Keep your phone number, email and mailing address current.

✔ **Manage your beneficiary designations.** Add or remove beneficiaries, or update their contact information.

✔ **Purchase additional service credit.** If you are eligible to purchase service credit for past public employment, you should submit your request as soon as possible.

✔ **Apply for and repay your loan.** See how much you can borrow and manage your payments to avoid retiring with an outstanding balance.

✔ **Estimate your pension** based on salary and service information we have on file for you.

✔ **Apply for retirement.** It's fast and convenient — nothing to notarize or mail.

**Go Green!** Get next year's statement through Retirement Online. Choose to receive an email when your Statement is ready to view and download. From your Account Homepage, click the "update" link next to "Member Annual Statement by" and choose "Email" from the dropdown.

## Helpful Tips for Your Member Annual Statement

- **Use your "enrolled retirement plan" code to find your retirement plan publication at www.bit.ly/plan-publication.** Consult this comprehensive description of your retirement benefits to learn how your pension will be calculated.

- **Check your pensionable earnings for accuracy.** Alert your employer if the pensionable earnings listed in your Statement are incorrect. Your plan publication lists the types of pensionable earnings, which are used to calculate your pension benefit.

- **For more information,** visit our Member Annual Statement webpage (**www.bit.ly/NYSLRS-member-statement**) for answers to common questions and to find out how to make updates or corrections. If you have questions about your benefits, you may be able to find the information you need on our Contact Us page (**www.contactNYSLRS.com**). You can message our Contact Center using the secure contact form on our website (**www.emailNYSLRS.com**) or call 866-805-0990.

 SIGN UP FOR E-NEWS
bit.ly/NYSLRS-E-News

 SUBSCRIBE TO OUR BLOG
NYRetirementNews.com

 LIKE US ON FACEBOOK
Facebook.com/NYSLRS

 SUBSCRIBE TO YOUTUBE
YouTube.com/NYSLRS

 This Statement provides account information as of March 31, 2024. It has not been audited, is subject to change, and does not guarantee payment from NYSLRS. Do not use this as your only source when making decisions about your retirement.

 Visit our website to learn more about your NYSLRS benefits: www.osc.ny.gov/retirement



No.

IN THE

SUPREME COURT OF THE UNITED STATES

MARYANN MALTESE,

Plaintiff-Appellant,

v.

NEW YORK STATE LEGISLATURE, CARL HEASTIE, SPEAKER
REPRESENTATIVE, QUEENS COLLEGE, CITY UNIVERSITY OF NEW YORK,
PROFESSOR ALAN HEVESI, PRESIDENT FRED WU, DANIEL FRISA, C.O
VINCENT NOFI, NYS ASSEMBLYMAN ALAN HEVESI

Defendants-Respondents

-------------------------------------------------------------------------------------

Appendix

To the US Court of Appeals for Second Circuit

-------------------------------------------------------------------------------------

Maryann Maltese
Pro Se-Respondents-Appellants

19 Ringer Drive
East Northport, NY. 11731

631-644-5765

Maryannmaltese1000@gmail.com

1

## TABLE OF CONTENTS

Table of Contents.....................................................................................2

Table of Authorities.................................................................................3

Statutes and Rules...................................................................................4

Statement of Subject Matter and Appellate Jurisdiction....................................5

Statement of the Issues Presented for Review.....................................................6

Statement of the Case................................................................ ..........11

Statement of the Facts..............................................................................13

Summary of the Argument..........................................................................31

Argument................................................................................................32

Conclusion.................................................................... ..........34

Certificate of Compliance.......................................................... . .......36

Certificate of Service..................................................................................37

## TABLE OF AUTHORITIES

CASES;

E. Jean Carroll v. Donald Trump, No. 20-3977 92d Cir. 2023).......................

E. Jean Carroll v. Donald Trump, No. 1:22-cv-10016(November 24, 2022)...........

E. Jean Carroll v. Donald Trump  No. 1:20 -cv-07311 February 8, 2024. Document 285

United States Department of Justice v. NYS Executive Chamber Stipulation Agreement on Andrew Cuomo NYS AD Sexual Harassment Victims August 2021 Report  1/26/2024


Haley v. Pataki 1995, ...........................................................................

In the Matter of Vito Lopez JCOPE-127 ......................................................

In the Matter of Alan Hevesi; ASA violation and violations in N.Y. EXECUTIVE LAW
§ 63(15) ; 2006.......................................................................

Matter of Ross v. Wilson, 308 N.Y. 605, 612 (1955).........................................

Title VII of the Civil Rights Act of 1964 ("Title VII") "outlaw[s] discrimination in the workplace on the basis of . . . sex."[1] In 1986, the United States Supreme Court recognized that

Title VII's prohibition on sex discrimination prohibits gender-based harassment in the workplace. Like federal law, the New York State Human Rights Law (the "NYSHRL"),forbids workplace harassment.

### Statutes

28 USC § 1869(i) Public Officer Rule.......................................................

General Municipal Law Section 50..........................................................

Adult Survivors Law Chapter 2022..........................................................

Penal Code Violations 130 Sexual Assault..................................................

Public Officer Rules 73...................................................................

Public Officer Rules 74...................................................................

Public Officer Rules
107......................................................................................

NYS Assembly Articles 5, 6, 7

House Rules of NYS-NYS Constitution. Speaker Rules

§ 5. Sexual harassment policy............................................................. §

§6. Affirmative action policy.

§ 7. Non-fraternization policy. ......................................................................

Failure of Mandatory Reporting-Sexual Assault-Child Abuse and Adult Penal Code 130

4

E.D.N.Y. – Bklyn
23-cv-4359
Kovner, J.

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of July, two thousand twenty-four.

Present:

William J. Nardini,
Myrna Pérez,
Alison J. Nathan,
*Circuit Judges.*

---

Maryann Maltese,

*Plaintiff-Appellant,*

v.                                                                                          23-7826

New York State Legislature, Carl Heastie, Speaker Representative, et al.,

*Defendants-Appellees.*

---

Appellant, pro se, moves to provide additional evidence, to expand the record, to file exhibits, and to place the appeal on the calendar. Upon due consideration, it is hereby ORDERED that the motions to provide additional evidence, to expand the record, and to file exhibits are DENIED. *See IBM Corp. v. Edelstein*, 526 F.2d 37, 45 (2d Cir. 1975); *Loria v. Gorman*, 306 F.3d 1271, 1280 n.2 (2d Cir. 2002). It is further ORDERED that the motion to place the appeal on the calendar is DENIED and the appeal is DISMISSED because it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see Pillay v. INS*, 45 F.3d 14, 17 (2d Cir. 1995) (per curiam) (holding that this Court has "inherent authority" to dismiss a frivolous appeal).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



 **Gmail**

Maryann Maltese <maryannmaltese1000@gmail.com>

---

## receipts

---

**Martens, Erin** <Erin.Martens@albanycountyny.gov>                                   Wed, May 22 at 11:57 AM
To: maryannmaltese1000@gmail.com <maryannmaltese1000@gmail.com>

As requested.


Erin Martens

Civil Supervisor

Albany County Sheriff's Office

Phone(518) 487-5400 Fax (518) 487-5352    *Proof of February 8 + February 24 Serive by paid by plaintff.*


Confidentiality Notice: This fax/e-mail transmission, with accompanying records, is intended only for the use of the individual or entity to which it is addressed and may contain confidential and/or privileged information belonging to the sender, including individually identifiable health information subject to the privacy and security provisions of HIPAA. This information may be protected by pertinent privilege(s), e.g., attorney-client, doctor-patient, HIPAA etc., which will be enforced to the fullest extent of the law. If you are not the intended recipient, you are hereby notified that any examination, analysis, disclosure, copying, dissemination, distribution, sharing, or use of the information in this transmission is strictly prohibited. If you have received this message and associated documents in error, please notify the sender immediately for instructions. If this message was received by e-mail, please delete the original message.


Confidentiality Notice: This fax/e-mail transmission, with accompanying records, is intended only for the use of the individual or entity to which it is addressed and may contain confidential and/or privileged information belonging to the sender, including individually identifiable health information subject to the privacy and security provisions of HIPAA. This information may be protected by pertinent privilege(s), e.g., attorney-client, doctor-patient, HIPAA etc., which will be enforced to the fullest extent of the law. If you are not the intended recipient, you are hereby notified that any examination, analysis, disclosure, copying, dissemination, distribution, sharing, or use of the information in this transmission is strictly prohibited. If you have received this message and associated documents in error, please notify the sender immediately for instructions. If this message was received by e-mail, please delete the original message.
receipts.pdf

Printed: 5/17/2024 10:00:51AM
By: EMARTENS

# Albany County Sheriff's Department

## Payment Receipt

Received By: <u>SPRUNER</u>

**Payment Made By:**     MARYANN MALTESE
                        19 RINGLER DRIVE
                        EAST NORTHPORT NY 11731

| | |
|---|---|
| **Payment Date:** | 10/25/2022 |
| **Payment Type:** | Cash |
| **Check Number:** | |
| **Receipt Number:** | 1175099 |

**Payment Amount:**     **$ 51.00**


$ 51.00          22003791          MARYANN MALTESE vs. NYS ATTORNEY GENERAL

Printed: 5/17/2024 9:46:25AM
By: EMARTENS

# Albany County Sheriff's Department

## Payment Receipt

Received By:  <u>SPRUNER</u>

**Payment Made By:**    MARYANN MALTESE

19 RINGLER DRIVE
EAST NORTHPORT NY 11731

| | |
|---|---|
| **Payment Date:** | 10/25/2022 |
| **Payment Type:** | Cash |
| **Check Number:** | |
| **Receipt Number:** | 1175098 |

**Payment Amount:**    **$ 51.00**

$ 51.00        22003790        MARYANN MALTESE vs. NYS ATTORNEY GENERAL

Printed: 5/17/2024  9:45:42AM
By: EMARTENS

# Albany County Sheriff's Department

## Payment Receipt

Received By: <u>SPRUNER</u>

**Payment Made By:**     MARYANN MALTESE
                        19 RINGLER DRIVE
                        EAST NORTHPORT NY 11731

| | |
|---|---|
| **Payment Date:** | 10/25/2022 |
| **Payment Type:** | Cash |
| **Check Number:** | |
| **Receipt Number:** | 1175097 |

**Payment Amount:**     **$ 51.00**

$ 51.00          22003789          MARYANN MALTESE vs. NEW YORK STATE POLICE

Printed: 5/17/2024  9:41:13AM
By: EMARTENS

# Albany County Sheriff's Department

## Payment Receipt

Received By:  JFREEDMAN

| | |
|---|---|
| **Payment Made By:** | MARYANN MALTESE |
| | 19 RINGLER DRIVE |
| | EAST NORTHPORT NY 11731 |

| | |
|---|---|
| **Payment Date:** | 8/29/2022 |
| **Payment Type:** | Cash |
| **Check Number:** | |
| **Receipt Number:** | 1170912 |

**Payment Amount:**    **$ 50.00**

$ 50.00        22002889        MARYANN MALTESE vs. NYS LEGISLATURE, NYS TROOPES ETAL

Printed: 5/17/2024 10:25:42AM
By: EMARTENS

# Albany County Sheriff's Department

## Payment Receipt

Received By:  JFREEDMAN

**Payment Made By:**     MARYANN MALTESE
                        19 RINGLER DRIVE
                        EAST NORTHPORT NY 11731

| | |
|---|---|
| **Payment Date:** | 11/1/2022 |
| **Payment Type:** | Cash |
| **Check Number:** | |
| **Receipt Number:** | 1175482 |

**Payment Amount:**     **$ 50.00**


$ 50.00         22003910        MARYANN MALTESE vs. NYS ATTORNEY GENERAL

Printed: 5/17/2024 10:02:43AM
By: EMARTENS

# Albany County Sheriff's Department

## Payment Receipt

Received By:  JFREEDMAN

**Payment Made By:**    MARYANN MALTESE
                        19 RINGLER DRIVE
                        EAST NORTHPORT NY 11731

| | |
|---|---|
| **Payment Date:** | 11/1/2022 |
| **Payment Type:** | Cash |
| **Check Number:** | |
| **Receipt Number:** | 1175481 |

**Payment Amount:**    **$ 50.00**

$ 50.00        22003908        MARYANN MALTESE vs. NEW YORK STATE LEGISLATURE

Printed: 5/17/2024 10:02:02AM
By: EMARTENS

# Albany County Sheriff's Department

## Payment Receipt

Received By: <u>SPRUNER</u>

**Payment Made By:**    MARYANN MALTESE
19 RINGLER DRIVE
EAST NORTHPORT NY 11731

| | |
|---|---|
| **Payment Date:** | 10/25/2022 |
| **Payment Type:** | Cash |
| **Check Number:** | |
| **Receipt Number:** | 1175135 |

**Payment Amount:**    $ 20.00

| | | |
|---|---|---|
| $ 20.00 | 22003815 | MARYANN MALTESE vs. NYS ATTORNEY GENERAL |

Printed: 5/17/2024 10:01:22AM
By: EMARTENS

# Albany County Sheriff's Department

## Payment Receipt

Received By: <u>SPRUNER</u>

**Payment Made By:**    MARYANN MALTESE
                       19 RINGLER DRIVE
                       EAST NORTHPORT NY 11731

| | |
|---|---|
| **Payment Date:** | 10/25/2022 |
| **Payment Type:** | Cash |
| **Check Number:** | |
| **Receipt Number:** | 1175100 |

**Payment Amount:**    **$ 51.00**

$ 51.00          22003792          MARYANN MALTESE vs. NYS COMMISSION OF ETHICS

*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: November 30, 2023                 CV-23-0438

_____

In the Matter of MARYANN
    MALTESE,
                        Appellant,                 DECISION AND ORDER
                                                      ON MOTION
            v

NYS JOINT COMMISSION ON
    PUBLIC ETHICS et al.,
                        Respondents.
_____

       Motion to vacate dismissal of appeal and for further relief.

       Upon the papers filed in support of the motion, and no papers having been filed in opposition thereto, it is

       ORDERED that the motion is denied, without costs.


Egan Jr., J.P., Pritzker, Ceresia and McShan, JJ., concur.


           ENTER:

           Robert D. Mayberger
           Clerk of the Court

Printed: 5/17/2024 10:25:59AM
By: EMARTENS

# Albany County Sheriff's Department

## Payment Receipt

Received By: JFREEDMAN

**Payment Made By:**   MARYANN MALTESE

**Payment Date:**   12/9/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ALBANY

In the Matter of the Application of
MARYANN MALTESE,

                                  Petitioner-Plaintiff,

                                                                      Index No. 3200-22

        For a Judgment Pursuant to Article 78
        of the Civil Practice Law and Rules

            -against-

NYS JOINT COMMISSION ON PUBLIC ETHICS
HON. KEITH BROWN, NYS LEGISLATOR,

                        Respondents-Defendants.


# MEMORANDUM OF LAW IN SUPPORT OF
# RESPONDENTS-DEFENDANTS' MOTION
# TO DISMISS THE COMPLAINT


                                LETITIA JAMES
                                Attorney General
                                State of New York
                                Attorney for Respondents-Defendants New
                                        York State Joint Commission on Public
                                        Ethics and Keith Brown
                                The Capitol
                                Albany, New York  12224

Adrienne J. Kerwin
Assistant Attorney General,
 of Counsel
Telephone:  (518) 776-2608
Fax:  (518) 915-7738 (Not for service of papers)

## PRELIMINARY STATEMENT

On May 5, 2022, the Office of the Attorney General ("OAG") was served with papers in connection with this proceeding. Affirmation of Adrienne J. Kerwin ("Kerwin Aff."), Exh. A. These papers included an (1) RJI, Notice of Petition[1], Complaint, duplicate Notice of Petition, Summons, and various documents that appear to be exhibits to something. *Id.* Neither Respondent-Defendant New York State Commission on Public Ethics ("JCOPE") nor Assemblyman Keith Brown was not served with any papers in connection with this proceeding. *See* Affidavit of Emily Logue ("Logue Aff."); Affidavit of Keith Brown ("Brown Aff."). This Memorandum of Law is submitted on behalf of Respondents-Defendants JCOPE and Assemblyman Brown in support of their motion to dismiss the Complaint pursuant to CPLR 3014 and 3211(a)(8).

## ARGUMENT

### POINT I

### PETITIONER-PLAINTIFF FAILED TO SERVE RESPONDENTS-DEFENDANTS WITH ANY PAPERS

Petitioner-Plaintiff has failed to obtain personal jurisdiction over JCOPE or Assemblyman Brown. CPLR 307(2) requires that personal service on a state agency, or state official in his official capacity, be made by "(1) delivering the summons to such officer or to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or (2) by mailing the summons by certified mail, return receipt requested, to such officer or to the chief executive officer of such agency."[2] CPLR 307(2).   No such service

---

[1] As the Notice of Petition included a return date of May 13, 2022. A motion to dismiss any intended proceeding was served and filed on May 9, 2022.

[2] Service must also be made pursuant to CPLR (1), which has been done here.

of the Complaint has been made on JCOPE or Assemblyman Brown. *See* Logue Aff; Brown Aff.

Accordingly, the Complaint should be dismissed for lack of personal jurisdiction.

## POINT II

### THE COMPLAINT FALS TO COMPLY WITH CPLR 3014

The CPLR requires, in pertinent part, that: "Every pleading shall consist of plain and concise statements in consecutively numbered paragraphs. Each paragraph shall contain, as far as practicable, a single allegation. … Separate causes of action or defenses shall be separately stated and numbered … ." CPLR § 3014. However, the Complaint in this matter fails to comply with such pleading requirements. It consists of three pages of continuous rambling handwriting, with no separate numbered paragraphs, and no causes of action pled. Kerwin Aff., Exh. A, pdf pp. 4-7.

Given Petitioner's-Plaintiff's failure to comply with CPLR 3014, the Complaint should be dismissed. *Matter of Barnes v. Fischer*, 135 A.D.3d 1249, 1249-50 (3d Dept. 2016) (citations omitted) (affirming dismissal because the pleading did "not meet [the] standard [set forth in CPLR § 3014] as it contains overly broad and rambling allegations …").

## CONCLUSION

For the reasons discussed above, the Complaint should be dismissed in its entirety with prejudice.

Dated: Albany, New York
May 25, 2022

LETITIA JAMES
Attorney General
State of New York
Attorney for Respondents-Defendants New
York State Joint Commission on Public
Ethics and Keith Brown
The Capitol
Albany, New York 12224

By: _____
Adrienne J. Kerwin
Assistant Attorney General, of Counsel
Telephone: (518) 776-2608
Fax: (518) 915-7738 (Not for service of papers)

TO:    Maryann Maltese (via U.S. mail)
Plaintiff pro se
19 Ringler Drive
East Northport, NY  11731

## STATEMENT PURSUANT TO 22 NYCRR 202.8-b

I, Adrienne J. Kerwin, affirm under penalty of perjury pursuant to CPLR 2106 that the total number of words in the foregoing memorandum of law, inclusive of point headings and footnotes and exclusive of pages containing the caption, table of contents, table of authorities, and signature block, is **463**. The foregoing memorandum of law complies with the word count limit of 10,000 words approved by the Court on August 20, 2021, which is in excess of the word count limit set forth in 22 NYCRR 202.8-b. In determining the number of words in the foregoing memorandum of law, I relied upon the word count of the word-processing system used to prepare the document.

s/ *Adrienne J. Kerwin*
Adrienne J. Kerwin

Printed: 5/17/2024 9:39:02AM
By: EMARTENS

# Albany County Sheriff's Department

---

## Payment Receipt

---

Received By: <u>EMARTENS</u>

**Payment Made By:**     MARYANN MALTESE
                         19 RINGLER DRIVE
                         EAST NORTHPORT NY 11731

| | |
|---|---|
| **Payment Date:** | 5/13/2022 |
| **Payment Type:** | Cash |
| **Check Number:** | |
| **Receipt Number:** | 1162799 |

**Payment Amount:**     **$ 20.00**

$ 20.00        22001707        MARYANN MALTESE vs. NYS JOINT COMMISSION ON PUBLIC ETHICS, HON. KEITH BROWN, LEGISLATOR

Printed: 5/17/2024 9:37:51AM
By: EMARTENS

# Albany County Sheriff's Department

## Payment Receipt

Received By: <u>EMARTENS</u>

**Payment Made By:**  MARYANN MALTESE

19 RINGLER DRIVE
EAST NORTHPORT NY 11731

| | |
|---|---|
| **Payment Date:** | 5/13/2022 |
| **Payment Type:** | Cash |
| **Check Number:** | |
| **Receipt Number:** | 1162798 |

**Payment Amount:**   $ 23.75

$ 23.75        22001705        MARYANN MALTESE vs. NYS JOINT COMMISION ON PUBLIC ETHICS

# Albany County Sheriff's Department

## Payment Receipt

Received By: <u>EMARTENS</u>

**Payment Made By:**   MARYANN MALTESE
19 RINGLER DRIVE
EAST NORTHPORT NY 11731

| | |
|---|---|
| **Payment Date:** | 4/26/2022 |
| **Payment Type:** | Cash |
| **Check Number:** | |
| **Receipt Number:** | 1161762 |

**Payment Amount:**    **$ 20.00**

$ 20.00          22001530        MARYANN MALTESE vs. NYS JOINT COMMISSION ON PUBLIC ETHICS, HON. KEITH BROWN, LEGISLATOR

# Albany County Sheriff's Department

## Payment Receipt

Received By: <u>EMARTENS</u>

**Payment Made By:**   MARYANN MALTESE

19 RINGLER DRIVE
EAST NORTHPORT NY 11731

| | |
|---|---|
| **Payment Date:** | 4/20/2022 |
| **Payment Type:** | Cash |
| **Check Number:** | |
| **Receipt Number:** | 1161309 |

**Payment Amount:**   **$ 20.00**

$ 20.00          22001432          MARYANN MALTESE vs. NEW YORK ATTORNEY GENERAL

Printed: 5/17/2024  9:36:11AM
By: EMARTENS

# Albany County Sheriff's Department

## Payment Receipt

Received By:  <u>EMARTENS</u>

**Payment Made By:**    MARYANN MALTESE
19 RINGLER DRIVE
EAST NORTHPORT NY 11731

| | |
|---|---|
| **Payment Date:** | 4/20/2022 |
| **Payment Type:** | Cash |
| **Check Number:** | |
| **Receipt Number:** | 1161308 |

**Payment Amount:**    **$ 20.00**

$ 20.00          22001431          MARYANN MALTESE vs. NEW YORK STATE TROOPERS

# Albany County Sheriff's Department

## Payment Receipt

Received By:  EMCCANN

**Payment Made By:**    MARYANN MALTESE

19 RINGLER DRIVE
EAST NORTHPORT NY 11731

**Payment Date:** 4/19/2022
**Payment Type:** Cash
**Check Number:**
**Receipt Number:** 1161255

**Payment Amount:**    **$ 50.00**

$ 50.00        22001430        MARYANN MALTESE vs. THE STATE OF NEW YORK ET AL

# PUBLIC DOCKET FOR

# United States Court of Appeals for the Second Circuit

Court of Appeals Docket #: 23-7826

Case Name: Maltese v. NYS Legislature

Nature of Suit: 3890 STATUTES-Other

Appeal From: EDNY (BROOKLYN)

Fee Status: Paid

Docketed: 11/21/2023

Status: Determined

Case Type Information

1. Civil

2. Private

3.

Originating Court Information

District: EDNY (BROOKLYN): 1:23-cv-4359

Trial Judge: Rachel P. Kovner, District Judge

Magistrate Judge: Lois B. Bloom, Magistrate Judge

Date Filed: 06/13/2023

| Date Order/Judgment | Date Order/Judgment EOD | Date NOA Filed | Date Rec'd COA |
| --- | --- | --- | --- |
| 11/06/2023 | 11/06/2023 | 11/17/2023 | 11/20/2023 |

Associated Cases

Party and Attorney Listing

MARYANN MALTESE
Plaintiff - Appellant

Maryann Maltese
[Pro Se]
19 Ringler Drive
East Northport, NY 11731

NEW YORK STATE LEGISLATURE, Carl Heastie,
Speaker Representative

New York State Legislature
[Pro Se]

Defendant - Appellee

Barbara D. Underwood, -
Terminated: 01/18/2024
[Government]
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005


QUEENS COLLEGE, CITY UNIVERSITY OF NEW YORK,
Professor Alan Heuesi, President Fred Wu
Defendant - Appellee

Queens College, City University of New York
[Pro Se]

Barbara D. Underwood, -
Terminated: 01/18/2024
[Government]
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005


DANIEL FRISA, c/o Vincent Nofi Former NYS
Assembly Member
Defendant - Appellee

Daniel Frisa
[Pro Se]

Barbara D. Underwood, -
Terminated: 01/18/2024
[Government]
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005


ALAN HAVESI
Defendant - Appellee

Alan Havesi
[Pro Se]

Barbara D. Underwood, -
Terminated: 01/18/2024
[Government]
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005


Maryann Maltese,


        Plaintiff - Appellant,

v.

New York State Legislature, Carl Heastie, Speaker Representative, Queens College, City University of New York, Professor Alan Heuesi, President Fred Wu, Daniel Frisa, c/o Vincent Nofi Former NYS Assembly Member, Alan Havesi,

Defendants - Appellees.

| Docket | | | | LEGEND:<br>(R) - Restricted Document<br>(L) - Locked Document |
|---|---|---|---|---|
| Date Filed | Entry # | | Public Docket Text | |
| 11/20/2023 | 1 | | NOTICE OF CIVIL APPEAL, with district court docket, on behalf of Appellant Maryann Maltese, FILED. [Entered: 11/21/2023 08:12 PM] | |
| 11/20/2023 | 2 | | DISTRICT COURT ORDER, entered in the district court as docket entry, dated 11/06/2023, RECEIVED. [Entered: 11/21/2023 08:16 PM] | |
| 11/20/2023 | 3 | | PAYMENT OF DOCKETING FEE, on behalf of Appellant Maryann Maltese, district court receipt # 200002601, FILED. [Entered: 11/21/2023 08:19 PM] | |
| 11/20/2023 | 4 | | ELECTRONIC INDEX, in lieu of record, FILED. [Entered: 11/21/2023 08:24 PM] | |
| 11/21/2023 | 5 | | CIVIL APPEAL, on behalf of Appellant Maryann Maltese, received 11/20/2023, OPENED. [Entered: 11/21/2023 08:33 PM] | |
| 11/21/2023 | 6 | | INSTRUCTIONAL FORMS, to Pro Se litigant, SENT. [Entered: 11/21/2023 08:37 PM] | |
| 11/27/2023 | 7 | | ACKNOWLEDGMENT AND NOTICE OF APPEARANCE, on behalf of Appellant Maryann Maltese, FILED. Service date 11/28/2023 by United States Mail. [Entered: 11/27/2023 05:14 PM] | |
| 11/27/2023 | 8 | | FORM D-P, on behalf of Appellant Maryann Maltese, FILED. Service date 11/28/2023 by United States Mail. [Entered: 11/27/2023 05:17 PM] | |
| 11/27/2023 | 9 | (L) | BRIEF, on behalf of Appellant Maryann Maltese, FILED. Service date 11/28/2023 by United States Mail. [Entered: 11/27/2023 06:37 PM] | |
| 11/27/2023 | 10 | | PAPERS, Record on Appeal, RECEIVED. [Entered: 11/27/2023 06:39 PM] | |
| 12/08/2023 | 11 | | NOTICE, to All Appellees, for failure to file an appearance, SENT. [Entered: 12/08/2023 10:02 AM] | |
| 12/08/2023 | 12 | | NEW CASE MANAGER, Tiana Harris, copy to pro se appellant, ASSIGNED. [Entered: 12/08/2023 03:33 PM] | |
| 12/11/2023 | 13 | | LR 31.2 SCHEDULING NOTIFICATION, on behalf of Appellant Maryann Maltese, informing Court of proposed due date 02/26/2024, RECEIVED. No Service. [Entered: 12/12/2023 08:58 AM] | |
| 12/12/2023 | 14 | | DEFECTIVE DOCUMENT, Appellant's brief, at docket entry 9, on behalf of | |

|            |    |     |                                                                                                                                                                            |
|------------|----|-----|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            |    |     | Appellant Maryann Maltese, copy to pro se appellant, FILED. [Entered: 12/12/2023 10:02 AM]                                                                                  |
| 12/27/2023 | 15 | (L) | BRIEF, on behalf of Appellant Maryann Maltese, FILED. Service date 12/27/2023 by United States Mail. [Entered: 01/05/2024 10:27 AM]                                          |
| 12/27/2023 | 16 |     | APPENDIX, volume 1 of 11, (pp. 1 - 198), on behalf of Appellant Maryann Maltese, FILED. Service date 12/27/2023 by United States Mail. [Entered: 01/05/2024 10:32 AM]         |
| 12/27/2023 | 17 |     | APPENDIX, volume 2 of 11, (pp. 1 - 185), on behalf of Appellant Maryann Maltese, FILED. Service date 12/27/2023 by United States Mail. [Entered: 01/05/2024 10:36 AM]         |
| 12/27/2023 | 18 | (L) | APPENDIX, volume 3 of 11, (pp. 1 - 215), on behalf of Appellant Maryann Maltese, FILED. Service date 12/27/2023 by United States Mail. [Entered: 01/05/2024 10:40 AM]         |
| 12/27/2023 | 19 |     | APPENDIX, volume 4 of 11, (pp. 1 - 270), on behalf of Appellant Maryann Maltese, FILED. Service date 12/27/2023 by United States Mail. [Entered: 01/05/2024 10:50 AM]         |
| 12/27/2023 | 20 |     | APPENDIX, volume 5 of 11, (pp. 1 - 270), on behalf of Appellant Maryann Maltese, FILED. Service date 12/27/2023 by United States Mail. [Entered: 01/05/2024 10:59 AM]         |
| 12/27/2023 | 21 |     | APPENDIX, volume 6 of 11, (pp. 1 - 210), on behalf of Appellant Maryann Maltese, FILED. Service date 12/27/2023 by United States Mail. [Entered: 01/05/2024 11:04 AM]         |
| 12/27/2023 | 22 |     | APPENDIX, volume 7 of 11, (pp. 1 - 242), on behalf of Appellant Maryann Maltese, FILED. Service date 12/27/2023 by United States Mail. [Entered: 01/05/2024 11:12 AM]         |
| 12/27/2023 | 23 |     | APPENDIX, volume 8 of 11, (pp. 1 - 288), on behalf of Appellant Maryann Maltese, FILED. Service date 12/27/2023 by United States Mail. [Entered: 01/05/2024 11:15 AM]         |
| 12/27/2023 | 24 |     | APPENDIX, volume 9 of 11, (pp. 1 - 276), on behalf of Appellant Maryann Maltese, FILED. Service date 12/27/2023 by United States Mail. [Entered: 01/0S/2024 11:19 AM]         |
| 12/27/2023 | 25 | (L) | APPENDIX, volume 10 of 11, (pp. 1 - 209), on behalf of Appellant Maryann Maltese, FILED. Service date 12/27/2023 by United States Mail. [Entered: 01/05/2024 11:23 AM]        |
| 12/27/2023 | 26 |     | APPENDIX, volume 11 of 11, (pp. 1 - 283), on behalf of Appellant Maryann Maltese, FILED. Service date 12/27/2023 by United States Mail. [Entered: 01/05/2024 11:26 AM]        |
| 12/27/2023 | 27 | (L) | SPECIAL APPENDIX, on behalf of Appellant Maryann Maltese, FILED. Service date 12/27/2023 by United States Mail. [Entered: 01/05/2024 11:30 AM]                              |
| 12/27/2023 | 28 | (L) | MOTION, to file oversized brief, to accept appendices, special appendix, and amended brief as compliant, on behalf of Appellant Maryann Maltese, FILED. Service date 12/27/2023 by United States Mail. [Entered: 01/05/2024 11:41 AM] |
| 01/09/2024 | 29 |     | LETTER, dated 01/09/2024, respectfully request that you remove this Office as counsel and designate each defendant-appellee only as a defendant, on behalf                  |

|  |  |  |
|---|---|---|
|  |  | of Appellee New York State Legislature, Appellee Queens College, City University of New York, Appellee Daniel Frisa, Appellee Alan Havesi, RECEIVED. Service date 01/09/2024 by United States Mail. [Entered: 01/18/2024 09:54 AM] |
| 01/18/2024 | 30 | ATTORNEY, Barbara D. Underwood for Appellee New York State Legislature, Appellee Queens College, City University of New York, Appellee Daniel Frisa, Appellee Alan Havesi,, TERMINATED. [Entered: 01/18/2024 09:58 AM] . |
| 01/18/2024 | 31 | DEFECTIVE DOCUMENT, Motion to accept amended oversized brief, apendix and apecial appendix, at docket entry 28, on behalf of Appellant Maryann Maltese, FILED. [Entered: 01/18/2024 02:03 PM] |
| 01/19/2024 | 32 | DEFECTIVE DOCUMENTS, Appellant brief, special appendix, appendix, volumes 3 and 10, at docket entries 15, 18, 25, 27, on behalf of Appellant Maryann Maltese, copy to pro se, FILED. [Entered: 01/19/2024 02:28 PM] |
| 01/22/2024 | 33 | MOTION, to file oversized brief, to accept appendices, special appendix, and amended brief as compliant, on behalf of Appellant Maryann Maltese, FILED. Service date 01/22/2024 by United States Mail. [Entered: 02/06/2024 05:29 PM] |
| 01/24/2024 | 34 | MOTION, to provide additional evidence, on behalf of Appellant Maryann Maltese, FILED. Service date 01/24/2024 by United States Mail. [Entered: 02/06/2024 05:36 PM] |
| 01/29/2024 | 35 | MOTION, to expand record, on behalf of Appellant Maryann Maltese, FILED. Service date 01/29/2024 by United States Mail. [Entered: 02/06/2024 05:42 PM] |
| 02/07/2024 | 36 | CURED DEFECTIVE DOCUMENT, Motion to file oversized brief, to accept appendices, special appendix, and amended brief as compliant, at entry 33, on behalf of Appellant Maryann Maltese, FILED. [Entered: 02/07/2024 08:52 AM] |
| 02/20/2024 | 37 | MOTION ORDER, denying motion to file an oversized brief , and to accept the appendices and special appendix as is, directing Appellant to submit a corrected brief, appendices, and special appendix within 21 days of this order, at docket entry 33, on behalf of Appellant Maryann Maltese, copy to pro se appellant, FILED. [Entered: 02/20/2024 04:12 PM] |
| 02/20/2024 | 38 | MOTION ORDER, referring, to the merits panel, motions to expand the record and to provide additional evidence, at docket entries 34 and 35, on behalf of Appellant Maryann Maltese, copy to pro se appellant, FILED. [Entered: 02/20/2024 04:21 PM] |
| 02/27/2024 | 45 | BRIEF, on behalf of Appellant Maryann Maltese, FILED. Service date 02/27/2024 by Hand Delivery. [Entered: 05/10/2024 08:30 AM] |
| 02/27/2024 | 46 | APPENDIX, volume 3 of 11, (pp. 1 - 213, on behalf of Appellant Maryann Maltese), FILED. Service date 02/27/2024 by Hand Delivery. [Entered: 05/10/2024 08:47 AM] |
| 02/27/2024 | 47 | APPENDIX, volume 10 of 11, (pp. 1 - 162, on behalf of Appellant Maryann Maltese), FILED. Service date 02/27/2024 by Hand Delivery. [Entered: 05/10/2024 08:50 AM] |
| 02/27/2024 | 53 | SPECIAL APPENDIX, on behalf of Appellant Maryann Maltese, FILED. Service date 02/27/2024 by E-mail. [Entered: 06/06/2024 01:26 PM] |
| 03/14/2024 | 39 | MOTION, to file exhibits on behalf of Appellant Maryann Maltese, FILED. Service date 03/14/2024 by United States Mail. [Entered: 03/14/2024 03:31 PM] |

| | | |
|---|---|---|
| 03/14/2024 | 40 | EXHIBITS, volume 1 of 2, on behalf of Appellant Maryann Maltese, FILED. Service date 03/14/2024 by United States Mail. [Entered: 03/14/2024 04:08 PM] |
| 03/14/2024 | 41 | EXHIBITS, volume 2 of 2 on behalf of Appellant Maryann Maltese, FILED. Service date 03/14/2024 by United States Mail. [Entered: 03/14/2024 04:17 PM] |
| 04/08/2024 | 44 | EXHIBITS, State Defendants' affirmation in response to order to show cause, on behalf of Appellant Maryann Maltese, FILED. Service date 04/08/2024 by E-mail. [Entered: 04/19/2024 02:11 PM] |
| 04/17/2024 | 42 | SUPPLEMENTARY PAPERS TO MOTION, on behalf of Appellant Maryann Maltese, FILED. Service date 04/17/2024 by E-mail. [Entered: 04/19/2024 11:28 AM] |
| 04/19/2024 | 43 | PAPERS, Termination letter and PAR Forms, RECEIVED. [Entered: 04/19/2024 01:50 PM] |
| 04/26/2024 | 48 | SUPPLEMENTARY PAPERS TO MOTION, exhibits/evidence, on behalf of Appellant Maryann Maltese, FILED. Service date 04/26/2024 by E-mail. [Entered: 05/10/2024 09:10 AM] |
| 05/07/2024 | 49 | SUPPLEMENTARY PAPERS TO MOTION, exhibits/evidence, on behalf of Appellant Maryann Maltese, FILED. Service date 05/07/2024 by E-mail. [Entered: 05/10/2024 09:15 AM] |
| 05/09/2024 | 50 | SUPPLEMENTARY PAPERS TO MOTION, "evidence to show that NYS Troopers acknowledge the 1992 incident" on behalf of Appellant Maryann Maltese, FILED. Service date 05/09/2024 by E-mail. [Entered: 05/10/2024 09:35 AM] |
| 05/15/2024 | 55 | PAPERS, Judicial calendaring, RECEIVED. [Entered: 06/18/2024 01:33 PM] |
| 05/16/2024 | 51 | MOTION, to place appeal on the argument calendar for June, on behalf of Appellant Maryann Maltese, FILED. Service date 05/16/2024 by United States Mail. [Entered: 05/20/2024 04:04 PM] |
| 05/24/2024 | 52 | PAPERS, on behalf of Appellant, RECEIVED. [Entered: 05/24/2024 03:34 PM] |
| 06/18/2024 | 54 | PAPERS, Order from the New York State Supreme Court, dismissing appeal under index No. 624815/2023, RECEIVED. [Entered: 06/18/2024 01:30 PM] |
| 07/26/2024 | 56 | NEW CASE MANAGER, Atasha Joseph, ASSIGNED. [Entered: 07/26/2024 01:07 PM] |
| 07/26/2024 | 57 | MOTION ORDER, denying motions to provide additional evidence, to expand the record, to file exhibits, and to place the appeal on the calendar, at docket entries 34, 35, 39, 51, on behalf of Appellant Maryann Maltese, by WJN, MP, AJN, copy to pro se, FILED. [Entered: 07/26/2024 01:12 PM] |

*Docket as of 8/14/2024 12:29 PM*

CERTIFIED COPY
Catherine O'Hagan Wolfe, Clerk

by _Reshawn Mon-Betta_
DEPUTY CLERK

_August 14_ , 20 _24_

*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: November 30, 2023                    CV-23-0438

_____

In the Matter of MARYANN
    MALTESE,                                          DECISION AND ORDER
               Appellant,                        ON MOTION

     v

NYS JOINT COMMISSION ON
    PUBLIC ETHICS et al.,
               Respondents.
_____

        Motion to vacate dismissal of appeal and for further relief.

        Upon the papers filed in support of the motion, and no papers having been filed in opposition thereto, it is

        ORDERED that the motion is denied, without costs.

Egan Jr., J.P., Pritzker, Ceresia and McShan, JJ., concur.

               ENTER:

               Robert D. Mayberger
               Clerk of the Court

*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: November 9, 2023                    CV-23-0360

In the Matter of MARYANN
        MALTESE,
                        Appellant,                    DECISION AND ORDER
                                                          ON MOTION

        v

NEW YORK STATE
        LEGISLATURE et al.,
                        Respondents.

Motion to vacate dismissal of appeal and for extension of time to perfect appeal.

Upon the papers filed in support of the motion, and no papers having been filed in opposition thereto, it is

ORDERED that the motion is denied, without costs.

Egan Jr., J.P., Aarons, Ceresia and McShan, JJ., concur.

ENTER:

Robert D. Mayberger
Clerk of the Court

## AFFIDAVIT OF SERVICE OF MAILING

STATE OF NEW YORK                                    )
COUNTY OF _Suffolk_                                  ) ss.:

_MaryAnn Maltese_ , being duly sworn, deposes and says:

On the __25__ day of __August__ , 20 __23__ , I served a true copy of the

annexed notice of motion and supporting affidavit by mailing the same in a sealed envelope, with

postage prepaid thereon, in a post office or official depository of the U.S. Postal Service within the

State of New York, addressed to the last known addressee(s) as indicated below:

*(Insert here the name[s] and address[es] of the person[s] to whom you are mailing the papers being filed with this Court. If necessary, attach extra pages for additional names and addresses.)*

| Name & Address | Name & Address |
|---|---|
| NYS Ab TOM Reilly 28 Liberty Street New York, NY 10005 | DAN Friso Russo + Pedranghelu 16 East Old Country Road Hicksville, NY 11801 |
| | |
| , | , |
| | |
| | |

(Signature) _MaryAnn Maltese_

(Print Name) _MaryAnn Maltese_

Sworn to before me this __25th__

day of __August__ , 20 __23__ .

_Kimberly A Verricelli_
Notary Public

Kimberly A Verricelli
Notary Public State of New York
No. 01VE6381473
Qualified in Suffolk County
Commission Expires October 1, _2026_

Revised:   September 18, 2018                    4

**AFFIDAVIT IN SUPPORT OF MOTION**

2023 AUG 23 AM 10: 43

STATE OF NEW YORK

COUNTY OF _Suffolk County_    ss.:

_MaryAnn Maltese_ , being duly sworn, deposes and says:

1. I am the _Plaintiff Pro Se, Public ethic_ in the above-entitled action.

I have appealed to the Appellate Division from an order or judgment of the _dismissal of Appeal_

Court of _Appellant_    County, dated _Albany 8/29/2022_ .

*(Specify the status of the appeal.)*

_for non compliance in Perfection of Brief. Brief submission by Plaintiff was issued May 2023 and NYAG fails to ensure Compliances of all languages and/or Actuary accounting of corrective Salary negligence_

2. By this motion I seek the following relief: _by Employer with ASA._

_Appellant to accept Pro Se Appellant Brief as is which permits handwritten or typed as content of Complaint and for how Adherence/Utilization of ASA Chapter 2022 is permitted usage and lower Court Albany Supreme failure of rendering._

3. The grounds for the motion and reasons the relief should be granted are:

*(Attach additional documentation, if necessary)*

_Pension corrective annual Salary at Robert Musica 2023 Salary Regional Legislature of $178,242-2 titles Chief of Staff/Secretary entrance date of 2002. Maltese + Musica have identified educational/Executive Breach of Confidentiality as of 2021 entrance of Brown/Moffett as P.O. + non Compliance as is - then adding in_ (Signature) _MaryAnn Maltese_

_As A Civil tort for 1992_ (Print Name) _MaryAnn Maltese_

_documented offenses - failure of So mandatory reporting is by County/Education + NYS Legislature Employer_

Sworn to before me this __25th__

day of __August__ , 20 _23_ .

_Kimberly A Verricelli_

Notary Public

Kimberly A Verricelli
Notary Public State of New York
No. 01VE6381473
Qualified in Suffolk County
Commission Expires October 1, 2026

Revised:    September 18, 2018        3

STATE OF NEW YORK        SUPREME COURT
APPELLATE DIVISION        THIRD DEPARTMENT

2023 AUG 28 AM 10: 4

_Maryann Maltese_

v

_NYS Legislature, Alan Hevesi, former NYS Comptroller, CUNY et. Al   D Anthise (former NYS Assembly)_

MOTION FOR

_Reconsideration of Dismissal_

Appellate Division Case No.

_CV-230360_

PLEASE TAKE NOTICE that, upon the annexed affidavit, sworn to the ___25___ day of

_August_ , 20 _23_ , a motion will be made at a term of this Court to be held in

the City of Albany, New York, on the _____ day of _August_ , 20 _23_ , for an

order (Specify relief which you seek.):

_Reconsideration of judicial dismissal. Complainant Appellant as Public Offf._
_vested ABA VICAM by Employer Educator and current legislators_
_2018-forward denials of Employee Rights. Brown, Mottery, Racy, Bungho_
_reprimanding & stripping over titles within their own Retirements._
_P.O. Maltese entered service 1992. Andrew Racia 1991. All are Pensioner_
_Alan Hevesi & Dan Frise are on State_
_Pension._

Dated: _August 25, 2023_

(Signature)  _MaryAnn Maltese_
(Print Name)  _MaryAnn Maltese_
(Address)  _19 Eagler Drive_
_East Northport, NY 11731_
(Telephone)  _631-644-5768_

**PLEASE TAKE NOTICE** that, pursuant to section 1250.4 (a) (7) and (8) of the Practice Rules of the Appellate Division, this motion will be submitted on the papers, and the personal appearance of counsel or the parties is neither required nor permitted.

Revised: September 18, 2018        2

*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: July 5, 2023                CV-23-0360

_____

In the Matter of MARYANN
    MALTESE,
                            Appellant,                DECISION AND ORDER
                                                          ON MOTION
        v

NEW YORK STATE LEGISLATURE
    et al.,
                            Respondents.
_____

        Motion to expand record.

        Motion for retroactive corrective earnings and further relief.

        Upon the papers filed in support of the motions, and no papers having been filed in opposition thereto, it is

        ORDERED that the motions are denied, without costs.


Garry, P.J., Clark, Reynolds Fitzgerald, Fisher and McShan, JJ., concur.


                        ENTER:

                        Robert D. Mayberger
                        Clerk of the Court

TR  22-057593-LI

State of New York
**Supreme Court Chambers**
Albany County Courthouse
16 Eagle Street, Room 271
Albany, New York 12207
**(518) 285-4345**
mackeychambers@nycourts.gov

RECEIVED
NYS OFFICE OF THE
FEB 2 7 2023
ATTORNEY GENERAL
CLAIMS BUREAU

L. MICHAEL MACKEY
Justice of the Supreme Court

JAIME C. LOURIDAS, ESQ.
Law Clerk
LAURIE L. HEIDER
Secretary

February 24, 2023

Thomas J. Reilly, Esq.
Assistant Attorney General
The Capitol
Albany, New York 12224

Re:     Maltese v NYS Legislature, et al
        **Index No.: 9234-2022**

Dear Mr. Reilly:

Enclosed please find original Decision and Order, for filing and service.

Very truly yours,

L. Michael Mackey
Supreme Court Justice

cc:     Maryann Maltese, *pro se* (w/enc.)
        19 Ringler Drive
        East Northport, New York 11731

        Vincent J. Nofi, Esq. (w/enc.)
        Scalzi & Nofi, PLLC
        16 E. Old Country Road
        Hicksville, New York 11801



RECEIVED
NYS OFFICE OF THE

FEB 2 7 2023

ATTORNEY GENERAL
CLAIMS BUREAU

STATE OF NEW YORK
SUPREME COURT                                                COUNTY OF ALBANY

In the Matter of the Application of
MARYANN MALTESE,

                             Plaintiff/Petitioner,

For a Judgment Pursuant to Article 78
of the Civil Practice Law and Rules,

       -against-

NYS LEGISLATURE, CARL HEASTIE, CUNY
QUEENS COLLEGE, PROFESSOR ALAN HEVESI,
ALAN HEVESI former NYS ASSEMBLYMAN, and
DANIEL FRISA, former NYS ASSEMBLYMAN,
                            Defendants/Respondents.

**DECISION
AND
ORDER**

(Supreme Court, Albany County, Special Term, February 24, 2023)
Index No. 09234-2022
(RJI No. 01-22-ST2666)

(Justice L. Michael Mackey, Presiding)

APPEARANCES:       Maryann Maltese
                         Plaintiff/Petitioner *Pro Se*
                         19 Ringler Drive
                         East Northport, New York 11731

                         Hon. Letitia James
                         Attorney General of New York State
                         Attorney for Defendants/Respondents the New York
                            State Legislature and Carl E. Heastie, Speaker of
                            the New York State Assembly, and CUNY
                            Queens College
                         (Thomas J. Reilly, Assistant Attorney General,
                           of Counsel)
                         Department of Law
                         The Capitol
                         Albany, New York 12224

1

Scalzi & Nofi, PLLC
Attorneys for Defendant/Respondent Daniel Frisa
(Vincent J. Nofi, Esq., of Counsel)
16 E. Old Country Road
Hicksville, New York 11801

Mackey, J.:

Plaintiff/petitioner *pro se* Maryann Maltese ("petitioner") commenced this hybrid proceeding[1] and action for declaratory relief seeking civil damages under the "Adult Survivor's Act" ("ASA") and to be awarded certain academic degrees from defendant/respondent the City University of New York, Queens College ("CUNY"). In a pre-answer motion pursuant to CPLR §§ 7804(f); 3211(a)(2); 3211(a)(5); and 3211(a)(8), CUNY seeks dismissal of the petition for, *inter alia*, lack of personal jurisdiction.[2] Petitioner opposes.

As an initial matter, petitioner cannot maintain her petition because this Court has not acquired personal jurisdiction over CUNY. CPLR § 307(2) contain the rules for service of process on a state official or state agency. That section provides, in pertinent part, that personal jurisdiction over a state agency is accomplished by:

"(1) delivering the summons to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or (2) by mailing the summons by certified mail, return receipt requested, to ... the chief executive officer of such agency, and by personal service upon [an assistant attorney-general at an office of the attorney-general or the attorney-general within the state]. Service by certified mail shall not be complete until the summons is received in a principal office of the agency and until personal service upon [an assistant attorney-general at an office of the attorney-general or the attorney-general within the state] is completed."

---

1 The Court notes that petitioner filed both a "notice of petition" and "petition" as well as a "summons" and "complaint." For purposes of these motions to dismiss, the matter will be deemed to be a hybrid proceeding.

2 By Decision and Order dated February 4, 2023, this Court granted defendants/respondents the "NYS Legislature" and Assembly Speaker Carl E. Heastie's motion to dismiss plaintiff's complaint and denied co-defendant Daniel Frisa's motion to dismiss.

2

In support of its motion to dismiss, CUNY has submitted the affidavit of Sheena David, employed by CUNY as a paralegal in its Office of General Counsel. Ms. David indicates that her office maintains a database to record receipt of pleadings and papers served upon CUNY. Ms. David's responsibilities include searching the database for information on litigation matters. Ms. David further indicates that she caused a search of Counsel's database to determine if any legal papers in the above matter had been received and found that CUNY was not served with a summons and complaint or a notice of petition and petition in this matter.

Petitioner does not provide any offer of proof that she complied with the requirements of CPLR § 307(2). As such, this proceeding is "jurisdictionally defective" and CUNY demonstrated its entitlement to dismissal (*see Randolph v Office of New York State Comptroller*, 168 AD3d 1195 [3rd Dept. 2019]; *Finnan v Ryan*, 50 AD3d 1306 [3rd Dept. 2008]; *Maddox v State University of New York at Albany*, 32 AD3d 599 [3rd Dept. 2006]; *Rosenberg v. New York State Bd. of Regents*, 2 AD3d 1003 [3rd Dept. 2003]).

Even if personal jurisdiction had been obtained, to the extent that the petitioner alleges that she is entitled to certain academic degrees from CUNY, her claims are untimely. A proceeding pursuant to CPLR article 78 "must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner ..., or after the respondent's refusal, upon the demand of the petitioner ..., to perform its duty" (CPLR § 217[1]). Petitioner's petition asserts "issues of academia credation intentionally denied due to [defendant/respondent Alan Hevisi's] retaliation" (sic"). Inasmuch as plaintiff was admittedly enrolled at CUNY in the early 1990s, the limitations period within which to challenge what academic degrees she feels entitled to has long expired.

To the extent plaintiff relies on the Adult Survivor's Act to revive her purported entitlement to certain academic degrees from CUNY, the ASA revives the period to bring an action for:

3

[allegations] of 'intentional or negligent acts or omissions by
a person for physical, psychological, or other injury or
condition suffered as a result of conduct which would
constitute a sexual offense as defined in article one hundred
thirty of the penal law committed against such person who
was eighteen years of age or older, or incest as defined in
section 255.26 or 255.27 of the penal law committed against
such person who was eighteen years of age or older, which is
barred as of the effective date of this section because the
applicable period of limitation has expired, and/or the plaintiff
previously failed to file a notice of claim or a notice of
intention to file a claim, is hereby revived, alleging intentional
or negligent acts or omissions by a person for physical,
psychological, or other injury or condition suffered as a result
of conduct which would constitute a sexual offense as defined
in article one hundred thirty of the penal law committed
against such person who was eighteen years of age or older,
or incest as defined in section 255.26 or 255.27 of the penal
law committed against such person who was eighteen years of
age or older, which is barred as of the effective date of this
section because the applicable period of limitation has
expired, and/or the plaintiff previously failed to file a notice
of claim or a notice of intention to file a claim (CPLR § 214-j)

The Adult Survivors Act makes no provision to extend the limitation of time to
bring any other action.

Moreover, to the extent petitioner seeks compensatory damages against CUNY in
connection with the allegations against defendant/respondent Alan Hevesi in its capacity
as an employer or otherwise, petitioner's allegations sounding in tort against CUNY may

4

not be brought in the New York State Supreme Court (*see* Education Law § 6224(4); Court of Claims Act § 9; *Jones v City University of New York*, 57 NY2d 984 [1982]).

For the reasons set forth above, the proceeding is dismissed in its entirety against CUNY and all relief requested is denied.

This constitutes the Decision and Order of the Court. This Decision and Order is returned to the Attorney General. All other papers are delivered to the Supreme Court Clerk for transmission to the County Clerk. The signing of this Decision, Order and Judgment shall not constitute entry or filing under CPLR 2220. Counsel is not relieved from the applicable provisions of this rule with regard to filing, entry and Notice of Entry.

SO ORDERED.
ENTER.

Dated:        Albany, New York
              February 24, 2023


                                        L. MICHAEL MACKEY
                                        Supreme Court Justice

                                        *3/10/23 AS*

Papers Considered:

(1)    Notice of Petition dated December 9, 2022;
(2)    Petition dated December 9, 2022, with exhibits annexed;
(3)    Notice of Motion dated February 7, 2023;
(4)    Affirmation of Thomas J. Reilly, Esq., dated February 7, 2023, with exhibit annexed;
(5)    Memorandum of Law dated February 7, 2023;
(8)    Affidavit of Maryann Maltese dated February 10, 2023.

5



**State of New York**
**Supreme Court Chambers**
Albany County Courthouse
16 Eagle Street, Room 271
Albany, New York 12207
**(518) 285-4345**
mackeychambers@nycourts.gov

*RECEIVED*
*NYS OFFICE OF THE*
*FEB 2 7 2023*
*ATTORNEY GENERAL*
*CLAIMS BUREAU*

JAIME C. LOURIDAS, ESQ.
Law Clerk
LAURIE L. HEIDER
Secretary

L. MICHAEL MACKEY
Justice of the Supreme Court

February 24, 2023

Thomas J. Reilly, Esq.
Assistant Attorney General
The Capitol
Albany, New York 12224

Re:    Maltese v NYS Legislature, et al
        Index No.: 9234-2022

Dear Mr. Reilly:

Enclosed please find original Decision and Order, for filing and service.

Very truly yours,

L. Michael Mackey
Supreme Court Justice

cc:    Maryann Maltese, *pro se* (w/enc.)
        19 Ringler Drive
        East Northport, New York 11731

        Vincent J. Nofi, Esq. (w/enc.)
        Scalzi & Nofi, PLLC
        16 E. Old Country Road
        Hicksville, New York 11801

RECEIVED
NYS OFFICE OF THE

STATE OF NEW YORK                 FEB 2 7 2023
SUPREME COURT                                        COUNTY OF ALBANY
                              ATTORNEY GENERAL
In the Matter of the Application of CLAIMS BUREAU
MARYANN MALTESE,

                              Plaintiff/Petitioner,
                                                         **DECISION**
                                                         **AND**
For a Judgment Pursuant to Article 78                    **ORDER**
of the Civil Practice Law and Rules,

        -against-


NYS  LEGISLATURE,  CARL  HEASTIE,  CUNY
QUEENS COLLEGE, PROFESSOR ALAN HEVESI,
ALAN  HEVESI  former  NYS  ASSEMBLYMAN,  and
DANIEL FRISA, former NYS ASSEMBLYMAN,
                              Defendants/Respondents.


(Supreme Court, Albany County, Special Term, February 24, 2023)
Index No. 09234-2022
(RJI No. 01-22-ST2666)

(Justice L. Michael Mackey, Presiding)

APPEARANCES:    Maryann Maltese
                Plaintiff/Petitioner *Pro Se*
                19 Ringler Drive
                East Northport, New York 11731

                Hon. Letitia James
                Attorney General of New York State
                Attorney for Defendants/Respondents the New York
                    State Legislature and Carl E. Heastie, Speaker of
                    the  New  York  State  Assembly,  and  CUNY
                    Queens College
                (Thomas J. Reilly, Assistant Attorney General,
                    of Counsel)
                Department of Law
                The Capitol
                Albany, New York 12224

1



State of New York
**Supreme Court Chambers**
Albany County Courthouse
16 Eagle Street, Room 271
Albany, New York 12207
(518) 285-4345
mackeychambers@nycourts.gov

RECEIVED
NYS OFFICE OF THE
FEB 27 2023
ATTORNEY GENERAL
CLAIMS BUREAU

L. MICHAEL MACKEY
Justice of the Supreme Court

JAIME C. LOURIDAS, ESQ.
Law Clerk
LAURIE L. HEIDER
Secretary

February 24, 2023

Thomas J. Reilly, Esq.
Assistant Attorney General
The Capitol
Albany, New York 12224

2023 MAR 10  PM 3:00
ALBANY COUNTY CLERK
RECEIVED

Re:   Maltese v NYS Legislature, et al
      Index No.: 9234-2022

Dear Mr. Reilly:

   Enclosed please find original Decision and Order, for filing and service.

                              Very truly yours,

                              L. Michael Mackey
                              Supreme Court Justice

cc:   Maryann Maltese, *pro se* (w/enc.)
      19 Ringler Drive
      East Northport, New York 11731

      Vincent J. Nofi, Esq. (w/enc.)
      Scalzi & Nofi, PLLC
      16 E. Old Country Road
      Hicksville, New York 11801

RECEIVED
NYS OFFICE OF THE
FEB 2 7 2023
ATTORNEY GENERAL
CLAIMS BUREAU

STATE OF NEW YORK
SUPREME COURT                                              COUNTY OF ALBANY
_____

In the Matter of the Application of
MARYANN MALTESE,

                                          Plaintiff/Petitioner,

                                                                    **DECISION**
For a Judgment Pursuant to Article 78                               **AND**
of the Civil Practice Law and Rules,                                **ORDER**

          -against-


NYS LEGISLATURE, CARL HEASTIE, CUNY
QUEENS COLLEGE, PROFESSOR ALAN HEVESI,
ALAN HEVESI former NYS ASSEMBLYMAN, and
DANIEL FRISA, former NYS ASSEMBLYMAN,
                                          Defendants/Respondents.
_____

(Supreme Court, Albany County, Special Term, February 24, 2023)
Index No. 09234-2022
(RJI No. 01-22-ST2666)

(Justice L. Michael Mackey, Presiding)

APPEARANCES:           Maryann Maltese
                       Plaintiff/Petitioner *Pro Se*
                       19 Ringler Drive
                       East Northport, New York 11731

                       Hon. Letitia James
                       Attorney General of New York State
                       Attorney for Defendants/Respondents the New York
                         State Legislature and Carl E. Heastie, Speaker of
                         the New York State Assembly, and CUNY
                         Queens College
                       (Thomas J. Reilly, Assistant Attorney General,
                         of Counsel)
                       Department of Law
                       The Capitol
                       Albany, New York 12224

1

Scalzi & Nofi, PLLC
Attorneys for Defendant/Respondent Daniel Frisa
(Vincent J. Nofi, Esq., of Counsel)
16 E. Old Country Road
Hicksville, New York 11801

Mackey, J.:

Plaintiff/petitioner *pro se* Maryann Maltese ("petitioner") commenced this hybrid proceeding[1] and action for declaratory relief seeking civil damages under the "Adult Survivor's Act" ("ASA") and to be awarded certain academic degrees from defendant/respondent the City University of New York, Queens College ("CUNY"). In a pre-answer motion pursuant to CPLR §§ 7804(f); 3211(a)(2); 3211(a)(5); and 3211(a)(8), CUNY seeks dismissal of the petition for, *inter alia*, lack of personal jurisdiction.[2] Petitioner opposes.

As an initial matter, petitioner cannot maintain her petition because this Court has not acquired personal jurisdiction over CUNY. CPLR § 307(2) contain the rules for service of process on a state official or state agency. That section provides, in pertinent part, that personal jurisdiction over a state agency is accomplished by:

"(1) delivering the summons to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or (2) by mailing the summons by certified mail, return receipt requested, to ... the chief executive officer of such agency, and by personal service upon [an assistant attorney-general at an office of the attorney-general or the attorney-general within the state]. Service by certified mail shall not be complete until the summons is received in a principal office of the agency and until personal service upon [an assistant attorney-general at an office of the attorney-general or the attorney-general within the state] is completed."

---

[1] The Court notes that petitioner filed both a "notice of petition" and "petition" as well as a "summons" and "complaint." For purposes of these motions to dismiss, the matter will be deemed to be a hybrid proceeding.

[2] By Decision and Order dated February 4, 2023, this Court granted defendants/respondents the "NYS Legislature" and Assembly Speaker Carl E. Heastie's motion to dismiss plaintiff's complaint and denied co-defendant Daniel Frisa's motion to dismiss.

2

In support of its motion to dismiss, CUNY has submitted the affidavit of Sheena David, employed by CUNY as a paralegal in its Office of General Counsel. Ms. David indicates that her office maintains a database to record receipt of pleadings and papers served upon CUNY. Ms. David's responsibilities include searching the database for information on litigation matters. Ms. David further indicates that she caused a search of Counsel's database to determine if any legal papers in the above matter had been received and found that CUNY was not served with a summons and complaint or a notice of petition and petition in this matter.

Petitioner does not provide any offer of proof that she complied with the requirements of CPLR § 307(2). As such, this proceeding is "jurisdictionally defective" and CUNY demonstrated its entitlement to dismissal (*see Randolph v Office of New York State Comptroller*, 168 AD3d 1195 [3rd Dept. 2019]; *Finnan v Ryan*, 50 AD3d 1306 [3rd Dept. 2008]; *Maddox v State University of New York at Albany*, 32 AD3d 599 [3rd Dept. 2006]; *Rosenberg v. New York State Bd. of Regents*, 2 AD3d 1003 [3rd Dept. 2003]).

Even if personal jurisdiction had been obtained, to the extent that the petitioner alleges that she is entitled to certain academic degrees from CUNY, her claims are untimely. A proceeding pursuant to CPLR article 78 "must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner ..., or after the respondent's refusal, upon the demand of the petitioner ..., to perform its duty" (CPLR § 217[1]). Petitioner's petition asserts "issues of academia credation intentionally denied due to [defendant/respondent Alan Hevisi's] retaliation" (sic"). Inasmuch as plaintiff was admittedly enrolled at CUNY in the early 1990s, the limitations period within which to challenge what academic degrees she feels entitled to has long expired.

To the extent plaintiff relies on the Adult Survivor's Act to revive her purported entitlement to certain academic degrees from CUNY, the ASA revives the period to bring an action for:

not be brought in the New York State Supreme Court (*see* Education Law § 6224(4); Court of Claims Act § 9; *Jones v City University of New York*, 57 NY2d 984 [1982]).

For the reasons set forth above, the proceeding is dismissed in its entirety against CUNY and all relief requested is denied.

This constitutes the Decision and Order of the Court. This Decision and Order is returned to the Attorney General. All other papers are delivered to the Supreme Court Clerk for transmission to the County Clerk. The signing of this Decision, Order and Judgment shall not constitute entry or filing under CPLR 2220. Counsel is not relieved from the applicable provisions of this rule with regard to filing, entry and Notice of Entry.

SO ORDERED.
ENTER.

Dated:    Albany, New York
          February 24, 2023

L. MICHAEL MACKEY
Supreme Court Justice

3/10/23 AB

Papers Considered:

(1) Notice of Petition dated December 9, 2022;
(2) Petition dated December 9, 2022, with exhibits annexed;
(3) Notice of Motion dated February 7, 2023;
(4) Affirmation of Thomas J. Reilly, Esq., dated February 7, 2023, with exhibit annexed;
(5) Memorandum of Law dated February 7, 2023;
(8) Affidavit of Maryann Maltese dated February 10, 2023.

5

[allegations] of 'intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was eighteen years of age or older, or incest as defined in section 255.26 or 255.27 of the penal law committed against such person who was eighteen years of age or older, which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, is hereby revived, alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was eighteen years of age or older, or incest as defined in section 255.26 or 255.27 of the penal law committed against such person who was eighteen years of age or older, which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim (CPLR § 214-j)

The Adult Survivors Act makes no provision to extend the limitation of time to bring any other action.

Moreover, to the extent petitioner seeks compensatory damages against CUNY in connection with the allegations against defendant/respondent Alan Hevesi in its capacity as an employer or otherwise, petitioner's allegations sounding in tort against CUNY may

4

STATE OF NEW YORK
SUPREME COURT                COUNTY OF ALBANY
 In the Matter of the Application of

MARYANN MALTESE,

                                            Petitioner,

                                                              NOTICE OF MOTION
                                                                 TO DISMISS

                    -against-                        Index No. 09234-2022
                                                     RJI No. 01-22-ST2666
NYS LEGISLATURE, CARL HEASTIE, CUNY QUEENS           Return date:
COLLEGE, PROFESSOR ALAN HEVESI, ALAN HEVESI          February 24, 2023
former NYS ASSEMBLYMAN, and DANIEL FRISA,
former NYS ASSEMBLYMAN

                                            Respondents.

─────────────────────────────────────────────────

        **PLEASE TAKE NOTICE** that upon the annexed Affirmation of Thomas J. Reilly, the

Affidavit of Sheena David, and the accompanying Memorandum of Law that Respondent the

City University of New York, Queens College ("CUNY") by its attorney, Letitia James,

Attorney General of the State of New York, and Thomas J. Reilly, Assistant Attorney General of

Counsel, interposes the following objections in point of law to the Petition and moves this Court

for an order pursuant to CPLR §§ 7804(f). 3211(a)(2), 3211(a)(5), and 3211(a)(8) dismissing this

matter as the CUNY on the basis that:

        a.  The Notice of Petition and Petition nor Summons and Complaint were served on

            Respondent CUNY;

        b.  This Court lacks subject matter jurisdiction over the allegations raised;

        c.  This matter was not interposed within the applicable statute of limitations.

        **PLEASE TAKE FURTHER NOTICE** that the Respondent will move this Court at a

Special Term of the Supreme Court, held in and for the County of Albany, at the Albany County

Court House, on February 24, 2023 at 9:30 a.m., or as soon thereafter as counsel can be heard, to

dismiss the Petition in its entirety, or alternatively, in the event that the motion is denied, for

leave pursuant to CPLR 7804(f) to serve an answer, within sixty (60) days, and for such other

relief as may be just and proper.

Dated: Albany, New York
       February 7, 2023

                                LETITIA JAMES
                                Attorney General of the State of New York
                                Attorney for Respondents *NYS Legislature,*
                                *Carl Heastie, and CUNY Queens College,*
                                The Capitol
                                Albany, New York 12224

                                By:
                                THOMAS J. REILLY
                                Assistant Attorney General, of Counsel
                                Telephone:  (518) 776-2254

TO:     Maryann Maltese (via U.S. mail)
          Petitioner pro se
          19 Ringler Drive
          East Northport, NY  11731

CC:     Vincent J. Nofi, Esq.
          Scalzi & Nofi, PLLC
          *Attorneys for Respondent Daniel Frisa*
          16 E. Old Country Road
          Hicksville, NY 11801

STATE OF NEW YORK
SUPREME COURT                    COUNTY OF ALBANY
In the Matter of the Application of

MARYANN MALTESE,

                                                    **AFFIRMATION**
                              Petitioner,

                                         Index No. 09234-2022
                                         RJI No.  01-22-ST2666

              -against-

NYS LEGISLATURE, CARL HEASTIE, CUNY QUEENS
COLLEGE, PROFESSOR ALAN HEVESI, ALAN HEVESI
former NYS ASSEMBLYMAN, and DANIEL FRISA,
former NYS ASSEMBLYMAN

                              *Respondents.*
_____

        Thomas J. Reilly, an attorney admitted to practice in the State of New York, affirms the

following under penalty of perjury pursuant to CPLR 2106.

        1.      I am an Assistant Attorney General of counsel in this matter to Letitia James,

Attorney General of the State of New York, attorney for respondents New York State Legislature,

New York State Assembly Speaker Carl Heastie, and the City University of New York Queens

College ("CUNY").

        2.      The matters contained in this affirmation are true to my knowledge, except as to

those matters alleged on information and belief, and as to those matters, I believe them to be true.

        3.      This Affirmation is submitted on behalf of respondent CUNY's motion to dismiss

pursuant to  CPLR §§ 7804(f). 3211(a)(2), 3211(a)(5), and 3211(a)(7).

        4.      This respondent also submits the affidavit from Sheena David, a paralegal with

respondent's Office of Counsel.  See Exhibit A.

5.      On December 13, 2022, the Office of the Attorney General ("OAG") was served with a Notice of Petition and Petition in connection with the above-captioned action with an attached "Summons" and a "Complaint." Other than the attached no other supporting papers or exhibits were served upon the OAG or Respondents.

6.      On or about January 5, 2023 respondents New York State Legislature and New York State Assembly Speaker Carl Heastie moved to dismiss on various grounds.   Now, CUNY moves to dismiss on the grounds that it was not served with the notice of petition and petition or the summons and complaint. See Exhibit A, David Affidavit.  This respondent also moves that the special proceeding has been brought well past the time to serve an Article 78 petition and that to extent that Ms. Maltese seeks monetary damages against this respondent the Supreme Court lacks subject matter jurisdiction.

7.      For the reasons set forth in the accompanying memorandum of law, this matter should be dismissed as to respondent CUNY.

WHEREFORE, Respondent the CUNY University of New York, Queens College respectfully requests that the Court issue an order (1) dismissing the petition/complaint and (2) granting it any further relief that the Court deems just, proper and equitable.


Dated: Albany, New York
          February 7, 2023


                                                    THOMAS J. REILLY, ESQ.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ALBANY
-----------------------------------------------------------------X

MARYANN MALTESE,

                                          Plaintiff/Petitioner

                 -against-

NYS LEGISLATURE, CARL HEASTIE,
CUNY QUEENS COLLEGE
PROFESSOR ALAN HEVESI,
ALAN HEVESI, FORMER NYS ASSEMBLYMAN,
DANIEL FRISA, FORMER NYS ASSEMBLYMAN,

                                  Defendants/Respondents

-----------------------------------------------------------------X

                                          **AFFIDAVIT**

                                          **Index No.: 09234/2022**

STATE OF NEW YORK      )
                                    ss.:
COUNTY OF NEW YORK  )

        SHEENA DAVID, being duly sworn, deposes and says:

        1.      I am a paralegal in the City University of New York, Office of General Counsel
("OGC").

        2.      One of the duties of the above position requires that I be familiar with the record
keeping system of OGC regarding Claims, Summons and Complaints and Notice of Petitions and
Petitions that are served upon City University of New York ("CUNY"). It is the practice of OGC
to record on our computer filing system all documents, including Claims, Summons and
Complaints, Notices of Petitions and Petitions served on CUNY.

        3.      At the request of Thomas J. Reilly, Assistant Attorney General, I conducted a
thorough search of the computer filing system of OGC, and the hard copy files maintained in this
office to determine whether any the Summons and Complaint and Notice of Petition and Petition
in the above captioned matter was served on OGC.

4.    Based on my review of the computer filing system and of the hard copy files maintained in this office, no record was located establishing that OGC was served with a Summons and Complaint or a Notice of Petition and Petition in the above referenced matter.

Dated: February    2,    2023
       New York, New York

_____
SHEENA DAVID

STATE OF NEW YORK        )
                         } ss.:
COUNTY OF NEW YORK       )

On this _ard_ day of February 2023, before me personally appeared Sheena David, to me known and known to be the person described in and who executed the foregoing release and acknowledged to me that he executed the same.

_____
NOTARY PUBLIC

ADRIANA E BLANCO
NOTARY PUBLIC, State of New York
No. 01BL6420660
Qualified in New York County
My Commission Expires August 16, 2025

Sir/Madam:

Take notice that the within is a copy of

, duly filed and entered in the Office of the Clerk of the Supreme Court of Albany County on the        day of        2023.

Yours, etc.,

**LETITIA JAMES**
Attorney General of the
State of New York
Attorney for Defendant

The Capitol
Albany, New York 12224

---

STATE OF NEW YORK
SUPREME COURT ALBANY COUNTY

MARYANN MALTESE,

Claimant,

-against-

NYS LEGISLATURE, CARL HEASTIE, CUNY QUEENS COLLEGE, PROFESSOR ALAN HEVESI, ALAN HEVESI FORMER NYS ASSEMBLYMAN and DANIEAL FRISA former NYS ASSEMBLYMAN,

Defendant.

INDEX NO.: 09234-2022

**NOTICE OF MOTION TO DISMISS AND AFFIRMATION IN SUPPORT OF MOTION TO DISMISS**

**LETITIA JAMES**
Attorney General of the
State of New York
Attorney for the Defendant
The Capitol
Albany, NY 12224

Service if a copy of within is admitted this _____ day of _____ 2023.



State of New York
**Supreme Court Chambers**
Albany County Courthouse
16 Eagle Street, Room 271
Albany, New York 12207
**(518) 285-4345**
mackeychambers@nycourts.gov

L. MICHAEL MACKEY
Justice of the Supreme Court

JAIME C. LOURIDAS, ESQ.
Law Clerk
LAURIE L. HEIDER
Secretary

February 8, 2023

Thomas J. Reilly, Esq.
Assistant Attorney General
The Capitol
Albany, New York 12224

Re:    Maltese v NYS Legislature, et al
       Index No.: 9234-22

Dear Mr. Reilly:

    Enclosed please find original Decision and Order, for filing and service.

Very truly yours,

L. Michael Mackey
Supreme Court Justice

cc:    Maryann Maltese, *pro se* (w/enc.)
       19 Ringler Drive
       East Northport, New York 11731

       Vincent J. Nofi, Esq. (w/enc.)
       Scalzi & Nofi, PLLC
       16 E. Old Country Road
       Hicksville, New York 11801

STATE OF NEW YORK
SUPREME COURT                                    COUNTY OF ALBANY

In the Matter of the Application of
MARYANN MALTESE,

                                    Plaintiff/Petitioner,

For a Judgment Pursuant to Article 78
of the Civil Practice Law and Rules,

            -against-


NYS LEGISLATURE, CARL HEASTIE, CUNY
QUEENS COLLEGE, PROFESSOR ALAN HEVESI,
ALAN HEVESI former NYS ASSEMBLYMAN, and
DANIEL FRISA, former NYS ASSEMBLYMAN,

                                    Defendants/Respondents.

**DECISION
AND
ORDER**

---

(Supreme Court, Albany County, Special Term, February 1, 2023)
Index No. 09234-2022
(RJI No. 01-22-ST2666)

(Justice L. Michael Mackey, Presiding)

APPEARANCES:        Maryann Maltese
                    Plaintiff/Petitioner *Pro Se*
                    19 Ringler Drive
                    East Northport, New York 11731

                    Hon. Letitia James
                    Attorney General of New York State
                    Attorney for Defendants/Respondents the New York
                       State Legislature and Carl E. Heastie, Speaker of
                       the New York State Assembly
                    (Thomas J. Reilly, Assistant Attorney General,
                       of Counsel)
                    Department of Law
                    The Capitol
                    Albany, New York 12224

RECEIVED 2023 FEB -8 PM 3:43 ALBANY COUNTY CLERK

1

Scalzi & Nofi, PLLC
Attorneys for Defendant/Respondent Daniel Frisa
(Vincent J. Nofi, Esq., of Counsel)
16 E. Old Country Road
Hicksville, New York 11801

Mackey, J.:

Plaintiff/petitioner *pro se* Maryann Maltese ("plaintiff") is allegedly a former employee of the New York State Assembly. On December 9, 2022, she commenced this hybrid proceeding[1] and action for declaratory relief seeking civil damages under the "Adult Survivor's Act" ("ASA") and to be awarded certain academic degrees from respondent CUNY Queens College ("CUNY"). She also seeks "base earnings" and a "Tier 4 pension status" as of "July 31, 2013." In lieu of an answer, defendants/respondents the New York State Legislature,[2] Assembly Speaker Carl E. Heastie ("Speaker Heastie"), and Daniel Frisa ("Mr. Frisa") move separately pursuant to CPLR §§§§ 7804(f); 3211(a)(2); 3211(a)(5); and 3211(a)(7) to dismiss the petition/complaint insofar as asserted against them. The motions are consolidated for disposition. Petitioner opposes. The remaining defendants/respondents have not appeared.

### Mr. Frisa

On a motion to dismiss a complaint pursuant to CPLR § 3211(a)(7), the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). "Whether the complaint will be able to survive a motion for summary judgment, or whether plaintiff will be able to prove the claims, is not the inquiry on a motion to dismiss pursuant to

---

[1] The Court notes that petitioner filed both a "notice of petition" and "petition" as well as a "summons" and "complaint." For purposes of these motions to dismiss, the matter will be deemed to be a hybrid proceeding.

[2] The "New York State Legislature" is not a suitable entity in that it is a bicameral legislature consisting of the New York State Assembly and the New York State Senate.

CPLR 3211 (a) (7)" (*see Victory State Bank v EMBA Hylan, LLC*, 169 AD3d 963, 965 [2nd Dept. 2019]). CPLR § 3211(a)(5), in relevant part, allows a party to make a motion to dismiss on the ground that "the cause of action may not be maintained because of . . . statute of limitations."

In her complaint, petitioner alleges that in May 1992, at an unspecified "pub/restaurant" on Washington Avenue in Albany, New York, Mr. Frisa "forcibly" kissed plaintiff's ear and whispered "You're nothing but a great piece of Democratic ass. The only reason you're in the internship program is so we can fuck you. I pushed [Mr. Frisa] away he proceeded to keep it up and I left the bar."

In moving to dismiss, Mr. Frisa argues that these allegations are insufficient to state a cause of action to predicate the use of the Adult Survivor's Act's revival window, thereby defeating the complaint on statute of limitations grounds. In this regard, Mr. Frisa urges that even if plaintiff's allegations are true, this alleged conduct does not amount to a crime under the Penal Law because the ear is not a "sexual or intimate" part of the body (Penal Law § 130.00[3]; Penal Law § 130.52[3]).

CPLR § 214-j, enacted in the Adult Survivor's Act ("ASA"), provides for a revival of certain personal injury claims that would have been barred by the then-statute of limitations if the alleged conduct was committed against a person who was eighteen years of age or older and constituted either (1) "a sexual offense as defined in article one hundred thirty of the penal law"; or (2) "incest as defined in section 255.27, 255.26 or 255.25 of the penal law." In other words, a complaint must allege claims based on a sexual offense as described in one of the enumerated sections of the penal law in order to qualify as an ASA action.

Relevant to this action are the sections of the penal law in article 130. CPLR § 214-j does not limit the basis of liability under the ASA to specific sections in article 130. The statute's language incorporates all sexual offenses listed in article 130 "as defined in article one hundred thirty of the penal law" (CPLR § 214-j).

3

As relevant to this complaint, section 130.00 of article 130 defines sexual contact as "any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party" (Penal Law § 130.00[3]). Under section 130.52, a person is guilty of forcible touching when, among other things, such person intentionally and for no legitimate purpose "forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person . . ." (Penal Law § 130.52; *see e.g. People v Hatton*, 26 NY3d 364, 369 [2015] ["Penal Law § 130.05 requires that the act [of forcible touching] be committed without the victim's consent, meaning that the victim does not expressly or impliedly acquiesce in the actor's conduct] [internal quotation marks and citation omitted]). "[W]hen done with the relevant mens rea, any bodily contact involving the application of some level of pressure to the victim's sexual or intimate parts qualifies as a forcible touch within the meaning of Penal Law § 130.52" (*People v Guaman*, 22 NY3d 678, 684 [2014]).

While the legislature did not promulgate an express list of sexual or intimate body parts, under the caselaw, "intimate parts" can include parts of the body that may or may not be in close proximity to the sexual organs, depending on the location on the body and the context of the touching. That is, a finder of fact can consider how, where and why the touching took place, anything said by either of the parties involved, and any other facts and circumstances surrounding the touching (*see, e.g., Matter of Michael J.*, 267 AD2d 126 [1st Dept.1999] [kissing]; *Matter of David V.*, 226 AD2d 319 [1st Dept. 1996] [kissing using the tongue]; *see also People v Sene*, 66 AD3d 427 [1st Dept. 2009] [defendant's mouth touching the victim's neck]; *People v Manning*, 81 AD3d 1181 [3rd Dept. 2011] [sexual assault began when defendant's hands moved up the leg into the area of the thigh]; *People v Reome*, 309 AD2d 1067 [3rd Dept. 2003]; [touching the victim's breast, thigh, buttocks, and vagina]; *People v Gray*, 201 AD2d 961 [4th Dept. 1994] [defendant touching the victim's "upper leg"]; *People v Graydon*, 129 Misc.2d 265 [1985] [Leg constitutes "intimate" part of body within meaning of statute defining sexual abuse in second degree and statute defining sexual contact]).

4

Liberally construing the complaint and giving plaintiff "the benefit of every possible favorable inference" (*Leon v Martinez*, 84 NY2d at 87), the complaint here alleges sufficient facts to constitute a sexual offense under article 130 to fall within the purview of the ASA.

Mr. Frisa's alternate ground for dismissal is without merit inasmuch as petitioner indeed seeks "civil" compensation.

Accordingly, Mr. Frisa's motion to dismiss the complaint must be denied.

## The NYS Legislature and Speaker Heastie

Petitioner fails to set forth a cause of action against Speaker Carl E. Heastie inasmuch the Court can discern no specific allegation of any wrongdoing in the petition or the complaint on the part of Speaker Heastie. Accordingly, this action against Speaker Heastie is dismissed for failing to state a cause of action (CPLR § 3211[a][7]).

## The NYS Legislature

With respect to the NYS Legislature, to the extent that the petitioner is challenging her compensation or retirement benefits, her claims are untimely. A proceeding pursuant to CPLR article 78 "must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner ..., or after the respondent's refusal, upon the demand of the petitioner ..., to perform its duty" (CPLR § 217[1]). An administrative determination is considered final and binding when an agency has "reached a definitive position on the issue that inflicts actual, concrete injury" and administrative remedies have been exhausted (*Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y.*, 5 NY3d 30, 34 [2005]).

While the petitioner has not identified the specific administrative determination (or determinations) of which she seeks judicial review, and the reasons why the administrative determination was improper, her challenge appears to be directed at her wages and/or retirement benefits. Inasmuch as petitioner's employment with the Assembly admittedly ended in 2013, the limitations period within which to challenge her salary, and any corresponding retirement issues, has long expired.

To the extent plaintiff relies on the ASA to revive her purported employment claims, the ASA revives the period to bring an action for:

> [allegations] of 'intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was eighteen years of age or older, or incest as defined in section 255.26 or 255.27 of the penal law committed against such person who was eighteen years of age or older, which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, is hereby revived, alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was eighteen years of age or older, or incest as defined in section 255.26 or 255.27 of the penal law committed against such person who was eighteen years of age or older, which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim (CPLR § 214-j)

The Adult Survivors Act makes no provision to extent the limitation of time to bring any other action.

To the extent petitioner seeks compensatory damages against the State and/or a State entity ("the State") in connection with the allegations against defendants/respondents Alan Hevesi and Mr. Frisa in its capacity as an employer or otherwise, plaintiff's allegations sounding in tort against the State may not be brought in the New York State Supreme Court (*see* Court of Claims Act § 9).

Accordingly, the motion to dismiss by the NYS Legislature and Speaker Heastie is granted. The motion to dismiss by Mr. Frisa is denied.

This constitutes the Decision and Order of the Court. This Decision and Order is returned to the attorneys for the NYS Legislature and Speaker Heastie. All other papers are delivered to the Supreme Court Clerk for transmission to the County Clerk. The signing of this Decision, Order and Judgment shall not constitute entry or filing under CPLR 2220. Counsel is not relieved from the applicable provisions of this rule with regard to filing, entry and Notice of Entry.

SO ORDERED.
ENTER.

Dated:     Albany, New York
February 8, 2023

L. MICHAEL MACKEY
Supreme Court Justice

Papers Considered:

(1)     Notice of Petition dated December 9, 2022;
(2)     Petition dated December 9, 2022, with exhibits annexed;
(3)     Notice of Motion dated January 5, 2023;
(4)     Affirmation of Thomas J. Reilly, Esq., dated January 5, 2023, with exhibit annexed;
(5)     Memorandum of Law dated January 5, 2023;
(6)     Notice of Motion dated January 11, 2023;

(7)    Affirmation of Vincent J. Nofi, Esq., dated January 11, 2023, with exhibit annexed;

(8)    Affidavit of Maryann Maltese dated January 19, 2023.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
E. JEAN CARROLL,

|  |  |
|---|---|
| Plaintiff, | 20 CIVIL 7311 (LAK) |
| -against- | **JUDGMENT** |
| DONALD J. TRUMP, in his personal capacity, | |
| Defendant. | |

-------------------------------------------------------X

It is hereby **ORDERED, ADJUDGED AND DECREED:** That after a Jury

Trial before the Honorable Lewis A. Kaplan, United States District Judge, Plaintiff E. Jean

Carroll has judgment for compensatory damages (other than for the reputation repair program) in

the amount of $7,300,000.00; Plaintiff E. Jean Carroll has judgment for compensatory damages

(for the reputation repair program only) in the amount of $11,000,000.00; and Plaintiff E. Jean

Carroll has judgment for punitive damages in the amount of $65,000,000.00, each as against the

defendant Donald J. Trump for an aggregate sum of $83,300,000.00.

**DATED:** New York, New York
February 8, 2024

RUBY J. KRAJICK

So Ordered:
_____
U.S.D.J.

_____
Clerk of Court

BY: _____
Deputy Clerk



State of New York
**Supreme Court Chambers**
Albany County Courthouse
16 Eagle Street, Room 271
Albany, New York 12207
(518) 285-4345
mackeychambers@nycourts.gov

L. MICHAEL MACKEY
Justice of the Supreme Court

JAIME C. LOURIDAS, ESQ.
Law Clerk
LAURIE L. HEIDER
Secretary

February 8, 2023

Thomas J. Reilly, Esq.
Assistant Attorney General
The Capitol
Albany, New York 12224

Re:    Maltese v NYS Legislature, et al
       Index No.: 9234-22

Dear Mr. Reilly:

Enclosed please find original Decision and Order, for filing and service.

Very truly yours,

L. Michael Mackey
Supreme Court Justice

cc:    Maryann Maltese, *pro se* (w/enc.)
       19 Ringler Drive
       East Northport, New York 11731

       Vincent J. Nofi, Esq. (w/enc.)
       Scalzi & Nofi, PLLC
       16 E. Old Country Road
       Hicksville, New York 11801

STATE OF NEW YORK
SUPREME COURT                                        COUNTY OF ALBANY
_____

In the Matter of the Application of
MARYANN MALTESE,

                                    Plaintiff/Petitioner,

For a Judgment Pursuant to Article 78                          **DECISION**
of the Civil Practice Law and Rules,                            **AND**
                                                                **ORDER**

        -against-


NYS LEGISLATURE, CARL HEASTIE, CUNY
QUEENS COLLEGE, PROFESSOR ALAN HEVESI,
ALAN HEVESI former NYS ASSEMBLYMAN, and
DANIEL FRISA, former NYS ASSEMBLYMAN,
                                    Defendants/Respondents.

_____

(Supreme Court, Albany County, Special Term, February 1, 2023)
Index No. 09234-2022
(RJI No. 01-22-ST2666)

(Justice L. Michael Mackey, Presiding)

APPEARANCES:      Maryann Maltese
                  Plaintiff/Petitioner *Pro Se*
                  19 Ringler Drive
                  East Northport, New York 11731

                  Hon. Letitia James
                  Attorney General of New York State
                  Attorney for Defendants/Respondents the New York
                      State Legislature and Carl E. Heastie, Speaker of
                      the New York State Assembly
                  (Thomas J. Reilly, Assistant Attorney General,
                      of Counsel)
                  Department of Law
                  The Capitol
                  Albany, New York 12224

1

Scalzi & Nofi, PLLC
Attorneys for Defendant/Respondent Daniel Frisa
(Vincent J. Nofi, Esq., of Counsel)
16 E. Old Country Road
Hicksville, New York 11801

Mackey, J.:

Plaintiff/petitioner *pro se* Maryann Maltese ("plaintiff") is allegedly a former employee of the New York State Assembly. On December 9, 2022, she commenced this hybrid proceeding[1] and action for declaratory relief seeking civil damages under the "Adult Survivor's Act" ("ASA") and to be awarded certain academic degrees from respondent CUNY Queens College ("CUNY"). She also seeks "base earnings" and a "Tier 4 pension status" as of "July 31, 2013." In lieu of an answer, defendants/respondents the New York State Legislature,[2] Assembly Speaker Carl E. Heastie ("Speaker Heastie"), and Daniel Frisa ("Mr. Frisa") move separately pursuant to CPLR §§§§ 7804(f); 3211(a)(2); 3211(a)(5); and 3211(a)(7) to dismiss the petition/complaint insofar as asserted against them. The motions are consolidated for disposition. Petitioner opposes. The remaining defendants/respondents have not appeared.

## Mr. Frisa

On a motion to dismiss a complaint pursuant to CPLR § 3211(a)(7), the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). "Whether the complaint will be able to survive a motion for summary judgment, or whether plaintiff will be able to prove the claims, is not the inquiry on a motion to dismiss pursuant to

---

[1] The Court notes that petitioner filed both a "notice of petition" and "petition" as well as a "summons" and "complaint." For purposes of these motions to dismiss, the matter will be deemed to be a hybrid proceeding.

[2] The "New York State Legislature" is not a suitable entity in that it is a bicameral legislature consisting of the New York State Assembly and the New York State Senate.

2

CPLR 3211 (a) (7)" (*see Victory State Bank v EMBA Hylan, LLC*, 169 AD3d 963, 965 [2nd Dept. 2019]). CPLR § 3211(a)(5), in relevant part, allows a party to make a motion to dismiss on the ground that "the cause of action may not be maintained because of . . . statute of limitations."

In her complaint, petitioner alleges that in May 1992, at an unspecified "pub/restaurant" on Washington Avenue in Albany, New York, Mr. Frisa "forcibly" kissed plaintiff's ear and whispered "You're nothing but a great piece of Democratic ass. The only reason you're in the internship program is so we can fuck you. I pushed [Mr. Frisa] away he proceeded to keep it up and I left the bar."

In moving to dismiss, Mr. Frisa argues that these allegations are insufficient to state a cause of action to predicate the use of the Adult Survivor's Act's revival window, thereby defeating the complaint on statute of limitations grounds. In this regard, Mr. Frisa urges that even if plaintiff's allegations are true, this alleged conduct does not amount to a crime under the Penal Law because the ear is not a "sexual or intimate" part of the body (Penal Law § 130.00[3]; Penal Law § 130.52[3]).

CPLR § 214-j, enacted in the Adult Survivor's Act ("ASA"), provides for a revival of certain personal injury claims that would have been barred by the then-statute of limitations if the alleged conduct was committed against a person who was eighteen years of age or older and constituted either (1) "a sexual offense as defined in article one hundred thirty of the penal law"; or (2) "incest as defined in section 255.27, 255.26 or 255.25 of the penal law." In other words, a complaint must allege claims based on a sexual offense as described in one of the enumerated sections of the penal law in order to qualify as an ASA action.

Relevant to this action are the sections of the penal law in article 130. CPLR § 214-j does not limit the basis of liability under the ASA to specific sections in article 130. The statute's language incorporates all sexual offenses listed in article 130 "as defined in article one hundred thirty of the penal law" (CPLR § 214-j).

3

As relevant to this complaint, section 130.00 of article 130 defines sexual contact as "any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party" (Penal Law § 130.00[3]). Under section 130.52, a person is guilty of forcible touching when, among other things, such person intentionally and for no legitimate purpose "forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person . . ." (Penal Law § 130.52; *see e.g. People v Hatton*, 26 NY3d 364, 369 [2015] ["Penal Law § 130.05 requires that the act [of forcible touching] be committed without the victim's consent, meaning that the victim does not expressly or impliedly acquiesce in the actor's conduct] [internal quotation marks and citation omitted]). "[W]hen done with the relevant mens rea, any bodily contact involving the application of some level of pressure to the victim's sexual or intimate parts qualifies as a forcible touch within the meaning of Penal Law § 130.52" (*People v Guaman*, 22 NY3d 678, 684 [2014]).

While the legislature did not promulgate an express list of sexual or intimate body parts, under the caselaw, "intimate parts" can include parts of the body that may or may not be in close proximity to the sexual organs, depending on the location on the body and the context of the touching. That is, a finder of fact can consider how, where and why the touching took place, anything said by either of the parties involved, and any other facts and circumstances surrounding the touching (*see, e.g., Matter of Michael J.*, 267 AD2d 126 [1st Dept.1999] [kissing]; *Matter of David V.*, 226 AD2d 319 [1st Dept. 1996] [kissing using the tongue]; *see also People v Sene*, 66 AD3d 427 [1st Dept. 2009] [defendant's mouth touching the victim's neck]; *People v Manning*, 81 AD3d 1181 [3rd Dept. 2011] [sexual assault began when defendant's hands moved up the leg into the area of the thigh]; *People v Reome*, 309 AD2d 1067 [3rd Dept. 2003]; [touching the victim's breast, thigh, buttocks, and vagina]; *People v Gray*, 201 AD2d 961 [4th Dept. 1994] [defendant touching the victim's "upper leg"]; *People v Graydon*, 129 Misc.2d 265 [1985] [Leg constitutes "intimate" part of body within meaning of statute defining sexual abuse in second degree and statute defining sexual contact]).

4

Liberally construing the complaint and giving plaintiff "the benefit of every possible favorable inference" (*Leon v Martinez*, 84 NY2d at 87), the complaint here alleges sufficient facts to constitute a sexual offense under article 130 to fall within the purview of the ASA.

Mr. Frisa's alternate ground for dismissal is without merit inasmuch as petitioner indeed seeks "civil" compensation.

Accordingly, Mr. Frisa's motion to dismiss the complaint must be denied.

**The NYS Legislature and Speaker Heastie**

Petitioner fails to set forth a cause of action against Speaker Carl E. Heastie inasmuch the Court can discern no specific allegation of any wrongdoing in the petition or the complaint on the part of Speaker Heastie. Accordingly, this action against Speaker Heastie is dismissed for failing to state a cause of action (CPLR § 3211[a][7]).

**The NYS Legislature**

With respect to the NYS Legislature, to the extent that the petitioner is challenging her compensation or retirement benefits, her claims are untimely. A proceeding pursuant to CPLR article 78 "must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner ..., or after the respondent's refusal, upon the demand of the petitioner ..., to perform its duty" (CPLR § 217[1]). An administrative determination is considered final and binding when an agency has "reached a definitive position on the issue that inflicts actual, concrete injury" and administrative remedies have been exhausted (*Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y.*, 5 NY3d 30, 34 [2005]).

While the petitioner has not identified the specific administrative determination (or determinations) of which she seeks judicial review, and the reasons why the administrative determination was improper, her challenge appears to be directed at her wages and/or retirement benefits. Inasmuch as petitioner's employment with the Assembly admittedly ended in 2013, the limitations period within which to challenge her salary, and any corresponding retirement issues, has long expired.

5

To the extent plaintiff relies on the ASA to revive her purported employment claims, the ASA revives the period to bring an action for:

> [allegations] of 'intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was eighteen years of age or older, or incest as defined in section 255.26 or 255.27 of the penal law committed against such person who was eighteen years of age or older, which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, is hereby revived, alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was eighteen years of age or older, or incest as defined in section 255.26 or 255.27 of the penal law committed against such person who was eighteen years of age or older, which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim (CPLR § 214-j)

The Adult Survivors Act makes no provision to extent the limitation of time to bring any other action.

I paid in NYSLRS Tier 4 pretax earnings. Judge Mackey and Judge Maltese tier 2 as well-never paid into State Pension with Failure of hearings.

Carl Heastie; Speaker; Appointing Alan Hevesi's son Andrew on Committees that have direct oversight on my Public Officer Matter and again Based on 1/2/2024 USDOJ intervention on Executive Chamber; Andrew Hevesi enacts EXTENDER on Child abuse victim's rights with Legislature Failing to Orime my Bill.

Office of the State Comptroller
Bureau of State Payroll Services
Andrew D. Hevesi - Payroll History as of 11/30/2023

| Effdt | Seq | Action | Reason Description | Agency | Title | Grade | Comprate Code | Comprate | Work% | EE Status |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/1/05 | 0 | HIR | APPOINT | NEW YORK STATE ASSEMBLY | CHF OF STAFF | 600 | BIW | 0.00 | 100.00% | Active |
| 1/1/03 | 1 | PAY | NEW EMPLOYEES SALARY | NEW YORK STATE ASSEMBLY | CHF OF STAFF | 600 | BIW | 1,726.02 | 100.00% | Active |
| 6/9/04 | 0 | PAY | SAL INCR | NEW YORK STATE ASSEMBLY | CHF OF STAFF | 600 | BIW | 2,046.51 | 100.00% | Active |
| 1/1/05 | 0 | TER | TERM | NEW YORK STATE ASSEMBLY | CHF OF STAFF | 600 | BIW | 2,046.51 | 100.00% | Terminated |
| 5/11/05 | 0 | REH | ELECT LEG | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 0.00 | 100.00% | Active |
| 5/11/05 | 1 | PAY | REHIRE SALARY | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 79,500.00 | 100.00% | Active |
| 12/19/13 | 0 | LOA | LEG 27TH STATUTORY PAUSE | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 79,500.00 | 100.00% | Leave of Absence |
| 1/2/14 | 0 | RFL | REIN LEAVE | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 79,500.00 | 100.00% | Active |
| 12/27/18 | 0 | PAY | SAL INCR | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 110,000.00 | 100.00% | Active |
| 3/16/21 | 0 | DTA | 9.2 DATA CONVERSION | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 110,000.00 | 100.00% | Active |
| 12/22/21 | 0 | PAY | SAL INCR | ASSEMBLY MEMBERS | MEMBER OF TH ASSEMBLY | 700 | LEG | 142,000.00 | 100.00% | Active |
|  |  |  |  |  |  |  |  |  |  |  |
| 6/25/11 | 0 | CCH | ELECT LEG | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 0.00 | 100.00% | Active |
| 6/25/11 | 1 | PAY | NEW EMPLOYEES SALARY | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Active |
| 6/25/11 | 2 | TER | TERM | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Terminated |
| 6/29/11 | 0 | REH | ELECT LEG | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 0.00 | 100.00% | Active |
| 6/29/11 | 1 | PAY | REHIRE SALARY | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Active |
| 12/20/12 | 0 | LOA | DCR LV OUT | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Leave of Absence |
| 12/20/12 | 1 | RFL | REIN LEAVE | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Active |
| 12/19/13 | 0 | LOA | LEG 27TH STATUTORY PAUSE | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Leave of Absence |
| 1/2/14 | 0 | RFL | REIN LEAVE | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Active |
| 1/1/15 | 0 | POS | DCR LV OUT | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Leave of Absence |
| 1/1/15 | 1 | RFL | REIN LEAVE | ASSEMBLY MEMBERS EXPENSES | CRMN ASSEM OV AN IN C | 700 | LEG | 12,500.00 | 100.00% | Active |
| 2/4/15 | 0 | POS | ELECT LEG | ASSEMBLY MEMBERS EXPENSES | CH AS SOC SRV COM | 700 | LEG | 12,500.00 | 100.00% | Active |
| 12/29/16 | 0 | LOA | DCR LV OUT | ASSEMBLY MEMBERS EXPENSES | CH AS SOC SRV COM | 700 | LEG | 12,500.00 | 100.00% | Leave of Absence |
| 12/29/16 | 1 | RFL | REIN LEAVE | ASSEMBLY MEMBERS EXPENSES | CH AS SOC SRV COM | 700 | LEG | 12,500.00 | 100.00% | Active |
| 12/27/18 | 0 | LOA | DCR LV OUT | ASSEMBLY MEMBERS EXPENSES | CH AS SOC SRV COM | 700 | LEG | 12,500.00 | 100.00% | Leave of Absence |
| 12/27/18 | 1 | TER | TERM LV | ASSEMBLY MEMBERS EXPENSES | CH AS SOC SRV COM | 700 | LEG | 12,500.00 | 100.00% | Terminated |

This chart from NYAG is proof that Speaker NYS Assembly assigned Andrew Hevesi as of Chairs of Criminal procedures 11 Years (An UNFAIR advantage and Leverage) while Maryann Maltese is In Forcible Inactive for 10 years. Additionally, as of 2015; Post State Assembly Probe; Andrew Hevesi by Speaker as well-Hand Selected to Chair NYS Assembly Committee of Social Service on Matters of Child Abuse and Mandatory reporting. As of 2023l September-Assemblyman Andrew Hevesi Has his Google Gmail as Point of Contract for Child Abuse Victims to engage in-a Complete breach of Confidentiality that NYAG reports of 2021

32

Stresses over and over in 162 pages; Confidentiality for Victims is Priority within Social creations of Policies. Alan Hevesi for 11-15 Years has Access to Child Abuse and Sexual Assault Victims pedigrees to as well-Permit Further Intentional Delay in rendering or Prime Bill language for Plaintiff Maltese. Again, Andrew Hevesi is the Son; of Alan Hevesi using State resources to eliminate my Right as Plaintiff from June 2011 through the Present as Alan Hevesi reportedly died on November 9, 2023 whereas upon my inquiry on Status of Notice of Appeal at AD 3-in the morning Law Secretary stated-NYAG has not REPLIED 3 weeks POST requirement and then; Sent me an Email in Afternoon of 11/9/2023 Dismissing my Complaint 09234-2022 while Assembly Communications sent out Press Releases on Sudden Death of Defendant Alan Hevesi. How heartless of judiciary to dismiss the Index whereas the NYAG is

not Compliant on within Time Management in 09234-2022. The Legislative intent of ASA was to Grant ANY Sexual Assault victim as an Adult-More extender time to file. A prime Bill language cost projection per bill for 2 year's time-is $1,000 for Legislative considerations and I'm here 3 years into Article 78 filings at $60,000 to enforce Defendants to Prime or Offer. There are no words to better explain this than the above.

At time of Alan Hevesi's Arrest-son Daniel Hevesi was a State Senate Member and here as well-NYS is keeping the Defendant Alan Hevesi on the payroll and Children as Elective and Chief of Staff Officers in Fiduciary capacity unethical in 2001-forward-reasoning the Plaintiff is seeking Tort remedy of $55 million for life Conspiracy to cover up Sexual Assault by Alan Hevesi with NYS Legislature; NYAG granting Plea Bargain Monetary to Alan Hevesi, and

33

Pensions for Daniel and Andrew Hevesi at Crime Victims expense in Maryann Maltese.

Office of the State Comptroller
Bureau of State Payroll Services
Daniel R. Hevesi - Payroll History as of 11/30/2023

| Effdt | Seq | Action | Reason Description | Agency | Title | Grade | Comprate Code | Comprate | Work% | EE Status |
|-------|-----|--------|--------------------|--------|-------|-------|---------------|----------|-------|-----------|
| 12/24/98 | 0 | HIR | ELECT LEG | SENATE MEMBERS | MEMBER | 700 | LEG | 0.00 | 100.00% | Active |
| 12/24/98 | 3 | PAY | NEW EMPLOYEES SALARY | SENATE MEMBERS | MEMBER | 700 | LEG | 79,500.00 | 100.00% | Active |
| 4/1/99 | 0 | PAY | FACTOR ADJUSTMENT | SENATE MEMBERS | MEMBER | 700 | LEG | 79,500.00 | 100.00% | Active |
| 12/19/02 | 0 | LOA | DCR LV OUT | SENATE MEMBERS | MEMBER | 700 | LEG | 79,500.00 | 100.00% | Leave of Absence |
| 1/1/03 | 0 | TER | TERM | SENATE MEMBERS | MEMBER | 700 | LEG | 79,500.00 | 100.00% | Terminated |
| | | | | | | | | | | |
| 3/4/99 | 0 | CCH | APPOINT | SENATE MEMBERS SPECIAL ALLOW. | RN MEN MM SEN ELEC CM | 700 | FEE | 0.00 | 100.00% | Active |
| 12/19/02 | 0 | DTA | CHANGE PAY GROUP | SENATE MEMBERS SPECIAL ALLOW. | RN MEN MM SEN ELEC CM | 700 | FEE | 0.00 | 100.00% | Active |
| 1/1/03 | 0 | TER | TERM | SENATE MEMBERS SPECIAL ALLOW. | RN MEN MM SEN ELEC CM | 700 | FEE | 0.00 | 100.00% | Terminated |

● Clearly RJI'S of Supreme Court added; ASA to Forms as I filed in December 2022; and NYS Has a Personal Jurisdiction to review. Choosing not to review; is prejudicial towards Female Employee Victims with ASA Notice of Claim and compounded with my Right to Pension corrective earnings to be Judicated. Judiciary decision making is Capricious and failure of the Supreme Court to protect a state Public Officer employee's Notice of Claim and my overall Constitutional right to Pension as of January 1, 2022. Employer NYS is negligent in formations; 1; Black Letter Law Pension and 2; Notice of Claim on Sexual Assault Violations as Intern-Employee of NYS Assembly. Male Elective members of State Legislature of 2020-2023; continuous denial of Prime Bill languages as formation of Discrimination and Denial of Affirmative Action's House Rules NYS Assembly; Violations of Sections 5, 6. 7. Intentional delay of Time Management wait in Haley and or Accumulation of 18 months Post Plaintiff Public Notice are per violation considered Grounds for Criminal Arrest of Elective Public Officers and or their Employees. Private Civilian conspirator's willful actions to assist public officers is as well Felony. In February orders, by Judge Mackay discusses hybrid determination findings for PO rights to her retroactive corrective and pension; but

34

Defendants failed to ensure timely issuances of Pension and Supreme Failed to acknowledge personal jurisdiction within Adult Survivor Law (ASA) extender rights to Notice of Claim for events from 1992. The NYAG failed to take the Orders of Mackey and have Assembly Ways and Means Prime Bill languages for PO Plaintiff. NYS Assembly creation of Speaker House rules 5,

23

- • Dear Maryann Maltese:
- • Congratulations! We have just processed your request to register for Retirement

  Online, a self-service account with the New York State and Local Retirement System. You can now access your retirement information online.

36

- • Our goal is to give you exceptional customer service, and we believe you will find Retirement Online very helpful. We encourage you to periodically sign in, as we are continually expanding our online
  services.
- • If you have not already signed into your account for the first time, you will be prompted to enter your User ID and password. Then, you will need to request and enter a security code and set up your security questions. Once you complete these steps, you will be able to access your account.
- • To begin the sign in process, go to www.osc.state.ny.us/retire and click the "Sign In" button.
- • If you did not enroll for this service, please email us from our website at www.osc.state.ny.us/retire/contact_us/index.php or call us toll-free at 1-866-805-0990, or 518-474-7736 in the Albany, NY area.
- • Sincerely,
  New York State and Local Retirement System

Additionally-Alan Hevesi is NYSLRS TIER 1 Employee-who as NYS Professor at CUNY Queens College and then-Elective officer NYS Assembly Serving two Masters' NEVER prepaid into the State pension system-but Felt he was allowed to Steal from it.

Here again based on my Foil request to NYS Comptroller Tom DiNapoli-a Chart on who among Elective Officer's has their State Pensions with their Tier Status to the Far Right noted. With Date of NYS Pension issued-confirming that Felon Legislator Alan Hevesi was in receipt of his State Pension as of 1/31/2002 and as I paid into Pension as Tier 4; Commencing as of January 1, 1992-as the Origination Intern Sexual Assault Intern with 20 years of State Service POST ASA

---

Office of the New York State Comptroller
Thomas P. DiNapoli



New York State and Local Retirement System

110 State Street, Albany, New York 12244-0001

37

25

2002-2023; at $10,000 a month as Plea bargain after Hevesi committed two rounds of Felonies stealing from the State Pension Fund. Prime Bill language is the Ethical means of Prime Bill language and two Members since their Inception into Offices; as of 2021; have willfully denied Employee Plaintiff Maryann Maltese her right to Prime Bill language as required by House Rules of NYS legislature. Penal Code violations post 18 months of willful denial by Members Elect is required. NYAG underwood as of January 18, 2024 has been terminated as NYAG assigned to Docket number. Crime Victims by Legislator hands are without active and inactive rights as of 2013. By the decisions unethically by Speaker Silver; mediation inhouse and or by the Commission of Ethics was never scheduled in 10 Sessions

39

forcing Plaintiff to file Notice of Claim (50) at State Supreme as Public Officer with 20 years of service and within my rights under ASA extender. Mediation by Commission of Ethics as of 2021 was never offered and NYAG's Sexual Harassment report of August 2021; found all victims as well credible without Remedy or Mediaiton. Clearly; Defendants Et al are intentionally avoiding accountability of Mediation and or end of Service. Plaintiff seeks; the 32 years of Intenional Penal Code loss of earnings due to Sexual Assault by 2 Members conspiracy (Alan Hevesi and Dan Frisa) and new Legislature Sessions of 1994-forward failures intentionally to Grant Plaintiff Civil Remedy. I'm here today-asking US Appeals to Force terms of Compliances of $55 million dollars for intentional post incident Negligences by et al's for 32 years.

Here's what else I bring. Asking the NYS Comptroller to advise who's on State Pension as of JANUARY 2023-whereas again Brown and Matera and OR the Et al's Are required in year 31 (2023) to ensure Elective Officers AS IS no matter what MY GENDER affiliations are and they are HETERO Required Prime Bill language-being Intentionally denied to Employee Maryann Maltese as Brown ONLY supports Employer boss requests. I cannot wait to take the Stand. Let it begin-say Yes to the Plaintiff so that Plaintiff has a Fair day in Court.

**THOMAS P. DiNAPOLI**

STATE COMPTROLLER
Ms. Maryann Maltese

19 Ringler Drive

East Northport, NY 11731 Dear Ms. Maryann Maltese,



40

27

offenses by Employer-Educator-THE PLAINTIFF is not with her Pension. Please note as well-Lindsey Boylan-a Credible Victim of CUOMO noted in the NYAG Sexual Harassment Report of August 2021-She as well-according to NYS Comptroller is not with her Civil Remedy or a State pension. This as well Judiciary is violation of Public Officer rules 73, 74, as the Commission of Ethics in 2013-set the Precedent forward-that COMMISSION in Vito Lopez's abuses granted Reyna -Mediation-PLUS remedy. The NYAG report above as of page 142-failed in ISSUANCES of REMEDY to Boylan and failure to OPEN to Case file for Maryann Maltese. Additionally NYS AG Sexual Harassment Victims of 20211 Boylan, Bennett have not received Civil remedy for their Participation and Maltese vested Tenured at 20 years; Employer-Educator is willfully stalling in remedy. Chart below is from NYS Comptroller on again-who among Impacted parties-has a Pension. Defendants; Andrew Cuomo, Alan Hevesi and Dan Frisa-all of which are Currently on State Pension; not Victims-NYS Defendants by NYAG found Credible. How is that remotely Allowed within Mediations-Offers of Remedy were required as of 2021.

| Name | • Retirmen t applicati on filed | • Date of Retireme nt | • Date of first payment | • Current gross monthly benefit | • Ti er |
|---|---|---|---|---|---|
| Andrew Cuomo | • 8/17/202 1 | • 9/1/202 1 | • 10/31/20 21 | • $4,219.1 1 | •4 |
| Melissa De Rosa | • | • | • | • | •5 |
| Catherine Nolan | • 12/24/20 20 | • 1/1/202 1 | • 2/28/202 1 | • $6,199.7 0 | •3 |
| • David De Cancio | • | • | • | • | •4 |
| • Alan Hevesi | • 10/22/20 01 | • 1/1/200 2 | • 1/31/200 2 | • $10,673. 20 | •1 |
| • Daniel Frisa | • 4/5/2017 | • 4/5/201 7 | • 7/3/2017 | • $785.94 | •4 |

38

| | | | | | |
|---|---|---|---|---|---|
| • Eliot Spitzer | • | • | • | • | •4 |
| • Charlot te Bennet t | • | • | • | • | •6 |
| • Lindsey Bolan | • | • | • | • | •6 |
| • Elizabe th Crothe rs | • | • | • | • | •4 |
| • Diana Reyna | • | • | • | • | •4 |
| • Andre w Raia | • | • | • | • | •4 |
| • Debora h Glick | • 12/12/20 18 | • 1/1/201 9 | • 1/31/201 9 | • $4,281.7 2 | •4 |

Dan Frisa-as well has a State pension as 2017 while Maryann Maltese is not reinstated within the Window of Accountability to Reinstate me. Here is violation by Employer failure to see that Tier 4 Employee vested post 10 years and 1 day; EMPLOYER NYS covers the Full 6% of Pension Contribution. The NYAG provided defendants Hevesi with $2million dollars in pension from

🖼 **maltese-resume%202024-2.pdf**
78K

**Patrice Zitani** <pzitani@townofbabylon.com>                    Mon, Aug 26, 2024 at 2:36 PM
To: Maryann Maltese <maryannmaltese1000@gmail.com>

Good afternoon, Maryann.

Unfortunately, the Town of Babylon does not have the information you are requesting.

You will have to contact the Nassau and Suffolk County Democratic Committee Offices.

Thank you and stay safe and healthy.

Kindest regards,

Patty

Patrice Zitani

Office Assistant

Town of Babylon

Town Clerk's Office

200 E. Sunrise Hwy.

Lindenhurst, NY 11757

Office -- 631-957-4296

Fax -- 631-957-7490

E-mail -- pzitani@townofbabylon.com

**From:** Maryann Maltese <maryannmaltese1000@gmail.com>
**Sent:** Monday, August 26, 2024 8:47 AM
**To:** Nassau County Democratic Committee <info@nassaucountydems.com>; New York State Democratic Committee
<info@nydems.org>; Patrice Zitani <pzitani@townofbabylon.com>; Suffolk County Democratic Committee
<info@suffolkdems.com>
**Subject:** Chair's salaries

>>> This message has originated from an **External Source**. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email. <<<

[Quoted text hidden]

# PARTY LEADERSHIP

## Nassau County Democrats

Jay S. Jacobs

*Chairman*

Thomas Garry

*First Vice Chair*

James Scheuerman

*Executive Director*

NOTICE: This e-mail and any attached document(s) are intended only for the use of the individual or entity to whom or to which it is addressed and may contain information that is privileged, confidential, proprietary, trade secret and exempt from disclosure. If the reader of this message is not the intended recipient or an employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or reproduction of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately and discard the original message and any attachment(s).



# § 94. Commission on Ethics and Lobbying in Government.

1. (a) **Commission established.** There is hereby established within the department of state, a commission on ethics and lobbying in government, an agency responsible for administering, enforcing, and interpreting New York state's ethics and lobbying laws. The commission shall have and exercise the powers and duties set forth in this section with respect to statewide elected officials, members of the legislature and employees of the legislature, and state officers and employees as defined in sections seventy-three, seventy-three-a, and seventy-four of the public officers law, candidates for statewide elected office and for the senate or assembly, and the political party chair as is defined in section seventy-three of the public officers law, lobbyists and the clients of lobbyists as defined in section one-c of the legislative law, and individuals who have formerly held such positions, were lobbyists or clients of lobbyists as defined in section one-c of the legislative law, or who have formerly been such candidates.

(b) The commission shall provide for the transfer, assumption or other disposition of the records, property, and personnel affected by this section, and it is further provided, should any employees be transferred from the joint commission on public ethics ("JCOPE"), the predecessor ethics agency, to the commission, that such transfer will be without further examination or qualification and such employees shall retain their respective civil service classifications, status and collective bargaining agreements.

(c) The commission shall review any pending inquiries or matters affected by this section and shall establish policies to address them.

(d) The commission shall undertake a comprehensive review of all regulations in effect upon the effective date of this section; and review of all advisory opinions of predecessor ethics agencies, including JCOPE, the legislative ethics commission, the commission on public integrity, the state ethics commission, and the temporary lobbying commission, which will address the consistency of such regulations and advisory opinions among each other and with the new statutory language, and of the effectiveness of the existing laws, regulations, guidance and ethics enforcement structure.

(e) This section shall not be deemed to have revoked or rescinded any regulations or advisory opinions in effect on the effective date of this section that were issued by predecessor ethics and lobbying bodies. The

commission shall cooperate, consult, and coordinate with the legislative ethics commission, to the extent possible, to administer and enforce the laws under its jurisdiction.

(f)    The annual budget submitted by the governor shall separately state the recommended appropriations for the commission on ethics and lobbying in government. Upon enactment, these separately stated appropriations for the commission on ethics and lobbying in government shall not be decreased by interchange with any other appropriation, notwithstanding section fifty-one of the state finance law.

2.    **Definitions.** For the purposes of this section, the following terms shall have the following meanings:

(a)    "**commission**" means the commission on ethics and lobbying in government established pursuant to subdivision one of this section.

(b)    "**selection members**" means the governor, speaker of the assembly, temporary president of the senate, minority leader of the senate, minority leader of the assembly, comptroller, and the attorney general.

(c)    "**independent review committee**" means the committee of the American Bar Association accredited New York state law school deans or interim deans, or their designee who is an associate dean of their respective law school, tasked with reviewing, approving, or denying the members of the commission as nominated by the selection members and other tasks pursuant to this section.

(d)    "**respondent**" means the individual or individuals or organization or organizations subject to an inquiry, investigation, or enforcement action.

(e)    "**victim**" means any individual that has suffered or alleged to have suffered direct harm from any violation of law that is subject to investigation under the jurisdiction of the commission.

3.    **Nomination and appointment of the commission.**

(a)    The commission shall consist of eleven members, to be nominated by the selection members as follows: three members by the governor; two members by the temporary president of the senate; one member by the minority leader of the senate; two members by the speaker of the assembly; one member by the minority leader of the assembly; one member by the attorney general; and one member by the comptroller.

§ 94. Commission on Ethics and Lobbying in Government

(b) The independent review committee shall within thirty days review the qualifications of the nominated candidates and approve or deny each candidate nominated by their respective selection member.

(c) The independent review committee shall publish on its website a procedure by which it will review the qualifications of the nominated candidate and approve or deny each candidate.

(d) Those candidates that the independent review committee deems to meet the qualifications necessary for the services required based on their background and expertise that relate to the candidate's potential service on the commission shall be appointed as a commission member. The nominating selection member shall nominate a new candidate for those that are denied by the independent review committee.

(e) No individual shall be eligible for nomination and appointment as a member of the commission who is currently, or has within the last two years:

(i) been registered as a lobbyist in New York state;

(ii) been a member or employee of the New York state legislature, a statewide elected official, or a commissioner of an executive agency appointed by the governor;

(iii) been a political party chair, as defined in section seventy-three of the public officers law; or

(iv) been a state officer or employee as defined in section seventy-three of the public officers law.

(f) The independent review committee shall convene as needed or as requested by the selection members. The chair of the independent review committee shall be elected from the members of the independent review committee.

(g) Appropriate staffing and other resources shall be provided for in the commission's budget for the independent review committee to carry out its powers, functions, and duties. The independent review committee shall publish on the commission's website a procedure by which it will review and select the commission members and other processes to effectuate its responsibilities under this section.

(h)  The majority of the independent review committee shall constitute a quorum to hold a meeting and conduct official business.

(i)  During the pendency of the review and approval or denial of the candidates, the independent review committee shall be subject to and maintain confidentiality in all independent review committee processes reviews, analyses, approvals, and denials. A member of the independent review committee may be removed by majority vote of the committee for substantial neglect of duty, misconduct, violation of the confidentiality restrictions set forth in this section, inability to discharge the powers or duties of the committee or violation of this section, after written notice and opportunity for a reply.

(j)  Upon the receipt of the selection members' appointments, members of the independent review committee shall disclose to the independent review committee any personal, professional, financial, or other direct or indirect relationships a member of the independent review committee may have with an appointee. If the independent review committee determines a conflict of interest exists, such independent review committee member shall, in writing, notify the other members of the independent review committee of the possible conflict. The member may recuse themself from all subsequent involvement in the consideration of and action upon the appointment. If, after disclosure, the member does not recuse themself from the matter, the independent review committee, by majority vote finding the disclosed information creates a substantial conflict of interest, may remove the conflicted member from further consideration of and action upon the appointment.

(k)  Notwithstanding the provisions of article seven of the public officers law, no meeting or proceeding of the independent review committee shall be open to the public, except the applicable records pertaining to the review and selection process for a member's seat shall be subject to disclosure pursuant to article six of the public officers law only after an individual member is appointed to the commission. Requests for such records shall be made to, and processed by, the commission's records access officer.

(l)  The independent review committee shall neither be public officers nor be subject to the requirements of the public officers law.

(m) Notwithstanding subdivision (l) of this section, the independent review committee members shall be entitled to representation, indemnification, and to be held harmless to the same extent as any other person employed in service of the state and entitled to such coverage under sections seventeen and nineteen of the public officers law, provided however, that any independent review committee member removed due to a violation of paragraph (i) of this subdivision shall not qualify for such entitlements.

4. **Commission.** (a) The first class of members of the commission shall serve staggered terms to ensure continuity. For the first class of the commission, five members shall serve a term of four years, three members shall serve a term of two years, and one member shall serve a term of one year. All subsequent members shall serve a term of four years. No member shall be selected to the commission for more than two full consecutive terms, except that a member who has held the position by filling a vacancy can only be selected to the commission for an additional two full consecutive terms.

(b) The commission by majority vote shall elect a chairperson from among its members for a term of two years. A chairperson may be elected to no more than two terms for such office.

(c) Members of the commission may be removed by majority vote of the commission for substantial neglect of duty, misconduct in office, violation of the confidentiality restrictions set forth in this section, inability to discharge the powers or duties of office or violation of this section, after written notice and opportunity for a reply.

(d) Any vacancy occurring on the commission shall be filled within thirty days of its occurrence in the same manner as a member is initially selected to complete the vacant term.

(e) During the period of a member's service as a member of the commission, the member shall refrain from making, or soliciting from other persons, any contributions to candidates, political action committees, political parties or committees, newsletter funds, or political advertisements for election to the offices of governor, lieutenant governor, member of the assembly or the senate, attorney general or state comptroller.

(f) Members of the commission shall receive a per diem allowance equal to the salary of a justice of the supreme court divided by two hundred twenty for each day or each pro-rated day actually spent in the performance of the member's duties under this section, and, in addition thereto, shall be reimbursed for

all reasonable expenses actually and necessarily incurred by the member in the performance of the member's duties under this section. For the purposes of this subdivision, a day shall consist of at least seven and one-half hours spent in the performance of the member's duties under this section.

(g) The commission shall meet at least quarterly and additionally as called by the chairperson, or upon the call of a majority of the members of the commission. The commission shall be subject to articles six and seven of the public officers law.

(h) A majority of the members of the commission shall constitute a quorum, and the commission shall have the power to act by majority vote of the total number of members of the commission without vacancy.

(i) The commission shall hold a public hearing at least once each calendar year to take testimony regarding the operation of the commission and solicit public input regarding potential or proposed changes in the laws under its jurisdiction.

5.  **Powers.** (a) The commission has the authority to: (i) adopt, amend, and rescind any rules and regulations pertaining to section seventy-three, seventy-three-a or seventy-four of the public officers law, article one-A of the legislative law, or section one hundred seven of the civil service law; (ii) adopt, amend, and rescind any procedures of the commission, including but not limited to, procedures for advice and guidance, training, filing, review, and enforcement of financial disclosure statements, investigations, enforcement, and due process hearings; and (iii) develop and promulgate any programs for reviews, training, and guidance to carry out the commission's mission.

(b) The commission shall adopt and post on its website guidance documents detailing the processes and procedures of an investigation, including the stages of an investigation; timelines, including the reasons for any potential delays in an investigation; the hearing and adjudication process; outcomes of an investigation; and, anything else the commission deems necessary to inform the public as well as relevant parties to an investigation including complainants, respondents, victims, if any, and witnesses as to such processes and procedures. The guidance documents shall delineate the processes and procedures that apply to the relevant parties, including, where applicable, the due process and any other rights or remedies that the relevant party may have under the commission's procedures or any other area of law. The guidance documents shall be provided to the relevant party of an investigation upon such party's involvement in such investigation.

§ 94. Commission on Ethics and Lobbying in Government

(c)  The commission has the authority to compel the testimony of witnesses, and may administer oaths or affirmations, subpoena witnesses, compel their attendance and require the production of any books or records which it may deem relevant or material.

6.  **Executive director and commission staff.** The commission shall:

(a)  (i) Appoint an executive director through a majority vote of the members of the commission, who shall act in accordance with the policies of the commission. The executive director shall be appointed without regard to political affiliation and solely on the basis of fitness to perform the duties assigned by this section, and meet the qualifications necessary for the services required based on their background and expertise that relate to the candidate's potential service to the commission. No individual shall be eligible to be appointed as an executive director if the individual is currently, or within the last two years has been:

(1)  registered as a lobbyist in New York state;

(2)  a member or employee of the New York state legislature or a statewide elected official, or a commissioner of an executive agency appointed by the governor; or

(3)  a political party chair, as defined in section seventy-three of the public officers law.

(ii)  The appointment and removal of the executive director shall be made by a majority vote of the commission.

(iii) The term of office of the executive director shall be four years from the date of appointment. The salary of the executive director shall be determined by the members of the commission based on experience.

(iv)  The commission may remove the executive director for neglect of duty, misconduct in office, violation of the confidentiality restrictions in this section, or inability or failure to discharge the powers or duties of office, including the failure to follow the lawful instructions of the commission.

(b)  The commission may delegate authority to the executive director to act in the name of the commission between meetings of the commission provided such delegation is in writing, the specific powers to be

delegated are numerated, and the commission shall not delegate any decisions specified in this section that require a vote of the commission.

(c)    The commission, through the executive director, shall establish units within the commission to carry out it duties, including, but not limited to, (i) an advice and guidance unit, (ii) a training unit, (iii) a financial disclosure unit, (iv)a lobbying unit, and (v) an investigations and enforcement unit.

(d)   The commission, through the executive director, shall appoint such other staff as are necessary to carry out its duties under this section, including, but not limited to, a deputy director of an advice and guidance unit to provide timely confidential advice to persons subject to the commission's jurisdiction, a deputy director for training, a deputy director for investigations and enforcement, and a deputy director for lobbying.

(e)   In addition to meeting the qualifications necessary for the services required for the position, the deputy director for investigations and enforcement shall have completed substantial training and have experience in trauma-informed approaches to investigations and enforcement. The deputy director for investigations and enforcement shall complete a minimum of four hours of training annually in trauma-informed approaches to investigations and enforcement. Such trainings may include, but not be limited to, the impact of trauma, first impression matters, victim interviews, investigative strategies, and alcohol and drug facilitated cases.

(f)    The commission, through the executive director, shall review and approve a staffing plan provided and prepared by the executive director which shall contain, at a minimum, a list of the various units and divisions as well as the number of positions in each unit, titles and their duties, and salaries, as well as the various qualifications for each position.

7.    **Advice and guidance.**

(a)    The commission shall establish a unit or units solely for ethics and lobbying guidance, and give such prompt, informal advice to persons whose conduct it oversees, except with respect to members of the legislature and legislative staff, who shall seek advice from the legislative ethics commission in the first instance.

§ 94. Commission on Ethics and Lobbying in Government

    (b) Persons receiving such informal advice may rely on that advice absent misrepresentation or omission of material facts to the commission and such communications with the commission shall be treated as confidential, except as disclosure is needed to prevent or rectify a crime or fraud, or prevent a substantial threat to public health or safety or if required by court order.

    (c) The commission may also render, on written request or on its own initiative, advisory opinions, and may allow for public comment before issuance of an advisory opinion. Such an opinion rendered by the commission shall be relied on by those subject to the commission's jurisdiction and until, or unless, amended, superseded, or revoked. Such opinion may also be relied upon by any such person, and may be introduced and shall be a defense, in any criminal or civil action.

8.    **Training.** The commission shall establish a training unit and shall develop and administer an on-going program for the education and training in ethics and lobbying for those subject to the provisions of this section, as follows:

    (a) The commission shall develop and administer a comprehensive and interactive live-in person or live-online ethics training course and shall designate and train instructors to conduct such training. Such live course shall be designed to include practical application of the material covered and a question-and-answer participatory segment. Unless the commission grants an extension or waiver for good cause shown, statewide elected officials, members of the legislature and employees of the legislature, and state officers and employees as defined in sections seventy-three, seventy-three-a, and seventy-four of the public officers law, and the political party chair as is defined in section seventy-three of the public officers law, shall complete the live course within ninety days of appointment or employment and shall complete the live course every two years subsequently.

    (b) The commission shall develop and administer an online ethics refresher course for all individuals listed under subparagraph (i) of this paragraph who have previously completed the live course. Such refresher course shall be designed to include any changes in law, regulation, or policy or in the interpretation thereof, and practical application of the material covered. Unless the commission grants an extension or waiver for good cause shown, such individuals shall take such refresher course once every year after having completed the live course under paragraph (a) of this subdivision.

(c)  The commission shall develop and administer an online live question and answer course for agency ethics officers.

(d)  The commission shall develop and administer training courses for lobbyists and clients of lobbyists.

(e)  The provisions of this subdivision shall be applicable to the legislature except to the extent that an ethics training program is otherwise established by the assembly and/or senate for their respective members and employees and such program meets or exceeds each of the requirements set forth in this subdivision.

(f)  On an annual basis, the commission, in coordination with the legislative ethics commission, shall determine the status of compliance with the training requirements under this subdivision by each state agency and by the senate and the assembly. Such determination shall include aggregate statistics regarding participation in such training and shall be reported on a quarterly basis to the governor and the legislature in writing.

9.    **Financial disclosure statements.**

(a)  The commission may delegate all or part of review, inquiry and advice in this section to the staff under the supervision of the executive director.

(b)  The commission shall make available forms for annual statements of financial disclosure required to be filed pursuant to section seventy-three-a of the public officers law.

(c)  The commission shall review the financial disclosure statements of the statewide elected officials and members of the legislature within sixty days of their filings to determine, among other things, deficiencies and conflicts.

(d)  The commission shall review on a random basis the financial disclosure statements for filers who are not statewide elected officials and members of the legislature.

(e)  The commission shall review financial disclosure statements filed in accordance with the provisions of this section and (i) inquire into any disclosed conflict to recommend how best to address such conflict; and (ii) ascertain whether any person subject to the reporting requirements

§ 94. Commission on Ethics and Lobbying in Government

of section seventy-three-a of the public officers law has failed to file such a statement, has filed a deficient statement or has filed a statement which reveals a possible violation of section seventy-three, seventy-three-a or seventy-four of the public officers law.

(f)  If a person required to file a financial disclosure statement with the commission has failed to file a disclosure statement or has filed a deficient statement, the commission shall notify the reporting person in writing, state the failure to file or detail the deficiency, provide the person with a fifteen-day period to cure the deficiency, and advise the person of the penalties for failure to comply with the reporting requirements. This first notice of deficiency shall be confidential. If the person fails to make such filing or fails to cure the deficiency within the specified time period, the commission shall send a notice of delinquency (i) to the reporting person; (ii) in the case of a statewide elected official, to the chief of staff or counsel to the statewide elected official; (iii) in the case of a member of the legislature or a legislative employee, to the temporary president of the senate and the speaker of the assembly; and (iv) in the case of a state officer, employee or board member, to the appointing authority for such person. Such notice of delinquency may be sent at any time during the reporting person's service as a statewide elected official, state officer or employee, member of the assembly or the senate, or a legislative employee or a political party chair or while a candidate for statewide office, or within one year after termination of such service or candidacy. A copy of any notice of delinquency or report shall be included in the reporting person's file and be available for public inspection and copying pursuant to the provisions of this section. The jurisdiction of the commission, when acting pursuant to this subdivision with respect to financial disclosure, shall continue for two years notwithstanding that the reporting person separates from state service, or ceases to hold public or political party office, or ceases to be a candidate, provided the commission notifies such person of the alleged failure to file or deficient filing pursuant to this subdivision.

(g)  The commission shall adopt a procedure whereby a person who i required to file an annual financial disclosure statement with the commission may request an additional period of time within which to file such statement, other than members of the legislature, candidates for members of the legislature and legislative employees, due to justifiable cause or undue hardship.

(h)  The commission may permit any person who is required to file a financial disclosure statement with the commission to request that the commission delete from the copy thereof made available for public inspection and copying one or more items of information which may be deleted by the

commission upon a finding by the commission that the information which would otherwise be required to be made available for public inspection and copying will have no material bearing on the discharge of the reporting person's official duties. If such request for deletion is denied, the commission, in its notification of denial, shall inform the person of their right to appeal the commission's determination in a proceeding commenced against the commission, pursuant to article seventy-eight of the civil practice law and rules.

(i)  The commission may permit any person who is required to file a financial disclosure statement with the commission to request an exemption from any requirement to report one or more items of information which pertain to such person's spouse, domestic partner, or unemancipated children which item or items may be exempted by the commission upon a finding by the commission that the reporting individual's spouse, domestic partner, on their own behalf, or on behalf of an unemancipated child, objects to providing the information necessary to make such disclosure and that the information which would otherwise be required to be reported shall have no material bearing on the discharge of the reporting person's official duties. If such request for exemption is denied, the commission, in its notification of denial, shall inform the person of their right to appeal the commission's determination, pursuant to article seventy-eight of the civil practice law and rules.

(j)  The commission may permit any person required to file a financial disclosure statement to request an exemption from any requirement to report the identity of a client pursuant to the question under subparagraph (b) of paragraph eight of subdivision three of section seventy-three-a of the public officers law in such statement based upon an exemption set forth in such question. The reporting individual need not seek an exemption to refrain from disclosing the identity of any client with respect to any matter where they or their firm provided legal representation to the client in connection with an investigation or prosecution by law enforcement authorities, bankruptcy, or domestic relations matters. In addition, clients or customers receiving medical or dental services, mental health services, residential real estate brokering services, or insurance brokering services need not be disclosed. Pending any application for deletion or exemption to the commission relating to the filing of a financial disclosure statement, all information which is the subject or part of the application shall remain confidential. Upon an adverse determination by the commission, the reporting individual may request, and upon such request the commission shall

§ 94. Commission on Ethics and Lobbying in Government

provide, that any information that is the subject or part of the application remain confidential for a period of thirty days following notice of such determination. In the event that the reporting individual resigns their office and holds no other office subject to the jurisdiction of the commission, the information shall not be made public and shall be expunged in its entirety.

(k) The commission shall permit any person who has not been determined by the person's appointing authority to hold a policy-making position, but who is otherwise required to file a financial disclosure statement to request an exemption from such requirement in accordance with rules and regulations governing such exemptions. Such rules and regulations shall provide for exemptions to be granted either on the application of an individual or on behalf of persons who share the same job title or employment classification which the commission deems to be comparable for purposes of this section. Such rules and regulations may permit the granting of an exemption where, in the discretion of the commission, the public interest does not require disclosure and the applicant's duties do not involve the negotiation, authorization or approval of:

(i) contracts, leases, franchises, revocable consents, concessions, variances, special permits, or licenses as such terms are defined in section seventy-three of the public officers law;

(ii) the purchase, sale, rental or lease of real property, goods or services, or a contract therefor;

(iii) the obtaining of grants of money or loans; or

(iv) the adoption or repeal of any rule or regulation having the force and effect of law.

10.  **Investigation and enforcement.**

(a) The commission shall receive complaints and referrals alleging violations of section seventy-three, seventy-three-a or seventy-four of the public officers law, article one-A of the legislative law, or section one hundred seven of the civil service law.

(b) Upon the receipt of a complaint, referral, or the commencement of an investigation, members of the commission shall disclose to the commission any personal, professional, financial, or other direct or indirect relationships a member of the commission may have with a complainant or respondent. If any commissioner determines a conflict of interest may exist, the commissioner shall, in writing, notify the other members of the commission setting forth the possible conflict of interest. The commissioner may

recuse themself from all subsequent involvement in the consideration and determination of the matter. If, after the disclosure, the commissioner does not recuse themself from the matter, the commission, by a majority vote finding that the disclosed information creates a substantial conflict of interest, shall remove the conflicted commissioner from all subsequent involvement in the consideration and determination of the matter, provided the reason for the decision is clearly stated in the determination of the commission.

(c)  The commission shall conduct any investigation necessary to carry out the provisions of this section. Pursuant to this power and duty, the commission may administer oaths or affirmations, subpoena witnesses, compel their attendance and testimony, and require the production of any books or records which it may deem relevant or material. The commission may, by a majority vote and pursuant to regulations adopted pursuant to the state administrative procedure act, delegate to the executive director the authority to issue subpoenas, provided that the executive director first notify the chair of the commission.

(d)  The commission staff shall review and investigate, as appropriate, any information in the nature of a complaint or referral received by the commission or initiated by the commission, including through its review of media reports and other information, where there is specific and credible evidence that a violation of section seventy-three, seventy-three-a, or seventy-four of the public officers law, section one hundred seven of the civil service law or article one-A of the legislative law by a person or entity subject to the jurisdiction of the commission including members of the legislature and legislative employees and candidates for members of the legislature.

(e)  The commission shall notify the complainant, if any, that the commission has received their complaint.

(f)  If, following a preliminary review of any complaint or referral, the commission or commission staff decides to elevate such preliminary review into an investigation, written notice shall be provided to the respondent setting forth, to the extent the commission is able to, the possible or alleged violation or violations of such law and a description of the allegations against the respondent and the evidence, if any, already gathered pertaining to such allegations, provided however that any information that may, in the judgment of the commission or staff, either be prejudicial to the complainant or compromise the investigation shall be redacted. The respondent shall have fifteen days from receipt of the written notice to provide any preliminary response or information the respondent determines may benefit the

commission or commission staff in its work. After the review and investigation, the staff shall prepare a report to the commission setting forth the allegation or allegations made, the evidence gathered in the review and investigation tending to support and disprove, if any, the allegation or allegations, the relevant law, and a recommendation for the closing of the matter as unfounded or unsubstantiated, for settlement, for guidance, or moving the matter to a confidential due process hearing. The commission shall, by majority vote, return the matter to the staff for further investigation or accept or reject the staff recommendation.

(g) In an investigation involving a victim the commission shall ensure that any interview of such victim is upon such victim's consent and that the investigator or investigators interviewing such victim have adequate trauma informed and victim centered investigative training. If a victim is requested to testify at a hearing, the commission shall provide sufficient notice to the victim of such request. Regardless of whether a victim is requested to or testifies at a hearing, the victim shall be informed as to how any statements made or information provided will be used in an investigation.

(h) Upon the conclusion of an investigation, if the commission, after consideration of a staff report, determines by majority vote that there is credible evidence of a violation of the laws under its jurisdiction, it shall provide the respondent timely notice for a due process hearing. The commission shall also inform the respondent of its rules regarding the conduct of adjudicatory proceedings and appeals and the other due process procedural mechanisms available to the respondent. If after a hearing the complaint is unsubstantiated or unfounded, the commission shall provide written notice to the respondent, complainant, if any, and victim, if any, provided that such notice shall not include any personally identifying information or information tending to identify any party involved in an investigation.

(i) The hearing shall be conducted before an independent arbitrator. Such hearing shall afford the respondent with a reasonable opportunity to appear in person, and by attorney, give sworn testimony, present evidence, and cross-examine witnesses.

(j) The commission may, at any time, develop procedures and rules for resolution of de minimus or minor violations that can be resolved outside of the enforcement process, including the sending of a confidential guidance or educational letter.

(k) The jurisdiction of the commission when acting pursuant to this section shall continue notwithstanding that a statewide elected official or a state officer or employee or member of the legislature or legislative

employee separates from state service, or a political party chair ceases to hold such office, or a candidate ceases to be a candidate, or a lobbyist or client of a lobbyist ceases to act as such, provided that the commission notifies such individual or entity of the alleged violation of law within two years from the individual's separation from state service or termination of party service or candidacy, or from the last report filed pursuant to article one-A of the legislative law. Nothing in this section shall serve to limit the jurisdiction of the commission in enforcement of subdivision eight of section seventy-three of the public officers law.

(l)   If the commission's vote to proceed to a due process hearing after the completion of an investigation does not carry, the commission shall provide written notice of the decision to the respondent, complainant, if any, and victim, if any, provided that such notice shall not include any personally identifying information or information tending to identify any party involved in an investigation.

(m) If the commission determines a complaint or referral lacks specific and credible evidence of a violation of the laws under its jurisdiction, or a matter is closed due to the allegations being unsubstantiated prior to a vote by the commission, such records and all related material shall be exempt from public disclosure under article six of the public officers law, except the commission's vote shall be publicly disclosed in accordance with articles six and seven of the public officers law. The commission shall provide written notice of such closure to the respondent, complainant, if any, or victim, if any, provided that such notice shall not include any personally identifying information or information tending to identify any party involved in an investigation.

(n)   (i) An individual subject to the jurisdiction of the commission who knowingly and intentionally violates the provisions of subdivisions two through five-a, seven, eight, twelve or fourteen through seventeen of section seventy-three of the public officers law, section one hundred seven of the civil service law, or a reporting individual who knowingly and willfully fails to file an annual statement of financial disclosure or who knowingly and willfully with intent to deceive makes a false statement or fraudulent omission or gives information which such individual knows to be false on such statement of financial disclosure filed pursuant to section seventy-three-a of the public officers law, shall be subject to a civil penalty in an amount not to exceed forty thousand dollars and the value of any gift, compensation or benefit received as a result of such violation.

§ 94. Commission on Ethics and Lobbying in Government

(ii) An individual who knowingly and intentionally violates the provisions of paragraph a, b, c, d, e, g, or i of subdivision three of section seventy-four of the public officers law, shall be subject to a civil penalty in an amount not to exceed ten thousand dollars and the value of any gift, compensation or benefit received as a result of such violation.

(iii) An individual subject to the jurisdiction of the commission who knowingly and willfully violates article one-A of the legislative law shall be subject to civil penalty as provided for in that article.

(iv) With respect to a potential violation of any criminal law where the commission finds sufficient cause by a majority vote, it shall refer such matter to the appropriate law enforcement authority for further investigation.

(v) In assessing the amount of the civil penalties to be imposed, the commission shall consider the seriousness of the violation, the amount of gain to the individual and whether the individual previously had any civil or criminal penalties imposed pursuant to this section, and any other factors the commission deems appropriate.

(vi) A civil penalty for false filing shall not be imposed under this subdivision in the event a category of "value" or "amount" reported hereunder is incorrect unless such reported information is falsely understated.

(vii) Notwithstanding any other provision of law to the contrary, no other penalty, civil or criminal may be imposed for a failure to file, or for a false filing, of such statement, or a violation of subdivision six of section seventy-three of the public officers law or section one hundred seven of the civil service law, except that the commission may recommend that the individual in violation of such subdivision or section be disciplined.

(o) The commission shall be deemed to be an agency within the meaning of article three of the state administrative procedure act and shall adopt rules governing the conduct of adjudicatory proceedings and appeals taken pursuant to a proceeding commenced under article seventy-eight of the civil practice law and rules relating to the assessment of the civil penalties or the recommendation of employee discipline herein authorized. Such rule shall provide for due process procedural mechanisms substantially similar to those set forth in article three of the state administrative procedure act but such mechanisms need not be identical in terms or scope.

§ 94. Commission on Ethics and Lobbying in Government

(p) (i) The commission shall have jurisdiction to investigate, but shall have no jurisdiction to impose penalties or discipline upon members of or candidates for member of the legislature or legislative employees for any violation of the public officers law or section one hundred seven of the civil service law. If, after investigation and a due process hearing, the commission has found, by a majority vote, a substantial basis to conclude that a member of the legislature or a legislative employee or candidate for member of the legislature has violated any provisions of such laws, it shall prepare a written report of its findings and provide a copy of that report to the legislative ethics commission, and to such individual in violation of such law. The commission shall provide to the legislative ethics commission copies of the full investigative file and hearing record.

(ii) With respect to the investigation of any individual who is not a member of the legislature or a legislative employee or candidate for member of the legislature, if after its investigation and due process hearing, the commission has found, by a majority vote, a substantial basis to conclude that the individual or entity has violated the public officers law, section one hundred seven of the civil service law, or the legislative law, the commission shall determine whether, in addition to or in lieu of any fine authorized by this article, the matter should be referred to their employer for discipline with a warning, admonition, censure, suspension or termination or other appropriate discipline. With regard to statewide elected officials, the commission may not order suspension or termination but may recommend impeachment. The commission shall then issue a report containing its determinations including its findings of fact and conclusions of law to the complainant and respondent. The commission shall publish such report on its website within twenty days of its delivery to the complainant and respondent.

11.  **Confidentiality.**

(a) When an individual becomes a commissioner or staff of the commission, such individual shall be required to sign a non-disclosure statement.

(b) Except as otherwise required or provided by law, or when necessary to inform the complainant or respondent of the alleged violation of law, if any, of the status of an investigation, testimony received, or any other information obtained by a commissioner or staff of the commission, shall not be disclosed by any such individual to any person or entity outside of the commission during the pendency of any matter. Any confidential communication to any person or entity outside the commission related to the matters

before the commission shall occur only as authorized by the commission. For the purposes of this paragraph, "matter" shall mean any complaint, review, inquiry, or investigation into alleged violations of this chapter.

(c)  The commission shall establish procedures necessary to prevent the unauthorized disclosure of any information received by any member of the commission or staff of the commission. Any breaches of confidentiality may be investigated by the New York state office of the inspector general, attorney general, or other appropriate law enforcement authority upon a majority vote of the commission to refer, and appropriate action shall be taken. (d) Any commission member or person employed by the commission who intentionally and without authorization releases confidential information received or generated by the commission shall be guilty of a class A misdemeanor.

12.  **Annual report.**

(a)  The commission shall make an annual public report summarizing the activities of the commission during the previous year and recommending any changes in the laws governing the conduct of persons subject to the jurisdiction of the commission, or the rules, regulations and procedures governing the commission's conduct. Such report shall include, but is not limited to:

    (i)  information on the number and type of complaints received by the commission and the status of such complaints;

    (ii)  information on the number of investigations pending and nature of such investigations;

    (iii)  where a matter has been resolved, the date and nature of the disposition and any sanction imposed; provided, however, that such annual report shall not contain any information for which disclosure is not permitted pursuant to this section or other laws;

    (iv)  information regarding financial disclosure compliance for the preceding year; and

    (v)  information regarding lobbying law filing compliance for the preceding year.

(b)  Such a report shall be filed in the office of the governor and with the legislature on or before the first day of April for the preceding year.

§ 94. Commission on Ethics and Lobbying in Government

13.  **Website.**

(a)  Within one hundred twenty days of the effective date of this section, the commission shall update JCOPE's publicly accessible website which shall set forth the procedure for filing a complaint with the commission, the filing of financial disclosure statements filed by state officers or employees or legislative employees, the filing of statements required by article one-A of the legislative law, and any other records or information which the commission determines to be appropriate.

(b)  The commission shall post on its website the following documents:

(i)   the information set forth in an annual statement of financial disclosure filed pursuant to section seventy-three-a of the public officers law except information deleted pursuant to paragraph (g) of subdivision nine of this section of statewide elected officials and members of the legislature;

(ii)   notices of delinquency sent under subdivision nine of this section;

(iii)  notices of civil assessments imposed under this section which shall include a description of the nature of the alleged wrongdoing, the procedural history of the complaint, the findings and determinations made by the commission, and any sanction imposed;

(iv)  the terms of any settlement or compromise of a complaint or referral which includes a fine, penalty or other remedy;

(v)   those required to be held or maintained publicly available pursuant to article one-A of the legislative law; and

(vi)  reports issued by the commission pursuant to this section.

14.  **Additional powers.** In addition to any other powers and duties specified by law, the commission shall have the power and duty to administer and enforce all the provisions of this section.

15.  **Severability.** If any part or provision of this section or the application thereof to any person or organization is adjudged by a court of competent jurisdiction to be unconstitutional or otherwise invalid, such judgment shall not affect or impair any other part or provision or the application thereof to any other person or organization, but shall be confined in its operation to such part or provision.

 Gmail

Maryann Maltese <maryannmaltese1000@gmail.com>

---

**FOIL Request Invvoice/Info.**
9 messages

---

**Patrice Zitani** <pzitani@townofbabylon.com>                    Fri, Apr 26, 2024 at 4:29 PM
To: "maryannmaltese1000@gmail.com" <maryannmaltese1000@gmail.com>

Good afternoon, Maryann.

Please find attached your completed updated FOIL requests with documentation, along with an attached invoice for the following addresses:

**Richard Schaffer's disclosed incomes from Township and other private employers inclusive of Democratic Party as of 2020, 2021, 2022, 2023 and 2024, etc.**

**Your payment can be mailed to the Town of Babylon, Town Clerk's Office.**

You can **mail** a check for **$5.25 (25 cents/page) made out to** the **"Town of Babylon"** to the following address:

**Town of Babylon**

**c/o Town Clerk's Office**

**200 E. Sunrise Highway**

**Lindenhurst, NY 11757**

- **Please include copy of the invoice along with payment.**

Thank you and stay safe and healthy.

Kindest regards,


Patty


Patrice Zitani

Office Assistant

Town of Babylon

Town Clerk's Office

200 E. Sunrise Hwy.

Lindenhurst, NY 11757

Office – 631-957-4296

Fax – 631-957-7490

E-mail – pzitani@townofbabylon.com

NOTICE: This e-mail and any attached document(s) are intended only for the use of the individual or entity to whom or to which it is addressed and may contain information that is privileged, confidential, proprietary, trade secret and exempt from disclosure. If the reader of this message is not the intended recipient or an employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or reproduction of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately and discard the original message and any attachment(s).

 **Maryann Maltese3.pdf**
3737K

---

**Maryann Maltese** <maryannmaltese1000@gmail.com>                    Thu, May 9, 2024 at 11:41 AM
To: NYED_Kovner Chambers <Kovner_Chambers@nyed.uscourts.gov>

On the Docket; Evidence-

This will be processed today but Notably the NY POST evidence stated; Richard Schaffer as Chair of Democratic is Collecting a Party salary in addition to-Township of Babylon.

I do expect a subpoena to be issued.  Employees in NYS Legislature every Session are required to Fill out Disclosures of Financial Interests.

Has Brown and or Mattera Done so-I have asked for this foilable as well from 2021-2024.

Maryann Maltese
[Quoted text hidden]

 **Maryann Maltese3.pdf**
3737K

---

**Maryann Maltese** <maryannmaltese1000@gmail.com>                    Tue, May 21, 2024 at 12:27 PM
To: Patrice Zitani <pzitani@townofbabylon.com>

Hi Patrice,

What is the status of receipt of Payment for the FOIL records?  Money Order was forwarded.

Maryann Maltese
[Quoted text hidden]

---

**Patrice Zitani** <pzitani@townofbabylon.com>                    Tue, May 21, 2024 at 12:32 PM

Good afternoon, Maryann.

Yes. We received your Money Order.

Thank you!

Kindest regards,

Patty

Patrice Zitani

Office Assistant

Town of Babylon

Town Clerk's Office

200 E. Sunrise Hwy.

Lindenhurst, NY 11757

Office – 631-957-4296

Fax – 631-957-7490

E-mail – pzitani@townofbabylon.com

**From:** Maryann Maltese <maryannmaltese1000@gmail.com>
**Sent:** Tuesday, May 21, 2024 12:28 PM
**To:** Patrice Zitani <pzitani@townofbabylon.com>
**Subject:** Re: FOIL Request Invvoice/Info.

>>> This message has originated from an **External Source**. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email. <<<

[Quoted text hidden]
[Quoted text hidden]

Maryann Maltese <maryannmaltese1000@gmail.com>                    Tue, May 21, 2024 at 12:36 PM
To: Patrice Zitani <pzitani@townofbabylon.com>

How about the records? When will they be processed?

Maryann Maltese
[Quoted text hidden]

**Patrice Zitani** <pzitani@townofbabylon.com>                                 Tue, May 21, 2024 at 12:41 PM
To: Maryann Maltese <maryannmaltese1000@gmail.com>

Hello Maryann.

Please see my email from April 26, 2024 and the above attachment.

Kindest regards,

Patty

Patrice Zitani

Office Assistant

Town of Babylon

Town Clerk's Office

200 E. Sunrise Hwy.

Lindenhurst, NY 11757

Office – 631-957-4296

Fax – 631-957-7490

E-mail – pzitani@townofbabylon.com

[Quoted text hidden]
[Quoted text hidden]

📄 **Maryann Maltese3.pdf**
3737K

---

**Maryann Maltese** <maryannmaltese1000@gmail.com>                             Wed, Jun 12, 2024 at 5:36 AM
To: Patrice Zitani <pzitani@townofbabylon.com>

Good morning.

Did you forward the FOIABLE materials?

Please advise,

Maryann Maltese
[Quoted text hidden]

---

**Patrice Zitani** <pzitani@townofbabylon.com>                                 Wed, Jun 12, 2024 at 9:17 AM
To: Maryann Maltese <maryannmaltese1000@gmail.com>

Please see the email chain below and the attachment above with the FOILABLE materials emailed on **April 26, 2024**. We did receive the Money Order for **$5.25**.

Thank you and have a great day.

[Quoted text hidden]
[Quoted text hidden]

📄 **Maryann Maltese3.pdf**
3737K

**Maryann Maltese** <maryannmaltese1000@gmail.com>                                Wed, Jun 12, 2024 at 10:37 AM
To: Patrice Zitani <pzitani@townofbabylon.com>

Thanks Patrice.
[Quoted text hidden]

BTW-who is covering your Fee; Mr. Schaffer Himself or NYS Democratic Party?

That is a FOIL request. Have you advised Judicial? Please provide the retainer proof by Mr. Schafer if he or the NYS Democratic Party is covering his Legal Fees.

This matter is not for Township to pay for-this is PO matter whereas Richard Schaffer-was operating on behalf of NYS Democratic Party.

Therefore-please advise.

Regards,
Maryann Maltese, PO Plaintiff Pro Se'
[Quoted text hidden]

---

Maryann Maltese <maryannmaltese1000@gmail.com>                                          Wed, Jun 12, 2024 at 9:35 AM
To: public.integrity@ag.ny.gov

Good morning on the complaint filed in 2024 seeking verification if Huntington Democratic Organization is operating or not and is required if no assets to 'Voluntarily" Dissolution of Corporation status as I do not believe the 'Sub Party" is paying its rent at Main Street.

Re: NYAG Submission #1-875144132

When were the Scheduled meetings of December 2019-until February 15, 2020-this is Pre-Pandemic-not Pandemic Special Election 2020.

Schaffer never scheduled meetings with me, or with All of us to Meet each other.

Schaffer is an inciter and then within Female nominees-Schaffer as Chair resorts intentionally to Sexual Harassment Employer formation willful.

Instead of Consensus building within Party voter registrations; Schaffer-divides within Democrats since 2018-2024 as Chair.

Schaffer is an Incitor; violating not only Maryann; but his 'Business Chair" Incorporation requirements of Sexual Free zone inside the Party.

Schaffer has not selected a Female Nominee Party since when for State and Federal offices?

In 2018-Schaffer did not select Lubia Gretchum as Party Candidate US Congressional

In 2020-Schaffer intentionally avoided my Rights as Public Officer First to Nomination Considerations; a Dual Offense as Schaffer in 2020 is a High Public Officer Employer agent.

In 2021-Schaffer tosses Tim Sini under the Bus without Causation 30 days before General Election

In 2023-Schaffer Eliminates Election Processes for Township of Babylon Races; forcing a Primary against ONLY Female Elective Officer-Town Assessor

In 2024-There are no Nomination General Meetings for State offices inclusive of the 12th AD.

Richard Schaffer is a Paid Party Employee intentionally violating his Role as Chair; of the Business organization; Suffolk Democrats which has oversight of Huntingtin Democrats-a Subdivision of State Democrats.

Where is Schaffer's guidances and or Accountability?

Two State Elective Officers resigned this year in Suffolk

Kim Jean Pierre-NYS Assembly
Fred Thiele-NYS Assembly

To: Rich Schaffer <rich.suffolk@gmail.com>
Cc: Mary Collins <chairhtdc@optimum.net>, Luis Montes <luis.montesamaya@gmail.com>, Peter Casserly <pmcass48@gmail.com>, Jerzy Kruszlinski <jkruszlinski1@gmail.com>, Kevin Bonner <kevintbonner@gmail.com>, Matt Jennings <matt@suffolkdems.com>, Keith Davies cell <keithdavies5@gmail.com>

Great, l list of who is a member of the caucus is necessary.  As you have forwarded my information to everyone here. It would be nice if they get to know me as me and not as this email. Feel free to reach out if anyone wants to have lunch.

Have a fantastic day.

Maryann
631-644-5765

[Quoted text hidden]

Rich Schaffer <rich.suffolk@gmail.com>                                                                Tue, Dec 31, 2019 at 12:09 PM
To: Maryann Maltese <maryannmaltese1000@gmail.com>
Cc: Mary Collins <chairhtdc@optimum.net>, Luis Montes <luis.montesamaya@gmail.com>, Peter Casserly <pmcass48@gmail.com>, Jerzy Kruszlinski <jkruszlinski1@gmail.com>, Kevin Bonner <kevintbonner@gmail.com>, Matt Jennings <matt@suffolkdems.com>, Keith Davies cell <keithdavies5@gmail.com>

**Matt:  Can you get Maryann a copy of the committee list for 12th AD?  Thanks**
[Quoted text hidden]

Matt Jennings <matt@suffolkdems.com>                                                                  Thu, Jan 2, 2020 at 11:49 AM
To: Rich Schaffer <rich.suffolk@gmail.com>
Cc: Maryann Maltese <maryannmaltese1000@gmail.com>, Mary Collins <chairhtdc@optimum.net>, Luis Montes <luis.montesamaya@gmail.com>, Peter Casserly <pmcass48@gmail.com>, Jerzy Kruszlinski <jkruszlinski1@gmail.com>, Kevin Bonner <kevintbonner@gmail.com>, Keith Davies cell <keithdavies5@gmail.com>

Sure thing. Please see attached...
[Quoted text hidden]
--
Matt Jennings
Executive Director
Suffolk County Democratic Committee
Office: (631) 439-0400

📎 AD-12 Committee Member Info.xlsx
   38K

Maryann Maltese <maryannmaltese1000@gmail.com>                                                         Thu, Jan 2, 2020 at 12:24 PM
To: Rich Schaffer <rich.suffolk@gmail.com>, Mary Collins <chairhtdc@optimum.net>

I got a copy of the list.  Is there a reason no one from Huntington or West Islip is listed as a Democratic Caucus Member?
[Quoted text hidden]

Rich Schaffer <rich.suffolk@gmail.com>                                                                Thu, Jan 2, 2020 at 2:38 PM
To: Maryann Maltese <maryannmaltese1000@gmail.com>
Cc: Mary Collins <chairhtdc@optimum.net>

**They have separate tabs at the bottom of the sheet, one for Huntington Town and one for Islip Town**
[Quoted text hidden]

Jerzy Kruszlinski <jkruszlinski1@gmail.com>
To: Maryann Maltese <maryannmaltese1000@gmail.com>
Cc: Kevin Bonner <kevintbonner@gmail.com>

Good Afternoon!

Chairman Rich Schaffer requested to send an updated contact list of the higher tier committee members in the Town of Babylon's 12th Assembly District. You will find that these committee me overall AD-12 Committee Member list.

| Firstname | Lastname | NAME | ADDRESS | TOWN     MAILING | Cell Phone | Home Phone | Phone 2 |
|-----------|----------|------|---------|------------------|------------|------------|---------|
| Janice | James | JANICE JAMES | 323 W 20TH ST | DEER PARK NY 11729-6317 | (631) 806-7985 | (631) 586-1316 | |
| Karen | Crescione | KAREN A CRESCIONE | 24 NANTUCKET LN | DEER PARK NY 11729-1013 | (631) 897-1645 | (631) 667-1499 | |
| Rosanne | Errario | ROSANNE ERARIO | 335 BALDWIN PATH | DEER PARK NY 11729-1412 | 631-827-9546 | 631-392-1519 | |
| Denise | Graziano | DENISE GRAZIANO | 85 WRIGHT AVE | DEER PARK NY 11729-2807 | | (631) 667-3909 | |
| Domenico | Russo | DOMENICO J RUSSO | 7 ST CLAIR ST | DEER PARK NY 11729-3509 | (516) 318-7163 | (516) 318-7163 | |
| Catherine | Hyde | CATHERINE E HYDE | 100 W 16TH ST | DEER PARK NY 11729-4008 | 631-827-1511 | (631) 586-4807 | |
| Marco | Parodi | MARCO PARODI | 53 W 13TH ST | DEER PARK NY 11729-4051 | | (631) 565-5032 | |
| Carol | Quirk | CAROL QUIRK | 137 W 7TH ST | DEER PARK NY 11729-5011 | (631) 804-2500 | (631) 242-0998 | |
| Maureen | Bailey-Treco | MAUREEN BAILEY-TRECO | 287 W 2ND ST | DEER PARK NY 11729-6516 | (914) 320-0052 | (631) 242-4716 | 631-316-6602 |
| Thomas | Donnelly | THOMAS DONNELLY | 298 W 7TH ST | DEER PARK NY 11729-6545 | (631) 926-5226 | (631) 243-0651 | |
| Michael | Cafaro | MICHAEL CAFARO | 22 GAULTON DR | N BABYLON NY 11703-2306 | (631) 949-6506 | (631) 243-1127 | |
| Kristi | Reynolds | KRISTI REYNOLDS | 15 LEEDS LN | N BABYLON NY 11703-2901 | (631) 885-2346 | | |
| James | Valente | JAMES M VALENTE | 20 MOHAWK AVE | DEER PARK NY 11729-2407 | 631-667-5812 | 631-745-9382 | |
| John | Beck | JOHN BECK | 21 PARLIAMENT PL | N BABYLON NY 11703-3309 | 516-578-2363 | 631-586-7138 | |

Hope this helps!

Jerzy Kruszlinski
Town of Babylon Democratic Committee
[Quoted text hidden]
--
Thanks,

📄 AD-12 Committee Member Info.xlsx
38K

---

Maryann Maltese <maryannmaltese1000@gmail.com>
To: New York State Democratic Committee <info@nydems.org>

Tue, Feb 15, 2022 at 2:44 AM

Jay and Kathy,

It's one year since the February 15, 2020; Nomination Meeting was called and scheduled. I began inquiring of the matter as of 11/2019 as Raia vacated the seat in June 2019. That's 18 months-without a Member in Office alone-seeking Legislative relief as an Employee. of the NYS Assembly or Former Employee of NYS Assembly. A number of business oriented emails transpires between Rick Schaffer and Matt Jennings-2 paid Employees by Suffolk County Democrats-which NYS State Committee has oversight of.

A nomination email on candidates was received and resume sent.

There is no reason for Rick Schaffer to have run the 2020 Special Election Nomination meeting 1 year ago today Unethically and Unprofessionally. I was invited to attend as a Nominee and even within NYS Board of Elections rules of seeking offices-an interested Member of the Community can attend; stating their interests in as well to seek election office.

Why. Rick failed to run an ethical meeting in it's entire process was his personal decision making. I received confirming email beyond the attached the emails; that the Meeting was called for 8:30am and I walked into the Meeting Center 8:37am to a Full ROLL CALL Vote already in process.

I was advised to take a seat in the front row and 2 other. nominees were sitting there. As roll call was being read out-to place their public vote; I asked another candidate sitting next to me-"Was their Nominee Introductions". Averim advised me-"NO-the decision was already Made". To which I raised my hand; to respectfully seek-and Ask Richard-why he didn't offer "Introductions and opportunity for Nominees 3-5 minutes of Floor time for Nominee Introductions".

It was then-that Richard laughed in my. face; Stating-Everyone Knows everyone and Introductions are not required. I interjected seeking my Right under Robert Rules of Order for Professional and Courtesy as an Invited Nominee to address Stop the Roll call vote and grant myself and the other Nominees the Opportunity. to Have Floor time.

Instead of doing so-Richard; continued to mock me; end in doing so-Advised a Room of attendees attached below; that-"OHHH this Maryann; Perhaps You've seen her Posters around Town-SHE is CUTE".

Instead of Running the Meeting Professionally; Rick decided intentionally to run Incite with Sexual Charged referencing to the Only Female Nominee in the room and he continued to embarrass Me as if I do not have Professional Background in Legislative Service to be extended Chair-courtesy. Under no circumstances during November -February did I encourage Mr. Schaffer to develop any form of Attractive or Suggestive emotions for this Chair who earns-to treat to me disrespectfully and to Run a Nomination Meeting as a Dating Center.

These actions are grounds for immediate dismal as Chair of the Suffolk County Democrats; a Paid for Employment Position. Since February 15, 2020-Matt Jennigs is no longer employed with the Party and I did have a witness attend with me. As Richard was unwilling to extend my Professional Courtesy, and keep his Discriminatory comments going; I left a room because a Mob of Individuals (Nomination Committee) was being egged on as well-to incite further Hostile environment.

I have Legalsuit against Richard and Suffolk County Democrats in Suffolk Supreme and have sent Jay email version complaint.

I'm asking for Chair to be fired and civil compensation required if that does not Occur for defamation of character.

In my 30 years-I never seen a Chair; not grant Nominees Professional Courtesy even if the Nominee walked into a Meeting; 1 hour late as often Clubs have meetings scheduled same day/night. There was no Incumbent Member-for Chair to have the ultimate authority to invoke their Privilege of non introduction and as this was a Professional Called for Meeting on Nominee selection; Richard had the Obligatory responsibility to grant the Nominees and voting Members courtesy.

This year as well; I'm seeking the Nomination for US Congressional 3rd as it's being vacated as well. I also implied interest in AD 12.

What is the status of Nomination required meetings vitally or in person? and the decision making of the State party on Maryann Maltese v. Richard Schaffer; if index number is required Jay and Kathy it's been forwarded under separate email coverage. Nominees take time out of their lives to be available and we all understand that we're taking time from our Origin Profession to run for Offices-therefore; I do understand or accept the intolerable conditions Rick Schaffer decided on in his Decision to run the 2020 Special election nomination meeting for 1 seat.

I appreciate learning of the status of Both-Decision making on my complaint and who is Accountable for Running the 2022 Nomination Meeting. I do believe Rick has inappropriately treated other Female Nominees unfairly and within Sexually driven commentary. It's this committee's obligation to speak out and up.

Rick is earning a living as a Public Elected Official and is a Practicing Private Attorney. Is the seat for Sale or we have a Process? Richard decided to run the meeting Hostile between Nominees; only additionally granting 2 Nominees as advised to me by 1; that He was included in a Separate Meeting decision making-I was not additionally extended this courtesy.

Thanks for the time this evening. You can reach me 631-644-5765.

Maryann Maltese
19 Ringler Drive
East Northport, NY. 11731
631-644-5765.
[Quoted text hidden]

📄 AD-12 Committee Member Info.xlsx
38K

---

Maryann Maltese <maryannmaltese1000@gmail.com>
To: "Anthony M. La Pinta" <aml@lapintalaw.com>, New York State Democratic Committee <info@nydems.org>

Sun, Oct 29, 2023 at 5:43 PM

Anthony-

I can save this for tomorrow-but It's after 5pm and every one involved in index-is permitted to have More than One source of income; like your Client while I'm waiting for my Pension as a Full time EMPLOYEE for 29 years within Legislature.

Remind your client-I wasn't the DISH-to Fuck with. Perhaps Richard-didn't get the MEMO-or read the Resume.

That's on Richard.

Richard deserves to be FIRED-terminated for Breaching his PO Oath within the Political Party and so forth.

Here's a List of Democrats whereas a Female Nominee in 2020-was treated as a Prostitute vs PO.

As a Courtesy Anthony as well-I'm going to remind YOU; I paid into the State Pension and my Service LIFE is impeccable.

Perhaps if your client Considered Women as People vs Sex OBJECTS where an open roll call vote was in Process et Time of Meeting notice-then; Richard might not have breached his ethics.

I hope the NYS Democratic Party is paying your hourly fee. What is the Party's Malpractice Carrier? Inquiring Judiciary minds are required to receive-the State Political Party; the Suffolk County Chapter is not Self Sovereign.

The County Governmant as well-as I sent in the Prior email is using the State Taxpayer website to advertise Races-they are not the State Board of Elections.

County Government-is not Authorized to LIST ANY nominee for Elective offices.

Let me know when Richard is resigning and Post 2020; Other Nominees have other serious complaints against Richard as Chair. If Chair Guided County Executive Officer incorrectly this year-to Post the Elections races of 2023 on their Website-that TOO within Motion is direct means to be Terminated as At Will Chair Employee of Political party.

A PO without their Active and Inactive-is a violation of YOUR clients intentional decision making.

Ask Tim Sini-how he sees Richard Schaffer too-I'm happy to ask him to be a Professional Witness as a former NYDA.

I'm so glad we had this Discussion today as Mutual holders of the NYS Constitution. There is my poster-that Richard labeled me as CUTE vs PO.

Again-perhaps if Richard actually Cared about Democratic Party-Suffolk-better Mentor for Nominees would be Consideration. Steve Bellone might be a Good Chair as of 2024.

Best regards,
Maryann Maltese

---------- Forwarded message ----------
From: Jerzy Kruszlinski <jkruszlinski1@gmail.com>
Date: Thu, Jan 16, 2020 at 1:53 PM
Subject: Re: Happy Holidays
To: Maryann Maltese <maryannmaltese1000@gmail.com>
Cc: Kevin Bonner <kevintbonner@gmail.com>

[Quoted text hidden]

3 attachments


**IMG_4752.jpg**
2036K


**IMG_1346.jpg**
2867K

📄 **AD-12 Committee Member Info.xlsx**
38K

---

**Anthony M. LaPinta** <aml@lapintalaw.com>                                                              Sun, Oct 29, 2023 at 9:49 PM
To: Maryann Maltese <maryannmaltese1000@gmail.com>
Cc: New York State Democratic Committee <info@nydems.org>

Ms. Maltese.

There's no need to go back and forth with this on emails. You are entitled to proceed with your litigation and we are entitled to defend it. Let's please keep our correspondence within the various legal discovery options available to litigants and not by needless, spontaneous and derogatory emails. Thank you.

Anthony M. La Pinta, Esq.
Reynolds, Caronia, Gianelli & LaPinta, P.C.
200 Vanderbilt Motor Parkway
Suite C-17
Hauppauge, New York 11788
Tel: 631-231-1199
Fax: 631-300-4380
Email: anthony@lapintalaw.com
Web page: lapintalaw.com

On Oct 29, 2023, at 5:43 PM, Maryann Maltese <maryannmaltese1000@gmail.com> wrote:

[Quoted text hidden]
<AD-12 Committee Member Info.xlsx>
<IMG_4752.jpg>
<IMG_1346.jpg>

---

**Maryann Maltese** <maryannmaltese1000@gmail.com>                                                       Mon, Oct 30, 2023 at 8:46 AM
To: "Anthony M. LaPinta" <aml@lapintalaw.com>, New York State Democratic Committee <info@nydems.org>

I do understand that-but You should advise your Client to concede.

Schaffer has not SCHEDULED nomination meetings for 3 NYS Assembly seats in 2024 and as far as Suffolk County Democratic Party website-Chair has left names of the Retiring Officers as Current Officer-defrauding the Public and myself.

Public Integrity violations are not on the end of Maryann maltese but on the End of Chair Richard Schaffer for 6 General Elections from 2018-2024.

Schaffer is building his Personal wealth at the Hands of Public Officers inclusive of Maryann Maltese and Perhaps Former NYDA; Tim Sini.

Like the Former State Independence Party; if Huntington Democrats don't have the assets and or ability to cover their Business Insurance, then Voluntary dissolution is being responsible to 'Larger Democratic Organization" of NYS.

Schaffer is of Counsel-has he advised NYS BOE of Required Political Party filings and 'Voter Registrants between" between 2 Clubs; Huntington and Suffolk.

Schaffer is bleeding myself as PO to set Smokescreen and mirrors for his ONLY willful actions as Chair. and Schaffer is not Inclusive in WELCOMING local democratic voter registrants to the Suffolk County PARTY. There are no required meetings as well monthly on a consistent basis to Build Consensus of Like minded Democrats as a Business organization Political party must do.

Please note my complaint as I filed litigation and I have a Notice of Claim pending.  However-looking inward-Richard Schaffer retaliates against Women at large and when a Female Public Officer questions any actions-he retaliated.

Chair Retaliated-and within his leadership CHAIR SCHAFFER is not mentoring, Schaffer is not sponsoring Voter drives and Schaffer is avoiding his Required Oath to the Business Organization requirements as Chair since 2018-forward.

Schaffer as well bleeds women seniors so they'll fall into Foreclosures and if these households live around "Schaffer's Projects"; he presses them to sell.

Example;

GEIGER PARK-Properties adjacent to the Corners of Geiger; Schaffer is denying these homeowners; Property tax exemptions as Town Supervisor.   Maryann Maltese is a licensed NYSDOS Sales Associate as well with Public Officer Service-first-not last like Richard Schaffer.

Schaffer is a Broker first-then a Chair-that's how Schaffer operates from 2018-2024-he preys on the Poor-he Acts like he Befriended you-then He Looks to eliminate if you're in his way-without Party consensus.

Investigate Schaffer-my ethics is Solid Iron Clad.

Please advise,
Maryann Maltese


---------- Forwarded message ---------
From: Rich Schaffer <rich.suffolk@gmail.com>
Date: Sat, Dec 28, 2019 at 3:59 PM
Subject: Re: Happy Holidays
To: Maryann Maltese <maryannmaltese1000@gmail.com>
[Quoted text hidden]
[Quoted text hidden]

Maryann Maltese <maryannmaltese1000@gmail.com>
To: public.integrity@ag.ny.gov                                                          Wed, Jun 12, 2024 at 9:48 AM

NYAG Submission #1-875144132

Below is the rooster of Democrats of 2020-what is the Current Membership of Suffolk County Democrats?

Please provide the Additive Members from 2021, 2022, 2023 and 2024 that decided my Faith of not granting me a "Nomination: and or not Hosting Nomination in 2022, and or 2024.

Who else can be asked; Nancy Goroff; a Nominee-non-Public Officer; US Congressional 2020 and 2024.

Under Nancy Goroff-how many NEW Democrats have been accepted as Members of Suffolk County Democrats in 2024?  Any?

Under John Avlon-how many NEW Democrats have been accepted as Members of Suffolk County Democrats in 2024? Any?

Under Maryann Maltese-How many NEW Democrats have been accepted as Members of Suffolk County Democrats in 2018, 2020, 2022 and 2024?

Under Tim Sini-How many NEW Democrats have been accepted as Members of Suffolk County Democrats in 2016-2022?

Under Gretchum Lubia-How many new Democratic Voter Registrants were Accepted into Suffolk County Democratic Organization?  ANY?

**Has Richard Schaffer-successfully placed any New Democrat into a Non Incumbent seat since 2018?  No.**

**And how many years are State Democrats Paying Richard Schaffer; as Democratic Party is a State BUSINESS ORGANIZATION?  8? or 10?**

**In the years that Schaffer has been a PAID employee-what reasoning would State Party as a Business Organization grant a Reason for Schaffer to receive Salary Increases as CHAIR?**

**Pay raises are due to performance-who is Richard Schaffer assisting  as a Democrat?  Richard is the Chair of "BUSINESS ORGANIZATION" Suffolk Democrats-then-where is his accountability?**

**Where is his accountability to maryann maltese as Public Officer of NYS Assembly employee as in ADVOCATING in 2018 for my offer of End of Service or 'Nominee"?**

**It is Schaffer keeping women PO without Rights in Service-willful.**

Get to work Public Integrity as my Service is INCREDIBLE and a s Democrat-I never intentionally slaughtered a Fellow Democrat.

Strangled them until Lifeblood was gone.

We're officers; Richard and Maryann-if not the Nominee-then; ADVOCATION for prime Bill language-and instead-Schaffer turns the meeting into a Dating SHOW in 2020.

Isn't Maryann CUTE-vs **Maryann is a Honorable dedicated Officer.**

Regards,
Maryann Maltese
-------- Forwarded message --------

Date: Thu, Jan 16, 2020 at 1:53 PM
Subject: Re: Happy Holidays
To: Maryann Maltese <maryannmaltese1000@gmail.com>
Cc: Kevin Bonner <kevintbonner@gmail.com>
[Quoted text hidden]

📄 **AD-12 Committee Member Info.xlsx**
   38K

---

**Maryann Maltese** <maryannmaltese1000@gmail.com>                                                    Wed, Jun 12, 2024 at 9:49 AM
To: public.integrity@ag.ny.gov

NYAG Submission #1-875144132

These registrants are they Certified Democrats or Republicans?

Please advise.

---------- Forwarded message ----------
From: Jerzy Kruszlinski <jkruszlinski1@gmail.com>
Date: Thu, Jan 16, 2020 at 1:53 PM
Subject: Re: Happy Holidays
To: Maryann Maltese <maryannmaltese1000@gmail.com>
Cc: Kevin Bonner <kevintbonner@gmail.com>

[Quoted text hidden]

📄 **AD-12 Committee Member Info.xlsx**
   38K

**Suffolk County Democratic Committee**

**Rich Schaffer, Chairman**
1461 Lakeland Avenue, Suite 3
Bohemia, NY  11716

Phone (631) 439-0400
Fax    (631) 439-0404
Suffolkcountydems.com

February 2020

TO:          County Committee Members in the 12th Assembly District

FROM:     Rich Schaffer, County Chairman

RE:          Nominating Convention – February 15, 2020

In accordance with Article VI, Section 1, of the Suffolk County
Democratic Committee Rules and Regulations, there will be a
nominating convention for Assembly District 12, on Saturday,
February 15, 2020.  A vacancy exists in this office.

It will be held at:

TIME:      **8:30 am**

PLACE:    Constantino Brumidi Lodge
              2075 Deer Park Ave
              Deer Park, NY 11729

Please attend this very important meeting.


RS/dm

 Gmail

**Maryann Maltese <maryannmaltese1000@gmail.com>**

## Meeting Saturday for AD-12 Committeemembers
5 messages

**Matt Jennings <matt@suffolkdems.com>**                                       Thu, Feb 13, 2020 at 9:47 AM
Cc: Rich Schaffer <rich.suffolk@gmail.com>, Avrum Rosen <avrumrosen@rosenforassembly.com>, Michael Marcantonio
<Marcantm8@gmail.com>, Maryann Maltese <maryannmaltese1000@gmail.com>

Committeemembers,

A meeting has been called to name a candidate in the upcoming Assembly District 12 Special Election.

Formal meeting notices were mailed on Tuesday. The meeting notice is attached below.

The meeting will take place this Saturday, February 15th, 2020 at 8:30 AM at the Sons of Italy, Constantino Brumidi Lodge
at 2075 Deer Park Ave, Deer Park, NY 11729.

We look forward to seeing you there.

--
Matt Jennings
Executive Director
Suffolk County Democratic Committee
Office: (631) 439-0400

📄 **Meeting Notice Nominating convention AD 12 February 2020 (Autosaved).pdf**
153K

---

**Maryann Maltese <maryannmaltese1000@gmail.com>**                             Thu, Feb 13, 2020 at 10:29 AM
To: Chris <chris@designatronix.com>

You ready?
[Quoted text hidden]

📄 **Meeting Notice Nominating convention AD 12 February 2020 (Autosaved).pdf**
153K

---

**Maryann Maltese <maryannmaltese1000@gmail.com>**                             Thu, Feb 13, 2020 at 10:30 AM
To: Kayla Crowe <00crowe00@gmail.com>

are you free tomorrow?

---------- Forwarded message ---------
From: **Matt Jennings <matt@suffolkdems.com>**
Date: Thu, Feb 13, 2020 at 9:47 AM
Subject: Meeting Saturday for AD-12 Committeemembers
To:
Cc: Rich Schaffer <rich.suffolk@gmail.com>, Avrum Rosen <avrumrosen@rosenforassembly.com>, Michael Marcantonio
<Marcantm8@gmail.com>, Maryann Maltese <maryannmaltese1000@gmail.com>

[Quoted text hidden]

📄 **Meeting Notice Nominating convention AD 12 February 2020 (Autosaved).pdf**

**Maryann Maltese** <maryannmaltese1000@gmail.com>    *(Governor Home)*    Thu, Jul 2, 2020 at 1:01 PM
To: Invitations Office <Invitations.Office@exec.ny.gov>

Governor,

I expressed interest in running as the Party Candidate in 2018; whereas the party selected someone else. I realize this isn't the correct email, but you need to hear how I as a Professional Woman of Legislative Process has been treated by "the gold ole boy network" of Suffolk County.

On January 14th, 2020-I touched base with Chairman on setting up a meeting to determine who would be the candidate of the 12th-whereas he didn't have a scheduled date for the meeting

Finally, Below-is the Email whereas Matt Jennings and Rick advised me the "Caucus Meeting scheduled at 8:30am. I walked in to a ROll call vote in process at 8:37am.

There was no introductions and there was no candidate courtesy of 3-5 minutes to speak to Suffolk County Democrats. I have 30 years of Campaign Management I have never seen a Party Chairman or Chairwoman be so ignorant in their role. Rick makes $120,000 as the Chairman alone. I have made no Commissions-but this moron and that's what he is-disrespected me as Female of Process with the same level of experience as him.

Rick Schaeffer-refused to introduce me or any other Candidate in the room running for the 12th AD. Proclaiming-everyone knows everyone Maryann, but ohh by the way...this is Maryann-maybe you saw her posters around; they are cute. was ricks direct response to me after inquiring-why is the Chairman calling a roll call vote when no candidate in the room received courtesy of acknowledgement.

Our National Charter of the Democratic Party recognizes under Robert Rules-protocol with Quorum for taking a vote and common courtesy at a meeting extended to Committee Members and those of us placing ourselves in asking to be their new leader.

It's the 100 year of Women's Suffrage and 100 years only that we can seek to be LEADERS and for Rick Schaeffer who makes $120,000 as the Chairman of Suffolk County Democrats to not recognize me in meeting-is a violation of his duty and he should be removed immediately.

That was February 13th, 2020

On Feb.24, 2020, a Commack Librarian felt himself up while at the Commack Library Help station and as he knelt down one knee to assist me with the program he felt himself up and asked me,' Is this better", This situation was reported to the 2nd Precinct and to Commack Library Joanne Albano, 631-499-0888. No not really.

It was reported to the 2nd Precinct and to the Library on March 11, 2020-it wasn't Pandemic oriented Governor; but a smack again to women challenging power.

NYS Petitioning as a Democratic Delegate commenced on February 25, 2020 and on March 7th-you called a State of Emergency Pandemic Health care oriented. You introduced EO 202.2 "reducing my time span" as a Challenging candidate while providing "party endorsed candidates" with time to come into compliance during a pathogen acknowledged pandemic-instead of declaring "delegates "halt your "witness and collection" of signatures...until further notice. You indefinitely postponed Independent petitioning the same day-so you obviously understood the ramifications of your declaration.

Being in Campaign Management for a number of years has shown me some ugly things-but the above is by far the worse. Thankfully I have a witness that walked into Democratic Suffolk County Meeting with me and he too-was surprised that a roll call vote was in process and I NEVER received change in Scheduling of the appointment to arrive 30 minutes earlier than 8:30am on February 13th, 2020 at the Lodge where Rick calls his meeting in Deer Park.

Lets continue; Prior to February 13th-Gina (Deer Park Civic Assn) in January-I have the email. Decided to reach out to me at my place of employment; Brentwood UFSD, by advising me; I'm not invited to their Civic Meeting ever as a candidate which is not legal and then SHE proceeded to email me about "me teaching lesson" while teaching. Is GINA an employee at Brentwood UFSD's Superintendent's office? No-she is not. She and Carol (ANdrew Raia's cousin) oh Carol informed me so at a Public Meeting where Schaeffer and Brown attended too-that I could not stand outside the meeting to circulate my delegating petitions-but Gina's allowed to email me about the lesson plan I taught during School-Middle School I might add. Date and times to be provided.

Gina-is a pawn of Rick's. Perhaps a precinct should look into her behavior as I have never reached out to her employer

Now, I hope to see you at my Court Challenge to run for the seat, and again, Mr. Rick-Chairman $120,000 paid position needs an updated democratic list to actually take a roll call vote-i don't think there was a quorum on 2/13/2020 and he should be removed as the Democratic Chairman because I'm not the only female candidate he's been inappropriate with and unprofessional.

Women who want to be leaders-should not have to tolerate; wolf calls or Chairpersons stating publicly in front of Male Voting Members...No Maryann...I'm not going to introduce you; you're late (7 mins) but have you seen Maryann's posters...they are cute.  From there it's been Male after Male-jerking off or rubbing themselves all over the district.   This is why Rick needs to be removed as the Suffolk County Chairman-because he doesn't lead by example.

I hope to see you at our EO Court Challenge as I'm still the Delegate.   Interesting...Suffolk Supreme seems to think they're not the right "court jurisdiction" to hear my case?   But Polenz -aka Brown v. Marcantonio had a virtual hearing index number 2020-01569..to discuss knocking off people from Mike's petitions etc...again Child's play; but the interesting thing that did develop from their case is; "Suffolk Supreme Court" approved their virtual hearing.   But Maltese's Index number 2020-01568 is in the wrong jurisdiction pertaining to election law.  Why?

I'm a Professional-just like you Governor.

Have a nice day,
Maryann Maltese
631-644-5765
19 RIngler Drive
East Northport, NY. 11731


---------- Forwarded message ---------
From: **Matt Jennings** <matt@suffolkdems.com>
Date: Thu, Feb 13, 2020 at 9:47 AM
Subject: Meeting Saturday for AD-12 Committeemembers
To:
Cc: Rich Schaffer <rich.suffolk@gmail.com>, Avrum Rosen <avrumrosen@rosenforassembly.com>, Michael Marcantonio <Marcantm8@gmail.com>, Maryann Maltese <maryannmaltese1000@gmail.com>

[Quoted text hidden]

📄 **Meeting Notice Nominating convention AD 12 February 2020 (Autosaved).pdf**
153K

---

**Maryann Maltese** <summertime57@icloud.com>                                          Tue, Jun 20, 2023 at 9:02 PM
To: maryann maltese <maryannmaltese1000@gmail.com>


Begin forwarded message:
[Quoted text hidden]


📄 **Meeting Notice Nominating convention AD 12 February 2020 (Autosaved).pdf**
153K

 Gmail

Maryann Maltese <maryannmaltese1000@gmail.com>

**Happy Holidays**
17 messages

Maryann Maltese <maryannmaltese1000@gmail.com>                                                         Tue, Dec 24, 2019 at 12:41 PM
To: Rich Schaffer <rich.suffolk@gmail.com>

I'm touching with you because both Mike and I will need either an Attorney to represent us to be a candidate for the NYS Assembly Seat.

We both have a NYS residency issue. Mine, has a better Fact Pattern as I have not casted a vote outside of NYS territory. I lived in Florida for 20 months and returned to NYS in June 2015 to the "same address". As a NYS Public Employee from the NYS Legislature there is "no reason why I should not be granted an Affidavit or Waiver of these restrictions". There's been no break in ownership rights and my primary address is 19 Ringler Drive, Enpt since May 2001.

The last Election cycle I gathered over 400 signatures by myself and was rejected from the line although party candidates were granted an extension of time to gather signatures for the line by Suffolk County BOE. I'm not going to address that with you, but bring it to your attention, but accept their reasons.

This time around will not be so amicable. Mike will not qualify unless he's able to fight the present precedent he set by the court case.

I meet the requirements for candidacy with the party's support or I'm going to make it public every day and perhaps Leaders can answer the questions of why I was being rejected when I'm in good standing.

Additionally, as a fellow Democrat, I reached out to other candidates on my own to work with them-they took the position of rejection. It won't be tolerated, and no I don't have respect for Andrew Raia. But did Suffolk County Dems report the campaign abuses that Raia, and his followers pursued? I reported them-did you?

I'm not being emotion but perhaps if you had taken a meeting with me as I have asked you several times, then you would hear it in my voice, that I'm not emotional but ANGRY. I don't send emails around to the papers-this one is directed to you.

Here's several election ideas going forward.

I'm going to introduce the Bill that will include Tier 3 Tier 4 NYS Legislative Staffers to receive one of the following if the Governor doesn't:

Retro Active COLA Allowances
Reinstatement of Employment Benefits swiped away for Tenured Personal during Cuomo's two Probes and not reinstated.
Equal Pay for Equal work; pressing the need that FEMALE Managers/Staffers in NYS Legislature receive 100 pennies for every dollar they earned less than Male staffers with the same duties or work responsibilities. I am one of them

The Home Construction Not-For Profit Bill they are looking for

Bill for Substitute Teachers on Long Island making less than $17.00 per hour and Long Island Bus Drivers are making btw $22-24.00 per hour. Do we see an issue with this? If the indivdual Townships or School Districts don't do it-I will introduce the Bill language in NYS that will Force them to. Oh-I'm one making less than $17.00 to teach 28-30 minds every 45 minutes, I'm pretty sure I can manage the meeting.

Access to Huntington Beaches for Registered Dog Owners it does not exist here and we have 2,000 followers. I'm going to introduce the bill that will make it happen.

I have others Richard and these are mine and not the other Candidates.. I'm not a one issue candidate and I live here.

What more do you want to know so that you call me:

Involved in Brooklyn Waterfront Revitalization Project
             Bayside Business Association BID

I have asked the Governor for a Meeting. I will Primary there is no doubt in mind.

I want you to have a lovely holiday. I look forward to the meeting.

---

Rich Schaffer <rich.suffolk@gmail.com>                                                                 Sat, Dec 28, 2019 at 3:59 PM
To: Maryann Maltese <maryannmaltese1000@gmail.com>, Peter Casserly <pmcass48@gmail.com>, Jerzy Kruszlinski <jkruszlinski1@gmail.com>, Kevin
Bonner <kevinbonner@gmail.com>, Matt Jennings <matt@suffolkdems.com>, Keith Davies cell <keithdavies5@gmail.com>
Cc: Mary Collins <chairhldc@optimum.net>, Luis Montes <luis.montesamaya@gmail.com>, Peter Casserly <pmcass48@gmail.com>, Jerzy Kruszlinski <jkruszlinski1@gmail.com>, Kevin

**Sharing with all of you from another candidate interested in 12th AD**

[Quoted text hidden]

--
Rich Schaffer
516-429-3763 (cell)

---

Maryann Maltese <maryannmaltese1000@gmail.com>                                                         Sun, Dec 29, 2019 at 11:14 AM
To: Rich Schaffer <rich.suffolk@gmail.com>
Cc: Mary Collins <chairhldc@optimum.net>, Luis Montes <luis.montesamaya@gmail.com>, Peter Casserly <pmcass48@gmail.com>, Jerzy Kruszlinski <jkruszlinski1@gmail.com>, Kevin
Bonner <kevinbonner@gmail.com>, Matt Jennings <matt@suffolkdems.com>, Keith Davies cell <keithdavies5@gmail.com>

**When's the meeting?**

[Quoted text hidden]

---

Rich Schaffer <rich.suffolk@gmail.com>                                                                 Sun, Dec 29, 2019 at 2:23 PM
To: Maryann Maltese <maryannmaltese1000@gmail.com>, Peter Casserly <pmcass48@gmail.com>, Jerzy Kruszlinski <jkruszlinski1@gmail.com>, Kevin
Cc: Mary Collins <chairhldc@optimum.net>, Luis Montes <luis.montesamaya@gmail.com>, Peter Casserly <pmcass48@gmail.com>, Jerzy Kruszlinski <jkruszlinski1@gmail.com>, Kevin
Bonner <kevinbonner@gmail.com>, Matt Jennings <matt@suffolkdems.com>, Keith Davies cell <keithdavies5@gmail.com>

**Once the Gov calls the Special a calendar will then be set and we can then schedule the caucus meeting**

[Quoted text hidden]

---

Mon, Dec 30, 2019 at 10:29 AM





Explore the Fire Island Sea Shore
**Fire Island Ferries**

NEWS

## James Gaughran drops out of Huntington supervisor race



**By Rick Brand**
February 27, 2024

Former Suffolk Legis. James Gaughran announced he is dropping out of the race for Huntington town supervisor.

Gaughran said he plans to remain as chairman of the Suffolk Democratic Party in an effort to help the party be the unified force to take back the county.

"I have decided to end my campaign for Huntington supervisor. While I believe we have already achieved a great deal in this race, I am extremely proud of what we have built..."



**UNIVERSE**
HEATING • COOLING • PLUMBING • ELECTRIC
Serving Long Island Since 1954
www.universehomeservices.com

Gaughran earlier said he was considering a supervisor run even though Democratic incumbent Frank Petrone told local media to expect Gaughran to move ahead of the race shortly after Schaffer introduced Petrone at a fundraiser during the North Country Club Tuesday shindown number 200 seats.

"I had a great and busy time in the state that we have a strong supervisor in Frank and I think that what's best is to put one that our best foot forward in Frank and Mark Cuthbertson and a new team will send back" Schaffer said.

Gaughran made his decision a day after dropping legislators Lawrence's committee vote to oppose this recess honored $152,000 in non-chairman in the Suffolk County Ethical Authority to think Huff legislature expressed its criticism a new diverging tenets for Gaughran and Petrone.



**Newsday TV**



## Here Is Why You Have to Venture North of Yellowstone This Summer

Explore Montana and untouched landscapes for a true forgettable adventure

## Didn't find what you were looking for?

*End Up Here...Craft your own adventure.*
FROM RIVERHEAD TO ORIENT & MONTAUK
THE NORTH FORK & THE HAMPTONS
**EASTENDGETAWAY.COM**
Long Island

 Gmail

**Maryann Maltese <maryannmaltese1000@gmail.com>**

---

**Meeting Saturday for AD-12 Committeemembers**

---

**Maryann Maltese** <maryannmaltese1000@gmail.com>                                      Fri, Sep 6, 2024 at 4:14 PM
To: Rich Schaffer <rich.suffolk@gmail.com>, New York State Democratic Committee <info@nydems.org>,
Press.Office@exec.ny.gov

Richard.

Where is the Meeting Notice for Election 2022 and 2024?

There is no Nominee in 2024 and Calendaring required by August 9, 2024.

As High Officer-you are required to submit my name for Nomination.

As High Officer-you are required to ensure Time Management of my State Pension as At will.

What is your Party Chair Salary?  You are required to disclose.

Or Terminate tonight-as I expect you too.

Richard Professionalism you intentionally Lack on at Political party business organization required Charted.

This is a Higher Offense than an Average little Infraction with a Slap on the wrist and lets keep paying an active salary to Richard Schaffer as Chair.

Richard-how many Monroe residents are you dating?

And the Reason is none of us as educated women in Suffolk with a Master's tolerates Intentional Sexual Harassment from Employer Operator.

Perhaps no one wants to take a Photo with Richard Schaffer these days.

My Service is Valor-the Error is on you.

I do expect your resignation tonight.  I'm filing a new Election Law complaint as well with the Suffolk DA request to investigate you.

I'm no Prostitute as an Officer and I never needed to Seek Elective office-you have been avoiding my rights as an Officer since 2020.

Leave,  Before I have Law enforcement up your ass and toss you in Tonight.

Maryann Maltese


---------- Forwarded message ---------
From: **Matt Jennings** <matt@suffolkdems.com>
Date: Thu, Feb 13, 2020 at 9:47 AM
Subject: Meeting Saturday for AD-12 Committeemembers
To:
Cc: Rich Schaffer <rich.suffolk@gmail.com>, Avrum Rosen <avrumrosen@rosenforassembly.com>, Michael Marcantonio <Marcantm8@gmail.com>, Maryann Maltese <maryannmaltese1000@gmail.com>


[Quoted text hidden]

**Meeting Notice Nominating convention AD 12 February 2020 (Autosaved).pdf**
153K

M Gmail

Maryann Maltese <maryannmaltese1000@gmail.co

## Prime Bill language as Speaker

3 messages

Maryann Maltese <maryannmaltese1000@gmail.com>                                                                Fri, Sep 6, 2024 at 1:5
To: Phillip Ramos <ramosp@nyassembly.gov>, barclaw@nyassembly.gov>, JCOPE Investigation <JCOPE.Investigation@jcope.ny.gov>, NYS Assemblyman Keith Brown <brownk@nyassembly.gov>,
mattera@nysenate.gov

I expect you to Prime my Rights-before Moratorium and if Not I'll be seeking your dismissal.

As of today-there is No Prime Bill language for me as required by Keith Brown.

One of you is going to be Sanctioned.

I'm not sitting here another year for something I am entitled to.

Perhaps you Three like Women to believe they're not worthy.

Please prime and you have until 5 pm today. Pension was due January 1, 2024-not **2025.**

**I'm not going to be the Female Officer you all believed would be destitute.**

Hers' Phil Ramo's Prime Bill languages as of September 6, 2024.

**Phil-My father was an Investigator NYC-so if you think Brown's the ONLY Legacy worthy-Please leave service.**

If I'm wrong-then These Male Officers-PRIME my RIGHTS.  That is the defining moment.

**I'm an Excellent PO and an Excellent Mother as a Single Mother nonetheLess.**

Maryann resides in 12th AD and 2nd SD-and by the way is Andrew Raia in his Office at Town of Huntington or is he Off every Friday for the Last 3 years.



**Assemblyman
Phil Ramos
Assembly District 6**

Skip to main content

Maryan Maltese

Please advise,

| | | | | | | |
|---|---|---|---|---|---|---|
| Home | About | Newsroom | Media | Legislation | Committee Membership | Contact | Assembly Home |

Contact | Join email list | Map & Offices

## Sponsored Legislation

### Prime-Sponsored Legislation:

| | |
|---|---|
| A03609 | Requires police officers to report the misconduct of a police officer |
| A03635 | Prohibits trustees and members of a board of education from having a family member who works for the same board of education or school district as the trustee or member |
| A03641 | Establishes the universal stop false police reporting act which establishes the crimes of aggravated falsely reporting an incident in the first, second, and third degrees |
| A03642 | Prohibits trustees and members of a board of education, from voting on matters before the board which affect a family member of the trustee or board member |
| A03643 | Requires the superintendent of the state police to establish uniform investigatory standards when there is a shooting of a civilian by a police officer |
| A03916 | Provides for an increased personal income tax deduction for medical expenses incurred by a New York taxpayer |
| A03931 | Prohibits religious discrimination in recreational water parks |
| A04012 | Requires school districts to have diversity, equity and inclusion officers |
| A04457 | Enacts the criminal street gangs enforcement and prevention act; repealer |
| A04466 | Relates to providing a tax credit to individuals with disabilities for using transportation network companies to get to work and/or school |
| A04469 | Creates deductions for creation or improvements of child care facilities |
| A04470 | Appropriates monies for funding day care services to children of persons 24 and under to enable such persons to continue education; appropriation |
| A04471 | Relates to providing a tax credit for the purchase of assistive technology devices |
| A04472 | Relates to the time to file a claim in a toxic tort case |
| A04473 | Relates to establishing a gang assessment, intervention, prevention and suppression program |
| A04486 | Requires the court to provide a range of dates for a person pleading not guilty to a traffic infraction to appear |
| A04488 | Prohibits the sale or promotional distribution of machetes to minors |
| A04489 | Directs the department of state to establish a statewide registry of mental hygiene and child supervision residential facilities |
| A04490 | Relates to the provision of criminal history background checks free of charge to mentoring programs operated by not-for-profit corporations |
| A04491 | Requires all school districts to purchase and provide assistive technology devices when an item is put on a student's individualized education program |
| A04492 | Prohibits foreign agents from holding public office and political party positions |
| A04494 | Relates to coverage for single source drugs |
| A04784 | Relates to criminalizing the act of stalking a police officer or peace officer |

A04823   Allows the implementation of body cameras on police officers notwithstanding binding arbitration

A04824   Provides for the sale, use and storage of nitric acid

A04825   Relates to establishing gang courts pilot program

A04826   Relates to certain veterans and competitive civil service exam points

A04832   Enacts the criminal street gang related crimes act

A04833   Relates to the definition of a day student for the purposes of employment

A04836   Enacts the "Wandering Officers Act"

A04837   Relates to police staffing at certain parks

A04840   Includes aggravated harassment in the first degree under a specified offense

A04841   Requires law enforcement agents and peace officers to record information pertaining to the race of persons they have meaningful interactions with in their memo books

A04852   Requires abandoned property escheat to the Indian nation or tribe that historically occupied the land or to nearest nation or tribe; repealer

A04853   Prohibits the mandated use of credit cards at state parks, recreational facilities or historic sites

A04854   Requires the establishment of an annual employment statistics index for unemployment rate of hamlets and villages of the state

A04855   Relates to the residency requirements of certain public officers of political subdivisions or municipal corporations of the state

A04856   Directs the commissioner of education to provide for the availability of adequate supplies for use by left-handed students

A05566   Provides temporary retirement incentive for certain public employees

A06634   Relates to the use of airway clearance devices in schools

A06933   Establishes the New York state first home savings program to authorize first time home buyers to establish savings accounts to buy their first home

A07462   Directs the office of parks, recreation and historic preservation to fund and conduct the empire state games on an annual basis

A08911   Establishes a license to sell liquor at retail for consumption on premises in a cigar lounge

A08912   Relates to excise taxes on premium cigars

A09044   Increases the handling fee paid to dealers or operators of a redemption center

A09141   Authorizes the Church of the Living God Pillar & Ground to file an application for exemption from real property taxes

**Prime-Sponsored Legislation, Introduced by Rules on Behalf of the Member:**

A10297   Authorizes the Calvary Tabernacle Church of God to file an application for exemption from real property taxes

A10562   Exempts a certain parcel of land in the town of Islip from certain use restrictions and alienates certain parklands

A10589   Relates to the proper form of exhibits for submission

A10668   Requires that pharmacists get express written consent before substituting a drug product for a less expensive drug product

**Philip Ramos** <ramosp@nyassembly.gov>
To: maryannmaltese1000@gmail.com

Fri, Sep 6, 2024 at 1:54 PM

Thank you for reaching out to the Office of Deputy Speaker Phil Ramos. Your correspondence is greatly valued. Please take a moment to review this automated response.

I want to assure you that my team and I diligently review all incoming messages, striving to provide timely responses whenever possible. While I deeply value hearing from constituents like you, it's important to acknowledge that due to the volume of emails we receive, we may not be able to address each one individually.

If you require assistance with a personal or community-related issue, please don't hesitate to reach out to my dedicated constituent liaison, Paul Molina, at molinap@nyassembly.gov.

For matters pertaining to state legislative concerns or if you wish to share your insights or suggestions, I encourage you to connect with my Deputy Legislative Director, Deryss Castaneda, at castanedad@nyassembly.gov.

Please rest assured that your perspectives will be carefully considered in shaping my approach to relevant public issues.

To request a meeting or invitation to a event please email my Chief of Staff, Cristian Macario, at Macarioc@nyassembly.gov

For further information on bills and legislative updates, I invite you to visit our legislative portal at https://nyassembly.gov/leg/. Additionally, you can explore the New York State Assembly's website at www.nyassembly.gov to gain deeper insights into our legislative process.

Once again, thank you for taking the time to reach out. Your engagement is sincerely appreciated.

Warm Regards,
Phil Ramos
Deputy Speaker
New York State Assembly

---

**NYS Assemblyman Keith Brown** <brownk@nyassembly.gov>
To: maryannmaltese1000@gmail.com

Fri, Sep 6, 2024 at 1:54 PM

Dear Friend:

I appreciate you reaching out with your comments and any issue that you are experiencing.

I will answer any questions you might have as quickly as I am able.

If your issue needs immediate attention, please do not hesitate to call my District Office at (631)261-4151.

Hon. Keith P. Brown
NYS Assemblyman 12th A.D
6080 Jericho Turnpike
Suite 310
Commack, NY 11725
(631) 261-4151 office
(631) 261-2992 fax
brownk@nyassembly.gov
https://nyassembly.gov/mem/Keith-P-Brown/

M Gmail

## Chair's salaries

**Patrice Zitani** <pzitani@townofbabylon.com>
To: Maryann Maltese <maryannmaltese1000@gmail.com>

Maryann Maltese <maryannmaltese1000@gmail.c

Mon, Aug 26, 2024 at 2:36

Good afternoon, Maryann.

Unfortunately, the Town of Babylon does not have the information you are requesting.

You will have to contact the Nassau and  Suffolk County Democratic Committee Offices.

Thank you and stay safe and healthy.

Kindest regards,

Patty

Patrice Zitani

Office Assistant

Town of Babylon

Town Clerk's Office

200 E. Sunrise Hwy.

Lindenhurst, NY 11757

Office – 631-957-4296

Fax – 631-957-7490

E-mail – pzitani@townofbabylon.com

**From:** Maryann Maltese <maryannmaltese1000@gmail.com>
**Sent:** Monday, August 26, 2024 8:47 AM
**To:** Nassau County Democratic Committee <info@nassaucountydems.com>; New York State Democratic Committee <info@nydems.org>; Patrice Zitani <pzitani@townofbabylon.com>; Suffolk County Democratic Committee <info@suffolkdems.com>
**Subject:** Chair's salaries

〉〉〉 This message has originated from an **External Source**. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email. 〈〈

[Quoted text hidden]

# PARTY LEADERSHIP

## Nassau County Democrats

Jay S. Jacobs

*Chairman*

Thomas Garry

*First Vice Chair*

James Scheuerman

*Executive Director*

NOTICE: This e-mail and any attached document(s) are intended only for the use of the individual or entity to whom or to which it is addressed and may contain information that is privileged, confidential, proprietary, trade secret and exempt from disclosure. If the reader of this message is not the intended recipient or an employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or reproduction of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately and discard the original message and any attachment(s).

# **2024 POLITICAL CALENDAR**

40 NORTH PEARL STREET – SUITE 5,
ALBANY, NEW YORK 12207 (518) 474-6220
For TDD/TTY, call the NYS Relay 711
www.elections.ny.gov

NEW YORK STATE | Board of Elections



**Primary Election**
**June 25, 2024**

**General Election**
**November 5, 2024**

## PRIMARY ELECTION DATES

June 25 — Primary Election §8-100(1)(a)

June 15 – 23 — Days of Early Voting for the Primary Election §8-600(1)

## VOTER REGISTRATION FOR PRIMARY

Feb 1 — Certification of offices to be filled at 2024 General Election by SBOE and CBOE. §4-106 (182.)

Feb 13 — PARTY CALLS: Last day for State & County party chairs to file a statement of party positions to be filled at the Primary Election. §2-120(1)

June 1 — **List of Registered Voters:** Publication of February enrollments. §5-604

June 15 — **Voter Registration Deadline for Primary:** Last day application must be received by board of elections to be eligible to vote in primary elections. §§5-210, 5-211, 5-212

June 10 — **Changes of address** for Primary received by this date must be processed. §5-208(3)

## CHANGE OF ENROLLMENT

Feb 14 — A change of enrollment rec'd by the BOE not later than Feb. 14th or after July 2nd is effective immediately. Any change of enrollment made between Feb 15-July 2nd, shall be effective July 2nd. §5-304(3)

May 1 — Designation of Polling Places Primary

May 1 — Last day to file early voting communication plan with SBOE. 9 NYCRR 6211.7(c)

May 13 — Last day to designate early voting sites for primaries. 8-500.4)(e)(i))

## CERTIFICATION OF PRIMARY BALLOT

May 1 — Certification of primary ballot by SBOE of designations filed in its office. §4-110

May 2 — Certification of primary ballot by CBOE of designations filed in its office. §4-114

## CANVASS OF PRIMARY RESULTS

July 8 — Canvass of Primary returns by County Board of primary loss. §9-200(1)

July 8 — Verifiable Audit of Voting Systems. §9-211(1)

July 15 — Recanvass of primary returns. §9-208(1)

## ABSENTEE / EARLY VOTING BY MAIL FOR PRIMARY

June 15 — Last day to RECEIVE application or letter of application by mail or online portal for primary ballot. §8-400(2)(c), 8-700 (2) (c), (d)

June 24 — Last day to postmark primary election ballot. §8-400(2)(a), 8-700 (2)(c), (d)

June 25 — Must be received by the county board no later than July 2. §8-412(1), 8-710

June 25 — Last day to deliver primary ballot in person to your county board or a poll site in your county, by close of polls. §8-412(1), 8-710.

## MILITARY/SPECIAL FEDERAL VOTERS FOR PRIMARY

May 10 — Deadline to transmit ballots to eligible Military/Special Federal/UOCAVA Voters. §10-108(1) & §11-204(4)

June 15 — Last day for a board of elections to RECEIVE application for Military/Special Federal/UOCAVA absentee ballot for primary if not previously registered. §10-106(5) & §11-202(1)(a)

June 15 — Last day for a board of elections to RECEIVE application for Military/Special Federal/UOCAVA absentee ballot for primary if already registered. §10-106(5) & §11-202(1)(b)

June 24 — Last day to apply personally for Military Ballot for primary if previously registered. §10-106(5)

June 25 — Last day to postmark Military/Special Federal/UOCAVA ballot for primary. Date by which it must be received by the board of elections is July 2nd §10-114(1) & §11-212

## PARTY NOMINATION OTHER THAN PRIMARY

Feb 6 – 27 — Holding state committee meeting to make nominations for statewide office. §6-104(6) (Except Pres. and Vice Pres. Electors – Sep 6)

Feb 27 — First day to hold a town caucus. §6-108

July 5 — Last day to decline all party nominations after primary loss. §6-146(6)

July 8 — Last day to fill vacancy after declination by primary loser. §6-158(3)

July 15 — Last day for filing authorization of substitution after declination by primary loser. §6-120(3)

July 25 — Last day for filing nominations made at a town or village caucus or by a party committee. §6-158(6)

July 25 — Last day to accept or decline a nomination to fill vacancies created pursuant to §6-116, §6-104 & §6-158(6)

July 29 — Last day to accept or decline a nomination for office made based on §6-116 & §6-158(7)

Aug 2 — Last day to file certificates of nomination to fill vacancies created pursuant to §6-116, §6-120(3)

## DESIGNATING PETITIONS FOR PRIMARY

Feb 27 – Apr 4* — Dates for circulating petitions. §6-134(4)

Apr 8 — Last day to authorize designations. §6-120(3)

Apr 8 — Last day to accept or decline designations.

Apr 11 — Last day to file certificates of nomination. §6-158(2)

Apr 12 — Last day to fill a vacancy after a declination. §6-158(3)

Apr 16 — Last day to file authorization of substitution after declination of a designation. §6-120(3)

## OPPORTUNITY TO BALLOT PETITIONS

Mar 19 — First day for signing OTB petitions. §6-164

Apr 11 — Last day for signing OTB petitions. §6-164 & §6-158(4)

Apr 15 — Last day for member of committee to receive notices to file acceptance. §6-166(3)

April 18 — Last day to file OTB petition if there has been a declination by a designated candidate. §6-158(4)

## SIGNATURE REQUIREMENTS FOR DESIGNATING AND OPPORTUNITY TO BALLOT PETITIONS §6-136

5% of the active enrolled voters of the political party in the political unit or the following, whichever is less:

For any office to be filled by all the voters of:

| | |
|---|---|
| The entire state (with at least 100 or 5% of enrolled voters from each one-half of the congressional districts) | 15,000 |
| *New York City | 7,500 |
| *Any county or borough of NYC | 4,000 |
| *A municipal court district within NYC | 750 |
| *Any city council district within NYC | 90 |
| Cities/counties having more than 250,000 inhabitants | 2,000 |
| Cities/counties having more than 25,000 but not more than 250,000 inhabitants | 1,000 |
| Any city, county, councilmanic or county legislative districts in any city other than NYC | 500 |
| Any congressional district | 1,250 |
| Any state senatorial district | 1,000 |
| Any assembly district | 500 |
| Any county legislative district | 500 |

*NOTE: Section 1057-b of the New York City Charter supersedes New York Election Law signature requirements for Designating and OTB petitions on independent nominating petitions with respect to certain NY City offices.

April 22 — Last day for member of committee to receive notices to file acceptance of declination filed by a designated candidate. §6-166(3)

**Pursuant to Chapter 59 of the Laws of 2024, the first day to circulate designating petitions for Member of Congress (House of Representatives) or any party position elected by Congressional District, Thursday, February 29, 2024. The Congressional Districts for such designating petitioning for the June 25, 2024 Primary are defined by Chapter 92 of Laws of 2024.

**All Dates Subject to Change by the State Legislature**

**FILING REQUIREMENTS:** All certificates and petitions of designation or nomination, certificates of acceptance or authorization for such designations or nominations, certificates of declinations, certificates of substitution for such designations or nominations and objections and specifications of objections to such certificates and petitions received to be filed with the State Board of Elections or a board of elections outside of the city of New York shall be deemed timely filed and accepted for filing if it bears a postmark or receipt by the overnight delivery service prior to midnight of the last day of filing, and received no later than two business days after the last day to file such certificates, petitions, objections or specifications. Failure of the post office or authorized overnight delivery service to deliver any such petition, certificate or objection to such board of elections outside the city of New York no later than two business days after the last day to file such certificates, petitions, objections, or specifications shall be a fatal defect per NY Election Law §1-106.

Within NYC, all such certificates, petitions and specifications of objections required to be filed with the board of elections of the city of New York must be actually received on or before the last day to file. The New York City Board of Elections is open for the receipt of such petitions, certificates and objections until midnight on the last day to file.

All papers required to be filed, unless otherwise provided, shall be filed between the 9 AM – 5 PM. If the last day for filing shall fall on a Saturday, Sunday or legal holiday, the next business day shall become the last day for filing. NYEL §1-106

**GENERAL ELECTION DATES**

Nov 5 General Election. §8-100(1)(c)

Oct 26 Days of Early Voting for the General Election.
Nov 5 §§8-600(1)

**VOTER REGISTRATION FOR GENERAL**

Oct 26 **Voter Registration Deadline registration for General:** Last day that application must be received by board of elections to be eligible to vote in general election, §§5-210, 5-211, 5-212

Oct 21 Changes of address for General received by this date must be processed. §5-208(3)

---

**Designation of Polling Places General Election**

March Last day to designate General Election polling
15 places for each election district for ensuing year §4-104

May 1 Last day to designate early voting sites for the general election. 9 NYCRR 6211.1(a)

May 1 Last day to file early voting communication plan with SBOE. 9 NYCRR 6211.7(c)

**VACANCY IN OFFICE**

Aug 5 A vacancy occurring three (3) months before a General Election in any year in any office are authorized to be filled at a General Election. §6-158(14)

**REFERENDUMS/PROPOSITIONS/PROPOSALS**

Aug 5 For any election conducted by a BOE, the clerk of such subdivision shall provide the BOE with a certified text copy of any proposal, proposition, or referendum at least three (3) months before the General Election. §4-108

**JUDICIAL DISTRICT CONVENTIONS**

Aug 8- Minutes of a convention must be filed within
14 72 hours (3 days) of adjournment. §6-158(6) §8(5)

Aug 8- Dates for holding Judicial conventions. §6-158(5)

Aug 15 Last day to file certificates of nominations. §6-158(6)

Aug 19 Last day to decline nomination. §6-158(7)

Aug 23 Last day to fill vacancy after a declination. §6-158(4)

**CERTIFICATION OF GENERAL ELECTION BALLOT**

Sept 11 Certification of nominations filed in its office. §4-112(1)

Sept 12 Certification of general election ballot by CBOE of nominations and questions; CBOES. §4-114

**CANVASS OF GENERAL ELECTION RESULTS**

Nov 20 (Recanvass of General Election returns to occur no later than Nov. 20. §9-208(1)

Nov 20 Verifiable Audit of Voting Systems to occur no later than Nov. 20. §9-208(1)

Nov 30 Certification and transmission of Canvass of General Election returns by County Board of Elections §9-214(1)

---

Dec 9 Last day for State Board of Canvassers to meet to certify General Election, §9-216(2)

**ABSENTEE / EARLY VOTING BY MAIL FOR GENERAL**

Oct 26 Last day for board of elections to RECEIVE application or letter of application by mail or online portal for general election ballot. §8-400(2)(c), 8-700 (2) (c), (d)

May 1 Last day to apply in person for general election ballot. §8-400(2)(c), 8-700 (2) (c), (d)

Nov 5 Last day to postmark general election ballot. Must be received by the county board no later than Nov 12th. §8-412(1), 8-710

Nov 5 Last day to deliver general election ballot in person to your county board or poll site in your county, by close of polls on election day. §8-412(1)

**NOMINATING PETITIONS FOR INDEPENDENT**

**MILITARY/SPECIAL FEDERAL VOTERS FOR GENERAL**

Sept 20 Deadline to transmit ballots to eligible Military/Special Federal/UOCAVA voters. §10-108(1) & §11-204(4)

Oct 26 Last day for a board of elections to receive application for Special Federal/UOCAVA absentee ballot for general if not previously registered. §11-202(1)(a) & §10-106(5)

Oct 26 Last day for a board of elections to receive application for Military/Special Federal absentee ballot for general if already registered. §11-202(1)(b) & §11-202(1)(a)

Oct 29 Last day for board of elections to receive application for Military absentee ballot for general if not previously registered. §10-106(5)

Nov 4 Last day to apply personally for a Military absentee ballot for general if previously registered. §10-106(5)

Nov 5 Last day to postmark Military/Special Federal/UOCAVA ballot for general. Date by which it must be received by the board of elections is Nov. 18th. §10-114(1) & §11-212

**INDEPENDENT PETITIONS**

April First day for signing nominating petitions, §6-
16 138(4)

May Dates for filing independent nominating
21-28 petitions. §6-158(9)

---

May 31 Last day to accept or decline a nomination §6-158(11)

June 3 Last day to fill vacancy after a declination §6-158(12)

June 28 Last day to decline after acceptance if another loses party primary. §6-158(11)

**SIGNATURE REQUIREMENTS FOR INDEPENDENT §6-142**

1% of the total number of votes excluding blank and void cast for the office of governor at the last gubernatorial election in the political unit for that no more than 3,500 signatures shall be required on a petition for an office to be filled by the political subdivision outside the City of New York and not more than the following for any office voted for by all the voters of:

Any county or portion thereof outside NYC.

New York City.

*Any county or borough or any two counties or boroughs within New York City.

Any municipal court district.

*Any city council district within NYC.

Any congressional district.

Any state senatorial district.

Any assembly district.

5% of the total number of votes excluding blank and void cast for the office of governor at the last gubernatorial election in the political unit of a political subdivision outside the City of New York, required on a petition for any office to be filled by the voters of the entire state.

Any political subdivision contained within any political subdivision, except as herein provided, the requirement is not to exceed the number for a larger subdivision.

**\*NOTE: Section 1057-b of the New York City Charter supersedes New York Election Law signature requirements for Designating and OTB petitions and Independent nominating petitions with respect to certain NY City offices.**

---

Revised: 05/05/2024

**All Dates Subject to Change by the State Legislature**

**VOTE (/VOTE)**

*[handwritten: Nominees 2024 All Assembly seats Suffolk minus 12th AD]*

**CONTRIBUTE
(HTTPS://SECURE.NGPVAN.COM/WBCK3SSAGEMFQ6RNDGDUJA2)**

**VOLUNTEER (HTTPS://SECURE.NGPVAN.COM/TN326TEDPKKDSBXDZ4PYF**

# Candidates

*Click below to learn more about our candidates. Then click on the photos or links for more information.* (https://www.southolddems.org)

2024 Elections

Federal

NYS Senate

NYS Assembly

Tommy John Schiavoni (/candidate/tommy-john-schiavoni)

NYS Assembly - District 1

Contribution link / Volunteer link / Website link

Tommy John Schiavoni is a husband, father, retired teacher, and current member of the Southampton Town Board. For three generations Tommy John's family operated a local plumbing and heating business in Sag Harbor where he began working at the age of twelve. Growing up on construction

sites with master tradesmen, Tommy John gained the knowledge and experience that to this day fuels his desire to find pragmatic solutions to problems, mechanical and otherwise.



read more » (/candidate/tommy-john-schiavoni)

(https://www.facebook.com/tjschiavoni)

(/candidate/tommy-john-schiavoni)

## Rebecca Kassay (/candidate/rebecca-kassay)

### NYS Assembly - District 4

Rebecca Kassay is a community organizer, small business owner, and public servant, whose diverse experiences and dedication to public service have compelled her to run for a seat in the New York State Assembly. She brings her proven track record of impactful community engagement to Assembly District 4 and the state at large. In 2010, Rebecca graduated from SUNY New Paltz with a degree in Environmental Studies and Communications and returned to Long Island's north shore, where she created and directed a youth environmental volunteer program for Avalon Park and Preserve in Stony Brook. For over seven years, she worked alongside hundreds of Suffolk County teens, environmental professionals, and NGO representatives to tackle a myriad of environmental stewardship efforts across Long Island. These hands-on experiences with the region's environmental issues, assets, and advocates drive Rebecca's desire to preserve the heritage of this incredible island.

Contribution  Volunteer     Website  Ema
link          link           link     (ma



(/candidate/rebecca-kassay)

read more » (/candidate/rebecca-kassay)

(https://www.facebook.com/kassayforassembly)

## Michael Reynolds (/candidate/michael-reynolds)

## NYS Assembly - District 5

Michael A. Reynolds was born in Bushwick Brooklyn in 1967 and moved to Queens in 1972. While growing up in Queens New York Michael attended P.S.147 in Cambria Heights, JHS 192 in Hollis Queens, and Andrew Jackson High School in Cambria heights where he played football and received All Queens honors and second-team All-City honors.



(/candidate/michael-reynolds)

Michael was recruited out of high school to play football where he attended Southern Connecticut State University in New Haven CT. While there he played football and worked with the campus police as a campus escort. As a campus escort, he helped to keep students safe on campus by patrolling the campus at night allowing the student community to feel safe. Michael was also a Resident Advisor where he worked with residents on his floor to create and maintain a cohesive community for all. Michael graduated in 1989 and obtained his bachelor's degree in Corporate Communications with a minor in business. Upon graduating, Michael returned home to Queens, New York where he began working for United Parcel Service as a seasonal helper. During his time at UPS, Michael became a union driver, operations supervisor and District Account Executive.

read more » (/candidate/michael-reynolds)

## Phillip R. Ramos (/candidate/phillip-r-ramos)

## NYS Assembly - District 6

Volunteer link (https://part/us/)

Website link (https://c

Philip Ramos represents the 6th Assembly District, which includes portions of the hamlets of Brentwood, Baywood, Central Islip, Bay Shore, North Bay Shore, Islip and Islandia. He was elected to a newly created Assembly seat i.

2002. Phil Ramos was born in the Bronx. The son of a correction officer and a registered nurse, Phil learned at an early age the value of helping people and being dedicated to your community. His family was one of the first Hispanic families to move to Brentwood in 1957. He has lived in the community for the past 50 years, raising his two children and working tirelessly on behalf of the community.



(/candidate/phillip-r-ramos)

*Speaker of Assembly*

read more » (/candidate/phillip-r-ramos)

(https://www.facebook.com/Assemblyman-Phil-Ramos-1034683143205734/)(https://twitter.com/philramos6ad)

## Steven Basileo (/candidate/steven-basileo)

### NYS Assembly - District 8

A Dedicated Long Islander: Steven has called Saint James home since he was 11 years old, fostering deep connections within the community he aims to serve. He graduated from Stony Brook University with a Master's Degree in Public Policy, focusing on issues close to home: housing and healthcare affordability.
Professional and Union Advocate: In his professional life, Steven has worked at SEIU's Communication Center, where he helped encourage public school staff to engage with their unions in partnership with the National Education Association. This role underscored his commitment to workers' rights and active community involvement.

Contribution link (https://secure.actblue.com/donate/basileoforassembly1)

Volunteer link

Website link (/candidate/steven-basileo)

(/candidate/steven-basileo)

read more » (/candidate/steven-basileo)

(https://www.facebook.com/BasileoCampaign)

## Steve Stern (/candidate/steve-stern-0)

### NYS Assembly - District 10



Contribution Website Ema
link           link      (ma
                          act/blume:

(/candidate/steve-stern-0)

Steve Stern is proud to have been re-elected as the New York State Assemblyman representing the 10th Assembly District. Elected to the Assembly in a special election in April 2018, Steve hit the ground running by passing an impressive 6 bills in his first 6 weeks, including laws to protect our precious groundwater, services for veterans and measures to protect children's health. Steve also secured unprecedented funding for local schools and for law enforcement in the fights against the deadly opioid epidemic and MS-13. Steve believes that reducing gun violence is one of the great moral issues of our time, and necessary to protect public safety. He is the proud co-sponsor of New York's "Red Flag Law" which keeps guns out of the hands of those who should not have them and allows immediate intervention when individuals pose a risk to public safety.

read more » (/candidate/steve-stern-0)

(https://www.facebook.com/SteveSternNY)

## Kwani O'Pharrow (/candidate/kwani-opharrow)

### NYS Assembly - District 11

Contribution Volunteer   Website Ema
link          link        link      (ma
(https://secure.actblue/ushxiidpxejifieau
                         yorkers-
                         for-kwani-

Kwani O'Pharrow has an impressive and long span of service protecting our nation and the great State of New York. He served in the Navy from 1990-1994 as Radioman Petty Officer 3rd Class (RM3)-Intel and retired from the New York City Police (NYPD) as a Detective after 28 years. His extensive NYPD career brings a wealth of valuable experience; which included: school officer, community patrol officer, Domestic Violence Office Gang investigations, holding various plainclothes details and assigned to the

Chief of departments office. Notably, Kwani's
final assignment was in the Intelligence Bureau
where he had the privilege of protecting
dignitaries such as Presidents Obama and
Trump.

read more » (/candidate/kwani-opharrow)

(https://www.facebook.com/kwanib.opharrow)



(/candidate/kwani-opharrow)

12 MAD ?   no nominee.

(http://www.facebook.com/SuffolkDems)

(http://twitter.com/SuffolkDems)

Suffolk County Democratic Committee

1461 Lakeland Avenue, Suite #3

Bohemia, NY 11716

Tel: (631) 439-0400 - Fax: (631) 439-0404

Email: info@suffolkdems.com (mailto:info@suffolkcountydems.com)

NYS Democrats Party
64 Beaver St
New York, ny 10004

Paid for by the Suffolk County Democratic Committee

Site by InterCreative Media (https://icrmedia.com)

- Chair Schaffer + Chair Jay Schwartz
failure in nomination requirements for
Party Chair Elective Officer nominee -
Plaintiff MaryAnn Maltese, 20 year employee
NYS Legislature. as of 2/15/2021.
- Please add in notice of claim by
Chair Schaffer as Employer (Chair) willful.




 Translate ⌄

**New York State Board of Elections (/)**

Be wary of text messages claiming to give information about your voter registration status. Always check with a trusted source, like the State or your County Board of Elections. Please reach out to (518) 474-1953 or info@elections.ny.gov (mailto:info@elections.ny.gov) with any questions or concerns.



‹ **Running for Office (/running-office)**

## Rules & Regulations

SECTIONS

**Title 9, Subtitle 5, NYCRR (#title-9,-**

# Title 9, Subtitle 5, NYCRR

### § 6201.2 Use of Public Opinion Polls

No candidate, political party or committee shall attempt to promote the success or defeat

## § 6204.1 Specification of objections to designating and independent nominating petitions

a. Any person filing general objections to any designating or independent nominating petition filed with the State Board of Elections who thereafter files specifications of his objections to any such petition with such board shall do so in accordance with the provisions of Section 6-154 of the Election Law. All such specifications shall substantially comply with the following requirements:

   1. The volume number, page number, and line number of any signature objected to on any petition shall be set forth in detail. In addition, any portion of any petition or any signature line or witness statement objected to shall be specifically identified and reasons given for any such objection;

   2. The total number of signatures objected to shall be set forth and all objections relating to a single signature line should be grouped together

   3. Symbols and/or abbreviations may be used to set forth objections, provided that a sheet explaining the meaning of any such symbols and/or abbreviations is attached to the specifications.

b. No specifications of objections to any petition will be considered by the Board unless the objector filing the specifications personally delivers or mails by registered or certified mail a duplicate copy of the specifications to each candidate for public office named on the petition. In the case of a petition containing candidates for party position, service of the specifications shall be made on either the named candidates or the first person named on the petition's committee to fill vacancies. Service shall

containing candidates for more than one public or party office which are not coterminous, each volume of each petition shall bear an identification number, to be obtained in accordance with Section 6215.3, infra. The assigned identification number shall be inscribed on the front of the volume. If an identification number has not been inscribed by the person or persons filing the petition, and the petition consists of multiple volumes, then each volume of the petition shall be separately numbered on the front thereof. Only one identification number may be used to identify a petition volume.

2. Any Board of Elections outside the City of New York may adopt a petition filing system for all petitions utilizing identification numbers as provided for in Section 6215.3. The Board may adopt such system through the approval of a rule at least two months prior to the first day to circulate petitions. The rule shall be filed at the county board of elections and the State Board of Elections.

3. With respect to all other petitions which contain ten or more sheets, each volume of the petition shall have a cover sheet secured to the front of such volume.

### §6215.2 Cover Sheets

a. A cover sheet shall contain the following information:

1. The office and district number (where appropriate) for which each designation and nomination is being made, the name and residence address of each candidate, and the number of volumes comprising the petition. The names and addresses of candidates for the county

of the State Assembly, the cover sheet shall contain a place for the optional designation of the official campaign website address information for posting on the State Board of Elections' website pursuant to Election Law section 4–123. Any board of elections receiving such cover sheet or a separate written notification pursuant to section 6215.9(b) of this Part, other than the State Board of Elections, shall transmit a copy of such cover sheet or separate written notification to the State Board of Elections within three business days of its filing and such website addresses shall be posted by the State board on its website as soon as practicable.

b. Cover sheets shall be substantially in the form set forth in Section 6215.8, infra.

c. Where a designating petition involves an office to be filled by the voters of the entire state, the petition shall be accompanied by a schedule which sets forth the volume and page number of each sheet on which signatures appear of at least 100 or 5 per centum, which ever is less, of properly enrolled voters in each of at least one-half of the Congressional Districts of the state.

d. Where a nominating petition involves an office to be filled by the voters of the entire state, the petition shall be accompanied by a schedule which sets forth the volume and page number of each sheet on which signatures appear of at least 500 voters in each of at least one-half of the congressional districts of the state.

## §6215.3 Identification Numbers, application, distribution and utilization

a. Identification numbers shall be issued by the State and County Boards of Elections,

book which shall be available for public inspection. In the event that an application is filed by multiple applicants, the Board shall record in the book only the name and address of the first-named applicant.

f. An assigned identification number may be used for the filing of petition sheets only by the person to whom the identification number was issued. In the case of multiple applicants, the identification number may be used by any of the applicants.

## §6215.4 Multiple Candidates Named On a Petition

a. All the signatures appearing in a petition volume shall apply to all candidates named in that volume, unless the cover sheet specifies otherwise.

b. In the event that the same candidates do not appear on each and every sheet of the petition, then the cover sheet shall indicate which signatures apply to which candidate, by indicating the name of the candidate, the identification number or the volume number, and the page number of the applicable signatures. Signatures on such pages may be identified by specified numerical ranges (e.g., pages 1 through 15, pages 15-45).

## §6215.5 Filing of petitions

a. Neither the application for, nor the issuance of, an identification number constitutes filing of a petition.

b. Petitions shall be filed with the applicable Board of Elections as set forth in the Election Law. The officer or Board shall endorse the day, hour and minute of receipt on such petitions. Such officer or Board shall keep a book, which shall be open to public inspection, in which shall be entered the name of the candidate, and volume or identification numbers of

review, and such determination, shall be without prejudice to the determination by the Board of objections and specifications of objections filed pursuant to the provisions of the Election Law.

b. In the event that, upon the review conducted pursuant to paragraph (a) above, the Board determines that a petition does not comply with these regulations, the Board shall forthwith notify the candidate or candidates named on the petition of its determination and the reasons therefore.

c. Notification of a determination of noncompliance shall be given by written notice by depositing such notice on the day of such determination with an overnight delivery service, for overnight delivery, on the next business day, or by personal delivery by the day after the determination to the candidate or the contact person, if designated, at the address stated on the petition. Notification shall be given by overnight delivery or personal delivery only, unless the candidate shall have filed with the Board written authorization, signed by the candidate, for the Board to give notification by facsimile transmission. In the event that the candidate shall have authorized notification by facsimile transmission, then the Board shall notify the candidate or the contact person, if designated, by facsimile transmission on the day of the determination to the number set forth by the candidate and shall, in addition, mail a copy of the determination to the candidate.

d. A candidate may, within three (3) business days of the date of a determination that the petition does not comply with these regulations, cure the violation of these regulations. Cover sheet deficiencies may

(https://publicreporting.elections.ny.gov/
CountyBoardRoster/CountyBoardRoster) .

View the Campaign Finance Page (/campaign-
finance) for more information on financial
disclosure requirements or contact the State
Board of Elections at 1-800-458-3453 or
518-474-8200 or contact your C (https://
publicreporting.elections.ny.gov/
CountyBoardRoster/CountyBoardRoster) ounty
Board of Elections (https://www.elections.ny.gov/
CountyBoards.html) .
For New York City offices, please contact the
Campaign Finance Board for any additional
requirements.

For federal offices, please contact the Federal
Election Commission for any additional
requirements.

**NEXT SECTION**                          Continue (#)  ↓

# Agency Resources (#)

# Agency Resources

**Hatch Act** (https://osc.gov/)

- Call 1-800-85 HATCH

**The Commission on Judicial Conduct** (https://
cjc.ny.gov/)

- (646) 386-4800 - Main Office
- (518) 453-4600 - Albany
- (585) 784-4141 - Rochester

**Judicial Campaign Ethics Center** (https://
ww2.nycourts.gov/ip/jcec)

# PUBLIC OFFICERS LAW

*and other State Ethics Laws related to State*

*Employees and Officials*



2022 EDITION

# Table of Contents

EXECUTIVE LAW

§94    Commission on Ethics and Lobbying in Government; functions, powers and duties; review of financial disclosure statements; advisory opinions; investigation and enforcement. *Effective July 8, 2022*    1

LEGISLATIVE LAW

§80    Legislative Ethics Commission *Effective July 8, 2022*    25

PUBLIC OFFICERS LAW

§73    Business or professional activities by state officers and employees and party officers *Effective July 8, 2022*    35

§73-a    Financial Disclosure *Effective July 8, 2022*    59

§74    Code of Ethics    103

§74-a    Duty of public officers regarding the physically handicapped    107

§75    Bribery of members of the legislature    107

§75-a    Appearance by a person convicted of a crime of corruption    107

§76    Receiving bribes by members of the legislature    108

§77    Unlawful fees and payments    108

§77-a    Members of the legislature liable to forfeiture of office    108

§78    Certification of members, officers and employees    109

§79    Fine in certain cases    109

Table of Contents |

CIVIL SERVICE LAW

§107    Prohibition against certain political activities; improper    111
        influence


LEGISLATIVE LAW

Article 1-A    The Lobbying Act    115
               *Effective July 8, 2022*

RETIREMENT AND SOCIAL SECURITY LAW

Article 3-B    Pension forfeiture for Public Officials    163


REGULATIONS

Title 19 NYCRR    Part 930 – Honoraria    171
                  *Effective 6/18/2014*

Title 19 NYCRR    Part 931 – Official Activity Expense Payments    179
                  *Effective 6/18/2014*

Title 19 NYCRR    Part 932 – Outside Activities    187
                  *Effective 7/22/2015*

Title 19 NYCRR    Part 933 – Gifts (Pursuant to Public Officers Law)    195
                  *Effective 6/18/2014*

Title 19 NYCRR    Part 934 – Gifts (Pursuant to Legislative Law 1-A)    207
                  *Effective 6/18/2014*

Title 19 NYCRR    Part 935 – FDS Exemptions    217
                  *Effective 6/6/2018*

Title 19 NYCRR    Part 936 – FDS Extensions    223
                  *Effective 6/6/2018*

Title 19 NYCRR    Part 937 – Records Access    229
                  *Effective 11/ 3/2021*

Title 19 NYCRR    Part 938 – Source of Funding    235
                  *Effective 1/1/2021*

Title 19 NYCRR    Part 940 – Public Service Announcements    253
                  *Effective 7/24/2014*

**Table of Contents |**

| Title 19 NYCRR | Part 941 – Adjudicatory Proceedings<br>*Effective 1/25/2022* | 259 |
|---|---|---|
| Title 19 NYCRR | Part 942 – Procedure for Requesting an Exemption from Publicly Disclosing Client Information Pursuant to Questions 8(b-1), 8(b-2) or 8(c) on a Financial Disclosure Statement<br>*Effective 4/12/2017* | 281 |
| Title 19 NYCRR | Part 943 – Comprehensive Lobbying Regulations<br>*Effective 1/1/2021* | 289 |



# § 94. Commission on Ethics and Lobbying in Government.

1. (a) **Commission established.** There is hereby established within the department of state, a commission on ethics and lobbying in government, an agency responsible for administering, enforcing, and interpreting New York state's ethics and lobbying laws. The commission shall have and exercise the powers and duties set forth in this section with respect to statewide elected officials, members of the legislature and employees of the legislature, and state officers and employees as defined in sections seventy-three, seventy-three-a, and seventy-four of the public officers law, candidates for statewide elected office and for the senate or assembly, and the political party chair as is defined in section seventy-three of the public officers law, lobbyists and the clients of lobbyists as defined in section one-c of the legislative law, and individuals who have formerly held such positions, were lobbyists or clients of lobbyists as defined in section one-c of the legislative law, or who have formerly been such candidates.

(b) The commission shall provide for the transfer, assumption or other disposition of the records, property, and personnel affected by this section, and it is further provided, should any employees be transferred from the joint commission on public ethics ("JCOPE"), the predecessor ethics agency, to the commission, that such transfer will be without further examination or qualification and such employees shall retain their respective civil service classifications, status and collective bargaining agreements.

(c) The commission shall review any pending inquiries or matters affected by this section and shall establish policies to address them.

(d) The commission shall undertake a comprehensive review of all regulations in effect upon the effective date of this section; and review of all advisory opinions of predecessor ethics agencies, including JCOPE, the legislative ethics commission, the commission on public integrity, the state ethics commission, and the temporary lobbying commission, which will address the

consistency of such regulations and advisory opinions among each other and with the new statutory language, and of the effectiveness of the existing laws, regulations, guidance and ethics enforcement structure.

(e)  This section shall not be deemed to have revoked or rescinded any regulations or advisory opinions in effect on the effective date of this section that were issued by predecessor ethics and lobbying bodies. The commission shall cooperate, consult, and coordinate with the legislative ethics commission, to the extent possible, to administer and enforce the laws under its jurisdiction.

(f)  The annual budget submitted by the governor shall separately state the recommended appropriations for the commission on ethics and lobbying in government. Upon enactment, these separately stated appropriations for the commission on ethics and lobbying in government shall not be decreased by interchange with any other appropriation, notwithstanding section fifty-one of the state finance law.

2.  **Definitions.** For the purposes of this section, the following terms shall have the following meanings:

(a)  "**commission**" means the commission on ethics and lobbying in government established pursuant to subdivision one of this section.

(b)  "**selection members**" means the governor, speaker of the assembly, temporary president of the senate, minority leader of the senate, minority leader of the assembly, comptroller, and the attorney general.

(c)  "**independent review committee**" means the committee of the American Bar Association accredited New York state law school deans or interim deans, or their designee who is an associate dean of their respective law school, tasked with reviewing, approving, or denying the members of the commission as nominated by the selection members and other tasks pursuant to this section.

(d) **"respondent"** means the individual or individuals or organization or organizations subject to an inquiry, investigation, or enforcement action.

(e) **"victim"** means any individual that has suffered or alleged to have suffered direct harm from any violation of law that is subject to investigation under the jurisdiction of the commission.

3. **Nomination and appointment of the commission.**

(a) The commission shall consist of eleven members, to be nominated by the selection members as follows: three members by the governor; two members by the temporary president of the senate; one member by the minority leader of the senate; two members by the speaker of the assembly; one member by the minority leader of the assembly; one member by the attorney general; and one member by the comptroller.

(b) The independent review committee shall within thirty days review the qualifications of the nominated candidates and approve or deny each candidate nominated by their respective selection member.

(c) The independent review committee shall publish on its website a procedure by which it will review the qualifications of the nominated candidate and approve or deny each candidate.

(d) Those candidates that the independent review committee deems to meet the qualifications necessary for the services required based on their background and expertise that relate to the candidate's potential service on the commission shall be appointed as a commission member. The nominating selection member shall nominate a new candidate for those that are denied by the independent review committee.

(e) No individual shall be eligible for nomination and appointment as a member of the commission who is currently, or has within the last two years:

(i) been registered as a lobbyist in New York state;

    (ii) been a member or employee of the New York state legislature, a statewide elected official, or a commissioner of an executive agency appointed by the governor;

    (iii) been a political party chair, as defined in section seventy-three of the public officers law; or

    (iv) been a state officer or employee as defined in section seventy-three of the public officers law.

(f) The independent review committee shall convene as needed or as requested by the selection members. The chair of the independent review committee shall be elected from the members of the independent review committee.

(g) Appropriate staffing and other resources shall be provided for in the commission's budget for the independent review committee to carry out its powers, functions, and duties. The independent review committee shall publish on the commission's website a procedure by which it will review and select the commission members and other processes to effectuate its responsibilities under this section.

(h) The majority of the independent review committee shall constitute a quorum to hold a meeting and conduct official business.

(i) During the pendency of the review and approval or denial of the candidates, the independent review committee shall be subject to and maintain confidentiality in all independent review committee processes, reviews, analyses, approvals, and denials. A member of the independent review committee may be removed by majority vote of the committee for substantial neglect of duty, misconduct, violation of the confidentiality restrictions set forth in this section, inability to discharge the powers or duties of the committee or violation of this section, after written notice and opportunity for a reply.

(j) Upon the receipt of the selection members' appointments, members of the independent review committee shall disclose to the independent review committee any personal,

professional, financial, or other direct or indirect relationships a member of the independent review committee may have with an appointee. If the independent review committee determines a conflict of interest exists, such independent review committee member shall, in writing, notify the other members of the independent review committee of the possible conflict. The member may recuse themself from all subsequent involvement in the consideration of and action upon the appointment. If, after disclosure, the member does not recuse themself from the matter, the independent review committee, by majority vote finding the disclosed information creates a substantial conflict of interest, may remove the conflicted member from further consideration of and action upon the appointment.

(k)  Notwithstanding the provisions of article seven of the public officers law, no meeting or proceeding of the independent review committee shall be open to the public, except the applicable records pertaining to the review and selection process for a member's seat shall be subject to disclosure pursuant to article six of the public officers law only after an individual member is appointed to the commission. Requests for such records shall be made to, and processed by, the commission's records access officer.

(l)  The independent review committee shall neither be public officers nor be subject to the requirements of the public officers law.

(m) Notwithstanding subdivision (l) of this section, the independent review committee members shall be entitled to representation, indemnification, and to be held harmless to the same extent as any other person employed in service of the state and entitled to such coverage under sections seventeen and nineteen of the public officers law, provided however, that any independent review committee member removed due to a violation of paragraph (i) of this subdivision shall not qualify for such entitlements.

4.   **Commission.** (a) The first class of members of the commission shall serve staggered terms to ensure continuity. For the first class of the commission, five members shall serve a term of four years, three members shall serve a term of two years, and one member shall serve a term of one year. All

subsequent members shall serve a term of four years. No member shall be selected to the commission for more than two full consecutive terms, except that a member who has held the position by filling a vacancy can only be selected to the commission for an additional two full consecutive terms.

(b) The commission by majority vote shall elect a chairperson from among its members for a term of two years. A chairperson may be elected to no more than two terms for such office.

(c) Members of the commission may be removed by majority vote of the commission for substantial neglect of duty, misconduct in office, violation of the confidentiality restrictions set forth in this section, inability to discharge the powers or duties of office or violation of this section, after written notice and opportunity for a reply.

(d) Any vacancy occurring on the commission shall be filled within thirty days of its occurrence in the same manner as a member is initially selected to complete the vacant term.

(e) During the period of a member's service as a member of the commission, the member shall refrain from making, or soliciting from other persons, any contributions to candidates, political action committees, political parties or committees, newsletter funds, or political advertisements for election to the offices of governor, lieutenant governor, member of the assembly or the senate, attorney general or state comptroller.

(f) Members of the commission shall receive a per diem allowance equal to the salary of a justice of the supreme court divided by two hundred twenty for each day or each pro-rated day actually spent in the performance of the member's duties under this section, and, in addition thereto, shall be reimbursed for all reasonable expenses actually and necessarily incurred by the member in the performance of the member's duties under this section. For the purposes of this subdivision, a day shall consist of at least seven and one-half hours spent in the performance of the member's duties under this section.

(g)  The commission shall meet at least quarterly and additionally as called by the chairperson, or upon the call of a majority of the members of the commission. The commission shall be subject to articles six and seven of the public officers law.

(h)  A majority of the members of the commission shall constitute a quorum, and the commission shall have the power to act by majority vote of the total number of members of the commission without vacancy.

(i)  The commission shall hold a public hearing at least once each calendar year to take testimony regarding the operation of the commission and solicit public input regarding potential or proposed changes in the laws under its jurisdiction.

5.  **Powers.** (a) The commission has the authority to: (i) adopt, amend, and rescind any rules and regulations pertaining to section seventy-three, seventy-three-a or seventy-four of the public officers law, article one-A of the legislative law, or section one hundred seven of the civil service law; (ii) adopt, amend, and rescind any procedures of the commission, including but not limited to, procedures for advice and guidance, training, filing, review, and enforcement of financial disclosure statements, investigations, enforcement, and due process hearings; and (iii) develop and promulgate any programs for reviews, training, and guidance to carry out the commission's mission.

(b)  The commission shall adopt and post on its website guidance documents detailing the processes and procedures of an investigation, including the stages of an investigation; timelines, including the reasons for any potential delays in an investigation; the hearing and adjudication process; outcomes of an investigation; and, anything else the commission deems necessary to inform the public as well as relevant parties to an investigation including complainants, respondents, victims, if any, and witnesses as to such processes and procedures. The guidance documents shall delineate the processes and procedures that apply to the relevant parties, including, where applicable, the due process and any other rights or remedies that the relevant party may have under the commission's procedures or any other area of law. The guidance documents shall be provided to the relevant party of an investigation upon such party's involvement in such investigation.

(c)  The commission has the authority to compel the testimony of witnesses, and may administer oaths or affirmations, subpoena witnesses, compel their attendance and require the production of any books or records which it may deem relevant or material.

6.    **Executive director and commission staff.** The commission shall:

(a)  (i) Appoint an executive director through a majority vote of the members of the commission, who shall act in accordance with the policies of the commission. The executive director shall be appointed without regard to political affiliation and solely on the basis of fitness to perform the duties assigned by this section, and meet the qualifications necessary for the services required based on their background and expertise that relate to the candidate's potential service to the commission. No individual shall be eligible to be appointed as an executive director if the individual is currently, or within the last two years has been:

(1)  registered as a lobbyist in New York state;

(2)  a member or employee of the New York state legislature or a statewide elected official, or a commissioner of an executive agency appointed by the governor; or

(3)  a political party chair, as defined in section seventy-three of the public officers law.

(ii)  The appointment and removal of the executive director shall be made by a majority vote of the commission.

(iii) The term of office of the executive director shall be four years from the date of appointment. The salary of the executive director shall be determined by the members of the commission based on experience.

(iv) The commission may remove the executive director for neglect of duty, misconduct in office, violation of the confidentiality restrictions in this section, or inability or failure to discharge the powers or duties of office, including the failure to follow the lawful instructions of the commission.

(b) The commission may delegate authority to the executive director to act in the name of the commission between meetings of the commission provided such delegation is in writing, the specific powers to be delegated are numerated, and the commission shall not delegate any decisions specified in this section that require a vote of the commission.

(c) The commission, through the executive director, shall establish units within the commission to carry out it duties, including, but not limited to, (i) an advice and guidance unit, (ii) a training unit, (iii) a financial disclosure unit, (iv) a lobbying unit, and (v) an investigations and enforcement unit.

(d) The commission, through the executive director, shall appoint such other staff as are necessary to carry out its duties under this section, including, but not limited to, a deputy director of an advice and guidance unit to provide timely confidential advice to persons subject to the commission's jurisdiction, a deputy director for training, a deputy director for investigations and enforcement, and a deputy director for lobbying.

(e) In addition to meeting the qualifications necessary for the services required for the position, the deputy director for investigations and enforcement shall have completed substantial training and have experience in trauma-informed approaches to investigations and enforcement. The deputy director for investigations and enforcement shall complete a minimum of four hours of training annually in trauma-informed approaches to investigations and enforcement. Such trainings may include, but not be limited to, the impact of trauma, first impression matters, victim interviews, investigative strategies, and alcohol and drug facilitated cases.

(f) The commission, through the executive director, shall review and approve a staffing plan provided and prepared by the executive director which shall contain, at a minimum, a list of the various units and divisions as well as the number of positions in each unit, titles and their duties, and salaries, as well as the various qualifications for each position.

7. **Advice and guidance.**

    (a)  The commission shall establish a unit or units solely for ethics and lobbying guidance, and give such prompt, informal advice to persons whose conduct it oversees, except with respect to members of the legislature and legislative staff, who shall seek advice from the legislative ethics commission in the first instance.

    (b)  Persons receiving such informal advice may rely on that advice absent misrepresentation or omission of material facts to the commission and such communications with the commission shall be treated as confidential, except as disclosure is needed to prevent or rectify a crime or fraud, or prevent a substantial threat to public health or safety or if required by court order.

    (c)  The commission may also render, on written request or on its own initiative, advisory opinions, and may allow for public comment before issuance of an advisory opinion. Such an opinion rendered by the commission shall be relied on by those subject to the commission's jurisdiction and until, or unless, amended, superseded, or revoked. Such opinion may also be relied upon by any such person, and may be introduced and shall be a defense, in any criminal or civil action.

8. **Training.** The commission shall establish a training unit and shall develop and administer an on-going program for the education and training in ethics and lobbying for those subject to the provisions of this section, as follows:

    (a)  The commission shall develop and administer a comprehensive and interactive live-in person or live-online ethics training course and shall designate and train instructors to conduct such training. Such live course shall be designed to include practical application of the material covered and a question-and-answer participatory segment. Unless the commission grants an extension or waiver for good cause shown, statewide elected officials, members of the legislature and employees of the legislature, and state officers and employees as defined in sections seventy-three, seventy-three-a, and seventy-four of the

public officers law, and the political party chair as is defined in section seventy-three of the public officers law, shall complete the live course within ninety days of appointment or employment and shall complete the live course every two years subsequently.

(b) The commission shall develop and administer an online ethics refresher course for all individuals listed under subparagraph (i) of this paragraph who have previously completed the live course. Such refresher course shall be designed to include any changes in law, regulation, or policy or in the interpretation thereof, and practical application of the material covered. Unless the commission grants an extension or waiver for good cause shown, such individuals shall take such refresher course once every year after having completed the live course under paragraph (a) of this subdivision.

(c) The commission shall develop and administer an online live question and answer course for agency ethics officers.

(d) The commission shall develop and administer training courses for lobbyists and clients of lobbyists.

(e) The provisions of this subdivision shall be applicable to the legislature except to the extent that an ethics training program is otherwise established by the assembly and/or senate for their respective members and employees and such program meets or exceeds each of the requirements set forth in this subdivision.

(f) On an annual basis, the commission, in coordination with the legislative ethics commission, shall determine the status of compliance with the training requirements under this subdivision by each state agency and by the senate and the assembly. Such determination shall include aggregate statistics regarding participation in such training and shall be reported on a quarterly basis to the governor and the legislature in writing.

9.    **Financial disclosure statements.**

(a)  The commission may delegate all or part of review, inquiry and advice in this section to the staff under the supervision of the executive director.

(b)  The commission shall make available forms for annual statements of financial disclosure required to be filed pursuant to section seventy-three-a of the public officers law.

(c)  The commission shall review the financial disclosure statements of the statewide elected officials and members of the legislature within sixty days of their filings to determine, among other things, deficiencies and conflicts.

(d)  The commission shall review on a random basis the financial disclosure statements for filers who are not statewide elected officials and members of the legislature.

(e)  The commission shall review financial disclosure statements filed in accordance with the provisions of this section and (i) inquire into any disclosed conflict to recommend how best to address such conflict; and (ii) ascertain whether any person subject to the reporting requirements of section seventy-three-a of the public officers law has failed to file such a statement, has filed a deficient statement or has filed a statement which reveals a possible violation of section seventy-three, seventy-three-a or seventy-four of the public officers law.

(f)  If a person required to file a financial disclosure statement with the commission has failed to file a disclosure statement or has filed a deficient statement, the commission shall notify the reporting person in writing, state the failure to file or detail the deficiency, provide the person with a fifteen-day period to cure the deficiency, and advise the person of the penalties for failure to comply with the reporting requirements. This first notice of deficiency shall be confidential. If the person fails to make such filing or fails to cure the deficiency within the specified time period, the commission shall send a notice of delinquency (i) to the reporting person; (ii) in the case of a statewide elected official, to the chief of staff or counsel to the statewide elected official; (iii) in the case of a member of the

legislature or a legislative employee, to the temporary president of the senate and the speaker of the assembly; and (iv) in the case of a state officer, employee or board member, to the appointing authority for such person. Such notice of delinquency may be sent at any time during the reporting person's service as a statewide elected official, state officer or employee, member of the assembly or the senate, or a legislative employee or a political party chair or while a candidate for statewide office, or within one year after termination of such service or candidacy. A copy of any notice of delinquency or report shall be included in the reporting person's file and be available for public inspection and copying pursuant to the provisions of this section. The jurisdiction of the commission, when acting pursuant to this subdivision with respect to financial disclosure, shall continue for two years notwithstanding that the reporting person separates from state service, or ceases to hold public or political party office, or ceases to be a candidate, provided the commission notifies such person of the alleged failure to file or deficient filing pursuant to this subdivision.

(g) The commission shall adopt a procedure whereby a person who is required to file an annual financial disclosure statement with the commission may request an additional period of time within which to file such statement, other than members of the legislature, candidates for members of the legislature and legislative employees, due to justifiable cause or undue hardship.

(h) The commission may permit any person who is required to file a financial disclosure statement with the commission to request that the commission delete from the copy thereof made available for public inspection and copying one or more items of information which may be deleted by the commission upon a finding by the commission that the information which would otherwise be required to be made available for public inspection and copying will have no material bearing on the discharge of the reporting person's official duties. If such request for deletion is denied, the commission, in its notification of denial, shall inform the person of their right to appeal the commission's determination in

a proceeding commenced against the commission, pursuant to article seventy-eight of the civil practice law and rules.

(i)  The commission may permit any person who is required to file a financial disclosure statement with the commission to request an exemption from any requirement to report one or more items of information which pertain to such person's spouse, domestic partner, or unemancipated children which item or items may be exempted by the commission upon a finding by the commission that the reporting individual's spouse, domestic partner, on their own behalf, or on behalf of an unemancipated child, objects to providing the information necessary to make such disclosure and that the information which would otherwise be required to be reported shall have no material bearing on the discharge of the reporting person's official duties. If such request for exemption is denied, the commission, in its notification of denial, shall inform the person of their right to appeal the commission's determination, pursuant to article seventy-eight of the civil practice law and rules.

(j)  The commission may permit any person required to file a financial disclosure statement to request an exemption from any requirement to report the identity of a client pursuant to the question under subparagraph (b) of paragraph eight of subdivision three of section seventy-three-a of the public officers law in such statement based upon an exemption set forth in such question. The reporting individual need not seek an exemption to refrain from disclosing the identity of any client with respect to any matter where they or their firm provided legal representation to the client in connection with an investigation or prosecution by law enforcement authorities, bankruptcy, or domestic relations matters. In addition, clients or customers receiving medical or dental services, mental health services, residential real estate brokering services, or insurance brokering services need not be disclosed. Pending any application for deletion or exemption to the commission relating to the filing of a financial disclosure statement, all information which is the subject or part of the application shall remain confidential. Upon an adverse determination by the commission, the reporting individual may request, and upon such request the commission

shall provide, that any information that is the subject or part of the application remain confidential for a period of thirty days following notice of such determination. In the event that the reporting individual resigns their office and holds no other office subject to the jurisdiction of the commission, the information shall not be made public and shall be expunged in its entirety.

(k) The commission shall permit any person who has not been determined by the person's appointing authority to hold a policy-making position, but who is otherwise required to file a financial disclosure statement to request an exemption from such requirement in accordance with rules and regulations governing such exemptions. Such rules and regulations shall provide for exemptions to be granted either on the application of an individual or on behalf of persons who share the same job title or employment classification which the commission deems to be comparable for purposes of this section. Such rules and regulations may permit the granting of an exemption where, in the discretion of the commission, the public interest does not require disclosure and the applicant's duties do not involve the negotiation, authorization or approval of:

(i) contracts, leases, franchises, revocable consents, concessions, variances, special permits, or licenses as such terms are defined in section seventy-three of the public officers law;

(ii) the purchase, sale, rental or lease of real property, goods or services, or a contract therefor;

(iii) the obtaining of grants of money or loans; or

(iv) the adoption or repeal of any rule or regulation having the force and effect of law.

Executive Law § 94 | *Effective July 8, 2022*

10. **Investigation and enforcement.**

(a)  The commission shall receive complaints and referrals alleging violations of section seventy-three, seventy-three-a or seventy-four of the public officers law, article one-A of the legislative law, or section one hundred seven of the civil service law.

(b)  Upon the receipt of a complaint, referral, or the commencement of an investigation, members of the commission shall disclose to the commission any personal, professional, financial, or other direct or indirect relationships a member of the commission may have with a complainant or respondent. If any commissioner determines a conflict of interest may exist, the commissioner shall, in writing, notify the other members of the commission setting forth the possible conflict of interest. The commissioner may recuse themself from all subsequent involvement in the consideration and determination of the matter. If, after the disclosure, the commissioner does not recuse themself from the matter, the commission, by a majority vote finding that the disclosed information creates a substantial conflict of interest, shall remove the conflicted commissioner from all subsequent involvement in the consideration and determination of the matter, provided the reason for the decision is clearly stated in the determination of the commission.

(c)  The commission shall conduct any investigation necessary to carry out the provisions of this section. Pursuant to this power and duty, the commission may administer oaths or affirmations, subpoena witnesses, compel their attendance and testimony, and require the production of any books or records which it may deem relevant or material. The commission may, by a majority vote and pursuant to regulations adopted pursuant to the state administrative procedure act, delegate to the executive director the authority to issue subpoenas, provided that the executive director first notify the chair of the commission.

(d)  The commission staff shall review and investigate, as appropriate, any information in the nature of a complaint or referral received by the commission or initiated by the commission, including through its review of media reports and other information, where there is specific and credible evidence that a violation of section seventy-three, seventy-three-a, or seventy-four of the public

officers law, section one hundred seven of the civil service law or article one-A of the legislative law by a person or entity subject to the jurisdiction of the commission including members of the legislature and legislative employees and candidates for members of the legislature.

(e)  The commission shall notify the complainant, if any, that the commission has received their complaint.

(f)  If, following a preliminary review of any complaint or referral, the commission or commission staff decides to elevate such preliminary review into an investigation, written notice shall be provided to the respondent setting forth, to the extent the commission is able to, the possible or alleged violation or violations of such law and a description of the allegations against the respondent and the evidence, if any, already gathered pertaining to such allegations, provided however that any information that may, in the judgment of the commission or staff, either be prejudicial to the complainant or compromise the investigation shall be redacted. The respondent shall have fifteen days from receipt of the written notice to provide any preliminary response or information the respondent determines may benefit the commission or commission staff in its work. After the review and investigation, the staff shall prepare a report to the commission setting forth the allegation or allegations made, the evidence gathered in the review and investigation tending to support and disprove, if any, the allegation or allegations, the relevant law, and a recommendation for the closing of the matter as unfounded or unsubstantiated, for settlement, for guidance, or moving the matter to a confidential due process hearing. The commission shall, by majority vote, return the matter to the staff for further investigation or accept or reject the staff recommendation.

(g)  In an investigation involving a victim the commission shall ensure that any interview of such victim is upon such victim's consent and that the investigator or investigators interviewing such victim have adequate trauma informed and victim centered investigative training. If a victim is requested to testify at a hearing, the commission shall provide sufficient notice to the victim of such request. Regardless of whether a victim is requested to or testifies at a hearing, the victim

shall be informed as to how any statements made or information provided will be used in an investigation.

(h) Upon the conclusion of an investigation, if the commission, after consideration of a staff report, determines by majority vote that there is credible evidence of a violation of the laws under its jurisdiction, it shall provide the respondent timely notice for a due process hearing. The commission shall also inform the respondent of its rules regarding the conduct of adjudicatory proceedings and appeals and the other due process procedural mechanisms available to the respondent. If after a hearing the complaint is unsubstantiated or unfounded, the commission shall provide written notice to the respondent, complainant, if any, and victim, if any, provided that such notice shall not include any personally identifying information or information tending to identify any party involved in an investigation.

(i) The hearing shall be conducted before an independent arbitrator. Such hearing shall afford the respondent with a reasonable opportunity to appear in person, and by attorney, give sworn testimony, present evidence, and cross-examine witnesses.

(j) The commission may, at any time, develop procedures and rules for resolution of de minimus or minor violations that can be resolved outside of the enforcement process, including the sending of a confidential guidance or educational letter.

(k) The jurisdiction of the commission when acting pursuant to this section shall continue notwithstanding that a statewide elected official or a state officer or employee or member of the legislature or legislative employee separates from state service, or a political party chair ceases to hold such office, or a candidate ceases to be a candidate, or a lobbyist or client of a lobbyist ceases to act as such, provided that the commission notifies such individual or entity of the alleged violation of law within two years from the individual's separation from state service or termination of party service or candidacy, or from the last report filed pursuant to article one-A of the legislative law. Nothing in this section shall serve to limit the jurisdiction of the commission in enforcement of subdivision eight of section seventy-three of the public officers law.

(l) If the commission's vote to proceed to a due process hearing after the completion of an investigation does not carry, the commission shall provide written notice of the decision to the respondent, complainant, if any, and victim, if any, provided that such notice shall not include any personally identifying information or information tending to identify any party involved in an investigation.

(m) If the commission determines a complaint or referral lacks specific and credible evidence of a violation of the laws under its jurisdiction, or a matter is closed due to the allegations being unsubstantiated prior to a vote by the commission, such records and all related material shall be exempt from public disclosure under article six of the public officers law, except the commission's vote shall be publicly disclosed in accordance with articles six and seven of the public officers law. The commission shall provide written notice of such closure to the respondent, complainant, if any, or victim, if any, provided that such notice shall not include any personally identifying information or information tending to identify any party involved in an investigation.

(n) (i) An individual subject to the jurisdiction of the commission who knowingly and intentionally violates the provisions of subdivisions two through five-a, seven, eight, twelve or fourteen through seventeen of section seventy-three of the public officers law, section one hundred seven of the civil service law, or a reporting individual who knowingly and willfully fails to file an annual statement of financial disclosure or who knowingly and willfully with intent to deceive makes a false statement or fraudulent omission or gives information which such individual knows to be false on such statement of financial disclosure filed pursuant to section seventy-three-a of the public officers law, shall be subject to a civil penalty in an amount not to exceed forty thousand dollars and the value of any gift, compensation or benefit received as a result of such violation.

(ii) An individual who knowingly and intentionally violates the provisions of paragraph a, b, c, d, e, g, or i of subdivision three of section seventy-four of the public officers law, shall be

subject to a civil penalty in an amount not to exceed ten thousand dollars and the value of any gift, compensation or benefit received as a result of such violation.

(iii) An individual subject to the jurisdiction of the commission who knowingly and willfully violates article one-A of the legislative law shall be subject to civil penalty as provided for in that article.

(iv) With respect to a potential violation of any criminal law where the commission finds sufficient cause by a majority vote, it shall refer such matter to the appropriate law enforcement authority for further investigation.

(v) In assessing the amount of the civil penalties to be imposed, the commission shall consider the seriousness of the violation, the amount of gain to the individual and whether the individual previously had any civil or criminal penalties imposed pursuant to this section, and any other factors the commission deems appropriate.

(vi) A civil penalty for false filing shall not be imposed under this subdivision in the event a category of "value" or "amount" reported hereunder is incorrect unless such reported information is falsely understated.

(vii) Notwithstanding any other provision of law to the contrary, no other penalty, civil or criminal may be imposed for a failure to file, or for a false filing, of such statement, or a violation of subdivision six of section seventy-three of the public officers law or section one hundred seven of the civil service law, except that the commission may recommend that the individual in violation of such subdivision or section be disciplined.

(o) The commission shall be deemed to be an agency within the meaning of article three of the state administrative procedure act and shall adopt rules governing the conduct of adjudicatory proceedings and appeals taken pursuant to a proceeding commenced under article seventy-eight of the civil practice law and rules relating to the assessment of the civil penalties or the recommendation of employee discipline herein authorized. Such rule shall provide for due

process procedural mechanisms substantially similar to those set forth in article three of the state administrative procedure act but such mechanisms need not be identical in terms or scope.

(p) (i) The commission shall have jurisdiction to investigate, but shall have no jurisdiction to impose penalties or discipline upon members of or candidates for member of the legislature or legislative employees for any violation of the public officers law or section one hundred seven of the civil service law. If, after investigation and a due process hearing, the commission has found, by a majority vote, a substantial basis to conclude that a member of the legislature or a legislative employee or candidate for member of the legislature has violated any provisions of such laws, it shall prepare a written report of its findings and provide a copy of that report to the legislative ethics commission, and to such individual in violation of such law. The commission shall provide to the legislative ethics commission copies of the full investigative file and hearing record.

(ii) With respect to the investigation of any individual who is not a member of the legislature or a legislative employee or candidate for member of the legislature, if after its investigation and due process hearing, the commission has found, by a majority vote, a substantial basis to conclude that the individual or entity has violated the public officers law, section one hundred seven of the civil service law, or the legislative law, the commission shall determine whether, in addition to or in lieu of any fine authorized by this article, the matter should be referred to their employer for discipline with a warning, admonition, censure, suspension or termination or other appropriate discipline. With regard to statewide elected officials, the commission may not order suspension or termination but may recommend impeachment. The commission shall then issue a report containing its determinations including its findings of fact and conclusions of law to the complainant and respondent. The commission shall publish such report on its website within twenty days of its delivery to the complainant and respondent.

Executive Law § 94 | *Effective July 8, 2022*

11.  **Confidentiality.**

   (a)  When an individual becomes a commissioner or staff of the commission, such individual shall be required to sign a non-disclosure statement.

   (b)  Except as otherwise required or provided by law, or when necessary to inform the complainant or respondent of the alleged violation of law, if any, of the status of an investigation, testimony received, or any other information obtained by a commissioner or staff of the commission, shall not be disclosed by any such individual to any person or entity outside of the commission during the pendency of any matter. Any confidential communication to any person or entity outside the commission related to the matters before the commission shall occur only as authorized by the commission. For the purposes of this paragraph, "matter" shall mean any complaint, review, inquiry, or investigation into alleged violations of this chapter.

   (c)  The commission shall establish procedures necessary to prevent the unauthorized disclosure of any information received by any member of the commission or staff of the commission. Any breaches of confidentiality may be investigated by the New York state office of the inspector general, attorney general, or other appropriate law enforcement authority upon a majority vote of the commission to refer, and appropriate action shall be taken.

   (d)  Any commission member or person employed by the commission who intentionally and without authorization releases confidential information received or generated by the commission shall be guilty of a class A misdemeanor.

12.  **Annual report.**

   (a)  The commission shall make an annual public report summarizing the activities of the commission during the previous year and recommending any changes in the laws governing the conduct of persons subject to the jurisdiction of the commission, or the rules, regulations and procedures governing the commission's conduct. Such report shall include, but is not limited to:

  (i) information on the number and type of complaints received by the commission and the status of such complaints;

  (ii) information on the number of investigations pending and nature of such investigations;

  (iii) where a matter has been resolved, the date and nature of the disposition and any sanction imposed; provided, however, that such annual report shall not contain any information for which disclosure is not permitted pursuant to this section or other laws;

  (iv) information regarding financial disclosure compliance for the preceding year; and

  (v) information regarding lobbying law filing compliance for the preceding year.

 (b) Such a report shall be filed in the office of the governor and with the legislature on or before the first day of April for the preceding year.

13. **Website.**

 (a) Within one hundred twenty days of the effective date of this section, the commission shall update JCOPE's publicly accessible website which shall set forth the procedure for filing a complaint with the commission, the filing of financial disclosure statements filed by state officers or employees or legislative employees, the filing of statements required by article one-A of the legislative law, and any other records or information which the commission determines to be appropriate.

 (b) The commission shall post on its website the following documents:

  (i) the information set forth in an annual statement of financial disclosure filed pursuant to section seventy-three-a of the public officers law except information deleted pursuant to paragraph (g) of subdivision nine of this section of statewide elected officials and members of the legislature;

  (ii) notices of delinquency sent under subdivision nine of this section;

    (iii) notices of civil assessments imposed under this section which shall include a description of the nature of the alleged wrongdoing, the procedural history of the complaint, the findings and determinations made by the commission, and any sanction imposed;

    (iv) the terms of any settlement or compromise of a complaint or referral which includes a fine, penalty or other remedy;

    (v) those required to be held or maintained publicly available pursuant to article one-A of the legislative law; and

    (vi) reports issued by the commission pursuant to this section.

14. **Additional powers.** In addition to any other powers and duties specified by law, the commission shall have the power and duty to administer and enforce all the provisions of this section.

15. **Severability.** If any part or provision of this section or the application thereof to any person or organization is adjudged by a court of competent jurisdiction to be unconstitutional or otherwise invalid, such judgment shall not affect or impair any other part or provision or the application thereof to any other person or organization, but shall be confined in its operation to such part or provision.

Legislative Law Article 5 § 80.

*Legislative ethics commission; functions, powers and duties; review of financial disclosure statements; advisory opinions; imposition of penalties or other enforcement actions.*

1. There is established a legislative ethics commission which shall consist of nine members. Four members shall be members of the legislature and shall be appointed as follows: one by the temporary president of the senate, one by the speaker of the assembly, one by the minority leader of the senate and one by the minority leader of the assembly. The remaining five members shall not be present or former members of the legislature, candidates for member of the legislature, employees of the legislature, political party chairmen as defined in paragraph (k) of subdivision one of section seventy-three of the public officers law, or lobbyists, as defined in section one-c of this chapter, or persons who have been employees of the legislature, political party chairmen as defined in paragraph (k) of subdivision one of section seventy-three of the public officers law, or lobbyists, as defined in section one-c of this chapter in the previous five years, and shall be appointed as follows: one by the temporary president of the senate, one by the speaker of the assembly, one by the minority leader of the senate, one by the minority leader of the assembly, and one jointly by the speaker of the assembly and majority leader of the senate. The commission shall serve as described in this section and have and exercise the powers and duties set forth in this section only with respect to members of the legislature, legislative employees as defined in section seventy-three of the public officers law, candidates for member of the legislature and individuals who have formerly held such positions or who have formerly been such candidates.

2. Members of the legislature who serve on the commission shall each have a two year term concurrent with their legislative terms of office. The members of the commission who are not members of the legislature and who are first appointed by the temporary president of the senate, speaker of the assembly, minority leader of the senate, and minority leader of the assembly shall serve one, two, three and four year terms, respectively. The member of the commission first appointed jointly by the temporary president of the senate and speaker of the assembly shall serve a four year term. Each

member of the commission who is not a member of the legislature shall be appointed thereafter for a term of four years.

3.  The temporary president of the senate and the speaker of the assembly shall each designate one member of the commission as a co-chairperson thereof. The commission shall meet at least bi-monthly and at such additional times as may be called for by the co-chairpersons jointly or any five members of the commission.

4.  Any vacancy occurring on the commission shall be filled within thirty days by the appointing authority.

5.  Five members of the commission shall constitute a quorum, and the commission shall have power to act by majority vote of the total number of members of the commission without vacancy.

6.  The members of the commission who are not members of the legislature shall be reimbursed for reasonable expenses and receive a per diem allowance in the sum of three hundred dollars for each day spent in the performance of their official duties.

7.  The commission shall:

    a.  Appoint an executive director who shall act in accordance with the policies of the commission, provided that the commission may remove the executive director for neglect of duty, misconduct in office, or inability or failure to discharge the powers or duties of office;

    b.  Appoint such other staff as are necessary to assist it to carry out its duties under this section;

    c.  Adopt, amend, and rescind policies, rules and regulations consistent with this section to govern procedures of the commission which shall not be subject to the promulgation and hearing requirements of the state administrative procedure act;

    d.  Administer the provisions of this section;

e.  Specify the procedures whereby a person who is required to file an annual financial disclosure statement with the commission may request an additional period of time within which to file such statement, due to justifiable cause or undue hardship; such rules or regulations shall provide for a date beyond which in all cases of justifiable cause or undue hardship no further extension of time will be granted;

f.  Promulgate guidelines to assist appointing authorities in determining which persons hold policy-making positions for purposes of section seventy-three-a of the public officers law and may promulgate guidelines to assist firms, associations and corporations in separating affected persons from net revenues for purposes of subdivision ten of section seventy-three of the public officers law, and promulgate guidelines to assist any firm, association or corporation in which any present or former statewide elected official, state officer or employee, member of the legislature or legislative employee, or political party chair is a member, associate, retired member, of counsel or shareholder, in complying with the provisions of subdivision ten of section seventy-three of the public officers law with respect to the separation of such present or former statewide elected official, state officer or employee, member of the legislature or legislative employee, or political party chair from the net revenues of the firm, association or corporation. Such firm, association or corporation shall not be required to adopt the procedures contained in the guidelines to establish compliance with subdivision ten of section seventy-three of the public officers law, but if such firm, association or corporation does adopt such procedures, it shall be deemed to be in compliance with such subdivision ten;

g.  Make available forms for financial disclosure statements required to be filed pursuant to subdivision six of section seventy-three and section seventy-three-a of the public officers law as provided by the commission on ethics and lobbying in government;

h.  Review financial disclosure statements in accordance with the provisions of this section, provided however, that the commission may delegate all or part of the review function relating to financial disclosure statements filed by legislative employees pursuant to sections

seventy-three and seventy-three-a of the public officers law to the executive director who shall be responsible for completing staff review of such statements in a manner consistent with the terms of the commission's delegation;

i. Upon written request from any person who is subject to the jurisdiction of the commission and the requirements of sections seventy-three, seventy-three-a and seventy-four of the public officers law, render formal advisory opinions on the requirements of said provisions. A formal written opinion rendered by the commission, until and unless amended or revoked, shall be binding on the legislative ethics commission in any subsequent proceeding concerning the person who requested the opinion and who acted in good faith, unless material facts were omitted or misstated by the person in the request for an opinion. Such opinion may also be relied upon by such person, and may be introduced and shall be a defense in any criminal or civil action. The commission on ethics and lobbying in government shall not investigate an individual for potential violations of law based upon conduct approved and covered in its entirety by such an opinion, except that such opinion shall not prevent or preclude an investigation of and report to the legislative ethics commission concerning the conduct of the person who obtained it by the commission on ethics and lobbying in government for violations of section seventy-three, seventy-three-a or seventy-four of the public officers law to determine whether the person accurately and fully represented to the legislative ethics commission the facts relevant to the formal advisory opinion and whether the person's conduct conformed to those factual representations. The commission on ethics and lobbying in government shall be authorized and shall have jurisdiction to investigate potential violations of the law arising from conduct outside of the scope of the terms of the advisory opinion; and

j. Issue and publish generic advisory opinions covering questions frequently posed to the commission, or questions common to a class or defined category of persons, or that will tend to prevent undue repetition of requests or undue complication, and which are intended to provide general guidance and information to persons subject to the commission's jurisdiction;

    k.   Develop educational materials and training with regard to legislative ethics for members of the legislature and legislative employees including an online ethics orientation course for newly-hired employees and, as requested by the senate or the assembly, materials and training in relation to a comprehensive ethics training program; and

    l.   Prepare an annual report to the governor and legislature summarizing the activities of the commission during the previous year and recommending any changes in the laws governing the conduct of persons subject to the jurisdiction of the commission, or the rules, regulations and procedures governing the commission's conduct. Such report shall include: (i) a listing by assigned number of each complaint and report received from the commission on ethics and lobbying in government which alleged a possible violation within its jurisdiction, including the current status of each complaint, and (ii) where a matter has been resolved, the date and nature of the disposition and any sanction imposed, subject to the confidentiality requirements of this section. Such annual report shall not contain any information for which disclosure is not permitted pursuant to subdivision twelve of this section.

8.   The jurisdiction of the commission to impose penalties when acting pursuant to this section shall continue notwithstanding that a member of the legislature or a legislative employee separates from state service, or a candidate for member of the legislature ceases to be a candidate, provided that such individual has been notified of the alleged violation of law within one year from his or her separation from state service or the termination of his or her candidacy.

9.   (a) An individual subject to the jurisdiction of the commission with respect to the imposition of penalties who knowingly and intentionally violates the provisions of subdivisions two through five-a, seven, eight, twelve, fourteen or fifteen of section seventy-three of the public officers law or a reporting individual who knowingly and wilfully fails to file an annual statement of financial disclosure or who knowingly and wilfully with intent to deceive makes a false statement or gives information which such individual knows to be false on such statement of financial disclosure filed pursuant to section seventy-three-a of the public officers law shall be subject to a civil penalty in an

amount not to exceed forty thousand dollars and the value of any gift, compensation or benefit received as a result of such violation. Any such individual who knowingly and intentionally violates the provisions of paragraph a, b, c, d, e, g, or i of subdivision three of section seventy-four of the public officers law shall be subject to a civil penalty in an amount not to exceed ten thousand dollars and the value of any gift, compensation or benefit received as a result of such violation. Assessment of a civil penalty hereunder shall be made by the commission with respect to persons subject to its jurisdiction. In assessing the amount of the civil penalties to be imposed, the commission shall consider the seriousness of the violation, the amount of gain to the individual and whether the individual previously had any civil or criminal penalties imposed pursuant to this section, and any other factors the commission deems appropriate. For a violation of this section, other than for conduct which constitutes a violation of subdivision twelve, fourteen or fifteen of section seventy-three or section seventy-four of the public officers law, the legislative ethics commission may, in lieu of or in addition to a civil penalty, refer a violation to the appropriate prosecutor and upon such conviction, but only after such referral, such violation shall be punishable as a class A misdemeanor. Where the commission finds sufficient cause, it shall refer such matter to the appropriate prosecutor. A civil penalty for false filing may not be imposed hereunder in the event a category of "value" or "amount" reported hereunder is incorrect unless such reported information is falsely understated. Notwithstanding any other provision of law to the contrary, no other penalty, civil or criminal may be imposed for a failure to file, or for a false filing, of such statement, or a violation of subdivision six of section seventy-three of the public officers law, except that the appointing authority may impose disciplinary action as otherwise provided by law. The legislative ethics commission shall be deemed to be an agency within the meaning of article three of the state administrative procedure act and shall adopt rules governing the conduct of adjudicatory proceedings and appeals taken pursuant to a proceeding commenced under article seventy-eight of the civil practice law and rules relating to the assessment of the civil penalties herein authorized. Such rules, which shall not be subject to the promulgation and hearing requirements of the state administrative procedure act, shall provide for due process procedural mechanisms substantially similar to those set forth in such article three but such mechanisms need not be identical in terms or scope. Assessment of a civil penalty shall be final unless modified, suspended or vacated within thirty days of imposition, with respect to the

assessment of such penalty, or unless such denial of request is reversed within such time period, and upon becoming final shall be subject to review at the instance of the affected reporting individuals in a proceeding commenced against the legislative ethics commission, pursuant to article seventy-eight of the civil practice law and rules.

b. Not later than twenty calendar days after receipt from the commission on ethics and lobbying in government of a written substantial basis investigation report and any supporting documentation or other materials regarding a matter before the commission pursuant to section ninety-four of the executive law, unless requested by a law enforcement agency to suspend the commission's action because of an ongoing criminal investigation, the legislative ethics commission shall make public such report in its entirety; provided, however, that the commission may withhold such information for not more than one additional period of the same duration or refer the matter back to the commission on ethics and lobbying in government once for additional investigation, in which case the legislative ethics commission shall, upon the termination of such additional period or upon receipt of a new report by the commission on ethics and lobbying in government after such additional investigation, make public the written report and publish it on the commission's website. If the legislative ethics commission fails to make public the written report received from the commission on ethics and lobbying in government in accordance with this paragraph, the commission on ethics and lobbying in government shall release such report publicly promptly and in any event no later than ten days after the legislative ethics commission is required to release such report. The legislative ethics commission shall not refer the matter back to the commission on ethics and lobbying in government for additional investigation more than once. If the commission refers the matter back to the commission on ethics and lobbying in government for additional fact-finding, the commission on ethics and lobbying in government's original report shall remain confidential.

10. Upon receipt of a written report from the commission on ethics and lobbying in government pursuant to subdivision fourteen-a of section seventy-three of the public officers law, the legislative ethics commission shall commence its review of the matter addressed in such report. No later than

ninety days after receipt of such report, the legislative ethics commission shall dispose of the matter by making one or more of the following determinations:

    a.  whether the legislative ethics commission concurs with the commission on ethics and lobbying in government's conclusions of law and the reasons therefor;

    b.  whether and which penalties have been assessed pursuant to applicable law or rule and the reasons therefor; and

    c.  whether further actions have been taken by the commission to punish or deter the misconduct at issue and the reasons therefor. The commission's disposition shall be reported in writing and published on its website no later than ten days after such disposition unless requested by a law enforcement agency to suspend the commission's action because of an ongoing criminal investigation.

11. If the commission has a reasonable basis to believe that any person subject to the jurisdiction of another state oversight body may have violated section seventy-three or seventy-four of the public officers law, section one hundred seven of the civil service law, or article one-A of this chapter, it shall refer such violation to such oversight body unless the commission determines that such a referral would compromise the prosecution or confidentiality of its proceedings and, if so, shall make such a referral as soon as practicable. The referral by the commission shall include any information relating thereto coming into the custody or under the control of the commission at any time prior or subsequent to the time of the referral.

12. a. Notwithstanding the provisions of article six of the public officers law, the only records of the commission which shall be available for public inspection and copying are:

    (1)  the terms of any settlement or compromise of a complaint or referral or report which includes a fine, penalty or other remedy reached after the commission has received a report from the commission on ethics and lobbying in government pursuant to section ninety-four of the executive law;

(2)    generic advisory opinions;

(3)    all reports required by this section; and

(4)    all reports received from the commission on ethics and lobbying in government pursuant to section ninety-four of the executive law and in conformance with paragraph (b) of subdivision nine of this section.

b. Notwithstanding the provisions of article seven of the public officers law, no meeting or proceeding of the commission shall be open to the public, except if expressly provided otherwise by this section or the commission.

13. Within one hundred twenty days of the effective date of this subdivision, the commission shall create and thereafter maintain a publicly accessible website which shall set forth the procedure for filing a complaint with the commission on ethics and lobbying in government, and which shall contain any other records or information which the commission determines to be appropriate.

14. This section shall not revoke or rescind any policies, rules, regulations or advisory opinions issued by the legislative ethics committee in effect upon the effective date of this subdivision, to the extent that such regulations or opinions are not inconsistent with any laws of the state of New York. The legislative ethics commission shall undertake a comprehensive review of all such policies, rules, regulations or advisory opinions which will address the consistency of such policies, rules, regulations or advisory opinions with the laws of the state of New York. The legislative ethics commission shall, before April first, two thousand eight, report to the governor and legislature regarding such review and shall propose any regulatory changes and issue any advisory opinions necessitated by such review.

15. Separability clause. If any part or provision of this section or the application thereof to any person is adjudged by a court of competent jurisdiction to be unconstitutional or otherwise invalid, such judgment shall not affect or impair any other part or provision or the application thereof to any other person, but shall be confined to such part or provision.

# Public Officers  § 73. Business or professional activities by state officers and employees and party officers.

1.  As used in this section:

(a) The term "compensation" shall mean any money, thing of value or financial benefit conferred in return for services rendered or to be rendered. With regard to matters undertaken by a firm, corporation or association, compensation shall mean net revenues, as defined in accordance with generally accepted accounting principles as defined by the commission on ethics and lobbying in government or legislative ethics commission in relation to persons subject to their respective jurisdictions.

(b) The term "licensing" shall mean any state agency activity, other than before the division of corporations and state records in the department of state, respecting the grant, denial, renewal, revocation, enforcement, suspension, annulment, withdrawal, recall, cancellation or amendment of a license, permit or other form of permission conferring the right or privilege to engage in (i) a profession, trade, or occupation or (ii) any business or activity regulated by a regulatory agency as defined herein, which in the absence of such license, permit or other form of permission would be prohibited.

(c) The term "legislative employee" shall mean any officer or employee of the legislature but it shall not include members of the legislature.

(d) The term "ministerial matter" shall mean an administrative act carried out in a prescribed manner not allowing for substantial personal discretion.

(e) The term "regulatory agency" shall mean the department of financial services, state liquor authority, department of agriculture and markets, department of education, department of environmental conservation, department of health, division of housing and community renewal, department of state, other than the division of corporations and state records, department of public service, the

industrial board of appeals in the department of labor and the department of law, other than when the attorney general or his agents or employees are performing duties specified in section sixty-three of the executive law.

(f)  The term "representative capacity" shall mean the presentation of the interests of a client or other person pursuant to an agreement, express or implied, for compensation for services.

(g)  The term "state agency" shall mean any state department, or division, board, commission, or bureau of any state department, any public benefit corporation, public authority or commission at least one of whose members is appointed by the governor, or the state university of New York or the city university of New York, including all their constituent units except community colleges of the state university of New York and the independent institutions operating statutory or contract colleges on behalf of the state.

(h)  The term "statewide elected official" shall mean the governor, lieutenant governor, comptroller or attorney general.

(i)  The term "state officer or employee" shall mean:

   (i)  heads of state departments and their deputies and assistants other than members of the board of regents of the university of the state of New York who receive no compensation or are compensated on a per diem basis;

   (ii)  officers and employees of statewide elected officials;

   (iii)  officers and employees of state departments, boards, bureaus, divisions, commissions, councils or other state agencies other than officers of such boards, commissions or councils who receive no compensation or are compensated on a per diem basis; and

   (iv)  members or directors of public authorities, other than multi-state authorities, public benefit corporations and commissions at least one of whose members is appointed by the governor, who receive compensation other than on a per diem basis, and employees of such authorities, corporations and commissions.

(j)  The term "city agency" shall mean a city, county, borough or other office, position, administration, department, division, bureau, board, commission, authority, corporation or other agency of government, the expenses of which are paid in whole or in part from the city treasury, and shall include the board of education, the board of higher education, school boards, city and community colleges, community boards, the New York city transit authority, the New York city housing authority and the Triborough bridge and tunnel authority, but shall not include any court or corporation or institution maintaining or operating a public library, museum, botanical garden, arboretum, tomb, memorial building, aquarium, zoological garden or similar facility.

(k)  The term "political party chairman" shall mean:

  (i)  the chairman of the state committee of a party elected as provided in section 2-112 of the election law and his or her successor in office;

  (ii)  the chairman of a county committee elected as provided in section 2-112 of the election law and his or her successor in office from a county having a population of three hundred thousand or more or who receives compensation or expenses, or both, during the calendar year aggregating thirty thousand dollars or more; and

  (iii)  that person (usually designated by the rules of a county committee as the "county leader" or "chairman of the executive committee") by whatever title designated, who pursuant to the rules of a county committee or in actual practice, possesses or performs any or all of the following duties or roles, provided that such person was elected from a county having a population of three hundred thousand or more or was a person who received compensation or expenses, or both, from constituted committee or political committee funds, or both, during the reporting period aggregating thirty thousand dollars or more:

    (A)  the principal political, executive and administrative officer of the county committee;

    (B)  the power of general management over the affairs of the county committee;

(C) the power to exercise the powers of the chairman of the county committee as provided for in the rules of the county committee;

(D) the power to preside at all meetings of the county executive committee, if such a committee is created by the rules of the county committee or exists de facto, or any other committee or subcommittee of the county committee vested by such rules with or having de facto the power of general management over the affairs of the county committee at times when the county committee is not in actual session;

(E) the power to call a meeting of the county committee or of any committee or subcommittee vested with the rights, powers, duties or privileges of the county committee pursuant to the rules of the county committee, for the purpose of filling an office at a special election in accordance with section 6-114 of the election law, for the purpose of filling a vacancy in accordance with section 6-116 of such law; or

(F) the power to direct the treasurer of the party to expend funds of the county committee. The terms "constituted committee" and "political committee", as used in this paragraph (k), shall have the same meanings as those contained in section 14-100 of the election law.

(l) A person has a "financial interest" in any entity if that person:

    (i) owns or controls ten percent or more of the stock of such entity (or one percent in the case of a corporation whose stock is regularly traded on an established securities exchange); or

    (ii) serves as an officer, director or partner of that entity.

(m) The "relative" of any individual shall mean any person living in the same household as the individual and any person who is a direct descendant of that individual's grandparents or the spouse of such descendant.

(n) The term "domestic partner" shall mean a person who, with respect to another person, is formally a party in a domestic partnership or similar relationship with the other person, entered into pursuant to the laws of the United States or of any state, local or foreign jurisdiction, or registered as the domestic partner of the other person with any registry maintained by the employer of either party or any state, municipality, or foreign jurisdiction.

2. In addition to the prohibitions contained in subdivision seven of this section, no statewide elected official, state officer or employee, member of the legislature or legislative employee shall receive, or enter into any agreement express or implied for, compensation for services to be rendered in relation to any case, proceeding, application, or other matter before any state agency, or any executive order, or any legislation or resolution before the state legislature, whereby his or her compensation is to be dependent or contingent upon any action by such agency or legislature with respect to any license, contract, certificate, ruling, decision, executive order, opinion, rate schedule, franchise, legislation, resolution or other benefit; provided, however, that nothing in this subdivision shall be deemed to prohibit the fixing at any time of fees based upon the reasonable value of the services rendered.

3. (a) No statewide elected official, member of the legislature, legislative employee, full-time salaried state officer or employee shall receive, directly or indirectly, or enter into any agreement express or implied for, any compensation, in whatever form, for the appearance or rendition of services by himself, herself or another against the interest of the state in relation to any case, proceeding, application or other matter before, or the transaction of business by himself, herself or another with, the court of claims.

(b) No state officer or employee who is required to file an annual statement of financial disclosure pursuant to the provisions of section seventy-three-a of this article, and is not otherwise subject to the provisions of this section, shall receive, directly or indirectly, or enter into any agreement express or implied, for any compensation, in whatever form, for the appearance or rendition of services by himself, herself or another against the interest of the state agency by which he or she is employed or affiliated in relation to any case, proceeding, application or other matter before, or the transaction of business by himself, herself or another with, the court of claims.

4.  (a) No statewide elected official, state officer or employee, member of the legislature, legislative employee or political party chairman or firm or association of which such person is a member, or corporation, ten per centum or more of the stock of which is owned or controlled directly or indirectly by such person, shall (i) sell any goods or services having a value in excess of twenty-five dollars to any state agency, or (ii) contract for or provide such goods or services with or to any private entity where the power to contract, appoint or retain on behalf of such private entity is exercised, directly or indirectly, by a state agency or officer thereof, unless such goods or services are provided pursuant to an award or contract let after public notice and competitive bidding. This paragraph shall not apply to the publication of resolutions, advertisements or other legal propositions or notices in newspapers designated pursuant to law for such purpose and for which the rates are fixed pursuant to law.

     (b) No political party chairman of a county wholly included in a city with a population of more than one million, or firm or association of which such person is a member, or corporation, ten per centum or more of the stock of which is owned or controlled directly or indirectly by such person, shall (i) sell any goods or services having a value in excess of twenty-five dollars to any city agency, or (ii) contract for or provide such goods or services with or to any private entity where the power to contract, appoint or retain on behalf of such private entity is exercised directly or indirectly, by a city agency or officer thereof, unless such goods or services are provided pursuant to an award or contract let after public notice and competitive bidding. This paragraph shall not apply to the publication of resolutions, advertisements or other legal propositions or notices in newspapers designated pursuant to law for such purpose and for which the rates are fixed pursuant to law.

     (c) For purposes of this subdivision, the term "services" shall not include employment as an employee.

5.  No statewide elected official, state officer or employee, individual whose name has been submitted by the governor to the senate for confirmation to become a state officer or employee, member of the legislature or legislative employee shall, directly or indirectly:

(a) solicit, accept or receive any gift having more than a nominal value, whether in the form of money, service, loan, travel, lodging, meals, refreshments, entertainment, discount, forbearance or promise, or in any other form, under circumstances in which it could reasonably be inferred that the gift was intended to influence him or her, or could reasonably be expected to influence him or her, in the performance of his or her official duties or was intended as a reward for any official action on his or her part. No person shall, directly or indirectly, offer or make any such gift to a statewide elected official, or any state officer or employee, member of the legislature or legislative employee under such circumstances.

(b) solicit, accept or receive any gift, as defined in section one-c of the legislative law, from any person who is prohibited from delivering such gift pursuant to section one-m of the legislative law unless under the circumstances it is not reasonable to infer that the gift was intended to influence him or her; or

(c) permit the solicitation, acceptance, or receipt of any gift, as defined in section one-c of the legislative law, from any person who is prohibited from delivering such gift pursuant to section one-m of the legislative law to a third party including a charitable organization, on such official's designation or recommendation or on his or her behalf, under circumstances where it is reasonable to infer that the gift was intended to influence him or her.

5-a. (a) For the purpose of this subdivision only, the term "honorarium" shall mean any payment made in consideration for any speech given at a public or private conference, convention, meeting, social event, meal or like gathering.

(b) No statewide elected official or head of any civil department shall, directly or indirectly, solicit, accept or receive any honorarium while holding such elected office or appointed position.

(c) No member of the legislature or legislative employee shall, directly or indirectly, solicit, accept or receive any honorarium while holding such elected office or employment, other than honorarium paid in consideration for a speech given on a topic unrelated to the individual's current public employment or as earned income for personal services that are customarily

provided in connection with the practice of a bona fide business, trade or profession, such as teaching, practicing law, medicine or banking, unless the sole or predominant activity thereof is making speeches.

6.  (a) Every legislative employee not subject to the provisions of section seventy-three-a of this chapter shall, on and after December fifteenth and before the following January fifteenth, in each year, file with the commission on ethics and lobbying in government and the legislative ethics commission a financial disclosure statement of

> (1)  each financial interest, direct or indirect of himself or herself, his or her spouse or domestic partner and his or her unemancipated children under the age of eighteen years in any activity which is subject to the jurisdiction of a regulatory agency or name of the entity in which the interest is had and whether such interest is over or under five thousand dollars in value.

> (2)  every office and directorship held by him or her in any corporation, firm or enterprise which is subject to the jurisdiction of a regulatory agency, including the name of such corporation, firm or enterprise.

> (3)  any other interest or relationship which he or she determines in his or her discretion might reasonably be expected to be particularly affected by legislative action or in the public interest should be disclosed.

(b)  Copies of such statements shall be open for public inspection and copying.

(c)  Any such legislative employee who knowingly and willfully with intent to deceive makes a false statement or gives information which he or she knows to be false in any written statement required to be filed pursuant to this subdivision, shall be assessed a civil penalty in an amount not to exceed ten thousand dollars. Assessment of a civil penalty shall be made by the legislative ethics commission in accordance with the provisions of subdivision ten of section eighty of the legislative law. For a violation of this subdivision, the commission may, in lieu of a civil penalty, refer a violation to the appropriate prosecutor and upon conviction, but only after such referral, such violation shall be punishable as a class A misdemeanor.

7.   (a) No statewide elected official, or state officer or employee, other than in the proper discharge of official state or local governmental duties, or member of the legislature or legislative employee, or political party chairman shall receive, directly or indirectly, or enter into any agreement express or implied for, any compensation, in whatever form, for the appearance or rendition of services by himself, herself or another in relation to any case, proceeding, application or other matter before a state agency where such appearance or rendition of services is in connection with:

   (i)    the purchase, sale, rental or lease of real property, goods or services, or a contract therefor, from, to or with any such agency;

   (ii)   any proceeding relating to rate making;

   (iii)  the adoption or repeal of any rule or regulation having the force and effect of law;

   (iv)   the obtaining of grants of money or loans;

   (v)    licensing; or

   (vi)   any proceeding relating to a franchise provided for in the public service law.

   (b) No political party chairman in a county wholly included in a city having a population of one million or more shall receive, directly or indirectly, or enter into any agreement express or implied for, any compensation, in whatever form, for the appearance or rendition of services by himself, herself or another in relation to any case, proceeding, application or other matter before any city agency where such appearance or rendition of services is in connection with:

   (i)    the purchase, sale, rental or lease of real property, goods or services, or a contract therefor, from, to or with any such agency;

   (ii)   any proceeding relating to ratemaking;

   (iii)  the adoption or repeal of any rule or regulation having the force and effect of law;

   (iv)   the obtaining of grants of money or loans;

    (v)    licensing. For purposes of this paragraph, the term "licensing" shall mean any city agency activity respecting the grant, denial, renewal, revocation, enforcement, suspension, annulment, withdrawal, recall, cancellation or amendment of a license, permit or other form of permission conferring the right or privilege to engage in (i) a profession, trade, or occupation or (ii) any business or activity regulated by a regulatory agency of a city agency which in the absence of such license, permit or other form of permission would be prohibited; and

    (vi)    any proceeding relating to a franchise.

(c)  Nothing contained in this subdivision shall prohibit a statewide elected official, or a state officer or employee, unless otherwise prohibited, or a member of the legislature or legislative employee, or political party chairman, from appearing before a state agency in a representative capacity if such appearance in a representative capacity is in connection with a ministerial matter.

(d)  Nothing contained in this subdivision shall prohibit a member of the legislature, or a legislative employee on behalf of such member, from participating in or advocating any position in any matter in an official or legislative capacity, including, but not limited to, acting as a public advocate whether or not on behalf of a constituent. Nothing in this paragraph shall be construed to limit the application of the provisions of section seventy-seven of this chapter.

(e)  Nothing contained in this subdivision shall prohibit a state officer or employee from appearing before a state agency in a representative capacity on behalf of an employee organization in any matter where such appearance is duly authorized by an employee organization.

(f)  Nothing contained in this subdivision shall prohibit a political party chairman from participating in or advocating any matter in an official capacity.

(g)  Nothing contained in this subdivision shall prohibit internal research or discussion of a matter, provided, however, that the time is not charged to the client and the person does not share in the net revenues generated or produced by the matter.

(h)  Nothing contained in this subdivision shall prohibit a state officer or employee, unless otherwise prohibited, from appearing or rendering services in relation to a case, proceeding, application or transaction before a state agency, other than the agency in which the officer or employee is employed, when such appearance or rendition of services is made while carrying out official duties as an elected or appointed official, or employee of a local government or one of its agencies.

7-a. No member of the legislature, legislative employee, statewide elected official, or state officer or employee shall receive, directly or indirectly, or enter into any agreement express or implied, for any compensation, in whatever form, for the rendering of consulting, representational, advisory or other services by himself or herself or another in connection with any proposed or pending bill or resolution in the senate or assembly.

8.  (a) (i) No person who has served as a state officer or employee shall within a period of two years after the termination of such service or employment appear or practice before such state agency or receive compensation for any services rendered by such former officer or employee on behalf of any person, firm, corporation or association in relation to any case, proceeding or application or other matter before such agency.

    (ii)  No person who has served as a state officer or employee shall after the termination of such service or employment appear, practice, communicate or otherwise render services before any state agency or receive compensation for any such services rendered by such former officer or employee on behalf of any person, firm, corporation or other entity in relation to any case, proceeding, application or transaction with respect to which such person was directly concerned and in which he or she personally participated during the period of his or her service or employment, or which was under his or her active consideration.

    (iii)  No person who has served as a member of the legislature shall within a period of two years after the termination of such service receive compensation for any services on behalf of any person, firm, corporation or association to promote or oppose, directly or indirectly, the passage of bills or resolutions by either house of the legislature. No legislative employee shall

within a period of two years after the termination of such service receive compensation for any services on behalf of any person, firm, corporation or association to appear, practice or directly communicate before either house of the legislature to promote or oppose the passage of bills or resolutions by either house of the legislature.

(iv)    No person who has served as an officer or employee in the executive chamber of the governor shall within a period of two years after termination of such service appear or practice before any state agency.

(b) (i) The provisions of subparagraph (i) of paragraph (a) of this subdivision shall not apply to any state officer or employee whose employment was terminated on or after January first, nineteen hundred ninety-five and before April first, nineteen hundred ninety-nine or on or after January first, two thousand nine and before April first, two thousand fourteen because of economy, consolidation or abolition of functions, curtailment of activities or other reduction in the state work force. On or before the date of such termination of employment, the state agency shall provide to the terminated employee a written certification that the employee has been terminated because of economy, consolidation or abolition of functions, curtailment of activities or other reduction in the state work force, and that such employee is covered by the provisions of this paragraph. The written certification shall also contain a notice describing the rights and responsibilities of the employee pursuant to the provisions of this section. The certification and notice shall contain the information and shall be in the form set forth below:

Public Officers Law § 73 | *Effective July 3, 2022*

## CERTIFICATION AND NOTICE

TO:      Employee's Name: _____

              State agency: _____

              Date of Termination: _____

I, (name and title) of (state agency), hereby certify that your termination from State service is because of economy, consolidation or abolition of functions, curtailment of activities or other reduction in the State work force. Therefore, you are covered by the provisions of paragraph (b) of subdivision eight of section seventy-three of the Public Officers Law.

**You were designated as a policy maker:** YES _____ NO _____

_____

**(TITLE)**

**TO THE EMPLOYEE:**

This certification affects your right to engage in certain activities after you leave state service.

Ordinarily, employees who leave State service may not, for two years, appear or practice before their former agency or receive compensation for rendering services on a matter before their former agency. However, because of this certification, you may be exempt from this restriction.

If you were not designated as a Policymaker by your agency, you are automatically exempt. You may, upon leaving State service, immediately appear, practice or receive compensation for services rendered before your former agency.

**Public Officers Law § 73** | *Effective July 8, 2022*

If you were designated as a Policymaker by your agency, you are eligible to apply for an exemption to the Commission on Public Integrity at 540 Broadway, Albany, New York 12207.

Even if you are or become exempt from the two year bar, the lifetime bar of the revolving door statute will continue to apply to you. You may not appear, practice, communicate or otherwise render services before any State agency in relation to any case, proceeding, application or transaction with respect to which you were directly concerned and in which you personally participated during your State service, or which was under your active consideration.

If you have any questions about the application of the post-employment restrictions to your circumstances, you may contact the Commission on Public Integrity at (518) 408-3976 or 1-800-87ETHIC (1-800-873-8442).

(ii)  The provisions of subparagraph (i) of this paragraph shall not apply to any such officer or employee who at the time of or prior to such termination had served in a policymaking position as determined by the appointing authority, which determination had been filed with the state ethics commission or the commission on public integrity, provided that such officer or employee may so appear or practice or receive such compensation with the prior approval of the state ethics commission or the commission on public integrity. In determining whether to grant such approval the state ethics commission or the commission on public integrity shall consider:

A.  whether the employee's prior job duties involved substantial decision-making authority over policies, rule or contracts;

B.  the nature of the duties to be performed by the employee for the prospective employer;

C.  whether the prospective employment is likely to involve substantial contact with the employee's former agency and the extent to which any such contact is likely to

> involve matters where the agency has the discretion to make decisions based on the work product of the employee;
>
> D.  whether the prospective employment may be beneficial to the state or the public; and
>
> E.  the extent of economic hardship to the employee if the application is denied.

(c)  The provisions of paragraph (b) of this subdivision shall not apply to employees whose employment has been discontinued as a result of retirement or to employees who, prior to termination, have declined to exercise a right to another position with a state agency unless such position would require the employee to travel more than thirty-five miles in each direction to the new position or accept a reduction in base salary of more than ten per centum.

(d)  Nothing contained in this subdivision shall prohibit any state agency from adopting rules concerning practice before it by former officers or employees more restrictive than the requirements of this subdivision.

(e)  This subdivision shall not apply to any appearance, practice, communication or rendition of services before any state agency, or either house of the legislature, or to the receipt of compensation for any such services, rendered by a former state officer or employee or former member of the legislature or legislative employee, which is made while carrying out official duties as an elected official or employee of a federal, state or local government or one of its agencies.

(f)  Nothing in this subdivision shall be deemed to prevent a former state officer or employee who was employed on a temporary basis to perform routine clerical services, mail services, data entry services or other similar ministerial tasks, from subsequently being employed by a person, firm, corporation or association under contract to a state agency to perform such routine clerical services, mail services, data entry services or other similar ministerial tasks; provided however, this paragraph shall in no event apply to any such state officer or employee who was required to file an annual statement of financial disclosure pursuant to section seventy-three-a of this article.

(g) Notwithstanding the provisions of subparagraphs (i) and (ii) of paragraph (a) of this subdivision, a former state officer or employee may contract individually, or as a member or employee of a firm, corporation or association, to render services to any state agency when the agency head certifies in writing to the state ethics commission that the services of such former officer or employee are required in connection with the agency's efforts to address the state's year 2000 compliance problem.

(h) Notwithstandiug the provisions of subparagraphs (i) and (ii) of paragraph (a) of this subdivision, a former state officer or employee may contract individually, or as a member or employee of a firm, corporation or association, to render services to any state agency when the agency head certifies in writing to the commission on ethics and lobbyiug in government that the services of such former officer or employee are required in connection with the agency's response to a disaster emergency declared by the governor pursuant to section twenty-eight of the executive law.

(i) The provisions of subparagraphs (i) and (ii) of paragraph (a) of this subdivision shall not apply to any person as a result of his or her temporary employment by the New York state department of agriculture and markets in the civil service title of veteriuarian one or animal health inspector one and their service, in that capacity, as a member of the New York state emergency veterinary corps.

8-a. The provisions of subparagraphs (i) and (ii) of paragraph (a) of subdivision eight of this section shall not apply to any such former state officer or employee engaged in any of the specific permitted activities defined in this subdivision that are related to any civil action or proceeding in any state or federal court, provided that the attorney general has certified in writing to the commission on ethics and lobbying in governmeut, with a copy to such former state officer or employee, that the services are rendered on behalf of the state, a state agency, state officer or employee, or other person or entity represented by the attorney general, and that such former state officer or employee has expertise, knowledge or experience which is unique or outstanding in a field or iu a particular matter or which would otherwise be generally unavailable at a comparable cost to the state, a state agency, state officer or employee, or other person or entity represented by the attorney

se

general in such civil action or proceeding. In those instances where a state agency is not represented by the attorney general in a civil action or proceeding in state or federal court, a former state officer or employee may engage in permitted activities provided that the general counsel of the state agency, after consultation with the commission on ethics and lobbying in government, provides to the commission on ethics and lobbying in government a written certification which meets the requirements of this subdivision. For purposes of this subdivision the term "permitted activities" shall mean generally any activity performed at the request of the attorney general or the attorney general's designee, or in cases where the state agency is not represented by the attorney general, the general counsel of such state agency, including without limitation:

    (a)  preparing or giving testimony or executing one or more affidavits;

    (b)  gathering, reviewing or analyzing information, including documentary or oral information concerning facts or opinions, attending depositions or participating in document review or discovery;

    (c)  performing investigations, examinations, inspections or tests of persons, documents or things;

    (d)  performing audits, appraisals, compilations or computations, or reporting about them;

    (e)  identifying information to be sought concerning facts or opinions; or

    (f)  otherwise assisting in the preparation for, or conduct of, such litigation.

Nothing in this subdivision shall apply to the provision of legal representation by any former state officer or employee.

8-b. Notwithstanding the provisions of subparagraphs (i) and (ii) of paragraph (a) of subdivision eight of this section, a former state officer or employee may contract individually, or as a member or employee of a firm, corporation or association, to render services to any state agency if, prior to engaging in such service, the agency head certifies in writing to the commission on ethics and lobbying in government that such former officer or employee has expertise, knowledge or experience with respect to a particular matter which meets the needs of the agency and is otherwise unavailable at a comparable cost. Where approval of the contract is required under section one hundred twelve of the state finance law, the

comptroller shall review and consider the reasons for such certification. The commission on ethics and lobbying in government must review and approve all certifications made pursuant to this subdivision.

8-c. Notwithstanding the provisions of subparagraphs (i) and (ii) of paragraph (a) of subdivision eight of this section, a former state officer or employee who, prior to his or her separation from state service, was employed as a health care professional and, in conjunction with his or her state duties, provided treatment and/or medical services to individuals residing in or served by a state-operated facility is not barred from rendering services to such individuals in their care prior to leaving state service, at the state-operated facility which employed the former state officer or employee.

   * NB There are 2 sub 8-c's

*8-c. Notwithstanding the provisions of subparagraphs (i) and (ii) of paragraph (a) of subdivision eight of this section, a former state officer or employee who, prior to his or her separation from state service, was employed performing direct care, clinical care, case management, service coordination or other related support duties with the state of New York is not barred from rendering such services in the future to individuals who were receiving such services from that individual prior to leaving the state service.

   * NB There are 2 sub 8-c's

9. No party officer while serving as such shall be eligible to serve as a judge of any court of record, attorney-general or deputy or assistant attorney-general or solicitor general, district attorney or assistant district attorney. As used in this subdivision, the term "party officer" shall mean a member of a national committee, an officer or member of a state committee or a county chairman of any political party.

10. Nothing contained in this section, the judiciary law, the education law or any other law or disciplinary rule shall be construed or applied to prohibit any firm, association or corporation, in which any present or former statewide elected official, state officer or employee, or political party chair, member of the legislature or legislative employee is a member, associate, retired member, of counsel or shareholder, from appearing, practicing, communicating or otherwise rendering services in relation to any matter before, or transacting business with a state agency, or a city agency with respect to a political party chair

in a county wholly included in a city with a population of more than one million, otherwise proscribed by this section, the judiciary law, the education law or any other law or disciplinary rule with respect to such official, member of the legislature or officer or employee, or political party chair, where such statewide elected official, state officer or employee, member of the legislature or legislative employee, or political party chair does not share in the net revenues, as defined in accordance with generally accepted accounting principles by the commission on ethics and lobbying in government or by the legislative ethics commission in relation to persons subject to their respective jurisdictions, resulting therefrom, or, acting in good faith, reasonably believed that he or she would not share in the net revenues as so defined; nor shall anything contained in this section, the judiciary law, the education law or any other law or disciplinary rule be construed to prohibit any firm, association or corporation in which any present or former statewide elected official, member of the legislature, legislative employee, full-time salaried state officer or employee or state officer or employee who is subject to the provisions of section seventy-three-a of this article is a member, associate, retired member, of counsel or shareholder, from appearing, practicing, communicating or otherwise rendering services in relation to any matter before, or transacting business with, the court of claims, where such statewide elected official, member of the legislature, legislative employee, full-time salaried state officer or employee or state officer or employee who is subject to the provisions of section seventy-three-a of this article does not share in the net revenues, as defined in accordance with generally accepted accounting principles by the commission on ethics and lobbying in government or by the legislative ethics commission in relation to persons subject to their respective jurisdictions, resulting therefrom, or, acting in good faith, reasonably believed that he or she would not share in the net revenues as so defined.

11. Notwithstanding any provision of the judiciary law, the education law or any other law or disciplinary rule to the contrary:

    (a) Conduct authorized pursuant to subdivision eight of this section by a person who has served as a member of the legislature or as a legislative employee shall not constitute professional misconduct or grounds for disciplinary action of any kind;

    (b) No member of the legislature or former member of the legislature shall be prohibited from appearing, practicing, communicating or otherwise rendering services in relation to any matter before, or transacting business with, any state agency solely by reason of any vote or other action by such member or former member in respect to the confirmation or election of any member, commissioner, director or other person affiliated with such state agency, but nothing in this paragraph shall limit the prohibition contained in subdivision eight of this section;

    (c) The appearance, practice, communication or rendition of services in relation to any matter before, or transaction of business with a state agency, or with the court of claims, or the promotion or opposition to the passage of bills or resolutions by either house of the legislature, by a member, associate, retired member, of counsel or shareholder of a firm, association or corporation, in accordance with subdivision ten of this section, is hereby authorized and shall not constitute professional misconduct or grounds for disciplinary action of any kind solely by reason of the professional relationship between the statewide elected official, state officer or employee, political party chairman, member of the legislature, or legislative employee and any firm, association, corporation or any member, associate, retired member, of counsel, or shareholder thereof, or by reason of the appearance created by any such professional relationship.

12. A statewide elected official, state officer or employee, or a member of the legislature or legislative employee, or political party chairman, who is a member, associate, retired member, of counsel to, or shareholder of any firm, association or corporation which is appearing or rendering services in connection with any case, proceeding, application or other matter listed in paragraph (a) or (b) of subdivision seven of this section shall not orally communicate, with or without compensation, as to the merits of such cause with an officer or an employee of the agency concerned with the matter.

13. For the purposes of this section, a statewide elected official or state officer or employee or member of the legislature or legislative employee or political party chairman who is a member, associate, retired member, of counsel to, or shareholder of any firm, association or corporation shall not be deemed to have made an appearance under the provisions of this section solely by the submission to a state agency

or city agency of any printed material or document bearing his or her name, but unsigned by him or her, such as by limited illustrations the name of the firm, association or corporation or the letterhead of any stationery, which pro forma serves only as an indication that he or she is such a member, associate, retired member, of counsel to, or shareholder.

14. (a) No statewide elected official, state officer or employee, member of the legislature or legislative employee may participate in any decision to hire, promote, discipline or discharge a relative for any compensated position at, for or within any state agency, public authority or the legislature.

    (b) This paragraph shall not apply to (i) the hiring of a relative by a legislator with a physical impairment, for the sole purpose of assisting with that impairment, as necessary and otherwise permitted by law; (ii) the temporary hiring of legislative pages, interns and messengers; or (iii) responding to inquiries with respect to prospective hires related to an individual covered by this paragraph.

15. No statewide elected official, state officer or employee, member of the legislature or legislative employee shall:

    (a) participate in any state contracting decision involving the payment of more than one thousand dollars to that individual, any relative of that individual, or any entity in which that individual or any relative has a financial interest; or

    (b) participate in any decision to invest public funds in any security of any entity in which that individual or any relative of that individual has a financial interest, is an underwriter, or receives any brokerage, origination or servicing fees.

16. (a) No statewide elected official, state officer or employee involved in the awarding of state grants or contracts may ask a current or prospective grantee or contractor, or any officer, director or employee thereof, to disclose: (i) the party affiliation of such grantee or contractor, or any officer, director or employee thereof; (ii) whether such grantee or contractor, or any officer, director or employee thereof, has made campaign contributions to any party, elected official, or candidate for elective office; or (iii) whether such grantee or contractor, or any officer, director or employee thereof, cast a vote for or against any elected official, candidate or political party.

(b) No statewide elected official or state officer or employee may award or decline to award any state grant or contract, or recommend, promise or threaten to do so, in whole or in part, because of a current or prospective grantee's or contractor's refusal to answer any inquiry prohibited by paragraph (a) of this subdivision, or giving or withholding or neglecting to make any contribution of money or service or any other valuable thing for any political purpose.

17. (a) No statewide elected official, or state officer or employee may during the consideration of an employment decision ask any applicant for public employment to disclose:

    (i)    the political party affiliation of the applicant;

    (ii)   whether the applicant has made campaign contributions to any party, elected official, or candidate for elective office; or

    (iii)  whether the applicant cast a vote for or against any elected official, candidate or political party. The provisions of this paragraph shall not apply where (1) such inquiry is necessary for the proper application of any state law or regulation; or (2) such inquiry is consistent with publicly disclosed policies or practices of any state agency or public authority, whose purpose is to ensure the representation of more than one political party on any multi-member body.

(b) No statewide elected official or state officer or employee may decline to hire or promote, discharge, discipline, or in any manner change the official rank or compensation of any state official or employee, or applicant for employment, or promise or threaten to do so, based upon a refusal to answer any inquiry prohibited by paragraph (a) of this subdivision, or for giving or withholding or neglecting to make any contribution of money or service or any other valuable thing for any political purpose.

(c) No state officer or employee shall, directly or indirectly, use his or her official authority to compel or induce any other state officer or employee to make or promise to make any political contribution, whether by gift of money, service or other thing of value.

18. In addition to any penalty contained in any other provision of law, any person who knowingly and intentionally violates the provisions of subdivisions two through five, seven, seven-a, eight, twelve or fourteen through seventeen of this section shall be subject to a civil penalty in an amount not to exceed forty thousand dollars and the value of any gift, compensation or benefit received in connection with such violation. Assessment of a civil penalty hereunder shall be made by the state oversight body with jurisdiction over such person. A state oversight body acting pursuant to its jurisdiction, may, in lieu of a civil penalty, with respect to a violation of subdivisions two through five, seven or eight of this section, refer a violation of any such subdivision to the appropriate prosecutor and upon such conviction such violation shall be punishable as a class A misdemeanor.

# § 73-a. Financial disclosure.

1.  As used in this section:

    (a)  The term "statewide elected official" shall mean the governor, lieutenant governor, comptroller, or attorney general.

    (b)  The term "state agency" shall mean any state department, or division, board, commission, or bureau of any state department, any public benefit corporation, public authority or commission at least one of whose members is appointed by the governor, or the state university of New York or the city university of New York, including all their constituent units except community colleges of the state university of New York and the independent institutions operating statutory or contract colleges on behalf of the state.

    (c)  The term "state officer or employee" shall mean:

        (i)    heads of state departments and their deputies and assistants;

        (ii)   officers and employees of statewide elected officials, officers and employees of state departments, boards, bureaus, divisions, commissions, councils or other state agencies, who receive annual compensation in excess of the filing rate established by paragraph (l) of this subdivision or who hold policy-making positions, as annually determined by the appointing authority and set forth in a written instrument which shall be filed with the commission on ethics and lobbying in government established by section ninety-four of the executive law during the month of February, provided, however, that the appointing authority shall amend such written instrument after such date within thirty days after the undertaking of policy-making responsibilities by a new employee or any other employee whose name did not appear on the most recent written instrument; and

        (iii)  members or directors of public authorities, other than multi-state authorities, public benefit corporations and commissions at least one of whose members is appointed by

the governor, and employees of such authorities, corporations and commissions who receive annual compensation in excess of the filing rate established by paragraph (l) of this subdivision or who hold policy-making positions, as determined annually by the appointing authority and set forth in a written instrument which shall be filed with the commission on ethics and lobbying in government established by section ninety-four of the executive law during the month of February, provided, however, that the appointing authority shall amend such written instrument after such date within thirty days after the undertaking of policy-making responsibilities by a new employee or any other employee whose name did not appear on the most recent written instrument.

(d) The term "legislative employee" shall mean any officer or employee of the legislature who receives annual compensation in excess of the filing rate established by paragraph (l) below or who is determined to hold a policy-making position by the appointing authority as set forth in a written instrument which shall be filed with the legislative ethics commission and the commission on ethics and lobbying in government.

(d-1) A financial disclosure statement required pursuant to section seventy-three of this article and this section shall be deemed "filed" with the commission on ethics and lobbying in government upon its filing, in accordance with this section, with the legislative ethics commission for all purposes including, but not limited to, section ninety-four of the executive law, subdivision nine of section eighty of the legislative law and subdivision four of this section.

(e) The term "spouse" shall mean the husband or wife of the reporting individual unless living separate and apart from the reporting individual with the intention of terminating the marriage or providing for permanent separation or unless separated pursuant to: (i) a judicial order, decree or judgment, or (ii) a legally binding separation agreement.

(e-1) The term "domestic partner" shall mean a person who, with respect to another person, is formally a party in a domestic partnership or similar relationship with the other person, entered into pursuant to the laws of the United States or any state, local or foreign jurisdiction, or

registered as the domestic partner of the other person with any registry maintained by the employer of either party or any state, municipality, or foreign jurisdiction.

(f) The term "relative" shall mean such individual's spouse, child, stepchild, stepparent, or any person who is a direct descendant of the grandparents of the reporting individual or of the reporting individual's spouse.

(g) The term "unemancipated child" shall mean any son, daughter, stepson or stepdaughter who is under age eighteen, unmarried and living in the household of the reporting individual.

(h) The term "political party chairman" shall have the same meaning as ascribed to such term by subdivision one of section seventy-three of this article.

(i) The term "local agency" shall mean:

    (i)    any county, city, town, village, school district or district corporation, or any agency, department, division, board, commission or bureau thereof; and

    (ii)   any public benefit corporation or public authority not included in the definition of a state agency.

(j) The term "regulatory agency" shall have the same meaning as ascribed to such term by subdivision one of section seventy-three of this article.

(k) The term "ministerial matter" shall have the same meaning as ascribed to such term by subdivision one of section seventy-three of this article.

(l) The term "filing rate" shall mean the job rate of SG-24 as set forth in paragraph a of subdivision one of section one hundred thirty of the civil service law as of April first of the year in which an annual financial disclosure statement shall be filed.

(m) The term "lobbyist" shall have the same meaning as ascribed to such term in subdivision (a) of section one-c of the legislative law.

2.  (a) Every statewide elected official, state officer or employee, member of the legislature, legislative employee and political party chair and every candidate for statewide elected office or for member of the legislature shall file an annual statement of financial disclosure containing the information and in the form set forth in subdivision three of this section. On or before the fifteenth day of May with respect to the preceding calendar year:

    (1)  every member of the legislature, every candidate for member of the legislature and legislative employee shall file such statement with the legislative ethics commission which shall provide such statement along with any requests for exemptions or deletions to the commission on ethics and lobbying in government for filing and rulings with respect to such requests for exemptions or deletions, on or before the thirtieth day of June; and

    (2)  all other individuals required to file such statement shall file it with the commission on ethics and lobbying in government, except that:

        (i)  a person who is subject to the reporting requirements of this subdivision and who timely filed with the internal revenue service an application for automatic extension of time in which to file his or her individual income tax return for the immediately preceding calendar or fiscal year shall be required to file such financial disclosure statement on or before May fifteenth but may, without being subjected to any civil penalty on account of a deficient statement, indicate with respect to any item of the disclosure statement that information with respect thereto is lacking but will be supplied in a supplementary statement of financial disclosure, which shall be filed on or before the seventh day after the expiration of the period of such automatic extension of time within which to file such individual income tax return, provided that failure to file or to timely file such supplementary statement of financial disclosure or the filing of an incomplete or deficient supplementary statement of financial disclosure shall be subject to the notice and penalty provisions of this section respecting annual statements of financial disclosure as if such supplementary statement were an annual statement;

(ii)    a person who is required to file an annual financial disclosure statement with the commission on ethics and lobbying in government, and who is granted an additional period of time within which to file such statement due to justifiable cause or undue hardship, in accordance with required rules and regulations adopted pursuant to section ninety-four of the executive law shall file such statement within the additional period of time granted; and the legislative ethics commission shall notify the commission on ethics and lobbying in government of any extension granted pursuant to this paragraph;

(iii)    candidates for statewide office who receive a party designation for nomination by a state committee pursuant to section 6-104 of the election law shall file such statement within ten days after the date of the meeting at which they are so designated;

(iv)    candidates for statewide office who receive twenty-five percent or more of the vote cast at the meeting of the state committee held pursuant to section 6-104 of the election law and who demand to have their names placed on the primary ballot and who do not withdraw within fourteen days after such meeting shall file such statement within ten days after the last day to withdraw their names in accordance with the provisions of such section of the election law;

(v)    candidates for statewide office and candidates for member of the legislature who file party designating petitions for nomination at a primary election shall file such statement within ten days after the last day allowed by law for the filing of party designating petitions naming them as candidates for the next succeeding primary election;

(vi)    candidates for independent nomination who have not been designated by a party to receive a nomination shall file such statement within ten days after the last day allowed by law for the filing of independent nominating petitions naming them as candidates in the next succeeding general or special election;

    (vii)    candidates who receive the nomination of a party for a special election shall file such statement within ten days after the date of the meeting of the party committee at which they are nominated;

    (viii)    a candidate substituted for another candidate, who fills a vacancy in a party designation or in an independent nomination, caused by declination, shall file such statement within ten days after the last day allowed by law to file a certificate to fill a vacancy in such party designation or independent nomination;

    (ix)    with respect to all candidates for member of the legislature, the legislative ethics commission shall within five days of receipt provide the commission on ethics and lobbying in government the statement filed pursuant to subparagraphs (v), (vi), (vii) and (viii) of this paragraph.

(b) As used in this subdivision, the terms "**party**", "**committee**" (when used in conjunction with the term "party"), "designation", "primary", "primary election", "nomination", "independent nomination" and "ballot" shall have the same meanings as those contained in section 1-104 of the election law.

(c) If the reporting individual is a senator or member of assembly, candidate for the senate or member of assembly or a legislative employee, such statement shall be filed with both the legislative ethics commission established by section eighty of the legislative law and the commission on ethics and lobbying in government in accordance with paragraph (d-1) of subdivision one of this section. If the reporting individual is a statewide elected official, candidate for statewide elected office, a state officer or employee or a political party chair, such statement shall be filed with the commission on ethics and lobbying in government established by section ninety-four of the executive law.

(d) The commission on ethics and lobbying in government shall obtain from the state board of elections a list of all candidates for statewide office and for member of the legislature, and from

such list, shall determine and publish a list of those candidates who have not, within ten days after the required date for filing such statement, filed the statement required by this subdivision.

(e) Any person required to file such statement who commences employment after May fifteenth of any year and political party chair shall file such statement within thirty days after commencing employment or of taking the position of political party chair, as the case may be. In the case of members of the legislature and legislative employees, such statements shall be filed with the legislative ethics commission within thirty days after commencing employment, and the legislative ethics commission shall provide such statements to the commission on ethics and lobbying in government within forty-five days of receipt.

(f) A person who may otherwise be required to file more than one annual financial disclosure statement with both the commission on ethics and lobbying in government and the legislative ethics commission in any one calendar year may satisfy such requirement by filing one such statement with either body and by notifying the other body of such compliance.

(g) A person who is employed in more than one employment capacity for one or more employers certain of whose officers and employees are subject to filing a financial disclosure statement with the same ethics commission, as the case may be, and who receives distinctly separate payments of compensation for such employment shall be subject to the filing requirements of this section if the aggregate annual compensation for all such employment capacities is in excess of the filing rate notwithstanding that such person would not otherwise be required to file with respect to any one particular employment capacity. A person not otherwise required to file a financial disclosure statement hereunder who is employed by an employer certain of whose officers or employees are subject to filing a financial disclosure statement with the commission on ethics and lobbying in government and who is also employed by an employer certain of whose officers or employees are subject to filing a financial disclosure statement with the legislative ethics commission shall not be subject to filing such statement with either such commission on the basis that his aggregate annual compensation from all such employers is in excess of the filing rate.

(h) A statewide elected official or member of the legislature, who is simultaneously a candidate for statewide elected office or member of the legislature, shall satisfy the filing deadline requirements of this subdivision by complying only with the deadline applicable to one who holds a statewide elected office or who holds the office of member of the legislature.

(i) A candidate whose name will appear on both a party designating petition and on an independent nominating petition for the same office or who will be listed on the election ballot for the same office more than once shall satisfy the filing deadline requirements of this subdivision by complying with the earliest applicable deadline only.

(j) A member of the legislature who is elected to such office at a special election prior to May fifteenth in any year shall satisfy the filing requirements of this subdivision in such year by complying with the earliest applicable deadline only.

(k) The commission on ethics and lobbying in government shall post for at least five years beginning for filings made on January first, two thousand thirteen the annual statement of financial disclosure and any amendments filed by each person subject to the reporting requirements of this subdivision who is an elected official on its website for public review within thirty days of its receipt of such statement or within ten days of its receipt of such amendment that reflects any corrections of deficiencies identified by the commission or by the reporting individual after the reporting individual's initial filing. Except upon an individual determination by the commission that certain information may be deleted from a reporting individual's annual statement of financial disclosure, none of the information in the statement posted on the commission's website shall be otherwise deleted.

3.  The annual statement of financial disclosure shall contain the information and shall be in the form set forth hereinbelow:

**Public Officers Law § 73-a** | *Effective July 8, 2022*

ANNUAL STATEMENT OF FINANCIAL DISCLOSURE - (For calendar year _____)

1.   Name _____

2.   (a)   Title of Position _____

    (b)   Department, Agency or other Governmental Entity _____

    (c)   Address of Present Office _____

    (d)   Office Telephone Number _____

3.   (a) Marital Status _____. If married, please give spouse's full name.

_____.

    (b)   Full name of domestic partner (if applicable).

_____.

    (c)   List the names of all unemancipated children.

_____

_____

_____

_____

_____

Answer each of the following questions completely, with respect to calendar year _____, unless another period or date is otherwise specified. If additional space is needed, attach additional pages.

Whenever a "**value**" or "**amount**" is required to be reported herein, such value or amount shall be reported as being within one of the following Categories in Table I or Table II of this subdivision as called for in the question: A reporting individual shall indicate the Category by letter only.

Whenever "**income**" is required to be reported herein, the term "income" shall mean the aggregate net income before taxes from the source identified.

The term "**calendar year**" shall mean the year ending the December 31st preceding the date of filing of the annual statement.

4.  (a) List any office, trusteeship, directorship, partnership, or position of any nature, whether compensated or not, held by the reporting individual with any firm, corporation, association, partnership, or other organization other than the State of New York.  Include compensated honorary positions; do NOT list membership or uncompensated honorary positions.  If the listed entity was licensed by any state or local agency, was regulated by any state regulatory agency or local agency, or, as a regular and significant part of the business or activity of said entity, did business with, or had matters other than ministerial matters before, any state or local agency, list the name of any such agency.

| Position | Organization | State or Local Agency |
|---|---|---|
|  |  |  |
|  |  |  |

(b) List any office, trusteeship, directorship, partnership, or position of any nature, whether compensated or not, held by the spouse, domestic partner or unemancipated child of the reporting individual, with any firm, corporation, association, partnership, or other organization other than the State of New York.  Include compensated honorary positions; do NOT list membership or uncompensated honorary positions.  If the listed entity was licensed by any state or local agency, was regulated by any state regulatory agency or local agency, or, as a regular and significant part of the business or activity of said entity, did business with, or had matters other than ministerial matters before, any state or local agency, list the name of any such agency.

| Position | Organization | State or Local Agency |
|---|---|---|
|  |  |  |
|  |  |  |

Public Officers Law § 73-a | *Effective July 8, 2022*

5.  (a) List the name, address and description of any occupation, employment (other than the employment listed under Item 2 above), trade, business or profession engaged in by the reporting individual. If such activity was licensed by any state or local agency, was regulated by any state regulatory agency or local agency, or, as a regular and significant part of the business or activity of said entity, did business with, or had matters other than ministerial matters before, any state or local agency, list the name of any such agency.

| Position | Name & Address of Organization | Description | State or Local Agency |
|---|---|---|---|
| | | | |
| | | | |

(b) If the spouse, domestic partner or unemancipated child of the reporting individual was engaged in any occupation, employment, trade, business or profession which activity was licensed by any state or local agency, was regulated by any state regulatory agency or local agency, or, as a regular and significant part of the business or activity of said entity, did business with, or had matters other than ministerial matters before, any state or local agency, list the name, address and description of such occupation, employment, trade, business or profession and the name of any such agency.

| Position | Name & Address of Organization | Description | State or Local Agency |
|---|---|---|---|
| | | | |
| | | | |

6.  List any interest, in EXCESS of $1,000, held by the reporting   individual, such individual's spouse, domestic partner or unemancipated child, or partnership of which any such person is a

member, or corporation, 10% or more of the stock of which is owned or controlled by any such person, whether vested or contingent, in any contract made or executed by a state or local agency and include the name of the entity which holds such interest and the relationship of the reporting individual or such individual's spouse, domestic partner or such child to such entity and the interest in such contract. Do NOT include bonds and notes. Do NOT list any interest in any such contract on which final payment has been made and all obligations under the contract except for guarantees and warranties have been performed, provided, however, that such an interest must be listed if there has been an ongoing dispute during the calendar year for which this statement is filed with respect to any such guarantees or warranties. Do NOT list any interest in a contract made or executed by a local agency after public notice and pursuant to a process for competitive bidding or a process for competitive requests for proposals.

| Self, Spouse, Domestic Partner or Child | Entity Which Held Interest in Contract | Relationship to Entity and Interest in Contract | Contracting State or Local Agency | Category of Value of Contract (In Table II) |
|---|---|---|---|---|
|  |  |  |  |  |

7. List any position the reporting individual held as an officer of any political party or political organization, as a member of any political party committee, or as a political party district leader. The term "party" shall have the same meaning as "party" in the election law. The term "political organization" means any party or independent body as defined in the election law or any organization that is affiliated with or a subsidiary of a party or independent body.

8.  (a) If the reporting individual practices law, is licensed by the department of state as a real estate broker or agent or practices a profession licensed by the department of education, or works as a member or employee of a firm required to register pursuant to section one-e of the legislative law as a lobbyist, describe the services rendered for which compensation was paid including a general description of the principal subject areas of matters undertaken by such individual and principal duties performed. Specifically state whether the reporting individual provides services directly to clients.  Additionally, if such an individual practices with a firm or corporation and is a partner or shareholder of the firm or corporation, give a general description of principal subject areas of matters undertaken by such firm or corporation.

(b) APPLICABLE ONLY TO NEW CLIENTS OR CUSTOMERS FOR WHOM SERVICES ARE PROVIDED ON OR AFTER JULY FIRST, TWO THOUSAND TWELVE AND BEFORE DECEMBER THIRTY-FIRST, TWO THOUSAND FIFTEEN, OR FOR NEW MATTERS FOR EXISTING CLIENTS OR CUSTOMERS WITH RESPECT TO THOSE SERVICES THAT ARE PROVIDED ON OR AFTER JULY FIRST, TWO THOUSAND TWELVE AND BEFORE DECEMBER THIRTY-FIRST, TWO THOUSAND FIFTEEN:

If the reporting individual personally provides services to any person or entity, or works as a member or employee of a partnership or corporation that provides such services (referred to hereinafter as a "firm"), then identify each client or customer to whom the reporting individual

personally provided services, or who was referred to the firm by the reporting individual, and from whom the reporting individual or his or her firm earned fees in excess of $10,000 during the reporting period for such services rendered in direct connection with:

    (i)    A contract in an amount totaling $50,000 or more from the state or any state agency for services, materials, or property;

    (ii)    A grant of $25,000 or more from the state or any state agency during the reporting period;

    (iii)    A grant obtained through a legislative initiative during the reporting period; or

    (iv)    A case, proceeding, application or other matter that is not a ministerial matter before a state agency during the reporting period.

For purposes of this question, "referred to the firm" shall mean: having intentionally and knowingly taken a specific act or series of acts to intentionally procure for the reporting individual's firm or knowingly solicit or direct to the reporting individual's firm in whole or substantial part, a person or entity that becomes a client of that firm for the purposes of representation for a matter as defined in subparagraphs (i) through (iv) of this paragraph, as the result of such procurement, solicitation or direction of the reporting individual. A reporting individual need not disclose activities performed while lawfully acting pursuant to paragraphs (c), (d), (e) and (f) of subdivision seven of section seventy-three of this article.

The disclosure requirement in this question shall not require disclosure of clients or customers receiving medical or dental services, mental health services, residential real estate brokering services, or insurance brokering services from the reporting individual or his or her firm. The reporting individual need not identify any client to whom he or she or his or her firm provided legal representation with respect to investigation or prosecution by law enforcement authorities, bankruptcy, or domestic relations matters. With respect to clients represented in other matters, where disclosure of a client's identity is likely to cause harm, the reporting individual shall request an exemption from the commission on ethics and lobbying in government pursuant to

section ninety-four of the executive law, provided, however, that a reporting individual who first enters public office after July first, two thousand twelve, need not report clients or customers with respect to matters for which the reporting individual or his or her firm was retained prior to entering public office.

| Client | Nature of Services Provided |
|---|---|
|  |  |
|  |  |
|  |  |

(b-1) APPLICABLE ONLY TO NEW CLIENTS OR CUSTOMERS FOR WHOM SERVICES ARE PROVIDED ON OR AFTER DECEMBER THIRTY-FIRST, TWO THOUSAND FIFTEEN, OR FOR NEW MATTERS FOR EXISTING CLIENTS OR CUSTOMERS WITH RESPECT TO THOSE SERVICES THAT ARE PROVIDED ON OR AFTER DECEMBER THIRTY-FIRST, TWO THOUSAND FIFTEEN (FOR PURPOSES OF THIS QUESTION, "SERVICES" SHALL MEAN CONSULTATION, REPRESENTATION, ADVICE OR OTHER SERVICES):

If the reporting individual receives income from employment reportable in question 8(a) and personally provides services to any person or entity, or works as a member or employee of a partnership or corporation that provides such services (referred to hereinafter as a "firm"), the reporting individual shall identify each client or customer to whom the reporting individual personally provided services, or who was referred to the firm by the reporting individual, and from whom the reporting individual or his or her firm earned fees in excess of $10,000 during the reporting period in direct connection with:

(i)   A contract in an amount totaling $10,000 or more from the state or any state agency for services, materials, or property;

(ii)   A grant of $10,000 or more from the state or any state agency during the reporting period;

(iii)  A grant obtained through a legislative initiative during the reporting period; or

(iv)   A case, proceeding, application or other matter that is not a ministerial matter before a state agency during the reporting period.

For such services rendered by the reporting individual directly to each such client, describe each matter that was the subject of such representation, the services actually provided and the payment received. For payments received from clients referred to the firm by the reporting individual, if the reporting individual directly received a referral fee or fees for such referral, identify the client and the payment so received.

For purposes of this question, "referred to the firm" shall mean: having intentionally and knowingly taken a specific act or series of acts to intentionally procure for the reporting individual's firm or having knowingly solicited or directed to the reporting individual's firm in whole or substantial part, a person or entity that becomes a client of that firm for the purposes of representation for a matter as defined in clauses (i) through (iv) of this subparagraph, as the result of such procurement, solicitation or direction of the reporting individual. A reporting individual need not disclose activities performed while lawfully acting in his or her capacity as provided in paragraphs (c), (d), (e) and (f) of subdivision seven of section seventy-three of this article.

| Client | Matter | Nature of Services Provided | Category of Amount (in Table I) |
|--------|--------|------------------------------|----------------------------------|
|        |        |                              |                                  |
|        |        |                              |                                  |
|        |        |                              |                                  |

(b-2) APPLICABLE ONLY TO NEW CLIENTS OR CUSTOMERS FOR WHOM SERVICES ARE PROVIDED ON OR AFTER DECEMBER THIRTY-FIRST, TWO THOUSAND FIFTEEN, OR FOR NEW MATTERS FOR EXISTING CLIENTS OR CUSTOMERS WITH RESPECT TO THOSE SERVICES THAT ARE PROVIDED ON OR AFTER DECEMBER THIRTY-FIRST, TWO THOUSAND FIFTEEN (FOR PURPOSES OF THIS QUESTION, "SERVICES" SHALL MEAN CONSULTATION, REPRESENTATION, ADVICE OR OTHER SERVICES):

(i)   With respect to reporting individuals who receive ten thousand dollars or more from employment or activity reportable under question 8(a), for each client or customer NOT otherwise disclosed or exempted in question 8 or 13, disclose the name of each client or customer known to the reporting individual to whom the reporting individual provided services: (A) who paid the reporting individual in excess of five thousand dollars for such services; or (B) who had been billed with the knowledge of the reporting individual in excess of five thousand dollars by the firm or other entity named in question 8(a) for the reporting individual's services.

| Client | Services Actually Provided | Category of Amount (in Table I) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

FOLLOWING IS AN ILLUSTRATIVE, NON-EXCLUSIVE LIST OF EXAMPLES OF DESCRIPTIONS OF "SERVICES ACTUALLY PROVIDED":

*    REVIEWED DOCUMENTS AND CORRESPONDENCE;

**Public Officers Law § 73-a** | *Effective July 8, 2022*

* REPRESENTED CLIENT (IDENTIFY CLIENT BY NAME) IN LEGAL PROCEEDING;

* PROVIDED LEGAL ADVICE ON CLIENT MATTER (IDENTIFY CLIENT BY NAME);

* CONSULTED WITH CLIENT OR CONSULTED WITH LAW PARTNERS/ASSOCIATES/MEMBERS OF FIRM ON CLIENT MATTER (IDENTIFY CLIENT BY NAME);

* PREPARED CERTIFIED FINANCIAL STATEMENT FOR CLIENT (IDENTIFY CLIENT BY NAME);

* REFERRED INDIVIDUAL OR ENTITY (IDENTIFY CLIENT BY NAME) FOR REPRESENTATION OR CONSULTATION;

* COMMERCIAL BROKERING SERVICES (IDENTIFY CUSTOMER BY NAME);

* PREPARED CERTIFIED ARCHITECTURAL OR ENGINEERING RENDERINGS FOR CLIENT (IDENTIFY CUSTOMER BY NAME);

* COURT APPOINTED GUARDIAN OR EVALUATOR (IDENTIFY COURT NOT CLIENT).

(ii) With respect to reporting individuals who disclosed in question 8(a) that the reporting individual did not provide services to a client but provided services to a firm or business, identify the category of amount received for providing such services and describe the services rendered.

| Services Actually Provided | Category of Amount (in Table I) |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

A reporting individual need not disclose activities performed while lawfully acting in his or her capacity as provided in paragraphs (c), (d), (e) and (f) of subdivision seven of section seventy-three of this article.

The disclosure requirement in questions (b-1) and (b-2) shall not require disclosing clients or customers receiving medical, pharmaceutical or dental services, mental health services, or residential real estate brokering services from the reporting individual or his or her firm or if federal law prohibits or limits disclosure. The reporting individual need not identify any client to whom he or she or his or her firm provided legal representation with respect to investigation or prosecution by law enforcement authorities, bankruptcy, family court, estate planning, or domestic relations matters, nor shall the reporting individual identify individuals represented pursuant to an insurance policy but the reporting individual shall in such circumstances only report the entity that provides compensation to the reporting individual; with respect to matters in which the client's name is required by law to be kept confidential (such as matters governed by the family court act) or in matters in which the reporting individual represents or provides services to minors, the client's name may be replaced with initials. To the extent that the reporting individual, or his or her firm, provided legal representation with respect to an initial public offering, and professional disciplinary rules, federal law or regulations restrict the disclosure of information relating to such work, the reporting individual shall (i) disclose the identity of the client and the services provided relating to the initial public offering to the office of court administration, who will maintain such information confidentially in a locked box; and (ii) include in his or her response to questions (b-1) and (b-2) that pursuant to this paragraph, a disclosure to the office of court administration has been made. Upon such time that the disclosure of information maintained in the locked box is no longer restricted by professional disciplinary rules, federal law or regulation, the reporting individual shall disclose such information in an amended disclosure statement in response to the disclosure requirements in questions (b-1) and (b-2). The office of court administration shall develop and maintain a secure portal through which information submitted to it pursuant to this paragraph can be safely and confidentially stored. With respect to clients represented in other matters not otherwise exempt, the reporting individual may request an exemption to publicly disclosing the name of that

client from the commission on ethics and lobbying in government pursuant to section ninety-four of the executive law, or from the office of court administration. In such application, the reporting individual shall state the following: "My client is not currently receiving my services or seeking my services in connection with:

    (i)    A proposed bill or resolution in the senate or assembly during the reporting period;

    (ii)    A contract in an amount totaling $10,000 or more from the state or any state agency for services, materials, or property;

    (iii)    A grant of $10,000 or more from the state or any state agency during the reporting period;

    (iv)    A grant obtained through a legislative initiative during the reporting period; or

    (v)    A case, proceeding, application or other matter that is not a ministerial matter before a state agency during the reporting period."

In reviewing the request for an exemption, the commission on ethics and lobbying in government or the office of court administration may consult with bar or other professional associations and the legislative ethics commission for individuals subject to its jurisdiction and may consider the rules of professional conduct. In making its determination, the commission on ethics and lobbying in government or the office of court administration shall conduct its own inquiry and shall consider factors including, but not limited to: (i) the nature and the size of the client; (ii) whether the client has any business before the state; and if so, how significant the business is; and whether the client has any particularized interest in pending legislation and if so how significant the interest is; (iii) whether disclosure may reveal trade secrets; (iv) whether disclosure could reasonably result in retaliation against the client; (v) whether disclosure may cause undue harm to the client; (vi) whether disclosure may result in undue harm to the attorney-client relationship; and (vii) whether disclosure may result in an unnecessary invasion of privacy to the client.

The commission on ethics and lobbying in government or, as the case may be, the office of court administration shall promptly make a final determination in response to such request, which shall include an explanation for its determination. The office of court administration shall issue its final

determination within three days of receiving the request. Notwithstanding any other provision of law or any professional disciplinary rule to the contrary, the disclosure of the identity of any client or customer in response to this question shall not constitute professional misconduct or a ground for disciplinary action of any kind, or form the basis for any civil or criminal cause of action or proceeding. A reporting individual who first enters public office after January first, two thousand sixteen, need not report clients or customers with respect to matters for which the reporting individual or his or her firm was retained prior to entering public office.

(c) APPLICABLE ONLY TO NEW CLIENTS OR CUSTOMERS FOR WHOM SERVICES ARE PROVIDED ON OR AFTER DECEMBER THIRTY-FIRST, TWO THOUSAND FIFTEEN, OR FOR NEW MATTERS FOR EXISTING CLIENTS OR CUSTOMERS WITH RESPECT TO THOSE SERVICES THAT ARE PROVIDED ON OR AFTER DECEMBER THIRTY-FIRST, TWO THOUSAND FIFTEEN:

If the reporting individual receives income of ten thousand dollars or greater from any employment or activity reportable under question 8(a), identify each registered lobbyist who has directly referred to such individual a client who was successfully referred to the reporting individual's business and from whom the reporting individual or firm received a fee for services in excess of five thousand dollars. Report only those referrals that were made to a reporting individual by direct communication from a person known to such reporting individual to be a registered lobbyist at the time the referral is made. With respect to each such referral, the reporting individual shall identify the client, the registered lobbyist who has made the referral, the category of value of the compensation received and a general description of the type of matter so referred. A reporting individual need not disclose activities performed while lawfully acting pursuant to paragraphs (c), (d), (e) and (f) of subdivision seven of section seventy-three of this article. The disclosure requirements in this question shall not require disclosing clients or customers receiving medical, pharmaceutical or dental services, mental health services, or residential real estate brokering services from the reporting individual or his or her firm or if federal law prohibits or limits disclosure. The reporting individual need not identify any client to whom he or she or his or her firm provided legal representation with respect to investigation

or prosecution by law enforcement authorities, bankruptcy, family court, estate planning, or domestic relations matters, nor shall the reporting individual identify individuals represented pursuant to an insurance policy but the reporting individual shall in such circumstances only report the entity that provides compensation to the reporting individual; with respect to matters in which the client's name is required by law to be kept confidential (such as matters governed by the family court act) or in matters in which the reporting individual represents or provides services to minors, the client's name may be replaced with initials. To the extent that the reporting individual, or his or her firm, provided legal representation with respect to an initial public offering, and federal law or regulations restricts the disclosure of information relating to such work, the reporting individual shall (i) disclose the identity of the client and the services provided relating to the initial public offering to the office of court administration, who will maintain such information confidentially in a locked box; and (ii) include in his or her response a statement that pursuant to this paragraph, a disclosure to the office of court administration has been made. Upon such time that the disclosure of information maintained in the locked box is no longer restricted by federal law or regulation, the reporting individual shall disclose such information in an amended disclosure statement in response to the disclosure requirements of this paragraph. The office of court administration shall develop and maintain a secure portal through which information submitted to it pursuant to this paragraph can be safely and confidentially stored. With respect to clients represented in other matters not otherwise exempt, the reporting individual may request an exemption to publicly disclosing the name of that client from the commission on ethics and lobbying in government pursuant to section ninety-four of the executive law, or from the office of court administration. In such application, the reporting individual shall state the following: "My client is not currently receiving my services or seeking my services in connection with:

(i)    A proposed bill or resolution in the senate or assembly during the reporting period;

(ii)   A contract in an amount totaling $10,000 or more from the state or any state agency for services, materials, or property;

(iii)  A grant of $10,000 or more from the state or any state agency during the reporting period;

    (iv)   A grant obtained through a legislative initiative during the reporting period; or

    (v)   A case, proceeding, application or other matter that is not a ministerial matter before a state agency during the reporting period."

In reviewing the request for an exemption, the commission on ethics and lobbying in government or the office of court administration may consult with bar or other professional associations and the legislative ethics commission for individuals subject to its jurisdiction and may consider the rules of professional conduct. In making its determination, the commission on ethics and lobbying in government or the office of court administration shall conduct its own inquiry and shall consider factors including, but not limited to: (i) the nature and the size of the client; (ii) whether the client has any business before the state; and if so, how significant the business is; and whether the client has any particularized interest in pending legislation and if so how significant the interest is; (iii) whether disclosure may reveal trade secrets; (iv) whether disclosure could reasonably result in retaliation against the client; (v) whether disclosure may cause undue harm to the client; (vi) whether disclosure may result in undue harm to the attorney-client relationship; and (vii) whether disclosure may result in an unnecessary invasion of privacy to the client.

The commission on ethics and lobbying in government or, as the case may be, the office of court administration shall promptly make a final determination in response to such request, which shall include an explanation for its determination. The office of court administration shall issue its final determination within three days of receiving the request. Notwithstanding any other provision of law or any professional disciplinary rule to the contrary, the disclosure of the identity of any client or customer in response to this question shall not constitute professional misconduct or a ground for disciplinary action of any kind, or form the basis for any civil or criminal cause of action or proceeding. A reporting individual who first enters public office after December thirty-first, two thousand fifteen, need not report clients or customers with respect to matters for which the reporting individual or his or her firm was retained prior to entering public office.

| Client | Name of Lobbyist | Description of Matter | Category of Amount (in Table I) |
|--------|------------------|----------------------|--------------------------------|
|        |                  |                      |                                |

Public Officers Law § 73-a | *Effective July 8, 2022*

(d) List the name, principal address and general description or the nature of the business activity of any entity in which the reporting individual or such individual's spouse or domestic partner had an investment in excess of $1,000 excluding investments in securities and interests in real property.

9. List each source of gifts, EXCLUDING campaign contributions, in EXCESS of $1,000, received during the reporting period for which this statement is filed by the reporting individual or such individual's spouse, domestic partner or unemancipated child from the same donor, EXCLUDING gifts from a relative. INCLUDE the name and address of the donor. The term "gifts" does not include reimbursements, which term is defined in item 10. Indicate the value and nature of each such gift.

| Self, Spouse, Domestic Partner or Child | Name of Donor | Address | Nature of Gift | Category of Value of Gift (in Table I) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

**Public Officers Law § 73-a** | *Effective July 8, 2022*

10. Identify and briefly describe the source of any reimbursements for expenditures, EXCLUDING campaign expenditures and expenditures in connection with official duties reimbursed by the state, in EXCESS of $1,000 from each such source. For purposes of this item, the term "reimbursements" shall mean any travel-related expenses provided by nongovernmental sources and for activities related to the reporting individual's official duties such as, speaking engagements, conferences, or factfinding events. The term "reimbursements" does NOT include gifts reported under item 9.

| Source | Description |
|--------|-------------|
|        |             |

11. List the identity and value, if reasonably ascertainable, of each interest in a trust, estate or other beneficial interest, including retirement plans (other than retirement plans of the state of New York or the city of New York), and deferred compensation plans (e.g., 401, 403(b), 457, etc.) established in accordance with the internal revenue code, in which the REPORTING INDIVIDUAL held a beneficial interest in EXCESS of $1,000 at any time during the preceding year. Do NOT report interests in a trust, estate or other beneficial interest established by or for, or the estate of, a relative.

| Identity | Category of Value* (in Table II) |
|----------|----------------------------------|
|          |                                  |

\* The value of such interest shall be reported only if reasonably ascertainable.

12. (a) Describe the terms of, and the parties to, any contract, promise, or other agreement between the reporting individual and any person, firm, or corporation with respect to the employment of such individual after leaving office or position (other than a leave of absence).

(b) Describe the parties to and the terms of any agreement providing for continuation of payments or benefits to the REPORTING INDIVIDUAL in EXCESS of $1,000 from a prior employer OTHER THAN the State. (This includes interests in or contributions to a pension fund, profit-sharing plan, or life or health insurance; buy-out agreements; severance payments; etc.)

13. List below the nature and amount of any income in EXCESS of $1,000 from EACH SOURCE for the reporting individual and such individual's spouse or domestic partner for the taxable year last occurring prior to the date of filing. Each such source must be described with particularity.

Nature of income includes, but is not limited to, all income (other than that received from the employment listed under Item 2 above) from compensated employment whether public or private, directorships and other fiduciary positions, contractual arrangements, teaching income, partnerships, honorariums, lecture fees, consultant fees, bank and bond interest, dividends, income derived from a trust, real estate rents, and recognized gains from the sale or exchange of real or other property. Income from a business or profession and real estate rents shall be reported with the source identified by the building address in the case of real estate rents and otherwise by the name of the entity and not by the name of the individual customers, clients or tenants, with the aggregate net income before taxes for each building address or entity. The receipt of maintenance received in connection with a matrimonial action, alimony and child support payments shall not be listed.

| Self/Spouse or Domestic Partner | Source | Nature | Category of Amount (in Table I) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

14. List the sources of any deferred income (not retirement income) in EXCESS of $1,000 from each source to be paid to the reporting individual following the close of the calendar year for which this disclosure statement is filed, other than deferred compensation reported in item 11 hereinabove. Deferred income derived from the practice of a profession shall be listed in the aggregate and shall identify as the source, the name of the firm, corporation, partnership or association through which the income was derived, but shall not identify individual clients.

| Source | Category of Value* (in Table I) |
|---|---|

15. List each assignment of income in EXCESS of $1,000, and each transfer other than to a relative during the reporting period for which this statement is filed for less than fair consideration of an interest in a trust, estate or other beneficial interest, securities or real property, by the reporting individual, in excess of $1,000, which would otherwise be required to be reported herein and is not or has not been so reported.

| Item Assigned or Transferred | Assigned or Transferred to | Category of Amount (in Table I) |
|---|---|---|
| | | |
| | | |
| | | |

16. List below the type and market value of securities held by the reporting individual or such individual's spouse or domestic partner from each issuing entity in EXCESS of $1,000 at the close of the taxable year last occurring prior to the date of filing, including the name of the issuing entity exclusive of securities held by the reporting individual issued by a professional corporation. Whenever an interest in securities exists through a beneficial interest in a trust, the securities held in such trust shall be listed ONLY IF the reporting individual has knowledge thereof except where the reporting individual or the reporting individual's spouse or domestic

POL and other Ethics and Lobbying Related Laws and Regulations

partner has transferred assets to such trust for his or her benefit in which event such securities shall be listed unless they are not ascertainable by the reporting individual because the trustee is under an obligation or has been instructed in writing not to disclose the contents of the trust to the reporting individual. Securities of which the reporting individual or the reporting individual's spouse or domestic partner is the owner of record but in which such individual or the reporting individual's spouse or domestic partner has no beneficial interest shall not be listed. Indicate percentage of ownership ONLY if the reporting person or the reporting person's spouse or domestic partner holds more than five percent (5%) of the stock of a corporation in which the stock is publicly traded or more than ten percent (10%) of the stock of a corporation in which the stock is NOT publicly traded. Also list securities owned for investment purposes by a corporation more than fifty percent (50%) of the stock of which is owned or controlled by the reporting individual or such individual's spouse or domestic partner. For the purpose of this item the term "securities" shall mean mutual funds, bonds, mortgages, notes, obligations, warrants and stocks of any class, investment interests in limited or general partnerships and certificates of deposits (CDs) and such other evidences of indebtedness and certificates of interest as are usually referred to as securities. The market value for such securities shall be reported only if reasonably ascertainable and shall not be reported if the security is an interest in a general partnership that was listed in item 8 (a) or if the security is corporate stock, NOT publicly traded, in a trade or business of a reporting individual or a reporting individual's spouse or domestic partner.

| Self/Spouse or Domestic Partner | Issuing Entity | Type of Security | Percentage of corporate stock owned or controlled (if more than 5% of publicly traded stock, or more than 10% if stock not publicly traded, is held) | Category of Market Value as of the close of the taxable year last occurring prior to the filing of this statement (In Table II) |
|---|---|---|---|---|

Public Officers Law § 73-a | *Effective July 8, 2022*

17. List below the location, size, general nature, acquisition date, market value and percentage of ownership of any real property in which any vested or contingent interest in EXCESS of $1,000 is held by the reporting individual or the reporting individual's spouse or domestic partner. Also list real property owned for investment purposes by a corporation more than fifty percent (50%) of the stock of which is owned or controlled by the reporting individual or such individual's spouse or domestic partner. Do NOT list any real property which is the primary or secondary personal residence of the reporting individual or the reporting individual's spouse or domestic partner, except where there is a co-owner who is other than a relative.

| Self/Spouse/ Domestic Partner/Corporation | Location | Size | General Nature | Acquisition Date | Percentage of Ownership | Category of Market Value (In Table II) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

POL and other Ethics and Lobbying Related Laws and Regulations

18. List below all notes and accounts receivable, other than from goods or services sold, held by the reporting individual at the close of the taxable year last occurring prior to the date of filing and other debts owed to such individual at the close of the taxable year last occurring prior to the date of filing, in EXCESS of $1,000, including the name of the debtor, type of obligation, date due and the nature of the collateral securing payment of each, if any, excluding securities reported in item 16 hereinabove. Debts, notes and accounts receivable owed to the individual by a relative shall not be reported.

| Name of Debtor | Type of Obligation, Date Due, and Nature of Collateral, if any | Category of Amount (in Table II) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

19. List below all liabilities of the reporting individual and such individual's spouse or domestic partner, in EXCESS of $10,000 as of the date of filing of this statement, other than liabilities to a relative. Do NOT list liabilities incurred by, or guarantees made by, the reporting individual or such individual's spouse or domestic partner or by any proprietorship, partnership or corporation in which the reporting individual or such individual's spouse or domestic partner has an interest, when incurred or made in the ordinary course of the trade, business or professional practice of the reporting individual or such individual's spouse or domestic partner. Include the name of the creditor and any collateral pledged by such individual to secure payment of any such liability. A reporting individual shall not list any obligation to pay maintenance in connection with a matrimonial action, alimony or child support payments. Any loan issued in the ordinary course of business by a financial institution to finance educational costs, the cost of home purchase or improvements for a primary or secondary residence, or purchase of a

personally owned motor vehicle, household furniture or appliances shall be excluded. If any such reportable liability has been guaranteed by any third person, list the liability and name the guarantor.

| Name of Creditor or Guarantor | Type of Liability and Collateral, if any | Category of Amount (in Table II) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

The requirements of law relating to the reporting of financial interests are in the public interest and no adverse inference of unethical or illegal conduct or behavior will be drawn merely from compliance with these requirements.

_____                    _____
(Signature of Reporting Individual)                         Date (month/day/year)

**Public Officers Law § 73-a** | *Effective July 8, 2022*

TABLE I

| | |
|---|---|
| Category A | none |
| Category B | $    1 to under $  1,000 |
| Category C | $ 1,000 to under $  5,000 |
| Category D | $ 5,000 to under $  20,000 |
| Category E | $ 20,000 to under $  50,000 |
| Category F | $ 50,000 to under $  75,000 |
| Category G | $ 75,000 to under $ 100,000 |
| Category H | $ 100,000 to under $ 150,000 |
| Category I | $ 150,000 to under $ 250,000 |
| Category J | $ 250,000 to under $ 350,000 |
| Category K | $ 350,000 to under $ 450,000 |
| Category L | $ 450,000 to under $ 550,000 |
| Category M | $ 550,000 to under $ 650,000 |
| Category N | $ 650,000 to under $ 750,000 |
| Category O | $ 750,000 to under $ 850,000 |
| Category P | $ 850,000 to under $ 950,000 |
| Category Q | $ 950,000 to under $1,050,000 |
| Category R | $1,050,000 to under $1,150,000 |
| Category S | $1,150,000 to under $1,250,000 |

**Public Officers Law § 73-a** | *Effective July 8, 2022*

| | |
|---|---|
| Category T | $1,250,000 to under $1,350,000 |
| Category U | $1,350,000 to under $1,450,000 |
| Category V | $1,450,000 to under $1,550,000 |
| Category W | $1,550,000 to under $1,650,000 |
| Category X | $1,650,000 to under $1,750,000 |
| Category Y | $1,750,000 to under $1,850,000 |
| Category Z | $1,850,000 to under $1,950,000 |
| Category AA | $1,950,000 to under $2,050,000 |
| Category BB | $2,050,000 to under $2,150,000 |
| Category CC | $2,150,000 to under $2,250,000 |
| Category DD | $2,250,000 to under $2,350,000 |
| Category EE | $2,350,000 to under $2,450,000 |
| Category FF | $2,450,000 to under $2,550,000 |
| Category GG | $2,550,000 to under $2,650,000 |
| Category HH | $2,650,000 to under $2,750,000 |
| Category II | $2,750,000 to under $2,850,000 |
| Category JJ | $2,850,000 to under $2,950,000 |
| Category KK | $2,950,000 to under $3,050,000 |
| Category LL | $3,050,000 to under $3,150,000 |
| Category MM | $3,150,000 to under $3,250,000 |

**Public Officers Law § 73-a** | *Effective July 8, 2022*

Category NN    $3,250,000 to under $3,350,000

Category OO    $3,350,000 to under $3,450,000

Category PP    $3,450,000 to under $3,550,000

Category QQ    $3,550,000 to under $3,650,000

Category RR    $3,650,000 to under $3,750,000

Category SS    $3,750,000 to under $3,850,000

Category TT    $3,850,000 to under $3,950,000

Category UU    $3,950,000 to under $4,050,000

Category VV    $4,050,000 to under $4,150,000

Category WW    $4,150,000 to under $4,250,000

Category XX    $4,250,000 to under $4,350,000

Category YY    $4,350,000 to under $4,450,000

Category ZZ    $4,450,000 to under $4,550,000

Category AAA   $4,550,000 to under $4,650,000

Category BBB   $4,650,000 to under $4,750,000

Category CCC   $4,750,000 to under $4,850,000

Category DDD   $4,850,000 to under $4,950,000

Category EEE   $4,950,000 to under $5,050,000

Category FFF   $5,050,000 to under $5,150,000

Category GGG   $5,150,000 to under $5,250,000

**Public Officers Law § 73-a** | *Effective July 8, 2022*

| | |
|---|---|
| Category HHH | $5,250,000 to under $5,350,000 |
| Category III | $5,350,000 to under $5,450,000 |
| Category JJJ | $5,450,000 to under $5,550,000 |
| Category KKK | $5,550,000 to under $5,650,000 |
| Category LLL | $5,650,000 to under $5,750,000 |
| Category MMM | $5,750,000 to under $5,850,000 |
| Category NNN | $5,850,000 to under $5,950,000 |
| Category OOO | $5,950,000 to under $6,050,000 |
| Category PPP | $6,050,000 to under $6,150,000 |
| Category QQQ | $6,150,000 to under $6,250,000 |
| Category RRR | $6,250,000 to under $6,350,000 |
| Category SSS | $6,350,000 to under $6,450,000 |
| Category TTT | $6,450,000 to under $6,550,000 |
| Category UUU | $6,550,000 to under $6,650,000 |
| Category VVV | $6,650,000 to under $6,750,000 |
| Category WWW | $6,750,000 to under $6,850,000 |
| Category XXX | $6,850,000 to under $6,950,000 |
| Category YYY | $6,950,000 to under $7,050,000 |
| Category ZZZ | $7,050,000 to under $7,150,000 |
| Category AAAA | $7,150,000 to under $7,250,000 |

Public Officers Law § 73-a | *Effective July 8, 2022*

| | |
|---|---|
| Category BBBB | $7,250,000 to under $7,350,000 |
| Category CCCC | $7,350,000 to under $7,450,000 |
| Category DDDD | $7,450,000 to under $7,550,000 |
| Category EEEE | $7,550,000 to under $7,650,000 |
| Category FFFF | $7,650,000 to under $7,750,000 |
| Category GGGG | $7,750,000 to under $7,850,000 |
| Category HHHH | $7,850,000 to under $7,950,000 |
| Category IIII | $7,950,000 to under $8,050,000 |
| Category JJJJ | $8,050,000 to under $8,150,000 |
| Category KKKK | $8,150,000 to under $8,250,000 |
| Category LLLL | $8,250,000 to under $8,350,000 |
| Category MMMM | $8,350,000 to under $8,450,000 |
| Category NNNN | $8,450,000 to under $8,550,000 |
| Category OOOO | $8,550,000 to under $8,650,000 |
| Category PPPP | $8,650,000 to under $8,750,000 |
| Category QQQQ | $8,750,000 to under $8,850,000 |
| Category RRRR | $8,850,000 to under $8,950,000 |
| Category SSSS | $8,950,000 to under $9,050,000 |
| Category TTTT | $9,050,000 to under $9,150,000 |
| Category UUUU | $9,150,000 to under $9,250,000 |

**Public Officers Law § 73-a** | *Effective July 8, 2022*

| | |
|---|---|
| Category VVVV | $9,250,000 to under $9,350,000 |
| Category WWWW | $9,350,000 to under $9,450,000 |
| Category XXXX | $9,450,000 to under $9,550,000 |
| Category YYYY | $9,550,000 to under $9,650,000 |
| Category ZZZZ | $9,650,000 to under $9,750,000 |
| Category AAAAA | $9,750,000 to under $9,850,000 |
| Category BBBBB | $9,850,000 to under $9,950,000 |
| Category CCCCC | $9,950,000 to under $10,000,000 |
| Category DDDDD | $10,000,000 or over |

Public Officers Law § 73-a | *Effective July 8, 2022*

TABLE II

| Category A | none |
|---|---|
| Category B | $1 to under $1,000 |
| Category C | $1,000 to under $5,000 |
| Category D | $5,000 to under $20,000 |
| Category E | $20,000 to under $50,000 |
| Category F | $50,000 to under $75,000 |
| Category G | $75,000 to under $100,000 |
| Category H | $100,000 to under $150,000 |
| Category I | $150,000 to under $250,000 |
| Category J | $250,000 to under $500,000 |
| Category K | $500,000 to under $750,000 |
| Category L | $750,000 to under $1,000,000 |
| Category M | $1,000,000 to under $1,250,000 |
| Category N | $1,250,000 to under $1,500,000 |
| Category O | $1,500,000 to under $1,750,000 |
| Category P | $1,750,000 to under $2,000,000 |
| Category Q | $2,000,000 to under $2,250,000 |
| Category R | $2,250,000 to under $2,500,000 |
| Category S | $2,500,000 to under $2,750,000 |

**Public Officers Law § 73-a** | *Effective July 8, 2022*

| | |
|---|---|
| Category T | $2,750,000 to under $3,000,000 |
| Category U | $3,000,000 to under $3,250,000 |
| Category V | $3,250,000 to under $3,500,000 |
| Category W | $3,500,000 to under $3,750,000 |
| Category X | $3,750,000 to under $4,000,000 |
| Category Y | $4,000,000 to under $4,250,000 |
| Category Z | $4,250,000 to under $4,500,000 |
| Category AA | $4,500,000 to under $4,750,000 |
| Category BB | $4,750,000 to under $5,000,000 |
| Category CC | $5,000,000 to under $5,250,000 |
| Category DD | $5,250,000 to under $5,500,000 |
| Category EE | $5,500,000 to under $5,750,000 |
| Category FF | $5,750,000 to under $6,000,000 |
| Category GG | $6,000,000 to under $6,250,000 |
| Category HH | $6,250,000 to under $6,500,000 |
| Category II | $6,500,000 to under $6,750,000 |
| Category JJ | $6,750,000 to under $7,000,000 |
| Category KK | $7,000,000 to under $7,250,000 |
| Category LL | $7,250,000 to under $7,500,000 |
| Category MM | $7,500,000 to under $7,750,000 |

| | |
|---|---|
| Category NN | $7,750,000 to under $8,000,000 |
| Category OO | $8,000,000 to under $8,250,000 |
| Category PP | $8,250,000 to under $8,500,000 |
| Category QQ | $8,500,000 to under $8,750,000 |
| Category RR | $8,750,000 to under $9,000,000 |
| Category SS | $9,000,000 to under $9,250,000 |
| Category TT | $9,250,000 to under $9,500,000 |
| Category UU | $9,500,000 or over |

4. A reporting individual who knowingly and wilfully fails to file an annual statement of financial disclosure or who knowingly and wilfully with intent to deceive makes a false statement or gives information which such individual knows to be false on such statement of financial disclosure filed pursuant to this section shall be subject to a civil penalty in an amount not to exceed forty thousand dollars. Assessment of a civil penalty hereunder shall be made by the commission on ethics and lobbying in government or by the legislative ethics commission, as the case may be, with respect to persons subject to their respective jurisdictions. The commission on ethics and lobbying in government acting pursuant to subdivision fourteen of section ninety-four of the executive law or the legislative ethics commission acting pursuant to subdivision eleven of section eighty of the legislative law, as the case may be, may, in lieu of or in addition to a civil penalty, refer a violation to the appropriate prosecutor and upon such conviction, but only after such referral, such violation shall be punishable as a class A misdemeanor. A civil penalty for false filing may not be imposed hereunder in the event a category of "value" or "amount" reported hereunder is incorrect unless such reported information is falsely understated. Notwithstanding any other provision of law to the contrary, no other penalty, civil or criminal may be imposed for a failure to file, or for a false filing, of such statement, except that the appointing authority may impose disciplinary action as otherwise provided by law. The commission on ethics and lobbying in government and the legislative ethics

commission shall each be deemed to be an agency within the meaning of article three of the state administrative procedure act and shall adopt rules governing the conduct of adjudicatory proceedings and appeals relating to the assessment of the civil penalties herein authorized. Such rules, which shall not be subject to the approval requirements of the state administrative procedure act, shall provide for due process procedural mechanisms substantially similar to those set forth in such article three but such mechanisms need not be identical in terms or scope. Assessment of a civil penalty shall be final unless modified, suspended or vacated within thirty days of imposition and upon becoming final shall be subject to review at the instance of the affected reporting individual in a proceeding commenced against the commission on ethics and lobbying in government or the legislative ethics commission, pursuant to article seventy-eight of the civil practice law and rules.

5. Nothing contained in this section shall be construed as precluding any public authority or public benefit corporation from  exercising any authority or power now or hereafter existing to require any of its members, directors, officers or employees to file financial disclosure statements with such public authority or public benefit corporation that are the same as, different from or supplemental to any of the requirements contained herein and to provide only for internal employment discipline for any violation arising out of such internal filing.

6. Notwithstanding any other provision of law or any professional disciplinary rule to the contrary, the disclosure of the identity of any client or customer on a reporting individual's annual statement of financial disclosure shall not constitute professional misconduct or a ground for disciplinary action of any kind, or form the basis for any civil or criminal cause of action or proceeding.

7. With respect to an application to either the commission on ethics and lobbying in government or the office of court administration for an exemption to disclosing the name of a client or customer in response to questions 8 (b-1), 8 (b-2) and 8 (c), all information which is the subject of or a part of such application shall remain confidential.  The name of the client need not be disclosed by the reporting individual unless and until the commission on ethics and lobbying in government or the office of court administration formally advises the reporting individual that he or she must disclose such names and the reporting individual agrees to represent the client. Any commissioner or person employed by the commission on ethics and lobbying in government or any person employed by the

**Public Officers Law § 73-a** | *Effective July 8, 2022*

office of court administration who, intentionally and without authorization from a court of competent jurisdiction releases confidential information related to a request for an exemption received by the commission or the office of court administration shall be guilty of a class A misdemeanor.

# Public Officers Law §74

**Code of Ethics.**

1. **Definition.**

   As used in this section:  The term "state agency" shall mean any state department, or division, board, commission, or bureau of any state department or any public benefit corporation or public authority at least one of whose members is appointed by the governor or corporations closely affiliated with specific state agencies as defined by paragraph (d) of subdivision five of section fifty-three-a of the state finance law or their successors.

   The term "legislative employee" shall mean any officer or employee of the legislature but it shall not include members of the legislature.

2. **Rule with respect to conflicts of interest.**

   No officer or employee of a state agency, member of the legislature or legislative employee should have any interest, financial or otherwise, direct or indirect, or engage in any business or transaction or professional activity or incur any obligation of any nature, which is in substantial conflict with the proper discharge of his or her duties in the public interest.

3. **Standards.**

   a. No officer or employee of a state agency, member of the legislature or legislative employee should accept other employment which will impair his or her independence of judgment in the exercise of his or her official duties.

   b. No officer or employee of a state agency, member of the legislature or legislative employee should accept employment or engage in any business or professional activity which will require him or her to disclose confidential information which he or she has gained by reason of his or her official position or authority.

c.  No officer or employee of a state agency, member of the legislature or legislative employee should disclose confidential information acquired by him or her in the course of his or her official duties nor use such information to further his or her personal interests.

d.  No officer or employee of a state agency, member of the legislature or legislative employee should use or attempt to use his or her official position to secure unwarranted privileges or exemptions for himself or herself or others, including but not limited to, the misappropriation to himself, herself or to others of the property, services or other resources of the state for private business or other compensated non-governmental purposes.

e.  No officer or employee of a state agency, member of the legislature or legislative employee should engage in any transaction as representative or agent of the state with any business entity in which he or she has a direct or indirect financial interest that might reasonably tend to conflict with the proper discharge of his or her official duties.

f.  An officer or employee of a state agency, member of the legislature or legislative employee should not by his or her conduct give reasonable basis for the impression that any person can improperly influence him or her or unduly enjoy his or her favor in the performance of his or her official duties, or that he or she is affected by the kinship, rank, position or influence of any party or person.

g.  An officer or employee of a state agency should abstain from making personnel investments in enterprises which he or she has reason to believe may be directly involved in decisions to be made by him or her or which will otherwise create substantial conflict between his or her duty in the public interest and his or her private interest.

h.  An officer or employee of a state agency, member of the legislature or legislative employee should endeavor to pursue a course of conduct which will not raise suspicion among the public that he or she is likely to be engaged in acts that are in violation of his or her trust.

Public Officers Law § 74 | *Effective July 8, 2022*

    i.   No officer or employee of a state agency employed on a full-time basis nor any firm or association of which such an officer or employee is a member nor corporation a substantial portion of the stock of which is owned or controlled directly or indirectly by such officer or employee, should sell goods or services to any person, firm, corporation or association which is licensed or whose rates are fixed by the state agency in which such officer or employee serves or is employed.

4.  **Violations.**

In addition to any penalty contained in any other provision of law any such officer, member or employee who shall knowingly and intentionally violate any of the provisions of this section may be fined, suspended or removed from office or employment in the manner provided by law. Any such individual who knowingly and intentionally violates the provisions of paragraph b, c, d or i of subdivision three of this section shall be subject to a civil penalty in an amount not to exceed ten thousand dollars and the value of any gift, compensation or benefit received as a result of such violation. Any such individual who knowingly and intentionally violates the provisions of paragraph a, e or g of subdivision three of this section shall be subject to a civil penalty in an amount not to exceed the value of any gift, compensation or benefit received as a result of such violation.

# Public Officers Law §§ 74-a – 79

## § 74-a. Duty of public officers regarding the physically handicapped.

It shall be the duty of each public officer responsible for the scheduling or siting of any public hearing to make reasonable efforts to ensure that such hearings are held in facilities that permit barrier-free physical access to the physically handicapped, as defined in subdivision five of section fifty of the public buildings law.

## § 75. Bribery of members of the legislature.

A person who gives or offers, or causes to be given or offered, a bribe, or any money, property, or value of any kind, or any promise or agreement therefor, to a member of the legislature, or to a person who has been elected a member of the legislature, or attempts, directly or indirectly, by menace, deceit, suppression of truth, or other corrupt means, to influence such a member or person to give or withhold his vote, or to absent himself from the house of which he is, or is to become, a member, or from any committee thereof, is punishable by imprisonment for not more than ten years, or by a fine of not more than five thousand dollars, or by both.

## § 75-a. Appearance by a person convicted of a crime of corruption.

Upon conviction for any of the following crimes: bribery in the first degree, bribery in the second degree, bribery in the third degree, rewarding official misconduct in the first degree, rewarding official misconduct in the second degree, giving unlawful gratuities, and when any such crime is committed for the purpose of corrupting a public office, agency or public official of the state, or any political subdivision, public authority, or public benefit corporation of the state, in the performance of public duty, such public office, agency or public official of the state, or any political subdivision or public authority may bar that person or entity convicted of such enumerated crimes from appearing before the affected public office, agency or public official of the state, or any such political subdivision or public authority in any professional or representative capacity. Such bar shall be for a period of five years from the date of judgment for such conviction.

## § 76. Receiving bribes by members of legislature.

A member of either of the houses composing the legislature of this state, or a person elected to become a member thereof, who asks, receives, or agrees to receive any bribe upon any understanding that his official vote, opinion, judgment or action shall be influenced thereby, or shall be given in any particular manner or upon any particular side of any question or matter upon which he may be required to act in his official capacity, shall be guilty of a class D felony.

## § 77. Unlawful fees and payments.

A member of the legislature or any officer or employee of the legislature who asks or receives or consents or agrees to receive any emolument, gratuity or reward or any promise of emolument, gratuity or reward or any money, property or thing of value or of personal advantage, except such as may be authorized by law, for doing or omitting to do any official act, or for performing or omitting to perform any act whatsoever directly or indirectly related to any matter in respect to which any duty or discretion is by or in pursuance of law imposed upon or vested in him, or may be exercised by him by virtue of his office, or appointment or employment or his actual relation to the matter including, without limiting the generality of the foregoing, approving or promoting the passage of legislation or resolutions or the confirmation of appointees, or the conduct of investigations, and a person who shall directly or indirectly offer or make such a transfer to any member of the legislature or any officer or employee of the legislature shall be guilty of a felony punishable by imprisonment for not more than ten years or by a fine of not more than five thousand dollars, or both.

## § 77-a. Members of the legislature liable to forfeiture of office.

The conviction of a member of the legislature or any officer or employee of the legislature of any of the crimes defined in sections seventy-five, seventy-six or seventy-seven of this chapter, shall involve as a consequence in addition to the punishment provided in any such section a forfeiture of his office; and shall disqualify him from ever afterwards holding any office under this state.

## § 78. Certification of members, officers and employees.

On or before the tenth day after any member, officer or employee commences the performance of his duties as such, he shall file, with the secretary of the senate, if a member, officer or employee of that house, or with the clerk of the assembly, if a member, officer or employee of that house, or with the secretary of state if an officer or employee of a state agency, a certificate acknowledging receipt of a copy of sections seventy-three, seventy-three-a, seventy-four, seventy-five, seventy-six, seventy-seven and seventy-eight of this chapter together with such other material as the secretary of the senate, the clerk of the assembly or the secretary of state may prepare related thereto, that he has read the same and undertakes to conform to the provisions, purposes and intent thereof and to the norms of conduct for members, officers and employees of the legislature and state agencies.

## § 79. Fine in certain cases.

Where an officer or a member of a board or other body has without just cause refused or neglected to perform a public duty enjoined upon him by a special provision of law, a court may impose a fine, not exceeding two hundred fifty dollars, upon the officer or member who has so refused or neglected, to be paid into the treasury of the state.

POL and other Ethics and Lobbying Related Laws and Regulations

# Civil Service Law § 107

*Prohibition against certain political activities; improper influence.*

1. **Recommendations based on political affiliations.** No recommendation or question under the authority of this chapter shall relate to the political opinions or affiliations of any person whatever; and no appointment or selection to or removal from an office or employment within the scope of this chapter or the rules established thereunder, shall be in any manner affected or influenced by such opinions or affiliations. No person in the civil service of the state or of any civil division thereof is for that reason under any obligation to contribute to any political fund or to render any political service, and no person shall be removed or otherwise prejudiced for refusing so to do. No person in the said civil service shall discharge or promote or reduce, or in any manner change the official rank or compensation of any other person in said service, or promise or threaten so to do, for giving or withholding or neglecting to make any contribution of money or service or any other valuable thing for any political purpose. No person in said service shall use his official authority or influences to coerce the political action of any person or body or to interfere with any election.

2. **Inquiry concerning political affiliations.** No person shall directly or indirectly ask, indicate or transmit orally or in writing the political affiliations of any employee in the civil service of the state or of any civil division thereof or of any person dependent upon or related to such an employee, as a test of fitness for holding office. A violation of this subdivision shall be deemed a misdemeanor and conviction thereof shall subject the person convicted to a fine of not less than one hundred dollars nor more than five hundred dollars or to imprisonment for not less than thirty days nor more than six months, or to both such fine and imprisonment. Nothing herein contained shall be construed to prevent or prohibit inquiry concerning the activities, affiliation or membership of any applicant or employee in any group or organization which advocates that the government of the United States or of any state or of any political subdivision thereof should be overturned by force, violence or any unlawful means.

3. **Political assessments.** No officer or employee of the state or any civil division thereof shall, directly or indirectly, use his authority or official influence to compel or induce any other officer or employee of the

state or any civil division thereof, to pay or promise to pay any political assessment, subscription or contribution. Every officer or employee who may have charge or control in any building, office or room occupied for any governmental purpose is hereby authorized to prohibit the entry of any person, and he shall not knowingly permit any person to enter the same for the purpose of making, collecting, receiving or giving notice therein, of any political assessment, subscription or contribution; and no person shall enter or remain in any such office, building or room, or send or direct any letter or other writing thereto, for the purpose of giving notice of, demanding or collecting a political assessment; nor shall any person therein give notice of, demand, collect or receive any such assessment, subscription or contribution. No person shall prepare or take any part in preparing any political assessment, subscription or contribution with the intent that the same shall be sent or presented to or collected of any officer or employee subject to the provisions of this chapter, and no person shall knowingly send or present any political assessment, subscription or contribution to or request its payment of any said officer or employee. Any person violating any provision of this subdivision shall be guilty of a misdemeanor.

4. **Prohibition against promise of influence.** Any person, who while holding any public office, or in nomination for, or while seeking a nomination or appointment for any public office, shall corruptly use or promise to use, whether directly or indirectly, any official authority or influence, whether then possessed or merely anticipated, in the way of conferring upon any person, or in order to secure or aid any person in securing any office or public employment, or any nomination, confirmation, promotion or increase of salary, upon the consideration that the vote or political influence or action of the last-named person, or any other, shall be given or used in behalf of any candidate, officer or party, or upon any other corrupt condition or consideration, shall be deemed guilty of bribery or an attempt at bribery. Any public officer, or any person having or claiming to have any authority or influence for or affecting the nomination, public employment, confirmation, promotion, removal, or increase or decrease of salary of any public officer, who shall corruptly use, or promise, or threaten to use any such authority or influence, directly or indirectly in order to coerce or persuade the vote or political action of any citizen or the removal, discharge or promotion of any officer or public employee, or upon any other corrupt consideration shall also be guilty of bribery or of an attempt at bribery. Every person found guilty of such bribery, or an attempt to commit the same, as aforesaid, shall, upon conviction thereof, be liable to